# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**Madhuri Trivedi**

      **Plaintiff,**

     v.

**(1)General Electric Company, (2)GE Healthcare, (3)Larry Culp in his individual and official capacity, (4)GE board of directors, AND**

(5)Michael Swinford; (6)Carl Conrath; (7)John Dineen; (8)David Mehring;(9) Nicole Boyle; (10)Adam Holton; (11)Michael Truman; (12)Ayesha Khan;(13) Jeffrey Immelt; (14)Timothy Kottak;(15) David Elario; (16)Robert Swieringa; (17)Susan Hockfield; (18) Diane Smith; (19)Dipti Patel; (20)Nathan Davis; (21)Gregory Stratton; (22)William Barbiaux; (23) Reema Poddar; and (25) Michael Harsh (collectively referred to as "GE Defendants" in their individual and official capacity)

**(26)Fragomen, Del Rey, Bernsen & Loewy, LLP** & (27)**Jenny Schrager**, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP in her individual and official capacity (Fragomen defendants)

**(28)Foley & Mansfield law firm** & (29)Seymour Mansfield, (30)Andrew Shedlock in their individual and official capacity

**(31)U.S. Department of Labor, and (32) Secretary Martin Walsh and**

Case No.:

COMPLAINT AND REQUEST FOR INJUNCTION AND

CLASS ACTION COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF

Jury trial demanded.

Date Action filed:

**1)**  Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

**2)**  Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h);
    SEC Rule17 CFR § 240.21F-2
Violations of whistleblower protections under Sarbanes-Oxley Act ,8 U.S.C.    § 1514A, et seq. ,Pub. L. 107-204

**3)**  Disparate treatment, intentional discrimination and retaliation in violation of Title VII,

Violations of civil rights act of 1991.

( damages in cases of intentional discrimination ),42 U.S.C. 2000e et seq. ,Violations of Civil Rights Act of 1866, Section 1981(a),42 U.S.C. 1981 (Section 1981),

Sexual harassment,
Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 - 9 U.S.C. §§ 401-402

**4)**  Wrongful termination in violation of public policy

**5)**  Breach of the implied covenant of

1

**(33)**Daniel Koh**, in their official & individual capacity

 **(34)OSHA, and – (35)**Anthony Rosa, **(36)** Frederick James, **(37)**Doug Parker, **(38)** Tamara Simpson, **(39)** Robert Kuss, **(40)**William Donovan, **(41)**Denise Keller, **(42)**Nathan Terwilliger, **(43)**William Trepanier in their official & individual capacity

 **(44)Office of the Administrative Law Judge,**
**And (45)ALJ Timothy McGrath** in official & individual capacity

 **(46)Administrative Review board, &(47)**TAMMY PUST**(48)**SUSAN HARTHILL**(49)**THOMAS H. BURRELL at DOL in their official & individual capacity

 **(50)Office of the Solicitor -SOL –and (51)FTCA employee  Stefan Babich , (52)Sarah Naji** in their official & individual capacity

**Defendants.**

good faith and fair dealing Breach of contract good faith, Breach of  fiduciary duty

6)   9 U.S.C. § 12, 9 U.S.C. § 10(a)(3) ,9 U.S.C.§ 10(a)(2) 9 U.S.C.§ 10(a)(1) and challenging arbitration award under common law

7)   The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  29 CFR § 15.100 (a) against DOL

8)   Aiding & abetting fraud,Conspiracy Foley & Mansfield, Fragomen related malpractice claims - Breach of fiduciary, duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith, negligence

9)   5 U.S.C. § 702 under the Administrative Procedures Act ("APA")5 U. Code § 706, 702, 704

10) 31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER REPRISAL ; 31 U.S.C. § 3730(h)(3) under ongoing fraud and ongoing violations

11) Claims for violations of constitutional rights pursuant to  Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971) against DOL individuals named here

12) The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  29 CFR § 15.100 (a) against DOL

## Cases

3:15-cv-02356-JCS Document 132 SEC.................................................................... 74
*Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ......................................... 88
Anderson v. State, 88 Hawai'i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998)......................... 86
Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...................................................................... 56
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................... 56
*Britton v. Melvin*, 21-cv-1032-JBM, at *2 (C.D. Ill. Nov. 2, 2021)...................................... 89
***Britton v. Melvin*, 21-cv-1032-JBM, at *3 (C.D. Ill. Nov. 2, 2021)** ............................... 89
Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 271 (7th Cir. 1984)................................... 87

2

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir.2009) .................... 61

*Cooney v. Casady,* 652 F. Supp. 2d 948, 954 (N.D. Ill. 2009) ............................................................ 87

**CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014)** ........................................................................ 87

Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993) ....................................................... 86

*Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013) ......................................................................... 88

Estate of Kelly v. Falin, 127 Wn.2d 31, 896 P.2d 1245 (1995) ......................................................... 97

**Ex Parte Virginia, 100 U.S. 339 (1880)** .......................................................................................... 96

**Falcon v. Leger, 62 Mass. App. Ct. 352, 364, 816 N.E.2d 1010, 1018–19 (2004)** ..................... 62

*Federal trade commission v. Jim walter corp.,* 651 f.2d 251, 256-57 (5th cir. Unit a july 1981) ....... 37

*Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003) ................................................................... 87

Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas , 915 F.2d 1017, 1023 (5th Cir. 1990) ............. 67

Goldberg v. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 815–16 ,826, 827 (N.D. Ill.  2013) ........... 61

Harrington v. Aggregate Indus., 668 F.3d 25, 31 (1st Cir. 2012) ...................................................... 62

Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81, (1982). ..................................................... 88

*Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001). ................................................................. 88

Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir.2001). ...................................................................... 86

Heardv. Sheahan,253 F.3d316,317 (7thCir. 2001). ......................................................................... 87

*Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir.2006)* ............................................................. 61

In re: Evanston Nw. Healthcare Corp. Antitrust Litig., No. 07 C 04446, 2016 WL 4720014, at *7
   (N.D. Ill. Sept. 9, 2016). .............................................................................................................. 87

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012) ....................... 61

**Jones v. SouthPeak Interactive Corp., 777 F.3d 658 (4th Cir. 2015)** ........................................ 105

Karvelas v. Tuft Shared Servs., Inc., No. 20-1616, 2020 WL 7587147 (1st Cir. July 24, 2020) ....... 63

Kness v. Truck Trailer Equip. Co., 81 Wn.2d 251, 501 P.2d 285 (1972) ........................................... 98

Kovacs v. United States, 614 F.3d 666, 676 (7th Cir.2010) .............................................................. 87

Levine v. Lawrence, No. 03-CV-1694(DRH ETB), 2005 WL 1412143, at *5 (E.D.N.Y. June 15,
   2005) ........................................................................................................................................... 97

Limone v. U.S. 579 F.3d 79 (1st Cir. 2009). ............................................................................. 77, 98

*Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill. Aug. 28, 2018) ...................... 89

*M.H.D. v. Westminster Schools,* 172 F.3d 797, 804-05 (11th Cir. 1999) .......................................... 88

Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 343 (4th Cir.2010) .............................................. 62

Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172 (1st Cir.2005) .......................................... 62

Meyer, 510 U. S., at 477 ................................................................................................................... 41

*Mireles v. Waco*, 502 U.S. 9, 10, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) ................................ 97

*Molina-Garcia v. Fardon*, No. 18-2322, at *3 (7th Cir. Mar. 5, 2019) ............................................... 88

Move, Inc. v. Citigroup Global Markets, Inc

**Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383, 202 N.W.2d 268 (1972)**
   ............................................................................................................................................ 81, 100

**Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. App. 1984)** ...... 86

*Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984). ....................................................... 88

*Payton v. Williams*, No. 14-cv-2566, at *14 (N.D. Ill. Dec. 1, 2017) ................................................. 86

Prout v. Vladeck, 319 F.Supp.3d 741, 746 (S.D.N.Y. 2018) ............................................................ 73

Prout v. Vladeck, 371 F. Supp. 3d 150. 156,157, 159 (S.D.N.Y. 2019) ........................................... 52

*Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985) ................................................................ 88

*Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 18 (1st Cir. 2004). ..................................................... 43

*Sable v. General Motors Corp.,* 90 F.3d 171, 176 (6th Cir. 1996) .................................................... 88

*Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982) ................................................................... 88

*Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006) ........................................................ 89

Sheppard v. 265 Essex St. Operating Co., LLC, 299 F. Supp. 3d 278, 281, 282, 283, 284(D. Mass. 2018) .......................................................................................................................... 62

**Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 WL 2165854,at \*9-10 (ARB May 25, 2011)** ........................................................................................................................... 56

Tiberi v. Cigna Corp., 89 F.3d 1423, 1430 (10th Cir.1996) ..................................................... 87

United States ex rel. Campie v. Gilead Scis., Inc., 862 F.3d 890, 902 (9th Cir. 2017) ............. 59

United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174 (D. Mass. 2019) .... 63

**United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 1000 (2d Cir. 1995)** ............ 62

*United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) .............................................. 88

Ward v. Zeugner, 64 Wn.2d 570, 392 P.2d 811 (1964) ............................................................. 98

**Statutes**

15 U.S.C. 7245 ........................................................................................................................... 74

28 U.S.C. § 2680(h) .................................................................................................................... 77

28 U.S.C. §§ 1346(b) ........................................................................................................... 1, 77, 95

29 CFR § 15.101(b) .................................................................................................................... 34

29 CFR § 15.101(e) ..................................................................................................................... 34

29 CFR § 18.201 (e) Opportunity to be heard ............................................................................. 92

29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act .................. 1

31 U.S.C. § 3730(h) (2) ......................................................................................................... 61, 83, 102

42 U.S.C. § 1985 (2) .................................................................................................................... 85

FED. R. CIV. P. 8(a) ................................................................................................................... 75

**Fiol v. Doellstedt, 58 Cal. Rptr. 2d 308, 312 (Cal. Ct. App. 1996)** ..................................... 75

Javitch v. First Montauk Fin. Corp. 279 F. Supp. 2d 931, 941 (N.D. Ohio 2003) .................. 76

Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 579–80 (E.D.N.Y. 2005) .............................. 75

M.G.L. c. 12 § 5J(2) .................................................................................................................... 63

Mass. Gen. Laws ch. 12, § 5C(3) ................................................................................................ 62

**Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq.** ............................... 98

*Neilson*, 290 F. Supp. 2d at 1135 ............................................................................................... 76

**RESTATEMENT (SECOND) OF TORTS § 876(c) (1979)** ............................................... 75

**Saunders v. Superior Ct., 33 Cal. Rptr. 2d 438, 446 (Cal. Ct. App. 1994)** ........................ 75

**Wis. Stat. § 893.57 Intentional torts** ..................................................................................... 98

**Wisconsin statute 895.045** ............................................................................................. 81, 100

**Other Authorities**

Restatement (Second) of Torts § 286 (1965) ............................................................................. 97

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 62

**Regulations**

17 CFR § 205 .............................................................................................................................. 74

# **COMPLAINT AND REQUEST FOR INJUNCTION**

1. I have spoke with SENATE senior COUNSEL on January 4, 2023– to submit a letter to court, to do congressional inquiry; and that counsel is looking into it.
2. **Preventing me from litigating my claims is obstruction of justice and it is CRIME.**

3. **Please assign this case to judge Jesse Furman or Judge Katherine Fallia..my lawsuit is interrelated to issues litigated in these lawsuits. Because these two judgese have familiarity.  OR ASSIGN IT RANDOMLY>**
   Currently there are two class action lawsuits against GE at SDNY..

My lawsuit is in some part related to both of these lawsuits – as I worked for GE healthcare as a **lead engineer for services division. Case assigned to Judge Furman is for long term service contract – securities fraud..**and case assigned to judge Failla is for **cybersecurity** issues. So this cases should be assigned to either of these two judges.

(1)Sjunde AP-Fonden, et al., v. General Electric Company, et al. -  1:17-cv-08457-JMF  --Hon. Jesse M. Furman

(2) In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York  - Judge Katherine Polk Failla

4. I am waiting to hear from Rick Lara – USDOJ… I will reach out to his food chain..and have USDOJ submit a letter about judge Hanen writing to USDOJ to do GRAND JURY CRIMINAL INVESTIGATION. Rick Lara is out this week – his office said – for work purpose.

------- Forwarded Message -------
From: Ponce, Oscar (USATXS) <Oscar.Ponce@usdoj.gov>
Date: On Tuesday, January 3rd, 2023 at 9:01 PM
Subject: RE: [EXTERNAL] grand jury criminal investigation
To: Madhuri Trivedi <orangeinc@protonmail.com>

Ms. Trivedi,

    As you requested last week, your email below was forwarded to Mr. Lara.          01/03/2023

 **From:** Madhuri Trivedi <orangeinc@protonmail.com>
**Sent:** Tuesday, December 27, 2022 10:41 AM
**To:** Lara, Rick (USATXS) <RLara@usa.doj.gov>; Ponce, Oscar (USATXS) <OPonce@usa.doj.gov>; Madhuri Trivedi <orangeinc@protonmail.com>
**Cc:** tony.tassell@ft.com; william cohan <wdcohan@yahoo.com>; william.cohan@yahoo.com; john.plender@ft.com; fnorris1@jhu.edu; tabby.kinder@ft.com
**Subject:** [EXTERNAL] grand jury criminal investigation

 Mr. Lara,

You and I have spoken in past.. where judge Andrew Hanen had asked you to do GRAND JURY CRIMINAL INVESTIGATION.
I came to know that you are on holiday leave. and will be back on Jan 3. and I spoke with your backup attorney Oscar Ponce.

When you are back in office..please send me a one paragraph letter stating what Judge Andrew Hanen asked..
to do GRAND JURY CRIMINAL INVESTIGATION.
Please reply asap..
Judge Hanen had (through chambers )– told me that he would have done everything to rule in my favor and get justice..  matter would have been resolved already

5.   I have removed judges as defendant from this lawsuit.. because – due to keeping them as defendant – my case is getting transferred.. and anyway – case transferred from SDNY to MAD on December 27, 2022..is still NOT DOCKETED by district of Massachusetts staff– So I still have an ACTIVE LAWSUIT where judges are defendants…and I will deal with that. I can AMEND this lawsuit and add JUDGES as PARTIES too..will see.

6.   Re: congressional inquiry, grand jury criminal investigation, impeachment of judges
For HELP senate committee – when senator Bernie Sanders take over – new staff will continue work on it.

FromMadhuri Trivedi <orangeinc@protonmail.com>
ToCarter, Greg (HELP Committee)<Greg_Carter@help.senate.gov>, william.cohan@yahoo.com, peter.baker@nytimes.com, tony.tassell@ft.com, john.plender@ft.comCCBackfield, Katlin McKelvie (HELP Committee)<Katlin_Backfield@help.senate.gov>, Tsilker, Yelena (HELP Committee)<Yelena_Tsilker@help.senate.gov>, Rush, Carly (HELP Committee)<Carly_Rush@help.senate.gov>, Bath, Nick (HELP Committee)<Nick_Bath@help.senate.gov>, ryan_pettit@murray.senate.gov, mindi_linquist@murray.senate.gov, ben_merkel@murray.senate.gov
DateSunday, December 11th, 2022 at 6:14 AMSunday, December 11th, 2022 at 6:14 AM

**My reminder**
**- congressional inquiry, grand jury criminal investigation, impeachment of judges**

How come senator Murray be third in line for president..as I read ..and still my matter is hanging...where she is a HELP committee chair...
------- Original Message -------
On Friday, December 2nd, 2022 at 9:53 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Hello -  Ryan Pettit, Mindi and Ben - please print this email and have senator Murray READ it..thanks..
I had a conference call yesterday with Carly Rush and Greg Carter..And I learnt from them that senator Murray won't be chair and thus this team won't be working on my matter.. But there is still one month left…and take a first step..even THOUSAND miles journey BEGINS with first small step…
**I didn't know that senator Murray – chair woman and team transfer and she was running for reelection..I didn't pay any attention to this..otherwise I would have contacted earlier.**

**7.** Email to judge Saylor, Levy about objecting visiting magistrate judge and transfer to SDNY ;..as Trivedi awaiting reply from court..It is illegal to abuse me..all these judges should be arrested and put in JAIL ..

Chief Judge Saylor was copied into all the 20 plus emails sent to judicial conference since March 2022 – about magistrate judge Kelley's reappointment and entire case relatedcorruption and he didn't act..failure to ACT while I was being abused by judges sued in this lawsuit..Now to continue abuse me judge Saylor assigned the case to magistrate judge Karen Wolf. This is illegal. All judges should be in JAIL. My 10 emails to transfer case to SDNY was ignored..while judge Saylor assigned it to visiting judge. **I should have a fair court to litigate my claims..not this way. Please keep the case in SDNY..it is a LEGAL VENUE. Copy of this lawsuit will be delivered to US attorney's office at United states department of justice (government was earlier not served related to QUITAM though I had QUITAM claims – so this time government can recoup money lost in GE fraud )..so far judges have done is "obstruction of justice" which is criminal offense. I recently spoke with lawfirm partner who said I can still file QUITAM**

**FromMadhuri Trivedi <orangeinc@protonmail.com>**
**ToRichard Nici<Richard_Nici@mad.uscourts.gov>, Madhuri**
**Trivedi<orangeinc@protonmail.com>, Dennis_saylor@mad.uscourts.gov,**
**Jon_Levy@med.uscourts.gov, william.cohan@yahoo.com, Christina**
**McDonagh<Christina_McDonagh@med.uscourts.gov>, Charity_Pelletier@med.uscourts.gov,**
**Brendan_Garvin@mad.uscourts.gov, peter.baker@nytimes.com, Katie**
**Simon**<Katie_Simon@ao.uscourts.gov>, Sheryl_walter@ao.uscourts.gov,
David_Sellers@ao.uscourts.gov, David_Best@ao.uscourts.gov, Lee_Bennett@ao.uscourts.gov,
Michael_Henry@ao.uscourts.gov, Stephen_Vetter@ao.uscourts.gov, john.plender@ft.com
DateFriday, December 2nd, 2022 at 5:55 PMFriday, December 2nd, 2022 at 5:55 PM

# Re: Transfer to SDNY -1:22-cv-11746-PBS

recently written to congress who have an OPEN file about this fight - to IMPEACH my judges..congress can impeach judges...
Sent with [Proton Mail](#) secure email.
------- Original Message -------
On Friday, December 2nd, 2022 at 5:37 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
**Federal judges have life time appointment – so to reduce corruption and so they not worry about reappointment or career like my magistrate judge Kelley. Assigning this case to a visiting magistrate judge –is totally not acceptable where she address corruption, tort other claims against life time appointed – federal – district & appellate judges… this is mind boggling...**
**But I am also not staying at this first circuit or at Massachusetts courts**

Sent with [Proton Mail](#) secure email.

------- Original Message -------
On Friday, December 2nd, 2022 at 5:08 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

This is VERY last email I am sending to this court..to stop abusing me - transfer this case...If not then I have to act accordingly. And if I allow this court and judge(s) to abuse me - then It is me - who allowed... I didn't put judge Saylor as defendant. So now he is also doing this..and on top of adding pain - assigned highly corrupt case to a visiting magistrate judge..who came from a law firm and would look at her career – like Judge Kelley was looking at her reappointment..

Sent with Proton Mail secure email.

------- Original Message -------

On Thursday, December 1st, 2022 at 3:43 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

TYPO -corrected..

If Maine district judge appointed by president is presiding, because Massachusetts district judge can't because of conflict– and then assigning to magistrate judge from Massachusetts ??? – but because Massachusetts judge is not avialble - so assigning it to Maine magistrate judge ..is beyond explanation and understanding.

Sent with Proton Mail secure email.

------- Original Message -------

On Thursday, December 1st, 2022 at 12:08 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**Richard,**

**my email about transfer to SDNY and also not bringing up that from day 1 – in writing – I have conveyed  transfer out of first circuit was the only option. On top of that how come the Nov. 18 – order say that**

"Due to the unavailability of all of the magistrate judges in the District of Massachusetts, this Court certifies the need for assistance from a visiting magistrate judge, the Honorable Karen

Frink Wolf, of the United States District Court for the District of Maine, to perform judicial duties in the above-captioned case."….

If Maine district judge appointed by president is presiding, because Massachusetts judge can't – then assigning to magistrate judge from Massachusetts – is beyond explanation and understanding. Kindly reply…

Sent with Proton Mail secure email.

**OSHA director has left DOL..….corruption also has END...**

I spoke with one law firm's senior partner last week – she said that I still can file quitam lawsuit and I still have valid quitam claims even though I filed lawsuits… fraud is ONGOING and even GE attorneys have filed in court for rule 60 motion in June 2022 that Trivedi's ongoing cybersecurity fraud claims are part of analyzing quitam claims etc....it is filed under seal and only attorney can file it..if GE would not have spied on me and stole attorney Andrew Beato ( by reaching out to his partner to represent GE and that's why Andrew Beato left)..than he would have filed quitam and it would have been settled already…

------- Original Message -------

On Wednesday, November 30th, 2022 at 2:49 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

<mark>Chief judgeSaylor was copied in these 20 plus email as chief judge – and he didn't act..failure to ACT while I was being abused by judges sued in this lawsuit..he would have RECUSED himself from this case because of failure act that led to this lawsuit against judges..</mark>
<mark>This whole INSANITY AND ABUSE MUST END>>>please don't torture me..</mark>

------- Original Message -------

On Tuesday, November 29th, 2022 at 10:28 PM, Madhuri Trivedi <orangeinc@protonmail.com>

wrote:

If you read the CAPTION of the case –

**US district court of District of Massachusetts,** and judges Patti B Saris, M Page Kelley in their official & individual capacity..

So How come this case even stay under the **District of Massachusetts and anyone of this district be allowed to get involved...as well as first circuit..because it is clear cut not allowed. Caption of case also says -First circuit court of appeals, and judges…**

==Kindly transfer it asap..so this ABUSE , illegal and unhuman treatment of Madhuri ends.. and it is legal way to handle this case.==

Sent with Proton Mail secure email.

------- Original Message -------
On Tuesday, November 29th, 2022 at 9:52 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

Chief Judge Saylor was copied into all the 20 plus emails sent to judicial conference since March 2022 – about magistrate judge Kelley's reappointment and entire case related mess.. so he is no stranger.. Abuse by judges will stop only when the case is transferred back..it was transferred in hurry  by SDNY…read the order please..so to end ongoing abuse at this circuit – please transfer it.

Sent with Proton Mail secure email.

------- Original Message -------
On Tuesday, November 29th, 2022 at 10:18 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**Hello Hon Judge Saylor and Levy,**

**Since the first circuit court of appeals and the first circuit court of appeals judges are also defendants; how can this case stay at first circuit at district of Maine…because of conflict of interest, appearan**ce of bias and prejudice…federal statutes including but not limited to 28 U.S.C. § 455.. I had talked about this from the beginning with Richard at MAD.

First circuit executive Susan Goldberg and her office has told me that I ask Maine court for transfer to SDNY.  Kindly transfer this to SDNY that is under second circuit. That is ONLY way to get fair justice..

**In Hindi there is a POEM – and it has meaning**
**My murderer is my munsif (JUDGE)**
**Will he decide / RULE  in my favour?**
***************************************************************END of email

==**8.**  First circuit judges also didn't recuse nor transferred case to SDNY. Totally illegal.==

FromMadhuri Trivedi <orangeinc@protonmail.com>
ToWillaim_kayatta@ca1.uscourts.gov, david_barron@ca1.uscourts.gov,
bruce_selya@ca1.uscourts.gov, norman_stahl@ca1.uscourts.gov, Kermit_lipez@ca1.uscourts.gov,
jeffrey_howard@ca1.uscourts.gov, Sandra_lynch@ca1.uscourts.gov,
Gustavo_Gelpi@ca1.uscourts.gov, Susan Goldberg<Susan_Goldberg@ca1.uscourts.gov>,
Florence_Pagano@ca1.uscourts.gov
November 27th, 2022 at 11:56 AM

I spoke with one law firm's senior partner last week – she said that I still can file quitam lawsuit and I still have valid quitam claims even though I filed lawsuits… fraud is ONGOING and even GE attorneys have filed in court for rule 60 motion in June 2022 that Trivedi's ongoing cybersecurity fraud claims are part of analyzing quitam claims etc....it is filed under seal and only attorney can file it..if GE would not have spied on me and stole attorney Andrew Beato ( by reaching out to his partner to represent GE and that's why Andrew Beato left)..than he would have filed quitam and it would have been settled already…but GOD wanted me to go through this..whatever.

So I have VALID TORT, corruption claims as stated in lawsuit against first circuit and first circuit judges, lower court judges. This is SYSTEMIC CORRUPTION> All judges should be IMPEACHED and retire

Susan, District of Massachusetts clerks and administrative staff worked on assigning case to Maine judge..

Kindly file a paper in this case – informing judge Walker that first circuit and all first circuit judges – as they being defendants…because of conflict of interest, appearance of bias and prejudice…federal statutes including but not limited to 28 U.S.C.  § 455  - have recused themselves…then I can file my own paperwork..but first this needs to be happening..please don't avoid your legal responsibility – first circuit and first circuit judges cannot and must not retain any involvement whatsoever in this case..

Please reply and set up phone call..

Sent with Proton Mail secure email.

------- Original Message -------
On Wednesday, November 23rd, 2022 at 2:41 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Actual transfer of the entire case out of this c*rru*t first circuit...
Sent with Proton Mail secure email.

------- Original Message -------
On Wednesday, November 23rd, 2022 at 12:29 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Hi Susan, Florence,
As I spoke..since first circuit judges are defendants..this case..can't stay at first circuit…It needs to be transferred back to SDNY – which comes under second circuit….and first circuit judges MUST RECUSE themselves as circuit court judges from this case…so kindly do the paperwork…district of Massachusetts court has done that…and case has been assigned to district of Maine judge..Now move it out of first circuit.  ****END of email to first circuit

9. Department of justice defends FTCA claims against agency..
10. I had sued GE in district of Massachusetts earlier – because GE was HQ there (principal place of business – not because facts arising leading to this lawsuit happened in Boston).

I filed lawsuit in SDNY because -First, I have filed claim for securities fraud in this SDNY lawsuit... Count 1 for securities fraud against GE - Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

✓ Under Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5  - The Exchange Act's venue provision establishes nationwide service of process..

✓ Under 28 U.S.C. §1391, venue against a corporation will lie in any judicial district in which it is incorporated, licensed to do business or is doing business. [GE is incorporated in SDNY district, licensed to do business or is doing business.] thus VENUE SDNY because defendant GE … GE is considered at home for venue purpose ------------where it is incorporated.. GE is incorporated in NEWYORK. Here GE, GE healthcare defendants considered to reside at SDNY court venue purpose.

✓ As per 28 U.S. Code § 1391. Venue generally (b)Venue in General. A civil action may be brought in— (1) a judicial district in which any defendant resides, Since GE and GE healthcare are defendants and reside related to their offices, business, operation and jurisdiction of US district of  SDNY court as per 28 U.S. Code § 1391 (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced

✓ Continuous, Systematic Contacts for court is permissible when the defendant's  activity in the district is continuous and systematic-- Defendants' GE healthcare and GE board of directors are considered to have continuous and systematic contact with this district court

**11.** Even GE attorney wrote in order to show cause  – why this action should not be transferred to Wisconsin or Boston – at district of columbia lawsuit 1:19-cv-01479-TJK – ECF 15.(but I got scared – remembered FBI Special agent in charge's advice and voluntarily dismissed it) **GE attorney wrote**

"a plaintiff's choice of forum is entitled to at least some weight." Sec. & Exch. Comm'n v. Savoy Indus., Inc., 587 F.2d 1149, 1154 (D.C. Cir. 1978).

**The GE Defendants agree that this Court is an appropriate venue for other** reasons, including that Trivedi's First Amended Complaint attempts to allege violations of federal securities laws in connection with GE's public filings See 15 U.S.C. § 78aa (establishing venue for alleged violations of the Securities Exchange Act in "any such district . . . wherein the defendant is found or is an inhabitant or transacts business"); see also Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 35 (D.D.C. 2002) (**"[T]he presumption in favor of a plaintiff's choice of form is even stronger in cases arising under the federal securities laws. . . . [in light of the Exchange Act's] liberal venue provision.").**

The Exchange Act's venue provision establishes nationwide service of process and, because Trivedi's other assertions arise from the same set of operative facts concerning the GE Defendants, this gives the Court pendent jurisdiction over her remaining putative claims. E.g., Poling v. Farrah, 131 F. Supp. 2d 191, 194 (D.D.C. 2001).

Trivedi complaint SDNY page 59 - I was not concerned about GE's motion to dismiss when I voluntarily dismissed District of Columbia lawsuit (GE's and Judge Kelley's corrupt and silly argument ) – but because- when I met special agent in charge - David Johnson- - at FBI lobby in 2017- And I told him that I am going to Washington DC to meet USCIS / DHS top brass or someone in that capacity to discuss my lawsuit- he said to stay away from that PLACE. Ignoring what he said about staying away– I filed lawsuit in District of Columbia on May 2019- thinking that my claims

were for greater good of society- of  importance and judges will pay attention. But soon I realized that David Johnson's sentence to stay away from that political place –must have deep meaning –may be beyond I could literally see and/or comprehend ; and I was concerned ;so I dismissed it. That lawsuit was not dismissed on MERITS-

**12.** " I was employed full time at GE healthcare in Milwaukee, WI.  I worked as a consultant only for a short period of time in 2010 at GE, Boston…it was not a fulltime job( after that I was employed at GE healthcare in Wisconsin fulltime). So I was employed by GE Healthcare at Wisconsin . I was terminated in Wisconsin – arbitration also happened at hotel room in Wisconsin.

**13.** There is an entire exhibit - When Res Judicata doesn't apply… dismissing my claims through corruption – and bringing claims preclusion.is obstruction of justice.
**14.** Plaintiff Madhuri Trivedi("Plaintiff"), for causes of action against all defendants  in this Complaint for Damages  as follows:
**15.** GE put profits over people by misleading investors about the functioning of remote connectivity platform –preinstalled on 99% of medical devices GE made... But public companies and their executives must provide accurate and complete information when they make disclosures to investors. If not then they must be held accountable. And for not joining GE's fraud scheme, hardworking Madhuri was terminated – with pretext of "NOT a team player".. This whole egregiousness MUST end with Trivedi getting all the relief and making Trivedi whole again.

**1    The Significant Flaws in GEHC remote connectivity platform ,Cause the Product To Violate Multiple Federal Information Processing Standards ..the FIPS 200 Standard incorporates the SP 800-53 revision 3 recommendations into its mandatory requirements for federal contractors. As GE well knows, federal agencies, and any state agencies that rely on FIPS, cannot purchase systems that are not FIPS-compliant.**

**GE violations**
**Standard AC-3 ("Access Control Enforcement") requires that: "The information system enforces approved authorizations for logical access to the system." In violation of this standard, the InsiteEXC allowed** users to gain access to key system functions without authorization by failing to verify the user's "role" (i.e., authorized purpose for being in the system) before granting access to key control functions.

Standard IA-5 ("Authenticator Management") requires the system to take a variety of steps to ensure that passwords or other confirmation to submit commands to the system. IA-5 further requires that the system takes steps to prevent the disclosure of these authenticators to unauthorized users. In violation of this standard, the GE  allows unauthorized access to a system wide hardcoded password and also fails to require adequate authentication before allowing access to sensitive systemareas.

Standard SC-8 ("Transmission Integrity") requires that: "The information system protects the integrity of transmitted information."

12

Standard SC-9 ("Transmission Confidentiality") requires that: "The information system protects the confidentiality of transmitted information." In

Standard SI-10 ("Information Input Validation") requires that: "The information system checks the validity of information inputs." This rule is designed to ensure that the system properly processes data inputs as information and not as a command. In other words, the system should draw a line between its command functions and its data-entry functions

## 2   GE has committed wire fraud and mail fraud, also destruction of documents

Trivedi met with CTO Tim Kottak met in-person. Tim told Trivedi that such large amount of quality issues, 600 critical defects are unacceptable and illegal ..In next few days Tim Kottak arranged a meeting to address defects. After Tim's meeting GEHC deleted all 600 defects without fixing single one of them( changed status of defects in database from open to close).. Anticipatory Obstruction of Justice:  under the **Sarbanes-Oxley 18 U.S.C. 1519; which is a criminal statute..OSHA and DOL failed to look at that..and your GE attorneys should also be in JAIL..**

### 3   GE remote connectivity section, from sec.gov 10-K filing

**16.** BELOW SECTION till 2022 in SEC 10-K filing with securities & exchange commission; **---------------------------SEC.gov website; searching GE's public filing with SEC**

**Filing 10-K - For year 2007 ,2008,2009,2010,2011,2012,2013,2014,2015,2016, 2017 mentions INSITEEXC as follow**

> **Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A**
> **Healthcare SEGMENT - Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.**
> **OR**
> **Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.**

## 4   Trivedi's SEC.gov whistleblower and GE fraud complaint & SEC FOIA acknowledgement that investigation is still ACTIVE and ONGOING

**17.** Plaintiff Trivedi incorporates by reference SEC letter below, as though fully set forth herein, as well as facts currently unknown in this complaint

## 5   Despite WRITING to first circuit on June 20, 2022 that Trivedi's complaint related to GE healthcare's securities fraud filed with sec.gov – and SEC.gov FOIA confirmed that there is still an active and ongoing investigation…on August 8, 2022…First circuit denied petition for rehearing and petition for re hearing en banc.

My GE healthcare complaint about REMOTE CONNECTIVITY to sec.gov related investigation still active and ongoing

**PORTION OF SEC FOIA response**



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

Stop 9613                                                                    May 9, 2022

*Via electronic mail*
orangeinc@protonmail.com

Ms. Madhuri Trivedi

     Re:    Appeal, Freedom of Information Act Request No. ▮▮▮▮▮▮ designated on
            appeal as No. ▮▮▮▮▮▮▮PS

Dear Ms. Trivedi:

     This responds to your Freedom of Information Act (FOIA) appeal of the FOIA Officer's denial of your January 31, 2022 FOIA request for all documentation pertaining to any open or closed investigations or grievances filed against GE Healthcare and all records and logs from SEC audits, investigations, evaluations, assessments, No Action letters, and consumer complaints concerning GE Healthcare. During the processing of your request, you narrowed the date range of the requested documents to 2017 to the present.

     In considering your appeal, I have determined that the FOIA Office's decision to neither confirm nor deny the existence of complaints or grievances filed against GE Healthcare was inappropriate. It was also inappropriate for the FOIA Office to neither confirm nor deny the existence of any records or logs from SEC audits, evaluations, assessments, or No Action letters concerning GE Healthcare. I am, therefore, remanding this matter, in part, to the FOIA Office for further consideration and to search for these requested records. To the extent there are complaints submitted by you, the FOIA Office will be able to release them to you, subject to the applicability of FOIA exemptions to withhold third-party identifying information, if you are able to verify your identity. To the extent there are complaints about GE Healthcare submitted by others or other records or logs from SEC audits, evaluations or assessment of GE Healthcare, the FOIA Office will review these to determine whether they can be released to you.

     I have also determined that the FOIA Officer correctly asserted Exemption 7(A).[3] There is a two-step test to determine whether information is protected under Exemption 7(A), whether: (1) a law enforcement proceeding is pending or prospective, and (2) release of information about it could reasonably be expected to cause some articulable harm.[4] We have confirmed with Division of Enforcement staff that the investigation from which you seek records is still active and ongoing.[5]

Further, under Exemption 7(A), an agency may withhold records if they come within categories of records whose disclosure would generally interfere with enforcement proceedings.[6]

_____

[2] *Lewis v. Dep't of Justice*, 733 F. Supp. 2d 97, 112 (D.D.C. 2010); *see also Antonelli v. FBI*, 721 F.2d 615, 617 (7th Cir. 1983); *Burke v. Dep't of Justice*, No. 96-1739, 1999 WL 1032814, at *5 (D.D.C. Sep. 30, 1999).

[3] Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

[4] *See, e.g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (holding that the government must show how records "would interfere with a pending enforcement proceeding"); *Juarez v. Dep't of Justice*, 518 F.3d 54, 58-59 (D.C. Cir. 2008) (explaining that government must show that its ongoing law enforcement proceeding could be harmed by premature release of evidence or information).

[5] *See OKC Corp. v. Williams*, 489 F. Supp. 576 (N.D. Tex. 1980) (SEC is not required to disclose requested materials directly tied to a pending investigation); *Nat'l Pub. Radio v. Bell*, 431 F. Supp. 509, 514-15 (D.D.C. 1977) (Congress intended that Exemption 7(A) would apply prior to court proceedings); *Robbins Tire*, 437 U.S. at 232 (Congress intended that Exemption 7(A) would apply "whenever the Government's case in court ... would be harmed by the premature release of evidence or

We have confirmed with Division of Enforcement staff that the documents you seek come within categories whose disclosure could be reasonably expected to cause harm to the ongoing and active enforcement proceedings because, among other things, individuals and entities of interest in the underlying investigation could fabricate evidence, influence witness testimony and/or destroy or alter certain documents.[7] Public release of the records sought could also hinder the ongoing investigation by revealing cooperating witnesses and exposing the scope of the underlying investigation.[8]

I have also considered whether partial disclosure of the withheld information is possible, but have determined that it is not because such a disclosure would not be consistent with the purposes of Exemption 7(A).[9]

For the Commission
by delegated authority,

# SECURITIES AND EXCHANGE COMMISSION (SEC) ENFORCEMENT ACTION –COMPLAINT RELATED TO GE HEALTHCARE

## SEC File # ████████████ 1/GE Healthcare
From: ██████████████████ @*sec.gov*>
02/13/2019 (3 months ago)
**To**: Madhuri Trivedi

Dear Madhuri Trivedi:

 We are taking your complaint very seriously, and have referred it to the appropriate people within the SEC.

Please understand that the SEC generally conducts its investigations on a confidential basis and neither confirms nor denies the existence of an investigation unless we bring charges against someone involved.  We do this to protect the integrity and effectiveness of our investigative process and to preserve the privacy of the individuals and entities involved.  As a result, we will not be able to provide you with any future updates on the status of your complaint or of any pending SEC investigation.

I've attached a flyer that describes our policy as it will apply to your complaint.  Please contact me if you have other questions. Sincerely,


## 6    SEC.gov cybersecurity rulemaking & Trivedi's comment

EXHIBIT 3

https://www.sec.gov/comments/s7-09-22/s70922-20127840-289033.pdf

## 7    In securities fraud cases, courts have observed that inadequacy of internal [] controls "are probative of scienter [defendant's intent to deceive, manipulate, or defraud] Basic Inc. v. Levinson, 485 U.S. 224, 231–32 (1988)

. . . and can add to the strength of a case based on other allegations." Crowell v. Ionics, Inc., 343 F. Supp. 2d 1, 12, 20 (D. Mass. 2004) (citations omitted). Significant deficiencies in internal controls, at least when combined with other substantial issues, would constitute a circumstance likely to be "viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

## 8    GE public alert in 2018 Cybersecurity vulnerability

**18.** Frank Abagnale, the infamous impostor from Catch Me If You Can, said "Every breach, without exception, happens because somebody in that company did something they

weren't supposed to do or somebody failed to do something they were supposed to do—didn't fix its

tech, it didn't update patches, so the hackers got millions of pieces of data."

Plaintiff  Madhuri who didn't work for the government nor had union protections,

blowing whistle given that it could impact her career;  ===with all this consequences She boldly and

courageously STOOD up for doing what she believed was legal for her to do , not to join GE fraud

scheme, cyber security vulnerabilities , product defects, violations ---TOOK high risk road and

suffered backlash, retaliation.

**19.** Trivedi's position is corroborated by Scott Erven, an independent cybersecurity

Researcher. Finally GE and Department of homeland security(DHS) CISA.gov  issued ICERT

ALERT in February/March 2018 for cybersecurity vulnerabilities related to many types of GE

medical devices. (Case 1:19-cv-11862-PBS Document 51-3 Filed 10/10/19 Page 1 -16)

https://www.cisa.gov/uscert/ics/advisories/ICSMA-18-037-02

**AFFECTED PRODUCTS**

The following GE Healthcare products are affected:

- Optima 520, which are medical imaging systems, all versions,
- Optima 540, which are medical imaging systems, all versions,
- Optima 640, which are medical imaging systems, all versions,
- Optima 680, which are medical imaging systems, all versions,
- Discovery NM530c, which is a nuclear medical imaging system, versions prior to Version 1.003,
- Discovery NM750b, which is a dedicated breast imaging system, versions prior to Version 2.003,
- Discovery XR656 and Discovery XR656 Plus, which are digital radiographic imaging systems, all versions,
- Revolution XQ/i, which is a medical imaging system, all versions,
- THUNIS-800+, which is a stationary diagnostic radiographic and fluoroscopic X-ray system, all versions,
- Centricity PACS Server, which is used to support a medical imaging archiving and communication system, all versions,
- Centricity PACS RA1000, which is used for diagnostic image analysis, all versions,
- Centricity PACS-IW, which is an integrated web-based system for medical imaging, all versions including Version 3.7.3.7 and Version 3.7.3.8,
- Centricity DMS, which is a data management software, all versions,
- Discovery VH / Millenium VG, which are nuclear medical imaging systems, all versions,
- eNTEGRA 2.0/2.5 Processing and Review Workstation, which is a nuclear medicine workstation for displaying, archiving, and communicating medical imaging, all versions,
- CADstream, which is a medical imaging software, all versions,
- Optima MR360, which is a medical imaging system, all versions,
- GEMNet License server (EchoServer), all versions,
- Image Vault 3.x medical imaging software, all versions,
- Infinia / Infinia with Hawkeye 4 / 1, which are medical imaging systems, all versions,
- Millenium MG / Millenium NC / Millenium MyoSIGHT, which are nuclear medical imaging systems, all versions,
- Precision MP/i, which is a medical imaging system, all versions, and
- Xeleris 1.0 / 1.1 / 2.1 / 3.0 / 3.1, which are medical imaging workstations, all versions.

17

**IMPACT**

Successful exploitation of this vulnerability may allow a remote attacker to bypass authentication and gain access to the affected devices.

Impact to individual organizations depends on many factors that are unique to each organization. NCCIC recommends that organizations evaluate the impact of this vulnerability based on their operational environment and specific clinical usage.

**VULNERABILITY CHARACTERIZATION**

**VULNERABILITY OVERVIEW**

IMPROPER AUTHENTICATION CWE-287

For the affected products, a CVSS v3 base score of 9.8 has been calculated; the CVSS vector string is (AV:N/AC:L/PR:N/UI:N/S:U/C:H/I:H/A:H)

**VULNERABILITY DETAILS**

<mark>**EXPLOITABILITY**</mark>

<mark>This vulnerability could be exploited remotely.</mark>

**EXISTENCE OF EXPLOIT**

Vulnerability information about the affected products is publicly available.

**DIFFICULTY**

An attacker with a low skill level would be able to exploit this vulnerability.

**END of CIS.gov alert…………………………………………..**

**20.** Scott Erven reported these cyber vulnerabilities to GE in 2014.

**21.** Plaintiff Trivedi started bringing up severity and sense of urgency/liability/ to fix address/stop integrating and shipping medical devices with InsiteEXC to GE from 2011.

**22.** Insider threat mitigation didn't exist..as Bill Baribux –GE architect *testified (**ECF 51-3 Page 100 - 125** ) InsiteEXC failed all security tests on day ONE in year 2008*

*;so they moved it from public facing to inside GE network but GE has 300,000 employees and as*

*Scott Erven proved that InsiteEXC was vulnerable from hospital/outside GE network as well.*

**23.** From my phone conversation with Scott on Feb 22nd 2019 he was also wondering that how come GE not address it/(no fix, patch or recall) despite having lots of press around it for 4

years and many security researchers knew about it and wrote. After Scottt report in 2014 ;

vulnerabilities were unpatched even though it was wide open to be hacked and manipulated

**24.** (Somehow all of a sudden GE released a patch in Feb/March 2018.)This is just a tip of an icerburg –vulnerability Scott reported ;was few of 465 total critical defects.

**25.** GE knowingly conspired, deceived, fraudulently sold medical device products and services to customers, investors and government by not publicly disclosing defects, cybersecurity

vulnerabilities, also serious hackable –for years for sake of generating revenue, money while putting

public health and safety at risk and mercy/hands of hackers. GE made numerous press releases,

18

released you tube video, product brochures for surgery, ultrasound and all kind of medical devices with misleading, false information.

**26.** On January 03 and Jan 05,2019; J P Morgan wall street analyst covering GE Mr. Stephen Tusa  contacted GE ,CEO- Larry Culp and sent them my 2017 email to Mr. Flannery and board of directors - (ECF 51-3 Page 19 -24 ) along with my email. But GE didn't reply to Mr. Tusa nor to me ever.

**27.** On January 24, 2019 , Trivedi sent, this same, email to Larry Culp and Ge board of director , GE general counsel Mike Holston along with JPM analyst Steve Tusa. And as stated above, just one month after these emails, GE removed REMOTE CONNECTIVITY section from sec.gov 10-K filings.

**28.** On the day Trivedi was terminated by GE, GE architect Bill Barbiuax told Trivedi that "you did the RIGHT thing, but GE is BIG. Nothing will happen to GE.  Bill and GE sending a message" MIGHT is RIGHT" Also by sending a message to all current and future employee that if "you speak up against GE for any/all wrongdoing GE is DOING; We RETALIATE like what we Did to Madhuri Trivedi."  Then GE created "FILE TO FIRE" – generate paper trails to frame her to show her firing.( Few attorneys told Trivedi that "GE did was File to FIRE)

I was deprived from my rights to litigate these claims earlier along with several other reasons IMPORTANT REASON as due to withdrawal of my H1B; lawyers earlier DIDNT provide proper legal advice .

## 9   <mark>GE fraud related</mark>

**29.** Connectivity –lucrative money making service contracts ( which generates annual **recurring revenue for GEHC( in terms of upto $8 billion per year) instead of ONETIME sale of medical device) was better than critical defects-bugs-security vulnerabilities-design nonconformance –all of these put public health, safety, security and privacy of their data at risk and exposure. Poorly protected & patched , Internet Network connected with No proper and adequate detection & alerting, Vulnerabilities of devices are RECIPE of DISASTER in hospital, & health system .**
**When Plaintiff mentioned  that "why we are still shipping defective Insite2 product" ; David Mehring mentioned that during a group meeting that "Connectivity is better than Insite2 product" (means at least medical device will have connectivity).**

**30.** Whistleblower Trivedi had reason to believe that by telling authorities about a **cybersecurity problem, or a company's failure to disclose one, they would be reporting a**

**securities-law violation. Atc**

**31.** The company's "scheme to defraud its customers by knowingly selling defective and potentially dangerous remote control product on most of all their medical devices". GE fraudulently induced, to buy its defective product through both misstatements and material omissions. Each of us has the right to expect any medical equipment used for our medical care to be safe and effective, but we are all placed at great risk when medical equipment companies violate our trust and knowingly sell equipment that is defective," the evidence shows GE's callous disregard for the fact that these defective product(s)—which they consciously, aggressively sold after knowing existence defects—could mean life or death for unsuspecting patients, loss/theft of their protected health information(PHI), wrong diagnosis of life threatening disease or not having timely diagnosis due to cyber security vulnerabilities/defects. This case is not just about recouping money for taxpayers—**it is an indictment of a company that placed a higher premium on profits than public health and safety."- Public policy violation as well.**

### 9.1    "InsiteEXC" "Insite2"

**32.** At GE Healthcare, remote service and connectivity medical device "InsiteEXC" / "Insite2" was remotely communicating and controlling 100,000 medical devices. Medical devices were **ultrasound, MRI, surgery , Lunar, radiology servers** and more. (Most of the GE medical devices were SOLD with INSITE EXC PREINSTALLED; InsiteEXC was part of service contract offerings.

**33.** There were defects in terms of 465-2000 total bugs and 465 defects(ECF 51-3 Page 57–64 ) **in category of critical design non conformances in PRODUCTION (means already in USE at hospitals);** unresolved for several years and medical  Device  Insite Exc was launched in 2004.

# SPR Trends

| Count of id | | Classification | | |
|---|---|---|---|---|
| Year | State | Defect-Design NC | Improvement Opportunity | Grand Total |
| ⊟2004 | Assigned | 2 | 2 | 4 |
| | New | 4 | 4 | 8 |
| ⊟2005 | Assigned | 5 | 8 | 13 |
| | New | 6 | 4 | 10 |
| | Resolved | 1 | 1 | 2 |
| ⊟2006 | Assigned | 45 | 14 | 59 |
| | New | 32 | 9 | 41 |
| | Resolved | 27 | 7 | 34 |
| ⊟2007 | Assigned | 27 | 5 | 32 |
| | New | 258 | 52 | 310 |
| | Resolved | 18 | 8 | 26 |
| ⊟2008 | Assigned | 9 | 1 | 10 |
| | New | 6 | 1 | 7 |
| | Resolved | | 1 | 1 |
| ⊟2009 | Assigned | | 1 | 1 |
| | New | 5 | 2 | 7 |
| ⊟2010 | New | 12 | 2 | 14 |
| ⊟2011 | Assigned | 3 | | 3 |
| | New | 5 | 2 | 7 |
| Grand Total | | 465 | 124 | 589 |

**Changes in 3Q:**
- 15 SPRs closed
- Reviewed and "dispostioned with justification" 12 Unacceptable Risk sprs imported incorrectly from DDTS

5.2 release

**Open Issues:**
- 465 Design Non-Conformances
- 124 Improvement Opportunity
- Will be closed with justification when RSvP program retires Questra back-office

**34.** It lacked security features, audit trails, activity logging and security reporting.. (i) the design and technology of Insite EXC  were flawed as they were plagued with 465 critical defects unresolved for several years including  severely deteriorating performance  ---including but limited to that online engineers could not do remote connection to check, fix medical device( remote connection was a SELLING POINT for this product and all service contracts for insite EXC were signed based on remote connectivity; (ii) GE didn't publicly disclosed this issues; (iii) the Company lacked adequate management controls to report/fix/address these issues; and (iv) as a result of the foregoing, GE's public statements were materially false and/or misleading and/or lacked a reasonable basis. It is also fraudulent inducement.

**35.** GE performed sham quality tests and "willfully concealed the existence, frequency
**36.** and severity of the products' defects," with "grossly inadequate testing procedures". Tech leads/seniors were skipping quality steps, testing needed.
**37.** For knowingly selling defective, life threatening medical devices used by Department of Defense, Veterans Hospitals; medicare, Medicaid ; state government programs, other public government programs.

21

**38.** GE SEC filings 10-K state that "Our products are subject to regulation by numerous _government agencies, including the U.S. Food and Drug Administration (U.S. FDA), as well as various laws that apply to claims submitted under Medicare, Medicaid or other government funded healthcare programs._

**39.** For bringing this fraud and defects to management's attention and NOT willing to participate in their fraudulent scheme. Madhuri- I was harassed, received abusive treatment and

wrongly accused of insubordination . She was also ostracized and marginalized by management.

Since then I have been suffering terrorizing acts due to GE and their influence at all level

**40.** EXHIBIT ECF 51-3 Page 126 – 133;- for many GE devices, they are making claims that it has HIPPA /HITECH robust, security, audit trails, reporting which is false.

**41.** While doing public release—intentionally hide information from shareholders and SEC as per section 302 and 402  public release, inside and outside-company sales, marketing and

customer brochures with/for various medical devices such as surgery arm, cardio etc. Sales

information online for medical devices and public press release----and elsewhere where GE omitted

and misstated /failed to disclose any InsiteEXC issues/facts/truth --instead bolstered it ..

**42.** the company is required to disclose all "material information" –information that an investor would consider important in the evaluation of an investment decision.

**43.** Laws prohibit deceptive practices for use, benefits of company business, revenue, profit...Failing to disclose material information concerning its usage, operation, maintenance

not as advertised, sold and mentioned in contract agreement; with intentional inducement ..failed to

willfully disclose and actively concealed defects for upto years( last 5-7 years where hundreds of

critical defects). Fraudulent Concealment by GE.

**9.2    These INSITE EXC service contracts play a significant role in GE healthcare annual revenue**

**44.** GE was negligent, lacked sense of urgency to correct this conduct or to report it to stakeholders;

because doing so would have adversely affected the large profit from service contracts' revenue and

fraudulent inducement from sales of GE healthcare medical devices . This would have adversely

affected company image in eyes of investors, and many other repercussions; would have significantly

reduced or eliminated bonus compensation and other stock based compensation for GE executives to

ensure that its officers would earn compensation related to economic performance, that stock options and other stock-based compensation would be maximized …..and also GE would have impact on public private purchase of medical devices and service contracts. Further disclosure of this fraudulent defective medical devices/remote service would have significantly reduced GE's revenue and reputation . . ., and a wide range of related conduct all based on fraudulent data and the failure to report this material information of medical devices fraud and related cybersecurity RISK and VULNERABILITIES.

### 9.3    As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical device sends back to GE server–it was corrupted, inaccurate, faulty( this problem was consistent for more than six months to year)

**45.** Another example InsiteEXC sends health and diagnostics information from medical devices back to GE server. And on number of occasions; GE customers and online engineers contacted Trivedi directly as no one from front line support team was resolving their issues. As Trivedi got such a PANIC call where customer mentioned to TRIVEDI that MRI COIL temperature that medical device sends back to GE server–it was corrupted, inaccurate, faulty( this problem was consistent for more than six months to year) because that data is somewhere getting corrupted; 4 degree Celsius is showing 40 degree Celsius and vice versa. He was concerned as this could affect GE to address issues on MRI machine from SERVICE point of view. Trivedi mentioned this MRI customer call to her reporting manager David Mehring and instead of addressing this David started continually harassing Trivedi and asking her to improve relationship skills

### 9.4    Insite Exc application in production was vulnerable for online attacks and there were security issues.

**46.** Madhuri reported ( as frustrated internal customers and online engineers came to Madhuri , asking her help and opening support tickets) June 2012 that Insite Exc code needs to build with newer version with security update to address memory/online attack issue.. "Enable memory protection to help mitigate online attacks" which was required to be unchecked in settings in order to establish/install remote connectivity. (EXHIBIT 6 ). Interesting is that given GE has enormous amount of money and resources; as shown in EXHIBIT 6 it used out of date ACTIVE X controls.

**47.** At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using  VC++ 2005 or higher and it was June 2012—It shows GE used old, out of date, STONEAGED cybersecurity components.

### 9.5    Once Madhuri realized amount of defects and performance/maintenance issues

**48.** Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH

violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC for example (where Madhuri was doing testing). Given it is regulated environment and Madhuri was concerned to continue work on Insite Exc surgery integration in a reckless way manager/lead wanted. Madhuri informed managers  Dave Mehring/ Dave Saliis that she would consider working on another project and this is not proper. This happened in March 2012.

**49.** GE had consistently reported/misled public and customers that InsiteEXCquality, HIPPA, HITECH, robust cyber security (EXHIBT 17 and insite brochure, various medical device manuals) while intentionally concealing that InsiteEXC is NOT in compliance FDA's 21 CFR § 820.90 - Nonconforming product, product non conformances, defects and cybersecurity vulnerabilities, aging platform that was falling apart and Scott Erven's report.

### 10  Litany of GE's cybersecurity vulnerabilities;NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022 related to INSITE EXC

**50.** some of GE cybersecurity links---spanning all the way till 2022
No judge, no court would allow GE to get away from what they have done to ME/Madhuri--there is no defense for that..**Latest in June 2022 - why to arrest all at this moment**
1)    A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.
https://nvd.nist.gov/vuln/detail/CVE-2020-36548
2) A vulnerability was found in GE Voluson S8. It has been rated as critical. This issue affects the Service Browser which itroduces hard-coded credentials. Attacking locally is a requirement. It is recommended to change the configuration settings.
https://nvd.nist.gov/vuln/detail/CVE-2020-36547
**CVE Dictionary Entry:** CVE-2020-36548**NVD Published Date:**06/17/2022
**NVD Last Modified:**06/30/2022

**51.** Other relevant cisa.gov alerts
**Advisory (ICSMA-18-037-02) GE Medical Devices Vulnerability** Original release date: March 13, 2018
https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)** GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 |
https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01) GE CARESCAPE,** ApexPro, and Clinical Information Center systems release date: January 23, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01

4. **ICS Medical Advisory (ICSMA-20-343-01) GE Healthcare Imaging** and Ultrasound Products Original release date: December 08, 2020
https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)** GE Ultrasound products Original release date: February 18, 2020
https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02) GE Communicator release date: October 02, 20181
https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

1) https://www.zdnet.com/article/mdhex-vulnerabilities-impact-ge-patient-vital-signs-monitoring-devices/
2) https://www.zdnet.com/index.php/category/2381/index.php/article/account-with-default-creds-found-in-100-ge-medical-device-models/
3) https://www.forbes.com/sites/thomasbrewster/2015/07/10/vulnerable-breasts/#62a219406b5a
4) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/
5) https://www.modernhealthcare.com/cybersecurity/cybersecurity-flaw-discovered-100-ge-medical-devices
6) https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02
7) https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01
8) https://www.healthcareitnews.com/news/cisa-says-security-vulnerability-found-ge-imaging-and-ultrasound-devices
9) https://techcrunch.com/2020/12/08/researchers-say-hardcoded-passwords-in-ge-medical-imaging-devices-could-put-patient-data-at-risk
10) https://www.cyberscoop.com/ge-healthcare-dhs-alert/
11) https://www.medtechintelligence.com/news_article/fda-announces-cybersecurity-vulnerabilities-in-certain-ge-healthcare-systems/
12) https://healthitsecurity.com/news/feds-alert-to-critical-vulnerabilities-in-ge-patient-monitoring-products
13) https://khn.org/morning-breakout/security-flaws-found-in-ge-medical-devices/
14) https://www.medtechdive.com/news/fda-cyber-vulnerabilities-PTC-Axeda-medical-device-software-/620075/
15) https://threatpost.com/critical-unpatched-bug-ge-radiological-devices/162012/
16) https://www.techradar.com/news/ge-healthcare-patient-monitors-are-hit-by-potentially-easy-to-exploit-security-flaw
17) https://www.csoonline.com/article/3600164/publicly-known-support-credentials-expose-ge-healthcare-imaging-devices-to-hacking.html

25

18) https://cybersecuritymarket.com/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/
19) https://control.com/news/cisa-discovers-vulnerabilities-in-ge-healthcare-radiological-devices/
20) https://www.biospace.com/article/releases/fda-informs-health-care-providers-facilities-and-patients-about-potential-cybersecurity-vulnerabilities-for-certain-ge-healthcare-clinical-information-central-stations-and-telemetry-servers/
21) https://www.zdnet.com/article/vulnerabilities-found-in-ge-anesthesia-machines/

## 11  SDNY class actions against GE

### 11.1  Sjunde AP-Fonden, et al., v. General Electric Company, et al. -  1:17-cv-08457-JMF  - -Hon. Jesse M. Furman denied GE's MTD; holding GE CFO's culpable participant in the alleged fraud by GE

**52.** Judge Furman ruled January 2021 that-- ECF 206; GE motion to dismiss denied Bornstein [GE CFO] was, in some meaningful sense, a culpable participant in the alleged fraud by GE.finds that Plaintiffs' allegations with respect to Bornstein suffice even under the heightened                 standard. Indeed, the Court has already found that Plaintiffs adequately plead Bornstein's scienter as to both remaining factoring primary violations..("Allegations sufficient to plead scienter for the                 purposes of primary liability pursuant to Section 10(b)'necessarily satisfy' the culpable participation pleading requirement for Section 20(a) claims."  Therefore, Defendants' motion to dismiss these surviving Section 20(a) claims against Bornstein is denied."
************************************************

**53.** So in Trivedi's case – culpable participation element is present, for claims against DEFENDANTS. And during trial, discovery – more light will come on these fraud and corruption.

### 11.2  In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York

**54.** On February 21, 2022 GE reached a settlement for this class action lawsuit. Atleast one judge was doing her job.
Judge Katherine Polk Failla's order denying GE's motion to dismiss –dated August 4, 2021. **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and** thus ARTICLE III standing...  [This applies to Trivedi's FTCA claims against  USCOURTS defendants from 2016 to 2022- defendants knew that Trivedi was/is "at risk" of ongoing as well as future injury regarding her career, her own safety and life as a whistleblower, as well as immigration, life of her family member being at risk]

**55.** GE's stone-aged style approach and attention to cybersecurity --this was what they did in my case... As suffering retaliation for raising serious cybersecurity issues has put me into bad situation by GE.Because even these device and patient data being "at risk" and "future injury" ; given that most of vulnerabilities were 9.8 out of 10 –highly exploitable.

### 11.3  In my Trivedi v. GE lawsuit - I have mentioned about above SEC settlement in ECF 150 and ECF 150-1 . ECF 150 page 4 When GE got wells notice from SEC in October 2020 –
https://www.reuters.com/article/us-ge-sec-idUSKBN28J345

"The inquiry, which initially focused on long-term service agreements for maintenance of power plants, jet engines and other industrial equipment, was later expanded to include GE's review of its insurance business. "

 Remember my claims also states that GE's on going fraud for medical devices and related service contracts – and I Madhuri worked as a lead engineer for GEHC's global service division -where GE not having division wise financial disclosure and service contracts' cost and future cost for service /parts can be adjusted –for overall cost—aka manipulated in finance for earning, cash flows, showing future revenue- cost figures –these are considered as variables which is used by GE tweak/manipulate for their own advantage given GE's opaque finances.

**12  Trivedi -I READ =James Grant's book chapter – "hotlight on GE"..way back in 90s he saw things -- for 58 years GE's credit rating was not changed....that's the point**

### GENERAL ELECTRIC CO.—TIME MARCHES ON
### SELECTED HISTORICAL DATA AND RATIOS
### (IN $ MILLIONS, EXCEPT PER-SHARE DATA)

|  | 1932 | 1957 | 1974 | 1982 | 1989 |
|---|---|---|---|---|---|
| Net sales | $147.2 | $4,335.7 | $13,598.9 | $26,500.0 | $54,574.0 |
| EBIT[1] | 14.7 | 521.7 | 1,180.8 | 3,097.0 | 12,210.0 |
| Net income | 14.4 | 247.9 | 608.1 | 1,817.0 | 3,939.0 |
| Earnings per share | $0.41 | $2.85 | $3.34 | $8.00 | $4.36 |
| Total assets | 405.1 | 2,346.6 | 9,369.1 | 21,615.0 | 128,344.0 |
| Long-term debt | 2.0[2] | 300.0[3] | 1,195.2[4] | 3,099.0 | 16,110.0 |
| Total equity | 345.4 | 1,216.6 | 3,704.3 | 10,198.0 | 20,890.0 |
| EBIT margin | 10.0% | 12.0% | 8.7% | 11.7% | 22.4% |
| Net income margin | 9.8% | 5.7% | 4.5% | 6.9% | 7.2% |
| Long-term debt/assets | 0.5% | 12.8% | 12.8% | 14.3% | 12.6% |
| Long-term debt/equity | 0.6% | 24.7% | 32.3% | 30.4% | 77.1% |
| Current ratio | 2.3x | 1.9x | 1.3x | 1.3x | 0.8x[5] |
| EBIT/interest | 46.8x | 46.5x | 6.6x | 9.0x | 1.9x |
| Return on assets | 3.6% | 10.6% | 6.5% | 8.4% | 3.1% |
| Return on equity | 4.2% | 20.4% | 16.4% | 17.8% | 18.9% |
| Net income of GECC as % of parent | — | 3.2% | 7.0% | 11.3% | 20.7%[6] |

[1] Earnings before income and taxes; includes all income sources.
[2] GE gold debenture 3½s, due 1942; Aaa-rated, 40-year-bonds.
[3] GE debenture 3½s, due 1976; Aaa-rated, 20-year bonds.
[4] Five issues, including $300 million of GE 8½s, due 2004; Aaa-rated, 30-year bonds.
[5] Current assets include only those time sales, loans and rental receivables of GEFS that mature in 1990. Including all GEFS receivables, current ratio is 1.2x.
[6] No doubt, GECC has grown in relative importance over the past several years, but the parent company no longer separately discloses its net income.

source: James Grant. Minding Mr. Market. Times Books. Random House. 1993. page 361.

27

GE has been debt financed for decades...done financial engineering, fraud and manipulation... Under Jack Welch, GE Capital delivered double-digit earnings gains, year in & out, regardless of what was going on. To his credit, Jeff Immelt reined in free-wheeling culture at **GE..that's the problem….and that's the contributing factor for Trivedi's** termination….GE's fraudulent mindset…and that applies to medical device fraud GE healthcare was doing- and Trivedi didn't join GE's fraud scheme.

## 13  Background & GE

**56.** Plaintiff has bachelor in electronics and telecommunication engineering with distinction grade from India, Post graduate diploma in business administration(PGDBA) from India, Masters in Computer Information science from Cleveland state university, Ohio; and has done graduate certificate course( equivalent to Masters level but not a degree) in Systems design and management from Massachusetts institute of technology, Cambridge, MA. She has prior to joining GE worked in multiple domains including in enterprise solutions, biotech, enterprise security and healthcare IT;for big corporation as well as do or die entrepreneurial startups.

**57.** Plaintiff joined GE healthcare in Waukesha, Wisconsin in 2011 as a Lead engineer- fulltime GE employee.

.prior to that I worked for GE intelligent platforms in 2010..GE interviewed me in 2009 and next day offered job on phone as a fulltime GE employee. After few weeks VP of engineering Reema Poddar mentioned that as GE has taken from government TARP(Troubled asset relief program) money; hence GE can't do my H1-hence would bring me on board first as a consultant-employed through Adecco-noramtec consulting(have them to H1B) and then after 2-3 months will do H1…I believed in their scheme and agreed. (At GE Intelligent Platforms in Boston; as part of a two engineer team reporting to Chief Technology Officer of GE Transportation Steve Edner, Plaintiff did Application development /support for remotely monitoring GE assets. This solution generated multi million in revenues for GE Intelligent platforms).

At GE healthcare in Waukesha, WI –as I alleged in my complaint
"Insite exc" was falling apart--with 465 critical defects –and GE retaliated, framed me for not joining GE healthcare's fraudulent scheme for SIGNING OFF on Test plans that Insite EXC is working fine (so GE healthcare can release it for SURGEY MOBILE ARM OEC 9900) and other medical devices—I declined and I wrote to managers that GE is not following quality procedures, it has security defects, vulnerabilities , GE's massive mountain size EGO was hurt plus I was an IMMIGRANT WOMAN WHOSE IMMIGRATION WAS IN GE's HAND –exposing GE and it's managers about such wrongdoing –Despite such a desperate cry, calls, emails and including but not

limited to threats by GE's internal divisions to SUE GE- as GE was not fulfilling it's service contract obligation –GE signs with hospital and doctors when they buy GE healthcare medical devices---I am aware of email sent to general manager David Elario  by GE division ( for example X Ray, Surgery divisions) that they would Sue Global service Technology –GST( I worked at GST division who provided SERVICE technology and support to GE medical devices)..

GE healthcare and it's management were NOT at ALL SERIOUS to replace Insite EXC (replacing it totally with new remote service and control platform..)—…NORE GE healthcare was working on either fixing Insite EXC critical defects, cybersecurity vulnerabilities, performance, quality and more. ZERO sense of doing it Immediately or as soon as POSSIBLE>

INSTEAD GE under new initiative by Jeff Immelt was working on developing JUST ONE PLATFORM THAT WORKS FOR ALL GE DIVISIONS- at Waukesha, WI – we were working with GE intelligent platforms in FOXBOURO, Boston< MA , GE Energy, GE digital in Detroit, GE transportation in Pennsylvania and bunch of other division who on daily basis wrote bad, GE internal divisions' infighting, insulting email to each other, fought daily –diverted blame on each other—and wanted to get all or as much as financial funding from GE corporate and also CREDIT, recognition, politics and appreciation etc for developing new platforms –so wanted to show other GE division as stupid and incompetent…and again it was same Immigration attorney handling my immigration case in Waukesha < WI Jenny Schrager (**ECF** 51-3 Page 138)  , (**ECF** 51-3 Page 150 ) ---ONE REMOTE SERVICE PLATFORM that FITS all GE assets such as GE energy,GE intelligent platforms, GE transportation, GE healthcare medical devices—was not going anywhere for more than two years PRIOR to me joining GE Healthcare and also while I was at GE –it was number of issues and was stagnant --- Reema Poddar and others from GE Boston were driving this one REMOTE platform FITS all GE assets ---new initiative --SO GE healthcare thought that along the line after unknown number of years , at one point of time –hopefully we will replace "Insite EXC" when this new BIG platform that works for all GE ASSETS will be developed.

During Trivedi's First project insite exc integration; Trivedi uncovered cyber securities issues, quality issues and defects , fraud ---GE manager moved second half my duration at GEHC but at that time –customers, support group would still call me/email for insite exc support as no one was helping them and they couldn't do their job –including MRI—I mentioned that to manger in one on one and manager continued retaliation…second project had lots of infighting , disfunction and chaos…GE was failing and when lead systems designer were not able to do technical job they diverted his blame to me..sachin kendale -naresh wrote code that took 20-40 minute on screen to load 1000 devices---second project I was assigned to FIX BUGS/defects –there were more than 250-300 open defects and design issues on second project that Trivedi was assigned to test and FIX…While I was doing testing again it opened can of worms for which technically incompetent GEHC Greg Stratton, Nate Davis, Sachin Kendale, Naresh , some staff in India was responsible along with other GE energy, GE transportation, GE digital..Gregg statton was LSD and he was responsible for replacing Insite where he couldn't---In code review also I found out was he was doing wrong so he was exposed.(these emails are part of arbitration record.).he would fight daily on phone with other GE managers, write abusive emails—Trivedi was sitting right next to him..when sitting next to him due his such hostile behavior ; Trivedi was disturbed..and right round the time of sikh temple shooting in MILWAUKEE ( Gregg Statton had valid gun license and he routinely when for HUNTING DEERS etc); as (mentioned in Mediations statement and letter by immigration attorney to CEO GE) that Gregg Stratton pointed fingers to me "shaping gun" ---**due to all this I moved my**

**desk temporarily away from Greg as it was unproductive, hospital and imtimidatin..GE manger** made big issue of how it will look and soon put me on PIP…at this same time I was asking senior management that my manager is retaliation because of my first project insite exc related , raising security concerns ..and I should be given a another reporting manager and management kept denying while aggressively integrating and releasing insite exc..

GEHC revenue is $17 billion total..out of that $5 billion is from services division where I was a lead engineer. Out of that $7.3 billion revenue is in USA… so USA revenue is 41% of GE healthcare's total revenue.**No wonder – why people tried to cover up…**

### 13.1  High Stakes for Billions of Devices
**Below event I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google( to give idea about vlab) Security: I volunteered at vlab. Since GE harassed me and messed up with me because GE was** recklessly putting medical devices on internet. And recklessly putting technically incompetent people on -IOT platform

**58.** My father died on Feb 22, 2017(India time) & Feb 21(USA time) in India time/ in forest when he went for pilgrimage. He was traveling in a BUS not by foot though..

**59.** On Feb 21 2017 in USA, I had organized in a team IOT security high stake of **billions of devices event as shown below at 6 pm PST (event was fully packed.).**

**60.** As GE and Jeff Immelt connecting all kind of GE assets on internet ;VLAB group **wanted to raise this concern before it is too late as hearing my STORY..So we did this event..**

**61.** At the networking session an hour prior to this event –there was a GE digital manager from San Ramon who was attending this event(she bought ticket).  I was standing in a group and she came and had little chit chat with group.**------------------------------------**

**As event started my family called me from India and informed me that my father has died--I didn't put my phone on silence and it was fully packed DARK auditorium...panels were introduced..and as phone was ringing--someone from back raw(it was a guy's voice ) said that "he is gone".....these sentence makes me so restless. so someone knew that my father is dying and is dead in india while event for exposing GE was ongoing...I left the event , talked with my family on phone and went to home crying ........so this same date of IoT event and my father's death is mind boggling.**

## IoT Security: High Stakes for Billions of Devices
**February 21, 2017 6:00 p.m. to 8:30 p.m.** https://vlab.org/events/iot-security-high-stake-billions-devices/

The speed of Internet of Things (IoT) adoption is creating opportunities for startups developing IoT security solutions. Many industries such as healthcare, energy, automotive, and consumer products are being transformed using insights gained from the real-time data that IoT provides. As new online devices continue to be added at exponential rates, the frequency of sophisticated cyber attacks targeting consumers, businesses, and public services is also increasing.

**62.** After my father's death I kind of lost healthcare mojo...and my startup was in healthcare...
**63.** After my father's death I stopped volunteering at vlab as it gave me bad memory--

### 13.2  GE declined government arbitrator; who told that he will RULE in Plaintiff's FAVOUR if selected.

**64.** Peter Davis- a chief arbitrator/legal counsel at Wisconsin Employment relations commission. peterg.davis@wisconsin.gov .He mentioned to me on phone that if he is selected as an arbitrator for my case with GE, he will make sure to fix my immigration and he will rule in my favor. He told me this on Dec 2013 that I is willing to talk about this to anyone...GE attorney declined via email (**EXHIBIT 13**) to have him as arbitrator (GE argued that if Peter is selected then arbitration documents would have become public documents as he was a PUBLIC ARBITRATOR hence GE is declining).

### 13.3  In Arbitrator's award [1] (EXHIBIT B in ECF 28 - Case 1:19-cv-11862-PBS Document 74-2 )in district of Massachusetts lawsuit declaration by Bruce Falby ; on page 50 arbitrator Peter MEYERS mentioned that Trivedi hasn't given testimony herself about hostile environment ( based on this statement by corrupt arbitrator – entire award in favor of GE must be vacated)(and all judges also MUST be jailed for dismissing Trivedi's claims and taking judicial notice of arbitrator award)

The competent and credible evidence in the record does not support the Claimant's allegations that she was subjected to a hostile work environment.  There is no testimony, even from the Claimant herself, that establishes that the Claimant experienced any treatment that may be deemed hostile, discriminatory, harassing, or otherwise inappropriate because of her gender and/or national origin.  I find that the Claimant therefore has failed to establish the most fundamental element of her claim of a hostile work environment, and that claim therefore must be denied in its entirety.

### Deposition of Bill B and Madhuri ; where Madhuri testified about hostile work environment.  Arbitrator didn't entered Bill B deposition into arbitration hearing as EVIDENCE.  Arbitrator didn't entered Trivedi deposition into arbitration hearing as EVIDENCE

**65.** In Bill B deposition she alleged and examined Bill B that she suffered hostile work environment, gender based. Following excerpts  **EXHIBIT 10.4** AND Because despite Trivedi testified multiple times in her testimonies **EXHIBIT 10.5** about hostile environment she suffered including but not limited to even at hearing; same for being a woman, based on her gender ..

---

[1] NOTE:-When Trivedi left hearing due to arbitrator's hostility and all on second day ; GE and entered Ex Parte evidence into hearing..I never threw PIP at David Mehring; it is one of the many lies/perjuries GE and GE managers and GE attorney has done.
 I request that court ask/ORDER GE to submit TRUE review about who said that I was not getting along—and why and when ;specifics-their level of interaction with me ..instead of throwing that I was not getting along.

==**Because I have stated even several times in motions at MAD court; EXCERPTS OF DEPOSITIONS where I did testified that I was subject to hostile environment and gender based**==

I emailed GE CEO Jeff Immelt, GEHC CEO John Dineen(later John became CEO of GE), and

GEHC services CEO Mike Swinford ; that "Trivedi was subject to Hostile and unprofessional

treatment by co workers-manager"

**13.4   Below press release shows that GE CEO Larry Culp HIMSELF has admitted that GE has infighting problems and problem of its products' quality…**

**Press release:---**
https://www.cnbc.com/2019/05/22/reuters-america-update-2-ge-needs-to-end-infighting-fix-quality-tighten-management-ceo.html

UPDATE 2-GE needs to end infighting, fix quality, tighten management -CEO
Published Wed, May 22 2019 2:49 PM EDT Reuters    Alwyn Scott
(Recasts with comments about fixing GE's internal problems)
May 22 (Reuters) - General Electric Co, once seen as the epitome of corporate greatness, is trying to end infighting between its divisions, tighten up management and fix quality problems in its products, Chief Executive Officer Larry Culp said on Wednesday.

**Plaintiff  Trivedi alleges here in this complaint that these two factors play important role in GE getting rid of her while Madhuri was doing her job. There was no issue of my poor skills –the issue was my insite exc speaking up , GE's failure on second project to develop product within all GE divisions---Larry culp himself recently said that GE has to improve quality and stop infighting.**
            GE argument that Trivedi had POOR soft skills is not anything but PRETEXT and bullying that management did ; GE falsely generated some emails and selectively solicited inputs from few GEHC employees(these employees themselves where involved in Insite EXC fraud and were failing TECHNICALLY either to FIX INSITE EXC OR to DEVELOP new platform that would replace INSITE EXC) who would say Trivedi had soft skill issues ..GEHC management never solicited/took into consideration/account feedback from DAVE SALLIS, JOE PURCELL, BARRY, MOHEDDINE and several other managers, technical leads who were happy with Trivedi's technical as well as SOFT SKILLS.

**13.5   FDA FOIA response has communication from Quitam division attorney at DOJ San Francisco…Page 15 … FOIA gave only email DOJ attorney sent to FDA and NOT what FDA responded..US attorney said ONLY FDA investigates QUITAM and then they bring charges – attorney office do not have investigative resources nor they ever do that..**
EXHIBIT 10.3  FDA general counsel email , March 2015- "Typically we do not share any info involving an open investigation. Is this matter different?"
**From:** Smith, James – OCC james.smith@fda.hhs.gov**Sent:** Thursday, February 18, 2016 8:56 AM
**To:** Myers, Charles F

**Subject:** Question ref: complaints about a GE software interfacing program

Charles—

The US Attorneys Office in San Francisco contacted me yesterday asking about whether there had been an FDA investigation into allegations of safety issues with the GE Insite Exc, which appears to me, from the GE Healthcare website information, to be some sort of software which allows a GE tech to remote into ultrasound displays to help troubleshoot issues with those devices. The allegations come from someone who contacted the USAO and asked them to investigate GE Healthcare for health care fraud based on the purported problems with the GE Insite Exc.

### 14  Dipti Patel –-For packet analyzer test – had developed a test that would compare the test SOAP packet with a screenshot of standard SOAP packet – instead of actual SOAP packet. GEHC was using this to Release connectivity on 100s of 1000s of medical devices...and Dipti and entire GEHC team signed RELEASE papers – even after my emails..

From email –"For network monitor and packet capture test..Existing GoldSeal files are just screen capture and not a packet capture.This template will be compared against the SOAP packet tester generates….."

Also Dipti was earlier system designer - I just checked now Dipti  is

Sr Program Manager, Ultrasound Digital Ecosystems at GE Healthcare..

To allow this is also a CRIME.

### 15  PARTIES

**66.** Madhuri Trivedi is a plaintiff. Madhuri worked for GE as a lead engineer, fulltime at Waukesha, Wisconsin. I was terminated in Wisconsin – arbitration also happened at hotel room in Wisconsin.

**67.** And most of the issues arising – leading to this lawsuit , securities fraud -happened in Wisconsin… also the alleged unlawful employment practice(s) and the events that give rise to my claims took place. Foxbourogh, MA

**68.** Prior to that she worked at GE intelligent platforms at Foxbourogh, MA – as a consultant ( not ful time) briefly.

**69.** Defendant General Electric is a corporation incorporated in New York, currently Headquartered in Boston and during Plaintiff's employment was HQ in Connecticut.

**70.** Larry Culp, CEO of GE, GE board of directors, GE general counsel Mike Holston

**71.** former CEO Jeff Immelt, John Flannery

**72.** Mike Swinford, former CEO of GEHC services knew this matter even before I was illegally terminated.. Mr. Swinford and GEHC CTO Mike Harsh came to my arbitration hearing.

**73.** GE boards of directors.. Robert did inquiry and GE stonewalled ,didn't do anything an on top of that GE complained to arbitrator that I have contracted GE board of director and arbitrator became more hostile after learning this. ---------- Forwarded message ---------**- EXHIBIT 10.12**

**74.** I contacted Susan Hockfield via emails that I sent her to her MIT email address and

her assistant acknowledged  she read and after responded mentioning that "<u>she is too high as a director to get involved in an individual matter of mine</u> "; Even though I was MIT alum. But she chose not to take any action and didn't fulfill her fiduciary and other duty obligation.

**75.** Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP and her lawfirm.
**76.** Carl conrath was a senior engineering manager, involved through out from hiring to firing me, hence he is party in this case

**77.** Foley & manfield was a lawfirm hired and paid to send GE letter, look into quitam and provide legal advice including immigration for my matter, they are party in this case.

**78.** John Dineen –Former CEO of GE and Former CEO of GEHC,Mike Hash, former CTO of GEHC, David Mehring, engineering manager GEHC, Dave was Trivedi's reporting manager.Nicole Boyle, Program manager GEHC, Adam Holton, senior HR manager GEHC, Mike Truman,  HR manager GEHC, Ayesha Khan, HR manager GEHC.Tim Kottak, CTO of GEHC services, David Elario, General Manager of GEHC services ,Robert J. Swieringa, , Former Board of director of GE, Susan Hockfield, Former director of GE, Diane Smith, HR manager GEHC,Dipti Patel, Project lead, GEHC, Nate Davis, Architect, GEHC, Greg Stratton, Lead system Integrator ,GEHC, Bill Barbiuax, architect, GEHC, Ward Bowman, Engineering manager, GE intelligent platforms, for GE Boston and Reema Poddar, Senior leader of GE intelligent platforms-GE Boston.

**79.** FTCA Claims against DOL - US federal agency as an entity.
**80.** As per 29 CFR § 15.101(b), Trivedi is the injured person. And as per 29 CFR § 15.101(e) claims involve acts or omissions of DOL employees.

**U.S. Department of Labor**   Office of the Solicitor
200 Constitution Ave., N.W.
N-2625
Washington, DC 20210



August 22, 2022

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Madhuri Trivedi
607 Boylston Street, PMB 334 – Lower Level
Boston, MA 02114

Re:     FTCA Claim against Department of Labor

Dear Ms. Trivedi:

This office has carefully reviewed your administrative claim filed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*  This review discloses no liability on the part of the United States. Your claim is therefore denied.

You are advised of your right to file suit in an appropriate United States District Court within six months of the date of the mailing of this letter if you are dissatisfied with the results of this determination.

Sincerely,

*Sarah G. Naji*

SARAH G. NAJI
Counsel for Claims and Compensation

**81.** Trivedi suffered / has been suffering injuries due to wrongful acts of DOL employees.
**82.** BIVENS claims - against -Individual federal employees – DOL Secretary Martin **Walsh, chief of staff Daniel Koh,** in their official & individual capacity ,**OSHA and – Anthony** Rosa, Frederick James, Doug Parker, Tamara Simpson, Robert Kuss, Willaim Donovan, Denise Keller, Nathan Terwilliger, William Trepanier in their official & individual capacity --- Office of the Administrative Law Judges And ALJ – Timothy McGrath in official & individual capacity. Solicitor office SOL –and FTCA employee  Stefan Babich , Sarah Naji in their  official & individual capacity,

Administrative Review board, and TAMMY L. PUST, SUSAN HARTHILL, THOMAS H. BURRELL at DOL in their official & individual capacity. **ARB order issued in 2022 – states that "In any appeal of this Decision and Order that may be filed, we note that the appropriately named party is the Secretary, Department of Labor"  here Appeal means filing a lawsuit in a federal court– ( and there are 1000 FEDERAL court cases where DOl secretary and ARB , ALJ is sued.)** ARB No. 2022-0026, ALJ No. 2022-SOX-00005, **Trivedi** v. General Electric -Decision and Order (ARB Aug. 24, 2022)

https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/ARB/DECISIONS/ARB_DECISIONS/SOX/2022-0026-SOXP.pdf

https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/ARB/DECISIONS/ARB_DECISIONS/SOX/2022-0026A-SOXP.pdf

## 16  VENUE AND JURISDICTION

**83.** This court has jurisdiction over Securities Exchange Act of 1934,15 U.S.C. 78j(b), Rule 17 C.F.R. 240.10b-5.

**84.** Securities fraud and representing for SEC allows nationwide service and process . The court further reasoned that the judicial powers of the federal courts are not limited by boundaries of particular district.. Due Process requires only that a defendant in a federal question suit have minimum contacts with the United States, the sovereign that has created the court.

**Therefore, this Court can exercise personal jurisdiction over defendants because they have minimum contacts with the United States.[2]**

**85.** 28 U.S.C § 1391 venue is proper since GE has office(s), reside and have operations in this district. Thus, 28 U**.S.C. §1391 permits a corporation to be sued in any judicial district in**

---

[2] "See, e.g., Busch v. Buchman, Buchman O'Brien, Law Firm, 11 F.3d 1255, 1257-58 (5th Cir. 1994) (holding that a court can exercise personal jurisdiction over a defendant in a federal question case if the defendant has minimum contacts with the United States); United Liberty Life Ins. v. Ryan, 985 F.2d 1320, 1330 (6th Cir. 1993) (concluding that a federal district court can exercise personal jurisdiction over defendants when the federal statute in question provides for nationwide service of process); United Elect. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085-86 (1st Cir. 1992) (holding that in federal question cases sufficient contacts to justify the assertion of personal jurisdiction exist whenever the defendant is served within the sovereign of the United States);..  The national contacts analysis requires that defendants have national contacts with the United States, not the State of[]. Jim Walter, 651 F.2d at 256-57. Defendants are within the territorial boundaries of the United States, residing in the State []. Therefore, this Court can exercise personal jurisdiction over defendants because they have minimum contacts with the United States.   ")

**which it is licensed to do business** or is doing business in that such judicial district is regarded as the

residence of such corporation for venue purposes.

**86. As noted above, under 28 U.S.C. §1391, venue against a corporation will lie in any judicial district in which it is incorporated, licensed to do** business or is doing business.

**87.** Defendant General Electric and GE healthcare – are considered "corporation" and are "multistate" corporations. GE is incorporated in New York. GE and GE healthcare is licensed to do

business and are doing business in judicial district of district of NEW YORK; as such it is regarded as

the residence of GE and Ge healthcare for VENUE purposes.

**88. Complaint alleges violations of federal securities laws in connection with GE's public filings. As per 15 U.S.C.§ 78aa. The Exchange Act's venue provision establishes**

**nationwide service** of process and, this Court also has jurisdiction over her remaining claims as well.

**89.** The national contacts doctrine provides that in federal question cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of

process and defendants have sufficient contacts with united states, not the state in which the federal

court sits. *Federal trade commission v. Jim walter corp.,* 651 f.2d 251, 256-57

*90.* This court has jurisdiction pursuant to Sarbanes-Oxley Act, PUBLIC LAW 107–204. This court has jurisdiction over plaintiff's claims pursuant to Whistleblower

Retaliation under Dodd-Frank Act 15 U.S.C. §78u-6(h)(B)(i)-An individual who alleges discharge or

other discrimination in violation of subparagraph (A) may bring an action under this subsection in the

appropriate district court of the United States for the relief provided in subparagraph (C).

As per 15 U.S.C. §78u-6(h)(1)(B) (iii) ;within six  to ten years after the date on which the violation of

subparagraph (A) occurred. **GE can't force mandatory arbitration agreement under**

**this/whistleblower provisions.**

**91.** Plaintiff has bought these claims within statute of limitations  after the date on **which violations occurred/ she became aware. Therefore, this court has original Jurisdiction of this matter..as district of Massachusetts court and judges have corruptly ignored everything related to this and all Trivedi's claims.**
**92.** This court has jurisdiction over all defendants' (mentioned in this complaint)violation of common law.

**93.** Court has supplemental jurisdiction for claims arising out of related this matter.
**94.** This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to
28 U.S.C. § 1331 (federal question statue), 28 U.S.C. § 1343

**95.** This Court has subject matter jurisdiction over this action under the Class Action **Fairness Act, 28 U.S.C. § 1332(d)(2).** The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is in the hundreds of thousands, many of whom have different citizenship from Defendants, including the named Plaintiff here.

**96.** This case arises, in part, under federal statutes including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000C, et. seq. Therefore this court has original jurisdiction.  First circuit was presented with Right to Sue Notice issued by EEOC (**EXHIBIT 5**) Chicago in 2021; while appeal was PENDING at the first circuit. EEOC considered TRIVEDI' EEOC CHARGE timely..GE submitted 2 PAGE RESPONSE to Trivedi's EEOC charge (**EXHIBIT 6**)  – GE wrote that there was an arbitration I PAST..and ARBITRATOR awarded GE and dismissed Trivedi's claims. While in District court of Massachusetts – magistrate judge Kelley – dismissed Trivedi's VII claims as failure to timely exhaust administrative REMEDIES. First circuit judges ignored NEW EVIDENCE..

**97.** This court along with original jurisdiction for other claims ; here 9 USC § 10(a)(3) FAA allow for vacatur  for other arbitrator misconduct that leads to an unfair arbitration hearing, including (2) a refusal to hear evidence pertinent and material to the controversy, or (3) other misbehavior that substantially prejudices the "rights of any party."  **Trivedi also assert that she has good faith basis for challenging arbitral award.**

**98.** Jenny Schrager, Partner at Fragomen, Del Rey, Bernsen & Loewy, LLP considered GE business artners and GE defendants –located in New York; Hence VENUE is proper for jenny and Fragomen defendants.

**99.** VENUE can be agreed upon by CONSENT.

## 16.1   PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

**100.**        Bringing class action requires a big lawfirm….

. (1)Court can certify this as class action, (2)consider my mitigating circumstances…( NOTE that GE has in past STOLE my quitam attorney Andrew Beato, of Washington DC…by spying on me..and contacting Andrew's partner to represent GE – so Andrew left my case after two months) (3) or appoint an attorney if court wish  (only for class action PURPOSE – I am happy to fight my individual case as Pro Se-- because these claims involve public safety, health, data, greater good of society.**(4) class action claims are presented by Trivedi here and, as this complaint show that these claims HAVE MERIT, are valid, genuine – then Trivedi's INDIVIDUAL COMPLAINT aka INDIVIDUAL CLAIMS are also with MERITS, valid & genuine; and dismissal of those by corrupt judges and DOL employees  - was done under corruption** … **Thus Trivedi prevails in this NEW LAWSUIT, INDIVIDUAL level complaint filed with Southern district of New York court.**

**101.**        Plaintiff brings this action on behalf of herself and on behalf of all other persons **Similarly situated ("the Class").**

**Plaintiff proposes the following Class definition, subject to amendment as appropriate:**

### 1.1.1   The "GE stock Class"

Class members are GE  shareholders; who owned, held GE stock…All persons who suffered loss; directly or indirectly due to GE's securities related omissions, misleading statement – leaving material information being and keeping stakeholders in DARK,  as mentioned **in this lawsuit related to remote connectivity, InsiteEXC disclosures – starting from 2014 when Scott Erven's finding was reported to GE & was in media but GE choose not to FIX these vulnerabilities – NOR make public disclosure…, internet of things' ROSY fake picture by GE.(the "GE stock Class"). …GE has not denied securities fraud – nor Judge Kelley/ Saris--- but both GE/ judges combo have said that Trivedi should not have relied on GE's misleading statement if Trivedi KNEW GE was doing fraud. But what about similarly situation class members…they didn't know about GE's fraud.**

### 1.1.2   The "WHISTLEBLOWER CLASS"

All persons who suffered retaliation by GE, adverse action(s), including but not limited to leading to termination; as a result of engaging in protected activities aka whistleblower acitivites; starting from 2011 to PRESENT (the **"WHISTLEBLOWER CLASS").**

### 1.1.3   The "TITLE VII discrimination & Retaliation Class"

All persons who suffered discrimination by GE, because of their gender, race, nationality, marital status, pregnancy; were not promoted ,received equal pay as to their male counter parts because of these factors - starting from 2011 to PRESENT (the "equal opportunity & affirmative action Class").

All persons who suffered retaliation because they reported to GE above mentioned discriminatory treatment by GE; starting from 2011 to PRESENT (the**"TITLE VII discrimination & Retaliation Class").**

**102.**       EEOC has been given 50 plus class members information but EEOC has declined to open systemic enforcement action

**103.**        Also, January 2021 OFCCP (Department of labor agency)was also presented 50 plus GE employees information for group / class investigation. They also didn't investigate. Full corruption at the agency **EXHIBIT 10.7**

**104.**       GE and judges from district court of Massachusetts and first circuit are already **aware of the class action allegation related to this class – but have ignored it..and illegaly dismissed Trivedi's claims with prejudice – just as UNTIMELY.. but under class litigation – it would be under class period from 2011 to present.**

**105.**       Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

**106.**

**107.**       Foley & Mansfield lawfirm -defendants Through their business operations in this District, intentionally avail themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper. Foley & Mansfield law firm is doing business in this judicial district; as such it is regarded as the residence for VENUE purposes.

40

### 16.2 Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) ;29 CFR Subpart B - Claims Against the Government Under the Federal Tort Claims Act  29 CFR § 15.100 (a)

**108.**     SF -95 form has been filed with USCOURTS agency..and FTCA claims are pending

**109.**     SF-95 form has been filed with DOL. And on August 2022- DOL denied Trivedi's FTCA claims.

**110.**     Since I am bringing FTCA and BIVENS claims against first circuit court – second circuit court is appropriate venue and has jurisdiction. I have sent several emails to judicial conference, made up of circuit judges and district judges about these issues- starting from the time when magistrate judge Kelley was being reappointed.

**111.**     Claims against   agency DOL, Federal courts have jurisdiction over these claims if they are "actionable under §1346(b)." Meyer, 510 U. S., at 477.   FTCA, 28 U.S.C. §§ 2671-2680

**112.**     VENUE is proper for FTCA claims – administrative remedies have been exhausted under 28 U.S.C. § 2675 with DOL.see below claims FTCA against DOL …

*This office has carefully reviewed your administrative claim filed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq. This review discloses no liability on the part of the United States. Your claim is therefore denied.*

*You are advised of your right to file suit in an appropriate United States District Court within six months of the date of the mailing of this letter if you are dissatisfied with the results of this determination.*

**U.S. Department of Labor**     Office of the Solicitor
200 Constitution Ave., N.W.
N-2625
Washington, DC 20210



August 22, 2022

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Madhuri Trivedi
607 Boylston Street, PMB 334 – Lower Level
Boston, MA 02114

Re:     FTCA Claim against Department of Labor

Dear Ms. Trivedi:

This office has carefully reviewed your administrative claim filed pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* This review discloses no liability on the part of the United States. Your claim is therefore denied.

You are advised of your right to file suit in an appropriate United States District Court within six months of the date of the mailing of this letter if you are dissatisfied with the results of this determination.

Sincerely,

*Sarah G. Naji*

SARAH G. NAJI
Counsel for Claims and Compensation

### 16.3  BIVENS

District Court had jurisdiction under 28 U.S.C. § 1331 (a) for Trivedi's claim. *Bell* v.

*Hood*, 327 U.S. 678 (1946) Claims for violations of constitutional rights pursuant to **Bivens v. Six**

**Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 396-97 (1971)**;Supreme

Court ruled that an implied cause of action existed for AN INDIVIDUAL whose violation of

constitutional rights. So this court has jurisdiction for individual capacity claims against government

officials.

> **113.**   Trivedi's imply a cause of action under *Bivens*  EXISTS for claims against federal judges – because " Congress has NOT provided, 'an alternative remedial structure '"..
> **114.**   Additional jurisdiction [how MAD dismissed Foley claims by citing personal jurisdiction –

when It was subject to nationwide service. This is corruption…This paragraph also applies to all DEFENDANTS in this lawsuit by Trivedi, for jurisdiction purpose as well

### 16.4  FEDERAL JUDGE ANDREW HANEN IN BROWNSVILLE TEXAS

**115.**   Judge Hanen READ my ENTIRE GE and DHS/immigration file for a person of **extra ordinary ability...I contacted his chambers and they forwarded 6 pound of material to judge which he hi**mself read. He wrote to Department of justice attorney Rick Lara to do GRAND JURY CRIMINAL INVESTIGATION about GE and also concluded that I have met burden to prove that I am a person of extra ordinary ability..His finding have DICTA weight and importance as a FEDERAL **Judge...** Judge Hanen Read my GE file for whistleblower retaliation and arbitration and

found illegal , criminal conduct so he wrote to do GRAND JURY criminal investigation about GE, GE medical devices, my termination, fraud, violations and this whole things.

And I also sent him my Immigration petition EB1 file that I petitioned with USCIS –(United states citizenship and immigration services)..He separately concluded that I am a person of Extra ordinary ability and in national interest waiver as that's what the petition I filed with immigration after I was illegally( including but not limited to in retaliation and for not joining GE's fraud scheme) terminated by GE…I screwed up by not filing in Brownsville, TEXAS where federal Judge Hanen was Presiding and instead filed DHS lawsuit in California and got stuck with judge Donato. Judge Hanen would have ruled in my favor in my DHS case (he told me that when I told his chambers that my father had died ) and also in my favor in GE matter---he would have ordered grand jury criminal investigation though court order, and held GE responsible for all the things they did FBI agent in Brownsville Texas were judge wrote to do GRAND JURY investigation--

--- Shaun Owen FBI agent wanted to put GE as a criminal organization ---

      ---------- Forwarded message ----------

From: **Lara, Rick (USATXS)** <Rick.Lara@usdoj.gov>

Date: Thu, Oct 1, 2015 at 1:08 PM Subject: FW: Fwd:

To: "Owen, Shaun H. (SA) (FBI)" <Shaun.Owen@ic.fbi.gov>Cc: Madhuri Trivedi

Shaun, I am forwarding the e-mail as discussed in our phone conversation. Thanks,RL

## 17   TIMELINE & PROCEDURAL HISTORY

PLEASE see EXHIBIT 3 – for detailed DATE wise history & timeline

## 18  Savings provision under Mass. G.L.c. 260, § 32, would apply to an action duly commenced in another jurisdiction [3]

    Trivedi had these two state law claims filed TIMELY under statute of limitations(1)Wrongful termination in violation of public policy and (2) Breach of the implied covenant of good faith and fair dealing Breach of contract good faith, Breach of  fiduciary duty ;in district of Columbia lawsuit as .

**Well; …Massachusetts savings statute also apply..But judge Kelley , Saris and first circuit judges have corruptly denied those too.**

**See EXHIBIT 2 for details & legal arguments.**

## 19  EQUITABLE TOLLING

   **116.**      [E]quitable tolling is available when 1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant,"  GE

defendants including Fragomen and jenny –by withdrawing H1

---

[3] *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 18 (1st Cir. 2004). Under Massachusetts law, if an action is commenced within the limitations period and then dismissed for "any matter of form," the plaintiff is entitled to "commence a new action for the same cause within one year after the dismissal." Mass. Gen. Laws ch. 260, § 32;

B, conspiring to not being able to extend H1 B because GE and Jenny knowingly didn't file PEM 365 days before expiry..—Trivedi ended up studying laws, became law student and almost a legal professional from the day she was illegally fired till date(in the interim she worked on her startup "orangehealth" and fought DHS lawsuit….Pat Hale MIT professor mentioned and advised Trivedi that GE has lots of influence everywhere and GE would spend endless time money and resources fighting and dragging lawsuit..while if I sue DHS then government has not as much resources in terms of time, money, number of lawyers ; hence Pat hale said that I have better luck fighting DHS lawsuit..due to GE's influence and lobbying…plus I was so frustrated with CORRUPTION during arbitration and lawyers told me that perjuries that GE manager did during arbitration same they will/can do in a federal lawsuit---plus I had to do tons of research on my own to fight GE lawsuit to find out..The mistake I made was I should have GE as a codefendant in my DHS lawsuit but I didn't know at that time that one can have codefendants as government and corporation GE—no attorney told me so as well.

117.     Hence Plaintiff Trivedi incorporates by reference, as though fully set forth herein Equitable tolling as it applies to cause of actions brought here in this complaint.

## 20  CAUSES OF ACTION

118.     Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations stated **in the previous lawsuit(s) Trivedi v. General electric at district court and at first circuit**; also DHS lawsuit filings in district court, ninth circuit, supreme court, as though fully set forth herein, as well as facts currently unknown.

### 20.1   FIRST COUNT
### Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

### (GE Defendants, Fragomen Defendants As GE Business Partners)

119.     Plaintiff  realleges, reasserts,  incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.
120.     Class action claims for securities fraud – as Trivedi and similarly situated owner/ holders of GE stock.
121.     Following Cases that held misleading product and service information to be the basis for Rule 10b-5 liability and 17 C.F.R. § 229.303(a)(3)(ii);

1)*Warshaw v. Xoma*, 74 F.3d 955 (9th Cir. 1996); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989); and *In re Carter-Wallace Sec. Litig.*, 150 F.3d 153 (2d Cir. 1988).

2) Donald C. Langevoort & G. Mitu Gulati, *The Muddled Duty to Disclose Under Rule 10b-5*, 57 Vand. L.Rev. 1639, 1680 *(2004). It follows that Item 303 imposes the type of duty to speak that can, in appropriate cases, give rise to liability under Section 10(b).*

122.     Trivedi allege that as per SEC rule 10b(5) ;GE's failure to make adequate disclosures under

✓ **Cybersecurity risks, Regulation SK Item 503 (**17 CFR § 229.503-Prospectus summary and risk factors**),**

44

- ✓ **Management discussion of cybersecurity issues under Regulation S-K Item 303**
- ✓ Material weaknesses in internal controls under SOX Sections 302 and 404 addressing cybersecurity
- ✓ *GE failing to disclose cyber security, information security issues,465 critical defects could be committing shareholder fraud or violating SEC rules relating above items*
- ✓ InsiteEXC issues that materially affect the operations.

**may serve as basis for a Section 10(b) claim against GE.**

**123.**     GE as a public company required to address cybersecurity issues in its public filings pursuant to its requirement to disclose significant risks to its business. If in doing so GE(" company") omits known, actual threats, it may violate the securities laws. See *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011) –

**124.**     Had defendants performed their fiduciary duties, GE stock owner / holders would not have suffered over losses from conducted actions that ended up jeopardizing its employees' retirement benefits.GE violated the law by not informing and protecting GE 401(k) participants' best interests when GE did securities fraud related to Remote connectivity platform, Insite EXC, not disclosing to SEC.gov, investors –misleading, painting fake rosy picture, not disclosing liability, defects from 2013 onwards --Scott Erven reported in 2014 to GE. Later when Trivedi sent email to Larry Culp in 2019 – within one month GE removed section from sec.gov 10-k filing.

**125.**     company may violate SEC Rule 10b-5 when making public disclosures if it misstates or omits a material fact See 17 C.F.R. § 240.10b-5 – that's what GE did for it's 465 defects, shity InsiteEXC and cybersecurity issues.

**126.**     I didn't HIRE OR PAY David Nelson EXHIBIT 10.14 . He looked at my claims as a **FELLOW** MIT alumni like me. He was SEC regional director prior to that) reviewed my matter in 2013-2014 **but he didn't mention to me which whistleblower laws, which SEC laws, what needs to be done next ,**-only things he mentioned after reviewing along with his assitant was that I have valid, SEC claims against GE but his law firm represents defendants and also they change hundreds of thousands in retainer and lot more to represent me in SEC matter.

45

### 20.1.1 "An omission is actionable under the securities laws when the corporation is subject to a duty to disclose the omitted facts[4]

**127.** As required elements of those filings, Item 303 disclosures "give GE investors an opportunity to look at the registrant through the eyes of management by providing a historical and prospective analysis of the registrant's financial condition and results of operations. Due to the obligatory nature of these regulations, a reasonable investor would interpret the absence of an Item 303 disclosure to imply the nonexistence of "known trends or uncertainties

**128.** If GE would have disclosed InsiteEXC material information ; it would have given GE shareholders; TRUE STORY and STATE;about their connectivity. It would have made investors take into consideration HIGH STAKE and RISKS< LIABILITIES that connecting GE assets to internet brings.

### 20.1.2 Web content inadvertently be considered an offer to sell or solicitation to buy Securities; and GE engaged into Several Deceptive practices

**129.** The SEC has acknowledged the role of company websites and social media **platforms in communicating with investors (e.g., for purposes of Regulation Fair Disclosure, or "Regulation FD")**
>    *According to the SEC in the May 2000 Release (see Section II(B)(1)), a company may be subject to the antifraud provisions of the federal securities laws for any page on its website if the page "reasonably could be expected to reach investors or the securities markets regardless of the medium through which the statements are made, including the Internet."*

**130.** By continuously releasing even after Plaintiff raised and reported retaliation that "Insite is defective" – GE continued releasing "InsiteEXC". 18 U.S. Code § 1343. Fraud by wire, radio, or television -includes any writings, signs, signals, pictures or sounds transmitted by wire, radio or television in interstate or foreign commerce.(ECF 51-3 Page 126 -133) GE product).

**131.** GE on

- ✓ *it's website,*
- ✓ *on internet,*
- ✓ *youtube video ( https://www.youtube.com/watch?v=xUOw2A0t9vE ) which was uploaded to youtube on January 30,2013 touting instant connection, data protection, proactive monitoring, remote maintenance, system security,maximized up-time while omitted defects;*

---

[4] " In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir.1993); see Glazer v. Formica Corp., 964 F.2d 149, 157 (2d Cir.1992). Such a duty may arise when "statute or regulation requiring disclosure," or **a corporate statement that would otherwise be "inaccurate, incomplete, or misleading.**" Glazer, 964 F.2d at 157 (quoting Backman v. Polaroid Corp., 910 F.2d 10, 12 (1st Cir.1990) (en banc)); accord Oran v. Stafford, 226 F.3d 275, 285-86 (3d Cir.2000).

**GE Healthcare**
Published on Jan 30, 2013

A service platform engineered for a fast, efficient response.

GE has developed a unique technology which allows its service engineers to look into the heart of any equipment linked by a broadband connection. From a distance they can examine the error log, check functioning of individual parts, and diagnose what actions are needed to fix the problem.

- ✓ *sales, marketing and while using product in hospitals product manuals concealed InsiteEXC defect, cybersecurity vulnerabilities- **hence plaintiff allege that GE committed fraud.***
- ✓ Sales information online for medical devices and public press release----and elsewhere where GE ommitted and misstated /failed to disclose any Insite issues/facts/truth --instead bolstered it .youtube video *( **ECF** 51-3 Page 126 -133).*

**132.**     Plaintiff states that, to the best of her knowledge, "this false data related Insite2 has been reported "as accurate" by GE in wire communications such as the Internet. Hence it is wire fraud.

**133.**     A company should assume that all or substantially all of its web content may expose it to liability under the securities laws. Material misstatements or omissions in web content may be violations of Rule 10b-5 under the Securities Exchange Act of 1934. In addition, as the definition of the term "offer" in Section 2(a) of the Securities Act of 1933 is interpreted broadly, many web pages, including web pages intended to serve market or promotional functions, might be considered to contain an offer under the Securities Act.

### 20.1.3  GE's omission of facts pertaining to an actual, known risk could violate the requirements of Regulation S-K Item 303 and Rule 10b-5.

**134.**     Thus, reporting an information security issue that contradicts or undermines the company's management discussion and analysis of cybersecurity could be protected under SOX.

**135.**     It also seems GE's failure to state on its Form DEF 14A filings anything related to InsiteEXC may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading." *Id.* § 240.14a-9(a). Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicates SEC rules **violations; which are sufficient to state a plausible claim under SOX.**

==**Along with filings in 10-K, 8-K ,10-Q and violations of 15 U.S.C. § 7213(a)(2)(A)(iii)(III) a description, at a minimum, of material weaknesses in such internal controls, and**== of any material noncompliance found on the basis of such testing and;

Sec¬tion 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241)

136.     To best of plaintiff's knowledge and search using -EDGAR Search Tools on SEC.gov website; searching GE's public filing with SEC including since 2007 to 2018;type of filings 10-Q, 10-K, 8-K, DEF 14-A…

137.     Also in SEC filings dated 2013 till date; it shows that GE painted ROSY picture , look trendy and cool--of it's digital solutions (Internet of Things platform where Jeff Immelt put billions).

Mentioned that "it's market is up to $8 billion and wants everybody using it" as stated in 8-K form; but totally failed to consider RISKs, liability –even that putting many GE assets such as (Trivedi worked on jenbacher gas engines – internet of things platform in Boston)—Because many GE assets are age OLD, due to several limitations of computing processing power, processing memory available, unable to get cyber security patches and upgrades due to these reasons.. This is misleading given that GE has lessons to be learned from INSITE EXC where GE recklessly connected medical devices on internet…Making cyber security vulnerabilities FOOTPRINT wider and Broader.

138.     GE DEF 14A –annual reports from 2012, 2014,2011,2013 has no mention of broken InsiteEXC( period related to Trivedi's employment and arbitration)

139.     All of these filings 10-Q, 10-K, 8-K, DEF 14-A has no mentioning about cyber security before and since Madhuri was doing mediation/ arbitration in 2013 /2014—

140.     In 2015 --DEF 14A says they care paying attention to cybersecurity in **GENERAL while no mention of InsiteEXC ..**because after reading DEF 14 A it looks nice that how GE is doing ==in digital== world – internet of things –but at the same time have not addressed and kept public vulnerable to hacking attacks; and in effect CIRCA STONEAGE.

141.     Later in 2016- 2017 filings GE included generic disclosures in their management discussion and analysis about cybersecurity issues that could materially affect the corporation's financial condition and operations.

**142.**      Also ---but intentionally not disclosing that still their CYBERSECURITY for these connected devices is in STONEAGE; vulnerable to hack, exploit and manipulation by a LOW SKILLED person(anyone with a low skill could hack and attack, take full control of medical device, stop device from functioning, change setting and more of such attack vector) which GE knew since 2014..But never made it public, nor filed any SEC filing in terms of 10-K, 10-Q, 8-K , DEF 14-A. No mention in **Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations,** SIGNIFICANT TRENDS & DEVELOPMENTS MD &A,Forward-Looking Statements, "Risk Factors"  , Item 7  operations.. Forward-Looking Statements" in GE's most recent earnings release or SEC filings; and●        the other factors that are described in "Risk Factors"

**143.**      But GE's omission of facts pertaining to an actual, known risk about InsiteEXC cybersecurity vulnerabilities and Scott Erven's hacking exploit report from 2014, my internal reports from 2011 to 2013 to GE and later in 2014 during arbitration, and even when I sent email to Mr. Flannery in 2017 violate the requirements of Regulation S-K Item 303 and Rule 10b-5. Thus, reporting an information security issue that contradicts or undermines the company's management discussion and analysis of cybersecurity is protected under SOX, Dood Frank act.

**144.**      Misleading statements or omissions of fact are included in forward-looking statements, the corporation GE may not be insulated. Required forward-looking disclosure including totality of the company activity."

**145.**      GE  violate Sections 302 and 404 of the Sarbanes-Oxley Act as it fails to disclose material weaknesses in its internal controls related to information security. From 2007 to 2014 till Trivedi's arbitration ; GE had not mentioned such cybersecurity related controls and it's weakness. Section 404 of SOX requires a corporation to assess the effectiveness of its internal controls in its annual reports, and an outside auditing firm must evaluate that assessment. Material weaknesses in those internal controls must be identified. 15 U.S.C. § 7213

**146.**      Section 302 of SOX requires a corporation's CEO and CFO to personally certify the accuracy and completeness of financial reports, and they must assess and report on the effectiveness of internal controls around financial reporting.( 16 15 U.S.C. § 7241) .All these years – GE leadership has certified sec filings.

**147.**      Plaintiff also allege that GE "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX.

**148.**      Trivedi has alleged "a strong inference of scienter" with respect to GE's failure to

disclose..Trivedi has pleaded scienter adequately, satisfying statute requirement. Plaintiff Trivedi allege facts giving rise to a "strong inference that the GE acted with the required state of mind." *Id.* § 78u4(b)(2)(A). Trivedi has  "alleged facts (1) showing that the GE had both motive and opportunity to commit the fraud (2) GE 's action constituting strong circumstantial evidence of conscious misbehavior or recklessness."   Intent so GE can continue sale/ service contracts by not getting exposed to corporate credibility, loose their market share, sales, revenue and more".

### 20.2   SECOND COUNT
### Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h); SEC Rule 17 CFR § 240.21F-2
**(GE Defendants, Fragomen Defendants As GE Business Partners, Foley & Mansfield)**

**149.**      Plaintiff  realleges, reasserts, and incorporates by reference the facts and allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**150.**      As alleged in First cause of action violations related to SECURITIES EXCHANGE ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5 ;The second cause of action regarding Dodd Frank Whistleblower protections establishes that GE was violating **EXCHANGE ACT OF 1934, 15U.S.C. 78j(b), AND 17 C.F.R. 240.10b-5;** making  misleading statements and HENCE plaintiff Trivedi is dodd frank whistleblower  under **18 U.S.C.§ 15 U.S.C. § 78u-6(h) ;SEC Rule17 CFR § 240.21F-2..**

**Jordan Thomas – who is a former deputy director of sec.gov enforcement unit– I have spoken with Jordan Thomas– who now represents whistleblowers and have recouped hund**reds of millions in attorney fees for whistleblower award.. I had contacted him during Massachusetts lawsuit in which corrupt judge Patti Saris was presiding. And after looking at my case– he said his law firm doesn't take cases; those ALREADY in progress, aka ALREADY FILED IN COURT…; even though my case has MERI**TS. But He had said that because I filed my lawsuit in 2019 at district of Massachusetts; with SEC rule 21 F-2 as one of claims…and sec.gov incorporated Supreme court's Digital realty v. Somers in December 2020 - it doesn't affect me..because when I filed my lawsuit SEC.gov rule 21 F-2 did protect internal whistleblowers –..that's what as my attorney would have argued in court – if he would have represented me...**

50

**151.**      [Dodd-Frank], which had a six-year statute of limitations – Trivedi was terminated on May 31, 2013 – Trivedi filed District of Columbia lawsuit May 2019 – within SIX years. As per 15 U.S.C. §78u-6(h)(1)(B) (iii) ;within six  to ten years after the date on which the violation of subparagraph (A) occurred.action along with first cause of action)

**152.**      Protected Activity Need Not Describe an Actual Violation of the Law .Madhuri reported to her lead, manager David Mehring, senior manager Carl Conrath, CEO Mike swinford, general manager david elario, HR manager Mike Truman and later Mike Truman's place/role was taken by a new HR manager Ayesha Khan so to her, architect Bill Barbiaux, architect nate davis, manager dave sallis, Chief financial officer , Program manager Nicole Boyle, CTO Tim kottak and few others. She did written communication via emails, note memo, and personal meetings.

SEC's expectations highlights the role of "cybersecurity whistleblowers," those _reporting internally, in building the type of improved corporate culture necessary to discover and_

_remediate cybersecurity risks._ GE people knew that Trivedi engaged in such protected activity.

Trivedi was terminated after being framed to improved her relationship skills.

**153.**      Trivedi made disclosures that were required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities and Exchange Act of 1934, including 15

U.S.C. section 78j-1 (m), section 1513 (e) of title 18, and other laws, rules, or regulations subject to

the jurisdiction of the SEC.Trivedi had both a subjectively and objectively reasonable belief that the

conduct being reported violated a listed law, rule, or regulation.

**154.**      A material defect is one that the Seller is aware of and would have materially impacted your **terms of** purchase and which the Seller was aware. GE as a SELLER has been fully

aware of Remote connectivity related material defect….

**155.**      Since GE & Judges take JUDICIAL notice of Trivedi's DHS lawsuit – Trivedi had asked a QUESTION in her WRIT of CERTIORARI " if DODD FRANk whistleblower protections

apply to internal whistleblowers ?" – in her January 2018 filings.. And one month after that in

February 2018 Digital Realty v. Somers case supreme court ruling came out..So Trivedi's count

under 15 U.S.C. 78j(b) is timely – this is one of the reason to consider it timely..

**156.**      GE managers, senior management knew or recklessly failed to ascertain whether those statements were false and misleading. this behavior, in violation of the Securities and Exchange Act. SEC. 302. <<15 USC §7241.>> CORPORATE RESPONSIBILITY FOR FINANCIAL REPORTS.

**157.**   <mark>Prout v. Vladeck, 371 F. Supp. 3d 150. 156,157, 159 (S.D.N.Y. 2019)</mark>

Although the Supreme Court ultimately held in <u>Digital Realty Trust, Inc. v. Somers</u> that Dodd-Frank does not cover internal whistleblowers like Prout, ––– U.S. –––, <u>138 S.Ct. 767, 772-73</u>, <u>200 L.Ed.2d 15</u> (2018), VRC argues that "numerous district courts within the Second Circuit and elsewhere had" come to the opposite conclusion at the time VRC chose not to prosecute Prout's SOX claim, VRC SJ Mem. 5. As such, VRC argues, it was reasonable to pursue only the Dodd-Frank claim. <u>Id.</u> at 6.")("the Court finds that VRC has not demonstrated the absence of a triable issue. Even if some courts had held as of May 2015 that Dodd-Frank covered internal whistleblowers like Prout,……………..These are genuine disputes to resolve at trial, and they preclude the Court from granting summary judgment for VRC on the issue of whether its handling of Prout's SOX claim was negligent.")

**158.**   Prout case, where dismissal of malpractice claims were DENIED in 2019( after supreme court's Digital Realty ruling) **– Foley Lawyers didn't advise Trivedi for SEC internal whistleblower claims [Even if some courts had held as of May 2014 that Dodd-Frank covered internal whistleblowers like Prout (TRIVEDI)]; Foley never advised Trivedi.**

Arbitrator award was given in August 2014, **the day Trivedi received arbitration email- she emailed it to Foley & Mansfield** partners , but , instead of mentioning Trivedi right to file motion to vacate under 9 U.S. Code § 12; these lawyers forwarded me to Quitam lawyers.. **...Hence I request this court to CONSIDER MITIGSTING CIRCUMSTANCES THAT WERE BEYOND CONTROL AND KNOWLEDGE OF TRIVEDI that this**.

Trivedi can't PAY 20 LAWFIRMS to advise her..she had paid Foley & Mansfield…and at that time –in 2014 **Dodd-Frank covered internal whistleblowers like Trivedi. In Prout v. Vladeck, 371 F. Supp. 3d 150. 156,157, 159 (S.D.N.Y. 2019) ; JED S. RAKOFF, U.S.D.J.d**enied defendant lawfirm's summary judgement for dismissing malpractice claims because Like TRIVEDI – PROUT had presented valid facts for Dodd Frank whistleblower retaliation claim AkA Trivedi's this claim– and lawfirm failed. (".These are genuine disputes to resolve at trial, and they preclude the Court from granting summary judgment for VRC on the issue of whether its handling of Prout's SOX claim was negligent.")

Later for DHS lawsuit– Trivedi studied/read those laws – but there was no way that "NOT being an attorney" – Trivedi would have known about her right to go to court for Dodd Frank...DHS lawsuit was to SUCCEED in my startup..and I already contributed…by fixing immigration..**Searching EDGAR, reading SOX, sec.gov filings - was something not LAYMAN**

52

like Trivedi skilled at the time of DHS lawsuit..this has been a journey – to be a law student &enhancing my legal skills…

**159.**      Trivedi's protected activity discussed above was a contributing factor—and indeed the reason for—her termination.

### 20.3  THIRD COUNT
### Violations of whistleblower protections under Sarbanes-Oxley Act,8 U.S.C. §1514A, et seq. ,Pub. L. 107-204
### ( GE Defendants, Fragomen Defendants As GE Business Partners)

**160.**      Plaintiff  realleges, reasserts,  incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**161.**      OSHA history -As Plaintiff filed OSHA department of labor complaint with Wisconsin-Chicago regional office via fax on May 3rd, 2014 ECF 51Page 33, ECF 51-3 Page 44).. OSHA erroneously responded on July 14, 2014 that it doesn't fit any of their 22 statutes. (ECF 51-3 Page 56)..in 2021 GE aviation engineer Alexanria Horne contacted Trivedi about her firing from GE – for reporting cybersecurity violations..Trivedi advised her to file OSHA SOX and other fight— later Ms Horne wrote to Trivedi that she had ongoing OSHA SOX matter and that she has submitted 50 GE victims – information to dol.gov agency OFCCP…so – after this – Trivedi contacted OFCCP regional director…who informed Trivedi via email, phone conference that they haven't open systemic investigation and confirmed that Ms. Horne has submitted 50 GE former employees' data..and OFCCP director wrote Trivedi that they consider Trivedi's individual complaint as untimely..

**162.**      Trivedi also contacted via email – OSHA regional supervisor William Donovan – who assigned Trivedi's matter to Denise Keller and Nathan – OSHA supervisor and OSHA investigator. Nathan told Trivedi on phone that he is afraid to investigate BIG company GE, because in doing so, he could / would lose his job…and if Trivedi tells this to Donovan – he will dismiss her claims and sent dismissal to GE. Trivedi emailed this to Donovan..Denise Keller on a conference call with Nathan- said even if Nathan told being afraid thing—she would not consider Trivedi claims of 2014- and she informed Trivedi that her 2014 complaint was closed administratively – so there was NO

RIGHT TO APPEAL to ALJ was mentioned in dismissal letter..and there is no record as it has been

destroyed.

**163.**　　Trivedi contacted OSHA in 2021 because of Alexandria Horne – but GE has painted and wrote in court filings, ALJ & ARB filings – that for not having success at first circuit , district

court – she came to OSHA again….total lie, manipulation..

### 20.3.1 Daniel Koh, OSHA, ROSA , 2021 complaint

**164.**　　after that.. Trivedi emailed Daniel Koh…chief of staff of Martin Walsh, DOL secretary, on July 2, 2021 –..asking KOH to forward Trivedi's letter to Mr. Walsh to consider Trivedi's OSHA SOX claims timely and what happened in 2014.

**165.**　　now Koh works at white house..it is – a reward to Koh for his bad behavior, actions and corruption. and for covering up GE's fraud… Jeff Immlet was Obama job czar during 2008

financial crisis– fox watching henhouse..and in my 2022 filings at first circuit and ARB – I had

mentioned below paragraph about Immelt – faking false job created DATA –now Koh at

WHITEHOUSE  these actions speaks thousands of words..

> "when I moved to GE healthcare –in Wisconsin --- Jeff Immelt was OBAMA's job czar – overseeing creating jobs- and actually he didn't create jobs at GE …GE people who were seeing I was being abused then – were talking to me that Immelt is just creating some contract jobs – for six months – and showing that jobs are created at GE… some were even for outsourcing ….it was all fake… – – actual number of jobs created even after taking taxpayers free bail out money …..was not happening"

**166.**　　After sending 100 emails to Daniel Koh, Anthony Rosa , Frederick James – nothing came out. Rosa also asked Trivedi on phone about how GE was doing WIRE FRAUD, MAIL FRAUD – and in that same phone call told Trivedi that he will dismiss Trivedi complaitn as untimely.

**167.**　　September 2021- Rosa dismissed Trivedi's 2014 complaint as not having record and defended Keller , Nathan ..

**168.**　　After that, Trivedi filed a new OSHA complaint under SOX – via ONLINE PORTAL…mentioned ongoing fraud and violations, equitable tolling in online portal complaint..

**169.**　　Later in September, without informing GE – and without asking GE's response. Same OSHA investigator – **Nathan dismissed Trivedi's 2021 complaint as untimely. And in dismissal**

**letter – wrote FALSE statement about what happened…false statement about merits of**

**Trivedi's claims. Meanwhile all in food chain were copied in emails – but choose to participate in this corruption and watch..and not act, intervene -**

170.     Trivedi filed objections to ALJ.
171.     ALJ McGrath issued order to show cause on timeliness..He denied Trivedi's limited discovery to answer timeliness and motion to stay pending discovery to answer his order to show cause on timeliness…He also didn't rule on Trivedi's motion to amend GE is like ENRON... ALJ also didn't consider lengthy and legitimate evidence, argument of Trivedi about timeliness.

172.     Trivedi filed with ALJ that she would pursue FTCA claims against ALJ McGrath.
173.     Later using fractured, pieces, of FALSE statements – and citing judge Kelley's R&R, Judge Saris dismissal in his ORDER- ALJ dismissed Trivedi claims as untimely on February 2022…
174.     Trivedi filed petition for review with ARB..and ARB general counsel granted it..meanwhile Trivedi was putting all this OSHA , ALJ progress in first circuit court filings..so GE's lobbying money – as it shows working extremely well..that these ARB judges, OSHA, Daniel Koh…all politically connected –  were working hard to get Trivedi's claims dismissed.

175.     After ARB general counsel – granted Trivedi's petition for review in **March 2022… Susan Harthill –- was appointed as a NEW chief judge for ARB by Whitehouse.. in MAY 2022** (DARK FORCES behind ? )– so she dismissed Trivedi claims in September 2022 along with two ARB judges... ARB order also contains false, half true fractured pieces..total corruption.

Earlier see below Whitehouse press release –President Biden Announces Key Nominations - The White House
**Susan Harthill**, Nominee for Commissioner of the Occupational Safety and Health Review Commission  -September , 2021

    https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/22/president-biden-announces-key-nominations-2/

APRIL 25, 2022 -    https://www.whitehouse.gov/briefing-room/statements-releases/2022/04/25/nominations-and-withdrawals-sent-to-the-senate-64/

APRIL 25, 2022-WITHDRAWALS SENT TO THE SENATE: Susan Harthill, of Maryland, to be a Member of the Occupational Safety and Health Review Commission for a term expiring April 27, 2027

176.     How OSHA, ALJ, ARB LIE – despite writing 20 times..OSHA, ALJ, ARB hasn't mentioned this in their dismissal letter ( they mentioned lawyer malpractice not eligible and that Trivedi had two law firms etc) – that's why all of them, along with GE- to eb put in JAIL Mitigating circumstances and beyond control of trivedi. Trivedi filed OSHA complaint as her MIT  alumni contact emailed her about the same and that's all he knew Jason Kap who was a Vice president at Microsoft earlier..I didn't know that I can sue under SOX or Dodd Frank earlier; and I didn't know how to litigate these claims ..It was big ocean for me. Plus I trusted Foley & Manfield and other attorneys.

From: Jason Kap [mailto:jkap@MIT.EDU]
Sent: Sunday, May 04, 2014 6:34 AM  To: Madhuri Trivedi; Madhuri Trivedi
Subject: RE: whistleblower
I am praying for you ,Sent via smartphone
-------- Original message --------
From: Madhuri Trivedi  Date:05/03/2014 8:05 PM (GMT-05:00)
To: Jason Kap Subject: whistleblower
Thanks for whistleblower.gov idea..
I think it is good. Sincerely,Madhuri

177.     Currently  – Trivedi's motion & petition for rehearing en banc with ARB is pending.

178.     FTCA After ALJ dismissed Trivedi's claims – Trivedi filed FTCA administrative claims – on February 2022…with DOL

### 20.3.2 OIG DOL referral to OSHA
OIG DOL Mr. Mikulka referred matter to OSHA management on April 2022.
-see email EXHIBIT 10.9

### 20.3.3 OSHA SOX claims of Trivedi
SOX protects corporate whistleblowers for engaging in protected activities

includes wire fraud, mail fraud, healthcare fraud and a violation of any SEC rule or regulation.

179.     To be protected under SOX, the employee's report need not "definitively and specifically" relate to one of the listed categories of fraud or securities violations in Section 806 of SOX.  The focus is "on the plaintiff's state of mind rather than on the defendant's conduct." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

180.     OSHA notes that a complaint of retaliation filed with OSHA under SOX is not a formal document and need not conform to the pleading standards for complaints filed in federal district court articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009). **See Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 WL 2165854,at \*9-10 (ARB May 25, 2011) (holding that whistleblower complaints filed with OSHA**

**under analogous provisions in the Sarbanes-Oxley Act need not conform to federal court pleading standards). Rather, the complaint filed with OSHA under this section simply alerts OSHA to the existence of the alleged retaliation and the complainant's desire that OSHA investigate the complaint.**

181.     Trivedi while employed at GE reported to management that GE is not adhering following in regards to highly defective InsiteEXC medical device.

182.     Where Sylvester case was VIOLATION of GCP – good clinical practice…while TRIVEDI reported ( in writing right from 2012 via emails, meeting to several GE people responsible – as required by SOX)

❖ <u>21 CFR § 820.90 - Nonconforming product</u> ( This FDA statute is under cGMP – quality regulation)
(FDA's cGMP – good manufacturing product, Under precedent set by Administrative Review Board ARB of Department of Labor's Sylvester v. Parexel Int'l, Inc., ARB No. 07–123, 2011 - Trivedi case clear cut exactly similar to Sylvester. In Sylvester – whistleblowers reported violations of cGCP – good clinical practice.) OSHA complaint in 2014 , GE in 2013-2014, arbitrator. Trivedi's attorneys – all had information about violation of this statute. Trivedi provided this statute <u>21 CFR § 820.90 - Nonconforming product</u>; then , in writing…but no one did anything…total malpractice, corruption…

❖ *HIPAA 45 C.F.R. § 164.530 (g). HIPPA 164.306 Security standards:*
❖ HIPAA 45 C.F.R. §164.308(a)(1): Security Management Process
183.     -Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).
❖ HIPPA  164.312(b) Technical safeguards – Standard: Audit controls
184.     Audit controls refer to the capability to record and examine system activity.
❖ Security management process  HIPPA 164.308(a)(1)(ii) Information System Activity Review –Required. ==The company's security controls are seriously lacking which is part of SOX internal controls.==
❖ Medical devices are vulnerable to cybersecurity related ; hackable Lacks proper quality control, testing, automated static analysis of software/code for InsiteEXC is not being used.
185.
186.     18 U.S.C.§ 1514A(a)(1), including when the employee provides information or
187.     assistance to someone with "supervisory authority over the employee" or with authority to "investigate, discover, or terminate misconduct"
188.     ==as CLEAR CUT WRITTEN EVIDENCE proves that Plaintiff Trivedi did report in writing- these issues to GE management – food chain. Significantly, SOX protects internal disclosures.==
189.     Technical leads, architect and manager lack proper technical understanding, lack
190.     technical knowledge, lack big picture /systems level , lack  cyber security knowledge.
191.     GE knew in July 2014 that I spoke with FBI and FBI said it is quitam.

192.     Trivedi met SOX standard because the managers' and GE's alleged concealment of defects, deceptive sales and marketing of medical devices and services, fraudulent inducement, was

intended to, and likely would, affect the revenue, profit, sales amount for GE; and bonus and

executive pay/stock options to GE executives and pay to managers/employees.

193.     Therefore Trivedi/plaintiff had an objectively reasonable belief that [the GE employees, managers, GE executives and GE company were] engaged in a scheme to defraud government, consumers, patients and investors and violating such laws."

194.     Plaintiff Trivedi made objective reasonableness," "subjective good faith," or a disclosure that is "not knowingly false( WESTMAN & MODESITT, *supra* note 11, at 81; *see also* Cherry, *supra* note 53, at 1047.  ) ; about GE's fraud.

195.     Plaintiff Trivedi(1)she engaged in protected activity;(2)the employer GE knew that she engaged in the protected activity;(3)she suffered an unfavorable personnel action; and(4)the protected activity was a contributing factor in the unfavorable action.

196.     Plaintiff engaged in protected activity under SOX related to reporting **Cybersecurity vulnerabilities, defects, quality issues, fraud .**GE took unfavorable

personnel/professional action due to plaintiff's protected behavior or conduct.

### 20.4   FOURTH COUNT
### 31 U.S.C. §3729 et.seq. AND 31 U.S.C. § 3802 AND RELATED WHISTLEBLOWER REPRISAL ; 31 U.S.C. § 3730(h)(3) under ongoing fraud and ongoing violations ( ALL defendants)

197.     Plaintiff  realleges, reasserts, incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

198.     Due to my immigration hardships attorneys were not able to file Quitam …And immigration that GE screwed prevented me from fighting for clause of action  mentioned here..

### 20.5   Ms. Trivedi's claim of ongoing fraud

199.     I found out about Scott Erven's GE alert, on my father's death anniversary February 22…while I was browsing internet. Trivedi came to know about Scott Erven's 2018 dhs.gov ,

cisa.gov  alert on February 2019– Trivedi filed lawsuit in May/ August 2019.. Text message

communication to Scott Erven is PROOF that Trivedi came to know about this alert on February

2019.I found Scott's cell phone from his firm- Pricewaterhouse cooper. I immediately called and left

his a message. And below is his reply. He was shocked hiring my story. And he said GE didn't do

any release since 2014 that he reported to GE. (Calling Scott as a witness would prove a lot)**Message**

**by (\*\*9) 3\*2-66\*\*: I just landed. Have a layover so could call you quick here in like 5-10 minutes. Does that work?, February 22 2019, 10:02 PM.**

200.     I am requesting whistleblower protection and reprisal relief under these laws as well.

201.     GE violated FEDERAL FALSE CLAIMS ACT ,31 U.S. Code § 3802 ; False claims and statements; Liability- to the actions of government contractor by failing to disclose product defects. General Electric is a government contractor.

202.     GE violated Civil False Claims Act (31 U.S.C. §3729 et seq.) by knowingly presenting false or fraudulent medical device SALES and service contract submitted to government, conspired to defraud the government. GE conspired and "knowingly" defrauded government because GE had actual knowledge of the information about InsiteEXC defects, design non conformances, performance issues, cyber security vulnerabilities and potential risks these vulnerabilities posed to insider attacks as well as attacks from outside network that could affect/affect patients possible diagnosis of Imaging scan, and much more unspecified attack vector, acted in deliberate ignorance of the truth, falsified of the  InsiteEXC information ; continuously selling and integrating InsiteEXC of all kinds of GE medical devices for years to generate revenue and earn millions worth of medical device purchases and service contracts by government. As per 31 U.S.C. §3729 et seq. Plaintiff Trivedi claims here in -Not proof of specific intent of GE to defraud is required .It is also fraudulent inducement.

203.     Plaintiff  Trivedi engaged in protected activity; GE had knowledge that Plaintiff Trivedi was engaged in protected activity; GE took an action that had a negative effect on the terms, conditions, or privileges of employment, such as termination,  harassment; and GE retaliated against Plaintiff  Trivedi because of this conduct.

204.     Plaintiff has alleged properly all the elements as stated above in this complaint.
United States ex rel. Campie v. Gilead Scis., Inc., 862 F.3d 890, 902 (9th Cir. 2017) applying to **Trivedi's** case (Under all three theories the essential elements of False Claims Act liability are: (1) GE made false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, )

205.     Further stopping me from pursing Quitam and/or any other claims by cancelling my immigration H1B. Because quitam attorneys said that given Trivedi's immigration situation they were hesitant to invest million in the quitam lawsuit if they take on contingency basis.

206.     I didn't HIRE OR PAY Andrew Beato- He looked at my claims.
Andrew Beato was looking himself into Quitam matter but somehow GE found out and GE contacted Andrew's partner to represent GE in another matter..So Andrew left saying that as his law firm partner is going to represent GE ,he can't work on my quitam /false claims act case.

EXHIBIT

207.     GE's above mentioned conduct with scienter , directly or indirectly made untrue

59

statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made; harmed investors as they relied on false, misleading, untrue statemetns GE made in order for them to make investment decision regarding GE.

### 20.5.1 Allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations; when Trivedi allege "ongoing fraudulent scheme"[5]

Scott Erven's alert in 2018, specifically mentions "INSITE EXC" as alleged in Trivedi case

✓   Trivedi didn't know what FDA was doing, to the extent that US attorney from SanFrancisco for

Quitam contacted FDA(as shown in FOIA from August 2019)..

_____

From: Smith, James - OCC
Sent: Thursday, February 18, 2016 8:56 AM
To: Myers, Charles F
Subject: Question ref: complaints about a GE software interfacing program
Charles—
The US Attorneys Office in San Francisco contacted me yesterday asking about whether there had been an FDA investigation into allegations of safety issues with the GE Insite Exc,
Jim Smith
Senior Counsel
Office of the Chief Counsel
US Food and Drug Administration
Telephone: 301.796.8718
cell: 202.510.4283

**208.**      (Here, the Second Amended Complaint alleges Campie was told it was "none of his concern" when he discussed contamination and adulteration problems on multiple occasions)

_____

[5] United States ex rel. Sperandeo v. Neurological Inst. & Specialty Centers PC, No. 2:14-CV-158-JVB-JEM, 2021 WL 1177071, at *4 (N.D. Ind. Mar. 29, 2021) ("Sperandeo counters that allegations of ongoing fraud should not be dismissed on the basis of the statute of limitations. ")

United States ex rel. Fischer v. Cmty. Health Network, Inc., No. 1:14-cv-01215-RLY-DLP, at *12-13 (S.D. Ind. Nov. 25, 2020) ("thus, because the second amended complaint alleges ongoing FCA violations beginning in 2009, the applicable statute of limitations does not bar the claims. (Id. at 11-12)")

U.S. ex rel. McGee v. IBM Corp., 81 F. Supp. 3d 643, 656 (N.D. Ill. 2015); Fed. R. Civ. P. 8(c)(1)." ("31 U.S.C. § 3731. Under Federal Rule of Civil Procedure 8(c)(1), a statute of limitations argument is an affirmative defense, not an attack against the sufficiency of the pleadings. ")

[As GE has treated Trivedi similar way, that it is none of her concern]

**209.** Goldberg v. Rush Univ. Med. Ctr., 929 F. Supp. 2d 807, 815–16 ,826, 827 (N.D. Ill. 2013)  ("[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir.2012). ")A statute of limitations is an affirmative defense. Fed.R.Civ.P. 8(c)(1). Dismissing a claim as untimely at the pleading state is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir.2009). "[A] federal complaint does not fail to state a claim simply because it omits facts that would **\*816** defeat a statute of limitations defense." *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir.2006).

("Here, R**elators allege an ongoing fraudulent scheme that Defendants allegedly** continued to execute after June 21, 2004. (*See* R. 168, Fourth Am. Compl., ¶¶ 110, 137, 145.) **Accordingly, dismissal based on the statute of limitations is premature.** *See Upton,* 900 F.Supp.2d at 831–32.")

**210.**

### 20.5.2 GE's June 2022 court filing ECF 169 says – GE attorney wrote

"Ms. Trivedi contends, at some length, that the GE Defendants are engaged in a nefarious "ongoing fraudulent scheme" involving cybersecurity. (ECF No. 167 at 21-28). This, she argues, means her False Claims Act retaliation claim should not have been dismissed for being untimely But all of these arguments have been made before and failed. (*See, e.g.,* ECF No. 143 at 13-14 (arguing in objections that "since GE kept selling highly defective medical devices years after I left GE—I am still within [the] time limitations to file False [C]laims [A]ct claims"). While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim,6 in the context of a retaliation claim, the statute of limitations is unequivocal. *See* 31 U.S.C. § 3730(h)(3). This Court should also deny the motion to vacate the dismissal as to count 10."

**So Even GE attorneys are not DENYING ONGOING FRAUD RELATED TO CYBERSECURITY;**

**WHILE JUDGES CORRUPTLY DISMISS TRIVEDI'S CLAIMS as untimely… judges acted as**

**GE's general counsel.**

### 20.5.3 Trivedi's retaliation claim under 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing fraud makes claim timely

Trivedi's individual retaliation claims for doing protected activity under 31 U.S.C. § 3730(h)(2)

( it does not say anywhere that pro se person can't bring retaliation claim); for that Trivedi can file a

lawsuit Pro Se.

==Trivedi ECF 51 page 220[6]==

**211.**        Plaintiff Trivedi engaged in protected activity; GE had knowledge that Plaintiff Trivedi was engaged in protected activity; GE took an action that had a negative effect

on the terms, conditions, or privileges of employment, such as termination, harassment and any other

act that would dissuade a reasonable person from reporting violations of the False Claims Act; and

GE retaliated against Plaintiff Trivedi because of this conduct.

### 20.5.4 Outside three year statute period conduct helps to establish a scheme for false claims

Nor does the FCA statute bar an employee from using prior acts as background evidence to support a claim. If (outside three year statute period)conduct helps to establish a scheme for false claims for payment from the United States, then the conduct may still be included and considered in the pleading as background information. Therefore, the court can still consider ==Trivedi case's Scott erven's 2018 global alert==, ==June 2022 CISA.GOV alert related to remote connectivity==, conduct described in the pleading to the extent that it provides background for the alleged scheme of presenting false claims for payment to the United States after ==Trivedi termination, May 31, 2013.==

### 20.5.5 Individual Retaliation Claim is not subject to the FCA procedural requirements [Trivedi has met pleading requirement at motions to dismiss level for this claim]

==Below is a case, in which district judge Patti B Saris ruled….==
Sheppard v. 265 Essex St. Operating Co., LLC, 299 F. Supp. 3d 278, 281, 282, 283, 284(D. Mass. 2018) (" **II. Individual Retaliation Claim**

("Furthermore, retaliation actions under the analogous FCA provision "are not subject to the **[FCA] procedural requirements" of filing in camera and serving the government. United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995, 1000 (2d Cir. 1995). As such, Sheppard's failure to meet the particularity requireme**nt of Fed. R. Civ. P. 9(b), and her noncompliance with the procedural requirements of Mass. Gen. Laws ch. 12, § 5C(3), do not—on their own—make her motion to amend to include a retaliation claim futile.")

---

[6] Harrington v. Aggregate Indus., 668 F.3d 25, 31 (1st Cir. 2012) ("The McDonnell Douglas approach fits comfortably with the test that courts generally apply to retaliation claims under section 3730(h)(1). This test requires an employee to show that (i) he was engaged in conduct protected under the FCA; (ii) the employer had knowledge of this conduct; and (iii) the employer retaliated against the employee because of this conduct. See Mann v. Heckler & Koch Def., Inc., 630 F.3d 338, 343 (4th Cir.2010); Maturi v. McLaughlin Research Corp., 413 F.3d 166, 172 (1st Cir.2005). ")

Morris shared concerns with Zarella about Sheppard's performance. Docket No. 51–1 ¶ 16. On November 18, 2014, Essex presented Sheppard with a Performance Warning **\*282** and **Plan for Improvement ("PIP"),**

## [Trivedi was put on a PIP by GE for not joing fraud scheme]

Docket No. 51–1 ¶ 20, which she did not sign because she disagreed with the way Essex characterized her responsibilities with respect to the MMQ project, Sheppard Dep. at 111:4–113:22. Sheppard's PIP expressly states that her failure to immediately improve her performance could lead to termination. Docket No. 51–9 at 2.

Internal reporting and objecting to employer directives fall within the scope of "protected conduct," as required to support a retaliation claim . **[Trivedi reported first internally]**

### 20.5.6 Nonconforming product & service by GE
There is ample evidence presented which makes GE liable for FCA.

### 20.5.7 Pleading requirement for retaliation claim

United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174 (D. Mass. 2019), appeal dismissed sub nom. Karvelas v. Tuft Shared Servs., Inc., No. 20-1616, 2020 WL 7587147 (1st Cir. July 24, 2020) (A False Claims Act (FCA) retaliation claim need not meet the heightened pleading-with-particularity requirements for a fraud claim.
( The retaliation provision of the MFCA is nearly identical with respect to the scope of protected conduct. See M.G.L. c. 12 § 5J(2) (protecting employees that engage in "lawful acts ... in furtherance of an action under" the MFCA). ")

### 20.6   FIFTH COUNT
### Wrongful termination in violation of public policy
### ( GE Defendants, Fragomen Defendants As GE Business Partners)

**212.**      Plaintiff  realleges, reasserts,  incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**213.**      Exhibit 2 savings statute of this filing.

**214.**      Plaintiff alleges that Plaintiff's termination was wrongful because it was in Violations of the public policy of the United States in that Plaintiff's termination was in retaliation for Plaintiff's opposing and reporting illegal activity, as described in preceding allegations for -----Under the public-policy an employee is wrongfully discharged when the termination is against an explicit,

well-established public policy (allowing an exception to the at-will doctrine serves to equalize the

imbalance of power that exists in an employment relationship in terms of public policy exception)

215.     At-will employee MADHURI stated a cause of action for wrongful discharge where the employee would have been forced to violate the law in order to avoid being terminated.

216.     District court of Massachusetts judges and first circuit intentionally, to terrorize Trivedi, didn't apply Massachusetts Savings statute…in order to make this claim – timely….This claim was timely .. entire legal argument has been trashed illegally..Trivedi's objections to R&R ECF 143 and first circuit opening brief have legal arguments, facts for this.

### 20.7   SIXTH COUNT
**Breach of the implied covenant of good faith and fair dealing Breach of contract good faith, Breach of fiduciary duty, 17 CFR § 229.406 -Code of ethics ,tort, Other common-law limitations including actions based on the (1)intentional infliction of emotional distress**
**( GE Defendants, Fragomen Defendants As GE Business Partners Foley & Mansfield Defendants)**

217.     Plaintiff  realleges, reasserts, incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

218.

219.     EXHIBIT 2 of this filing.

220.     Breach of fiduciary duty applies to plaintiff as well as GE stockholders, shareholders.

221.     Covenant-of-good-faith that terminations made in bad faith or motivated by malice are prohibited. That's what exactly GE did- as Trivedi didn't participate in GE fraud scheme, opposed and spoke up.

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more that these policies spirit. Policy Letter is merely a letter new employee required to read and sign and follow but company itself is not following.**

222.     Implied contract -Plaintiff had an implied contract of employment for so long as Plaintiff performed Plaintiff's job in a satisfactory manner.Trivedi performed her job in a satisfactory manner. Even in her performance appraisal ( (technical performance as well) (EXHIBIT ECF 51-3 Page 66- 71)) –GE manager rated her performance as "meeting expectations" but made up that it is her communication skills, relationship skills which needs to be improved and as a result of PRETENSE/made up false/retaliatory.

223.     GE made Good faith implied job contract that GE will do H1, yearly extension of **H1 and  her greencard** As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another employer/change job..That's what exactly GE did.Also despite several requests during mediation, and arbitration and a letter to CEO of GEHC by immigration attorney Jeff Goldman(ECF 51-3 Page 78 - 80 ) –GE didn't file I 140 which would have allowed her to extend her H1B and leave GE and work for another employer.We requested at that time that GE keep me on leave without pay and just do

paperwork. But GE didn't care.

224.     Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and federal statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules and regulations. Also in violation of all other anti-retaliation, whistleblower protection laws .Cause of action claim -----stated here. Terminating Plaintiff without good cause as she did meet her performance **(ECF 51-3 Page 66- 71)**

225.     The company induced Ms. Trivedi; and that GEHC would make good faith efforts to pursue permanent residency **(ECF** 51-3 Page 150**)**for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).

226.     " Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with this process. (ECF 51-3 Filed  Page 150)Also, the company neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting) (ECF 51-3 Filed  Page 78 - 80 ), which has resulted in that she could not work for other employer(preemptive) in US.

227.     Breach of contract-As stated above; Trivedi and GE created contractual rights, Trivedi relied on anti- retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which  created an implied contract.)** she SIGNED as an condition of employment and followed duty to report violations as expressed in GE policy, federal , state laws and rules, along with other courses at GE that she was required to take as GE was in regulated environment.

228.     courts have long recognized that when an employee is in a position of management and conducts the business of an employer, he owes that employer a fiduciary duty.(holding that employees "vested with policy-making authority [with]the ability to make decisions which bind the company" owe a fiduciary duty). This fiduciary duty encompasses a duty of care, loyalty, and good faith. [Trivedi and defendants here apply in this analogy]

229.      The breach is actionable as there is proof that the plaintiff Trivedi suffered damages as a result of the breach any failure on part of the fiduciary to act ..a breach of fiduciary duty can be

any behavior that is not in the best interest of the client;

230.      GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a **breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created [7] legally enforceable rights.* As alleged above on several elements; GE breached contract.

231.      **District court of Massachusetts judges and first circuit intentionally, to terrorize Trivedi, didn't apply Massachusetts Savings statute…in order to make this claim – timely….This claim was timely .. entire legal argument has been trashed illegally. Trivedi's objections to R&R ECF 143 and first circuit opening brief have legal arguments, facts for this.**

### 20.8 SEVENTH COUNT
**9 U.S.C. § 12, 9 U.S.C.§ 10(a)(3),9 U.S.C. § 10(a)(2) 9 U.S.C.§ 10(a)(1) and challenging arbitration award under common law AND Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 -9 U.S.C. §§ 401-402(ALL defendants)**

232.      Plaintiff realleges, reasserts, incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

233.      Arbitration carries no right to trial by jury that is guaranteed by the Seventh Amendment.

234.      The FAA's vacatur provision"show[s]a desire of Congress to provide not merely for any arbitration but for an impartial one."  Commonwealth Coatings Corp. v. Cont'l Cas. Co., 393 U.S. 145, 147 (1968).

235.      the award was procured by corruption, fraud, or undue means

**Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to Alternative Dispute Resolution Techniques)**The arbitration award in the courts—Concerns about the arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to hear pertinent and material evidence is sufficient misconduct to justify vacating an award.)

– as Trivedi already filed in District of Massachusetts and first circuit court filings 10 times, that-

**arbitrator didn't include deposition of Madhuri Trivedi and GE architect Bill Barbiuax[8]**(where

---

[7] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

[8] First Circuit's decision in Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 38 (1st Cir. 1985).The First Circuit found that the arbitrator's failure to give any weight to this testimony violated 9 U.S.C. § 10(a)(3), since the transcript of the testimonywas relevant and the sole evidence available to establish the employee's culpability.  In reaching this decision, thecourt noted that a federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings,"
Gulf Coast Indus. Workers Union v. Exxon Co., USA, 70 F.3d 847, 850 (5th Cir. 1995), the Fifth Circuit upheld a district court's order to vacate an arbitration award pursuant to 9 U.S.C. § 10(a)(3)based on the arbitrator's improper conducting misleading a party as to the admission of certain pieces

Bill testified that GE product was insecure and defective for years and lot more) into EVIDENCE as hearing; along with other material. Arbitrator also didn't enter into evidence exhibit 57– futility of stack ranking ..(A fair hearing involves notice, an opportunity to present relevant and material evidence and the arbitrators were not infected with bias.)… First 9 PAGES of arbitration- Hearing transcript that PROVES that depositions were not entered; has already been part of first circuit and district of Massachusetts court record. But none of the judges CARES>>>this is bullying, bias, intentional harassment where JUDGES omit, **Overlook, IGNORE, not mention – crucial evidence that would lead to denial of GE's motion to dismiss. These judges should be in jail.**

Arbitrator also didn't enter into arbitration hearing evidence "deposition of plaintiff Madhuri Trivedi" where I alleged retaliation, discrimination, whistleblowing, hostile, offensive, intimidating work environment and more. Arbitrator was picking and choosing selective documents, testimony into hearing evidence that would benefit GE( from whom he was getting PAID so he has vested interest to) and not employee Trivedi; along with LINE of QUESTIONING that went at hearing.

236.    Some of the items from Bill Barbiuax deposition(There are several other items **Bill admitted – full deposition is part of district of Massachusetts lawsuit – which has been ignored by corrupt judges. EXHIBIT 10.2**

237.    Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas , 915 F.2d 1017, 1023 (5th Cir. 1990)  - To vacate an arbitration award based on the refusal to hear and material evidence, the evidentiary error "must be one that is not simply an error of law but which so affects the rights of a party that it may be said he was deprived of a fair hearing." Forsythe Int'l, S.A. v. Gibbs Oil Company of Texas, 915 F.2d 1017, 1023 (5th Cir. 1990); **Hence arbitrator in Trivedi's case deprived Plaintiff Trivedi of a fair hearing as mentioned.**

238.    As GE choose private arbitrator mentioning that public arbitrator Peter David from Wisconsin Workforce development who works for government hence arbitration record will become public so GE doesn't want Peter Davis to be an arbitrator and choose a PRIVATE

---

of key evidence. However, the arbitrator had prevented Exxon from presenting evidence regarding the chemical analysis of the ciga The D.C. Circuit has similarly noted that petitionersseeking to invoke 9 U.S.C. § 10(a)(3) must demonstrate that the excluded evidence was pertinent and material to the controversy, and that the exclusion of the evidence deprived the petitioners of a fundamentally fair hearing.

ARBITRATOR…Email from GE attorney Sean Scullen CONFIRMING that GE won't allow public arbitrator is already part of courts' case RECORD –but who cares..

239.      ... Trivedi even left hearing on second day and GE did arbitration hearing alone without me- FAA a catch all clause allowing vacatur for any other misbehavior resulting in substantial prejudice [9] to the rights of any party.   This clause has been successfully invoked, for example, when the arbitrators received and relied on evidence on an ex parte basis outside the presence of the opposing party.

240.      As a matter of public policy, various claims brought in this Trivedi's[10] complaint. Does arbitrator has authority to hear in a PRIVATE HOTEL ROOM in A PRIVATE RECORD FOR ARBITRATION PROCEEDINGS AND HEARING SUCH COMPLEX causes of action involving cyber security, public health, safety, consumer finance, Department of defense contracts, security and exchange commission law …Though Dodd Frank act, SOX claims, False claims act claims and CFPA-finance related claims are PRECLUDED form GE's mandatory arbitration…

241.      In *Move, Inc. v. Citigroup Global Markets, Inc.*, the Court, for the first time, held that the plaintiff's motion was notuntimely because the Federal Arbitration Act is subject to equitable tolling. toll the Section 12 three-month limitations period. Details in EXHIBIT 11

242.      9 U.S. C. § 12. Notice of motions to vacate or modify; service; stay of proceedings; though Foley and Mansfield law firm I hired to send a letter to GE in July 2014. Arbitrator award was given in August 2014, Foley& Mansfield had that award next day; but instead of <u>mentioning 9 U.S. Code § 12. motion to vacate; these lawyers forwarded me to Quitam lawyers and</u>   **closed employment file.. ..Hence I request this court to CONSIDER MITIGATING CIRCUMSTANCES BEYOND CONTROL AND KNOWLEDGE OF TRIVEDI that this** 9 U.S. Code § 12. Notice of motions to vacate or modify was not filed in district court earlier.

---

[9] New York Article 75 "Judicial review of an arbitration award and vacatur to instances where the award is violative of a strong public policy, is irrational.

[10] Trivedi didn't know what "Solutions" was when she joined GE company and signed that as a condition to get GE job offer. It is not proper for GE to later FORCE "solutions" like they did when GE never provided copy of "Solution" at the time to condition of employment.  Trivedi came to know about mandatory arbitration when immigration attorney Jeff Goldman sent a letter to GE CEO Mike Swinford; and GE attorney replied that Trivedi is bound by arbitration.

**20.9   EIGHTH COUNT**

**Disparate treatment, intentional discrimination and retaliation in violation of Title VII, VIOLATIONS OF CIVIL RIGHTS ACT OF 1991, 42 U.S.C. 1981 (Section 1981),42 U.S.C. 2000e et seq. ,42 U.S. Code § 1981a - Damages in cases of intentional discrimination in employment, hostile work environment, 42 U.S.C. § 2000e-3a, 42 USC § 2000e 2(a)(1) , Civil rights violation hostile work environment,  Sexual harassment,  Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 - 9 U.S.C. §§ 401-402**

**(GE Defendants, Fragomen Defendants As GE Business Partners, Because Of My Gender, Nationality, Marital Status, Race) & All Defendants For Violations Of Civil Rights)**

Plaintiff  realleges, reasserts, incorporates by reference the facts & allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown. Class action claims for Trivedi and similarly situated, victims from 2011 to present. Lots of arguments presented at first circuit but it was trashed as Trivedi didn't mark it as CLASS ACTION.

42 U.S.C. 1981 (Section 1981) doesn't require EEOC exhaustion --- and equitable tolling applies…as Trivedi has been victim of GE, judges one way of another, in hostile , corrupt, illegal manner – work together to dismiss HER CLAIMS>

Since federal judges, ALJ, ARB happily TAKE FULL JUDICIAL NOTICE of my department of homeland security lawsuit…in DHS complaint ..Trivedi already had claim under VIOLATIONS OF CIVIL RIGHTS ACT OF 1991….( DAMAGES IN CASES OF INTENTIONAL DISCRIMINATION )

42 U.S. Code § 1981a ( a)(1) Civil rights,42 U.S. Code § 1981a ( b) Compensatory and punitive damages,42 U.S. Code § 1981a ( c) Jury Trial,

ECF 51 Page 16 ( how all defendants trashed this legal argument)[11]( in ECF 51 , Trivedi mentioned "intentional discrimination" 6 times)

42 USC § 2000e-3(a) where I did clearly opposed employment practices by GE and suffered discrimination.

Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 -9 U.S.C. § 401-402 – while GE, judges bring TIMELINESS , one way or another  - in totally ROGUE, HOSTILE manner…– I allege this claim because it shows "CONGRESS INTENT" , need , my

---

[11] United States Supreme Court DESERT PALACE, INC., dba CAESARS PALACE HOTEL & CASINO v. COSTA(2003) No. 02-679 For instance, in Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. 133 (2000), **we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." Id., at 147 (emphasis added).** The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." Rogers v. Missouri Pacific R. Co., 352 U. S. 500, 508, n. 17 (1957).

contribution to make this law( may be a drop in the OCEAN)..but it proves that I am not a stupid

person – who is fighting lawsuit and not going anywhere..as painted by GE and judges…me and

thousands other fought for this. This has been part of #MeToo journey.

   For DHS lawsuit,  When Trivedi went to district court and met judge James Donato's
court deputy.—Lisa R. Clark ..she commented that "we are not doing woman thing in your case---
and you don't go to bed with them..but some women do use being women as TOOLS..so we are not
doing woman thing".( since Judge Donato was not ruling for more than six month on pending
motions..I attended HEARING in Judge Donato's courtroom for some big antitrust case..then met his
deputy Clark when hearing was over)

   It is well established that gender combined with a second characteristic may constitute
a protected group for purposes of Title VII. Schallop v. New York State Dept. of Law 20 F. Supp. 2d
384 (N.D.N.Y. 1998)
   Trivedi may prevail as she has shown that the employer GE's response is merely
**a pretext for behavior actually motivated by discrimination and retaliation.** Used my divorce as
a tool to falsely accuse me on relationship, blackmailing as GE thought it as my weakness.

   Because the acts taken toward Plaintiff were carried out by managerial employees
acting in a deliberate, cold, callous,fraudulent, malicious, oppressive, and intentional manner in order
to injure and damage Plaintiff.[12]

   Trivedi was a THREAT and challenge to these male managers and  coworkers David

Mehring, Carl Conrath, Greg Stratton, Nate , Bill Barbiuax as she was smart and no nonsense person.

While Trivedi was making waves right from second week of joining.. None of the internal customers

DIRECTLY went ahead and begged for HELP for TONS of INSITE EXC support issues they were

having for a LONG TIME but these internal customers contacted Trivedi. InsiteEXC internal

---

[12] "while other engineers including Male technical staff Sachin Kendale (Sachin wrote code that it took 40
minutes to lead 1000 devices on webpage and he and Naresh wrote such badly and defectively by initializing
each device object in memory after they get query result from database. Database was also not tuned and
written badly. They never used Database performance management tool and David Mehring sucked so much
of my blood and I had to convince him a lot to get $30 Database management tool (EXHIBIT ECF 51-3 Page
177  perjury)because GE didn't have license and these incompetent engineers never used—despite that Sachin
got good performance review—EXHIBIT ECF 51-12 Page 1 -8 is  Sachin's performance review. During
arbitration discovery, GE didn't release Naresh and Nate Davis performance review..because GE said Naresh
was a contractor  - and Nate they just won't and bullied.Naresh, Nate Davis, Greg Stratton and several others
wrote bad product, bad buggy, defective software/code( I have proof of that) despite GE treated them
favorably and discriminated plaintiff as GE can't tolerate , a female engineer coming out strong and also
whistleblowing these male engineers technical incompetence. "

customers struggle for months to establish connectivity and Trivedi found short term fix. While after joining GEHC in 2011, right on my 2nd week on joining GEHC I found a

work around where earlier online engineers ( internal customer Missy Polak Ryan also complained)couldn't do remote connection to medical devices in hospitals and hence couldn't fulfil service contract OBLIGATIONS WITH CLIENTS—for months they were struggling and engineering staff couldn't find solution to problems. On my 2nd week I found a work around and send document first to Glen Livermore which was used by hundreds of online engineers/service engineers, was CRITICAL globally to do remote connectivity -it was a bandage .

A plaintiff may state a claim for Title VII employment discrimination using either the "direct method" or "indirect method.

Mike harsh , CTO of GEHC sent email in late 2012  that managers and employees should take training on how they perceive communication from female engineers; **SO GE had problem about perceiving and measuring performance, communication of female engineers***"Men's and women's behavior is based on two different sets of cultural rules about what " right" is . Learning the cultural differences define what is "right" for men and women-together with a good sense of humor –is the first step leading meaningful inter-gender communication.Following the workshops, participants will be equipped to return to both their professional and personal lives seeing the world through the lenses of the other gender's culture and encouraged to shape their message in new ways. "*

Male GE engineering staff looked (was obvious to they were incompetency) technically incompetent after above incident and as I started making waves.

GE didn't put on PIP Greg Strattton, Nate Davis white American nationality MALE. Nor Sachin Kendale, Naresh Asian Indian nationality MALE.[13]

**20.9.1     That's why I am presenting this lawsuit as CLASS ACTION.**

---

[13] David Mehring Promoted Namita Joshi Indian American nationality ( she was born in India but had USA greencard , citizenship),FEMALE and she was a wife of GEHC general manger Vivek Bhatt so her relationship with GEHC executive was a driving factor that despite as Ofir fought 20 people that she lacked technical skills as to when code would fail; she was never put on PIP nor got negative performance review –on top of that was prompted as stated by arbitrator in his award. Marital status is different from Trivedi as well as her relationship—who knows who is all what makes promotion at GE.

### 20.10 NINTH COUNT
### Breach of fiduciary, duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith, negligence
### (Foley & Mansfield, Fragomen Defendants)

**243.**     Plaintiff  realleges, reasserts, incorporates by reference the facts &allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**244.**     Second count SEC internal whistleblower above – has detailed legal arguments about Foley & Mansfield malpractice, damage and Very IMPORTANT case law..to be considered part of this claim.

**245.**     District court of Massachusetts dismissed Trivedi's claims as not having personal jurisdiction in Massachusetts over Foley & Mansfield. While these corrupt judges stayed BLIND to Foley & Mansfield's malpractice – that led to Trivedi not able to bring claims earlier..and these judges didn't applied equitable tolling, fraud, aiding & abetting fraud to Foley defendants.

**246.**     I paid this law firm for all the work they did. Later I contacted Foley..I told them for Quitam matter..Look at the letter they sent to GE on July 16,2014 ..They also didn't bring Dodd Frank act whistleblower, SOX, any  claims mentions here when they sent a letter to GE, later negotiated with GE nor afterwards. Immigration right ( ) –was included in a leter to GE because I emailed them about this as I read.

**247.**     Foley didn't  mention which to me appears as (intentional omission or /and negligence) on any steps related to OSHA complaint, SOX whistleblower even though I gave them what I submitted to OSHA, OSHA complaint and OSHA response. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to provide me legal service and bring up laws..

**248.**     I also sent arbitrator final award to them in August 2014 (to entire Mansfield law firm team- David Haron, Andrew Shedlock and Seymour Mansfield along with other) and they didn't provide any guidance on going to court after arbitration award. Also Foley didn't mention/bring up any rights related to appealing arbitration or going to court .And as my lack of legal knowledge I relied on them and assumed/believed that there was nothing I can do..But later I learnt than one can go to court shortly after arbitration to challenge arbitrator award.

**249.**     A fiduciary duty is a duty or responsibility to act in the best interest of someone

else. Such relationship existed between Foley and Trivedi.The fiduciary (defendant Foley) had duties such as acting good faith, being transparent with pertinent information, and being loyal to the plaintiff.Facts here as Trivedi stated prove that the defendant Foley failed their duty by withholding pertinent information, failing in their responsibilities or misrepresenting the statement of fact/ laws related to advising Trivedi on challenging arbitration in court, SOX, Dodd Frank SEC whistleblower claims and other claims (nor added in GE letter any of such information)

250.     Foley didn't mention in letter sent to GE that Trivedi can **legally challenge arbitration award; nor made strong argument about claims brought here in this complaint.** Though partner Seymour was employment, labor and arbitration specialist. Seven or so attorneys at Foley reviewed my file. None of them mentioned ever in LETTER SENT TO GE or LATER TO ME "**about going to district court for vacating arbitration award nor claims as mentioned in this complaint.**"

251.     David Haron referred me to another quitam law firm in Texas as shown here. David Haron also asked me to call Patrick Burns in Washington DC; Patrick is director of Taxpayers

Against **Fraud**  https://taf.org  (**EXHIBIT 13**) .At that time as David said that Maro E. Bush,

Mercedes Varasteh Dordeski were partners with David Haron on Quitam side and David said they

both were PREGNANT. )

252.     Even though next day of receiving arbitration award I forwarded award (**EXHIBIT 8A**) to David Haron,  Seymour Mansfield and Andrew Shedlock along with other.

**And they all read it.**

253.     *Prout v. Vladeck*, 371 F. Supp. 3d 150, 161,163 (S.D.N.Y. 2019) ("  Given this evidence, the Court finds that there is a triable issue as to whether Prout believed he was reporting a violation of federal law…….whether Prout would have been better off if he had pursued all four of his claims, rather than pursuing only two." Prout v. Vladeck, 319 F.Supp.3d 741, 746 (S.D.N.Y. 2018). "A plaintiff who brings a legal malpractice claim must show that he or she suffered actual and ascertainable damages." Schutz, 2013 WL 3357921, at *7. The Court agrees that Prout has raised a triable issue as to damages. Mazurek's opinion, Prout's testimony, and common sense all suggest that the answer is yes, and this is enough for a reasonable jury to find that Prout suffered damages. **Conclusion** In sum, the Court concludes that Prout has created a triable issue as to each element of his malpractice claim. For these reasons, the Court, denied VRC's motion for summary judgment in its entirety.")

254.     As shown here Foley & Mansfield acted in negligence, had a fiduciary duty, breach this duty and duty breach of the implied covenant of good faith and fair dealing ,breach of contract good faith,. Trivedi suffered damages and financial loss due to that. As their website states national law firm—any person would construe that they would be representing clients in any states , nationwide… https://www.foleymansfield.com/about/

Foley failed to ---it was gross negligence and HARM caused by Foley despite being paid for their service by Trivedi –is irreparable and irreversible as the damages and loss Trivedi suffered…

255.     Foley failed to bring up "at-will employment" exception to public policy –any competitive attorney would have written a strong letter mentioning some or all of it…

256.     Trivedi has pleaded in her complaint pleading legal malpractice must allege (1) the existence of the relationship of attorney and client, (2) the acts or omissions constituting the alleged negligence, (3) cause, and (4) injury.[14]

257.     As shown here Foley & Mansfield acted in negligence, had a fiduciary duty, breach this duty and duty breach of the implied covenant of good faith and fair dealing ,breach of

contract good faith,. Trivedi suffered damages and financial loss due to that.

258.     As stated on Andrew's law firm website  kutakrock.com

*Andrew's practice includes securities litigation, commercial litigation, business and corporate law and general civil litigation. He has been actively involved in multiple securities litigation matters. He has also defended clients involved in investigations by the Securities and Exchange Commission.*

*259.*     Despite this as Andrew who read entire file of Trivedi, he totally neglected SEC claims..
        17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)**though Andrew was not presenting an ISSUER/GE but Trivedi…But the point is attorneys have legal/professional obligations.. Andrew and other attorneys had legal obligations kind of related to 15 U.S.C. 7245- not aid and abet in fraud.**

        *see Markowits v Friedman,* 144 AD3d at 996). "[T]he mere inaction of an alleged aider or abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff" **[ Foley & Mansfield had Fiduciary duty towards plaintiff Trivedi]  Tort action here is that of negligence on Foley attorneys that led to economic loss, emotional distress..[15]**

---

[14] Acharya v. Carroll, 152 Wis. 2d 330, 334, 338 (Wis. Ct. App. 1989) ("An action against an attorney for malpractice may sound in tort or in contract. Boehm v. Wheeler, 65 Wis.2d 668, 676, 223 N.W.2d 536, 540 (1974). Acharya alleges negligence. His case sounds in tort. ") ("Because Acharya commenced this action within six years after he discovered the alleged negligence, he timely commenced this action. We reverse the order of the trial court dismissing his action on the basis of a three-year statute of limitations. ". The establishment of causation and injury may, as here, involve allegations that the attorney's negligence deprived the plaintiff-client of a successful prosecution or defense of a prior claim.")

[15] (""In order to demonstrate proximate cause, [a] plaintiff must establish that but for the attorney's negligence, [the] plaintiff would have prevailed in the matter in question or would not have sustained any ascertainable damages." Schwartz v. Olshan Grundman Frome & Rosenzweig, 302 A.D.2d 193, 753 N.Y.S.2d 482, 486 (1st Dep't 2003). "**A plaintiff claiming legal malpractice must meet a case within a case requirement, and must demonstrate that a reasonable fact-finder [in this case] could conclude that a reasonable fact-finder in the underlying suit would have arrived at a different result but for the**

**260.**     Foley malpractice was a substantial factor in causing the harm suffered including but not limited to file Dodd Frank whistleblower claims, Vacate arbitrator's award. [ Trivedi here can establish that Foley's false representations with a present intent not to perform, were designed to induce [Trivedi] to act or refrain from acting( pursuing SEC claims, vacating arbitrator award), and resulted in damage to [Trivedi] as a result of their justifiable reliance."]

### 20.10 TENTH COUNT
### CIVIL LIABILITY FOR AIDING AND ABETTING FRAUD, AIDING-ABETTING BREACH OF FIDUCIARY DUTY AND CONSPIRACY (All defendants)

**261.**     Plaintiff  realleges, reasserts, incorporates by reference the facts & allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**262.**     Since apart from GE defendants – all defendants are attorneys themselves in their professional duties– except OSHA investigators, Rosa, Frederick, Parker, Daniel Koh..so these claims are more valid because despite being ATTORNEYS themselves – they have continued to participate in this obstruction of justice.

**263.**     Trivedi has established Loss causation  between the primary fraud and the victim's losses throughout this complaint.

**264.**     A "liberal notice pleading" standard should govern aiding-abetting claims, pursuant to FED. R. CIV. P. 8(a). *See* Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 579–80 (E.D.N.Y. 2005).

**265.**     It also has been held that one may be subject to aiding-abetting liability if one "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."Fiol v. Doellstedt, 58 Cal. Rptr. 2d 308, 312 (Cal. **Ct. App. 1996); Saunders v. Superior Ct., 33 Cal. Rptr. 2d 438, 446 (Cal. Ct. App. 1994). *See also* RESTATEMENT (SECOND) OF TORTS § 876(c) (1979).**

**266.**     " Civil liability for aiding and abetting arises when one knows the other's conduct constitutes a breach of duty "and gives substantial assistance or encouragement to the other so to conduct himself . . . ." (*Id.* at 415 n.3 (quoting RESTATEMENT (SECOND) OF TORTS § 876(b) (1964)). )

**267.**     While aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. Trivedi plaintiff's object in asserting such a theory is to hold those who aid and abet in the wrongful act responsible as joint tortfeasors for all damages ensuing from the wrong.

---

attorney's negligence.'' Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, No. 12 Civ. 9459 (PAE), 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013), aff'd, 552 F. App'x 79 (2d Cir. 2014).")

**268.**      Enabling Fraud to Proceed by Failing to Speak When Obligated

**269.**      An aider and abettor of a fraud is regarded as equally responsible, in terms of civil liability, with the perpetrators of the scheme.

**270.**      Where facts are known to the defendant from which the conclusion objectively follows that a fraud is being perpetrated (and assisted by defendant), aider-abettor liability may exist even if the defendant lacked "actual knowledge." *See generally* Javitch v. First Montauk Fin. Corp. 279 F. Supp. 2d 931, 941 (N.D. Ohio 2003).

**271.**      "[T]he mere inaction of an alleged aider or abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff" (Markowits v Friedman, 144 AD3d at 996 [internal quotation marks omitted]).

**272.**      Plaintiff  Trivedi has plead that the actions of the aider-abettor "proximately **caused" the** harm on which the primary liability is predicated. Such causation has been mean the

injury was "a directly reasonably foreseeable result of the conduct." (the aider and abettor) provided

assistance that was a substantial factor in causing the harm suffered.

**20.11 ELEVENTH COUNT**
**5 U.S.C. § 702 under the Administrative Procedures Act ("APA"), 5 U.S.C.§ 706 , 5 U.S.C.§ 704 (All Government Defendants)**

Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702.

**273.**      DOL, ALJ , OSHA ,ARB denied Trivedi's motion for discovery to interrogate **FDA officers, OSHA employees for 2014 complaint regarding timeliness. Trivedi's motion for**

**stay pending discovery and motion for limited discovery to answer ALJ' Timothy McGrath's**

**order to sho**w cause on timeliness was denied. And because of that Trivedi's OSHA SOX claims

were denied. Because Defendant's denial of Plaintiffs' request for testimony from an ALJ  employee

was a "final agency action for which there is no other adequate remedy," And ARB has also affirmed

ALJ's dismissal and denial of discovery, this matter is ripe for judicial review; 5 U.S.C. § 704 (a

"final agency action for which there is no other adequate remedy) – because of that Trivedi have to

fight harder in district court for OSHA SOX right. " I reserve the right and request court's permission

to AMEND this section.

**274.**      This is a grant strategy by DOL defendants who breath GE's $10 billion plus on **Lobbying money and political contribution – because DOL is run by politicians and this flow**

**from high level to low level employees.**

**275.**      Same arguments for APA mentioned above apply to USCOURTS judges.

276.      ("The Court must "assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bechtel* v. *Admin. Review Bd.*, *U.S. Dep't of Labor*, 710 F.3d 443, 446 (2d Cir. 2013)

### 20.12 TWELFTH COUNT
### Claims for  FTCA ;28 U.S.C. §1346(b) ; 29 CFR Subpart B - Claims Against the Government Under the FTCA 29 CFR § 15.100 (a)
## (Against DOL – ARB, ALJ, OSHA, SOL Government Employees Defendants)

277.      These TWO paragraph applies to USCOURTS and DOL both – "Intentional infliction of emotional distress is not one of the intentional torts listed in section 2680(h) for which the United States retained its sovereign immunity. *See* 28 U.S.C. § 2680(h).   According to state tort law, plaintiff Trivedi can recover damages for the intentional infliction of emotional distress.Intentional infliction of emotional distress is designed to protect Trivedi's normal and equable state of mind. Limone v. U.S. 579 F.3d 79 (1st Cir. 2009)  [district courts have] subject matter jurisdiction to adjudicate ... claims for intentional infliction of emotional distress" under the FTCA. "

**Restatement (Third) of Torts §14. Statutory Violations as Negligence Per Se** An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.**DOL defendants' and USCOURT defendants' behav==ior - was neglig==ent as a matter of law.**

278.      Plaintiff  realleges, reasserts,  incorporates by reference the facts& allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

279.      Exhibit 3- TIMELINE has details about OSHA, ALJ, ARB, FTCA at DOL.

280.      ==Stefan Babich – DOL FTCA attorney ; who adjucated & DENIED Trivedi's FTCA claims against DOL, OSHA, ALJ – sent Trivedi an email (**EXHIBIT 16**)– and Stefan didn't know what OSHA SOX is== … attorney Stefan Babich –who wrote that OSHA SOX is for finance cooking books…how come he adjuncate Trivedi FTCA claims

From:Babich, Stefan - SOL <Babich.Stefan@dol.gov>
**ToMadhuri Trivedi<orangeinc@protonmail.com>**
Date:Thursday, March 31st, 2022 at 10:17 PM

Hello, Ms. Trivedi,

………………I wanted to let you know I received your attachments that you emailed while I was out of the office and have had a chance to look at them, including the 2014 complaint.

 I did have a couple of questions to make sure I interpreted the facts of your complaint accurately.
 Similarly, I was a bit unsure about how the Sarbanes Oxley Act related to your claims. As far

77

as I understand, the Sarbanes Oxley Act relates to retaliation for reporting violations of corporate financial reporting/recordkeeping laws, and my impression was that you were saying you were retaliated against for complaining about defects in medical software.

281.     False reports are sufficiently extreme and outrageous to state a claim of IIED = DOL defendants' false statements in 2014 and 2021, administratively closing in 2014 and two dismissal letters in 2021; intentionally caused distress and harm, injury – all enumerated in detail here. As shown here, Trivedi has sufficiently pleaded IIED claims.

282.     DOL defendant possessed the requisite intent for purposes of an IIED claim as they desire to cause consequences of their act, or they believed that the consequences are substantially certain to result from it--------DOL Defendants believed that severe emotional distress was substantially certain to result from it. *Id.* Trivedi claim that the DOL Defendants knew with substantial certainty that (1)administratively closing Trivedi's OSHA complaint in 2014 ; by FALSELY, ILLEGALLY, PERJURY stating that Trivedi claims doesn't fit any of 22 statutes ; and (2) by administratively closing means there was no need to put Trivedi's right to Appeal to ALJ, DOL defendants knew that Trivedi lacked legal knowledge and no legal attorney was advising her – so by not putting her right to Appeal to ALJ – Trivedi in her ignorance would believe what OSHA wrote and DOL's fraud won't be disclosed anywhere as Trivedi won't be appealing to ALJ ( **Robert Kuss and Tamara- must be arrested the moment this FTCA claim form is received**)would cause severe emotional distress, harm, uncertainly, injury, financial loss….it was pre calculated, with full intention and total disregard – as it Terrorizing.

283.     Another mind boggling fact is- Denise Keller from Midwest told Trivedi on phone that OSHA closed it administratively so they, didn't mention that in OSHA letter about Trivedi's right to appeal to ALJ…Trivedi wrote in email about Denise's these statements to Daniel Koh –Anthony Rosa, Frederick James- and immediately Frederick replied via email that they would be happy to dismiss my complaint and put my right to appeal to ALJ---Rosa Anthony sent a letter to dismiss Trivedi's OSHA complaint as untimely and appeal to ALJ…all DOL defendants must be restricted from working for government for rest of their life. Their corruption has crossed all the boundaries.

*Intention* =Conduct is intentional if the DOL actors know of the consequences of their acts with substantial certainty- **A matter of whether the act was intended, not whether the final outcome was intended;** an innocent act or mistaken belief are not defenses- this acts by DOL defendants is 100& certainly a voluntary act: DOL defendants acted individually as well as a TEAM – to conspire. The essence of DOL conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another..

284.     DOL defendants in 2021 and ALJ in 2022 acted with "freshly formed intention" to cause emotional distress; --- because in 2021 –OSHA DOL people knew that Trivedi had sued GE in a federal court …..and also as Nathan threatened me to dismiss my claims if I email his boss Donovan that Nathan is afraid of losing his job for investigating big company GE. (Men' rea- intent and Keller Denise 's her food chain knew – GE being public company- so this is a new fresh motive to cause IIED and continuing pattern which was showed by 2014 DOL defendants.

285.     Intentional infliction of emotional distress, a claim of IIED Trivedi meets following elements:

(1) the DOL defendants acted intentionally, The defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from their actions; (D acts)

(2) the DOL defendant's conduct was extreme or Outrageous; and in a manner that we would describe as beyond the bounds of decency –DOL  D Tamara and Robert knew that Trivedi's immigration was limbo, the country USA where she invested her life , career since 2003 was jeopardized by GE's illegal acts…on top of that Tamara threatened Trivedi on phone that "you were terminated on May 2013—and you're still here filing OSHA complaint"….when Trivedi told Tamara crying about what GE did to her and her immigration was in limbo. A jury could reasonably find it constituted the "most clearly desperate and ultra-extreme conduct"---

also cybersecurity issues, vulnerabilities- that Scott Erven..

286.     Trivedi has established a pattern of outrageous conduct by DOL employees, a pattern of misconduct, series of offensive acts.
                 The DOL officials at the time **of such acts or omissions were acting within the scope of their official duties or employment.** Their Conduct towards Trivedi and handling her whistleblower complaint, twice, qualifies as extreme and outrageous, as it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community. Trivedi had already suffered IIED by her employer GE wrongfully terminating her for not joining GE's fraud scheme…and preexisting emotional distress- which in itself was ongoing—was worsened by DOL employees when Trivedi filed OSHA complaint in 2014. And because Trivedi kept fighting despite being in a distress. It is like army core of engineers – who go through long battle and despite being in distress do what they have to do..that is the case here for Trivedi…Trivedi is a fighter.

                 DOL defendants' conduct is "extreme and outrageous" because it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Degree of corruption, tyranny and egregiousness by DOL employees, goes beyond the level, that Trivedi or any reasonable person can TOLERATE…unless there is a dictatorship and DOL employees enjoy dictator status. DOL employees' Conduct, towards Trivedi is so outrageous as rise to the level of terrorizing.

Courts have allowed IIED claims based on forms of alleged harassment to proceed under the FTCA.

**287.**      Another example of HOW DOL caused Emotional distress…Trivedi was threatened **by Nathan to dismiss OSHA SOX claims if she writes an email to his boss Donova**n and let GE know by dismissing claims…This was a direct threat…Tamara also threatened and only lie detector would prove that she did threatened Trivedi about her immigration when she was talking to Tamara on phone. Her words were enough THEAT that Trivedi didn't want to contact OSHA again…as Tamara threatened her about immigration…at that time Trivedi has not filed her domestic violence visa or person of extraordinary visa.. This sentences here enough to cause emotion distress as to threat…

(3) Plaintiff Trivedi suffered severe emotional distress; and also monetary losses, wage losses, immigration hurdle, her startup got trashed, and list goes on..all the way to ALJ Judge McGrath continue torturing Trivedi.

Plaintiff Trivedi may recover for mental anguish, humiliation, emotional disturbance, fright, terror, alarm and anxiety.  Recovery also include damages –economical loss and distress caused by immigration issues- not to fund her startup - suffered loss of income, emotional damages and other personal injuries – career has been sabotaged, mental anguish, humiliation alarm and anxiety. Resulting from emotional distress, immediately after DOL employees Robert Kuss, Tamara behavior in 2014; and all DOL people since 2021 such as upset stomach , …as OSHA's behavior created ACUTE distress and she was shocked ,—and which lasted for some time( eventually I recovered and decided to fight back and thus filing this FTCA claim) - tension headaches, muscle tenderness , Withdrawn, feeling hopeless and despair, affected sleep schedule, dreadful… emotional disturbance, fright, terror, discomfort, worry, anxiety, , concern, distressed and agitation … **embarrassment and also "sexual harassment  ---pattern of -----such conduct.**

80

**–but had to mediate, exercise – speak to number of friends, family, counselling center people..** Counseling center sister had given hours of talk.  Trivedi watched hours of video by spiritual teaching, read books….but DOL defendants has continued to inflict the emotion distress upon Trivedi by their corrupt acts – all the to now ALJ judge McGrath and his assistant Kristen.

 **(4) DOL defendants' extreme and outrageous conduct caused Trivedi to suffer severe emotional distress.** No reasonable person should be expected to suffer the emotional distress that resulted from the DOL defendants' conduct...
**Causation >>acts by DOL..and as a result >>Trivedi suffering IIED.**

### 20.12.1        Negligence

**288.**         Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**
        **Liability under Negligence stems in this case from DOL employees' failure** to behave with the level of care and duty as government employee and someone of ordinary prudence would have exercised under the same circumstances; absent misfeasance, non feasance, corruption, reckless disregard, gross negligence.

        **Wisconsin statute 895.045 -Negligence 895.045(2) Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action.**
        **Massachusetts General Laws Chapter 231, section 85**
        **There is no distinction between active and passive negligence as to responsibility for injury or full indemnity to a tortfeasor whose negligence was passive. Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383, 202 N.W.2d 268 (1972).**
        **Specific negligent acts and omissions by DOL defendants include but are not limited to the following:**
✓  Not reading arbitration complaint, FDA letter & communication ,email to OSHA about FDA's OEC surgery ban and when lifted Trivedi's first project at GE to integrate remote connectivity platform on OEC surgery; when Trivedi uncovered security vulnerabilities, 600 defects, within hour of that email to Tamara Simpson- Tamara emailed Trivedi back asking her termination date and within days- closed Trivedi's OSHA complaint illegally..
✓  Intentional, corrupt failure in 2014 & 2021; to apply equitable tolling as Trivedi's December 13, 2013 complaint to FDA was filed as a WHISTLEBLOWER complaint – despite that Nathan and entire DOL food chain even in 2021wrote that FDA complaint was not a whistleblower complaint, failed to apply  18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)
✓  Failed to reach out to FDA or DHS about timeliness if they wanted to make sure
✓  Failing to reach out to FBI twice; while corruptly closing Trivedi's OSHA complaint- because if DOL would have reached out to FBI, then Trivedi's OSHA complaint would have been investigated under SOX ; but DOL wanted to cover up, harass, distress and harm Trivedi- so did it do it..closed corruptly.

- ✓ Despite writing that GE removed REMOTE connectivity section from SEC 10-K filing; after 2019 for which Trivedi is a SOX whistleblower –entire DOL food chain omitted and intentionally , corruptly failed to act on it and closed Trivedi's OSHA complaint…entire DOL defendants food chain including Daniel Koh to be arrested and put in JAIL for doing this to Trivedi –their goal is to harass , distress, inflict harm on Trivedi regardless of what…
- ✓ Judge McGrath failed to apply already presented argument about FDA complaint as whistleblower complaint and kept harassing Trivedi to reply to order to show cause.
- ✓ <mark>Despite writing to DOL food chain</mark>
- ✓ DOL defendants committed fraud and perjury; by writing FALSE statement is 2014 and 2021 dismissal letter
- ✓ It was foreseeable that DOL defendants' failure to take above action, omissions would result in injury to Trivedi.
- ✓ There is a temporal and close causal connection between DOl defendants failure and the harm suffered by Trivedi…even future risk, injury.
- ✓ Due to DOL defendants conduct Trivedi has suffered and will continue to suffer DAMAGES and injury; legal fight , expenses, humiliation, distress, loss—as damages listed in detail in this claim submission to be included here…..; including but not limited DOL people and GE people would Try to kill Trivedi or do such extreme harm..Trivedi already lost her father on the same day Trivedi arranged Internet of things – cybersecurity high stakes of billions of devices on February 22, 2017—her father dying on same day –presents circumstantial condition, GE had motive to kill her father as she was close to her..

**Trivedi's claims as to: duty, breach, causation, and damages/harm.**

- ✓ Duty – Under the circumstances, the DOL defendants owed a legal duty to the person Trivedi who brings OSHA complaint
- ✓ Breach – The DOL defendants act or fail to act in a certain way that breaches that legal duty;
- ✓ Causation – It was the actions or inactions of the DOL defendants that caused the injury to the plaintiff Trivedi; and
- ✓ Damages – The defendants' actions lead to injury and harm to the plaintiff Trivedi – as listed in detail what injury, how and what harm
- ✓ —DOL defendants enjoyed SADISTIC pleasure by keeping Trivedi in distress and not ruffling feathers by investigating GE> All to be put in jail.

**289.**      DOL employees' Gross negligence is a lack of care that demonstrates reckless

disregard for the public safety, cybersecurity issues and most importantly HARM and injury to Trivedi 'which is so great it appears to be a conscious violation of Trivedi's rights to safety as well as public health and safety. DOL defendants' conduct is a heightened degree of negligence representing an extreme departure from the ordinary standard of care; more harmful than ordinary negligence because it implies a thoughtless disregard of the consequences and the failure to use even slight care to avoid harming the life of whistleblower Trivedi.

**290.**      Trivedi here presents tort claims, acts that have harm the wellbeing of Trivedi, by **that means violating HER rights and making the guilty** party DOL employees liable for her damages and sufferings. The FTCA allows Trivedi to demonstrate that the damages caused to her are by the negligent acts of DOL employees who were/are working within the capacity of their duties, and thus Trivedi sue the government for this negligence.

**DOL OSHA employees' intentional failure under corruption to exercising due care, failure do their job and failure to execute o**f a statute or regulation malfeasance misfeasance

nonfeasance – public policy—and also DOL violated its own policy. DOl employees have shown tyranny like behavior.

## 20.12.2        Negligence per se

**291.**        Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

- ✓ Pursuant to following statutes, rules and regulations DOL Defendants had a duty when Trivedi filed her OSHA complaint in 2014 and 2021. It also form part of the basis of DOL Defendants' duty in this regard. Duty to investigate and protection as OSHA people –

     **NOTE- Trivedi does not mean to say that for example DOL defendants viol**ated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A   ; but Trivedi means that while GE violated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A; DOL defendants illegally CLOSING /dismissing Trivedi's complaint violated as government employee to handle Trivedi's whistleblower complaint that alleged False claims act violations and OSHA SOX whistleblower violations/protections. Guilty by association and civil liability for obstructing justice and aiding and abetting wrongdoing/fraud by not taking action aka investigating Trivedi's OSHA whistleblower complaint.

- ✓ Violations of safety statutes in Wisconsin are ordinarily[10] Locicero v. Interpace Corp., 83 Wis. 2d 876, 266 N.W.2d 423, 427 (1978); Blanchard v. Terpstra, 37 Wis. 2d 292, 155 N.W.2d 156, 158 n. 1 (1967); Lloyd v. Pugh, 158 Wis. 441, 445, 149 N.W. 150, 152 (1914). [DOL defendants had a duty because Trivedi's claims were for public health and safety )

- ✓ Held to be negligence per se and this principle *238 frequently [ Grube v. Moths, 56 Wis. 2d 424, 202 N.W.2d 261, 267 (1972); Schroeder v. Northern States Power Co., 46 Wis. 2d 637, 176 N.W.2d 336 (1970).] **has been applied in Wisconsin cases. The general rule in Wisconsin is that violation of a criminal statute is negligence per se.**

- ✓ **18 U.S.C. § 1514A (b)(2(D);29 C.F.R. § 1980.103(d)  -OSHA equitable tolling.**

- ✓ osha whistleblower SOX statutes 18 U.S.C. §1514A

- ✓ protection for Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h);SEC Rule17 1CFR § 240.21F-2,

- ✓ Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5

- ✓ Wrongful termination by GE in violation of public policy - common law rule in Massachusetts and Wisconsin

- ✓ common law rule in Massachusetts and Wisconsin for TORT against GE

- ✓ 42 U.S.C. § 299 et seq -The Patient Safety and Quality Improvement Act of 2005

- ✓ 31 U.S.C. §3729 et seq. federal false claims act  quitam AND False claims act and whistleblower retaliation protection statutes of state of Massachusetts  MASS. GEN. LAWS ANN. CH. 12 §§ 5—5O
     Because if OSHA people would have addressed her complaint – then she would had been able to retain a lawyer(quitam claims required an attorney), that a specific violation of the law occurred, and that violation is automatically assumed to be negligent.

- ✓ Trivedi's retaliation claim under false claims act 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing fraud makes claim timely  -- DOL defendants violated this code TWICE.

- ✓ whistleblower protection statutes of Massachusetts

- ✓ Scott erven's 2018 global alert for Trivedi's termination related remote connectivity platform InsiteEXC…, cybersecurity vulnerabilities , Security statutes, public health & safety implementation as a government employee overseeing that laws statutes are ENFORCED, obeyed and those who blow whistle get protected.
- ✓ Though one can argue about Private cause of action available or not under following statutes, regardless; DOL defendants were bound by duty for following statutes.
  - ➤ 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.
  - ➤ 18 U.S. C § 1512 - Tampering with a witness, victim, or an informant
  - ➤ And 18 U.S. C §  1513 - Retaliating against a witness, victim, or an informant 18 U.S. C § 1512 (a) (1) (A) ,18 U.S. C § 1512 (b) (1) ,18 U.S. C § 1512 (b) (2) (A) 18 U.S. C § 1512 (b) (2) (B), 18 U.S. C § 1512 (b) (3), 18 U.S. C § 1512 (c) (2) 18 U.S. C § 1512 (d) (1) ,18 U.S. C § 1512 (d) (2) , 18 U.S. C § 1513 (e), 18 U.S. C § 1513 (f)

**292.**     The defendant violated above code, statute or regulation. Above legal theory establishes the duty and breach elements of negligence. DOL's failure to comply with applicable laws and regulations constitutes negligence per se

(Statutes prescribing certain actions or defining a standard of conduct, either explicitly or implicitly. )

**The plaintiff Trivedi in the class of persons** whistleblower protection statutes of state and federal level, **the code, statute, or regulation was designed to protect. But for DOL Defendants' wrongful and negligent breach of its duties owed to Plaintiff Trivedi and Class Members, Plaintiff and Class Members would not have been injured.**

The plaintiff Trivedi's injury, harm was the kind of injury the code, statute, or regulations that Trivedi mentioned ABOVE was designed to prevent.

The injury and harm suffered by Trivedi was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff Trivedi to experience the foreseeable harms (detailed HARM and DAMGES and INJURY enumerated throughout this claim form). As a direct and proximate result of DOL Defendants' negligent conduct, Trivedi has suffered injury and are entitled to compensatory damages in an amount mentioned in SUM CERTAIN section below.

### 20.12.3     Misfeasance and non feasance under tort

**293.**     Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Malfeasance –DOL defendants' Intentional conduct that is wrongful or unlawful, DOL defendants'  higher level of wrongdoing than nonfeasance (failure to act where there was a duty to act) or misfeasance (conduct that is lawful but inappropriate). Here DOL defendants acts satisfies all three; falls under public corruption as well.

Misfeasance and Nonfeasance are part of tort law.

Misfeasance – DOL defendants committed it when legal action done improperly, which resulted in harm to Trivedi.

Nonfeasance –DOL defendants failure to carry out SERIES of required obligations, which results in injury or harm to Trivedi, public, loss and possible risk to society as Scott Erven's global alert came out in 2018.

### 20.12.4        Intentional Tort -fraud

**294.**        Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Tort of *fraud* – person who makes false statement intended to be acted on must make good the damage naturally resulting from its being acted on.

OSHA people's false statements in dismissal letter – created tort of fraud cause of action.

### 20.12.5        Malfeasance (DOL & USCOURTS )

**295.**        Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Malfeasance is a legal term used in civil and criminal law to describe an illegal and intentional act. Malfeasance is used to describe an act that cannot be defined as a distinct crime. Acts of malfeasance by **DOL defendants and USCOURTS defendants** involve some misconduct and dishonesty.

### 20.12.6        "Conspiracy Actionable Under 42 U.S.C. § 1985 (2) Obstructing justice; intimidating party, witness, or juror  AND (3) Depriving persons of rights or privileges "  individual capacity

**296.**        Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

2021 DOL defendants and 2014 Tamara and Robert – acted a team to conspire- for personal benefit, for being afraid of not investigating big company GE, for negligence, misfeasance, malfeasance and non feasance…to cover up – to exploit Trivedi's hardship, mitigating circumstances.

# Only place DOL defendants from 2014 and 2022 belong is JAIL.

**DOL defendants and GE people put in jail. Open grand jury criminal investigation about both.**

### 20.12.7        Reasonable reliance- found in the tort of fraud

that fraud plaintiffs Trivedi as stated in her email to FDA (**FDA gave this email to Trivedi part of FOIA in August 2016**) that she relied on the DOL defendant's misrepresentation in question -2014 administratively closed letter which stated that her claim doesn't fit any of 22 OSHA statutes, but that the representation was reasonable. Trivedi claims to have been harmed by Tamara- Robert Kuss-DOL defendants' false statements and given Trivedi's knowledge, none of the attorney advising her and all; under the particular circumstances for a while Trivedi believed that the statement were actually true.  Later Trivedi found out that OSHA people lied in 2014 administratively closed letter. \*\*\*\*\*\*\*\*\*\*Email to FDA EXHIBIT

### 20.12.8        Continuing violation, FTCA , and they dictate that the statute of limitations

does not start to run "any earlier than the last day of the ongoing injury from 2014 to present

**Continuing tort ,** The continuing violation doctrine provides that the statute of limitations does not begin to run on a continuing wrong until the wrong has been conclude – applies to GE, OSHA, ALJ …….Trivedi also alleges of continuous unlawful acts , continuing violations, continuing harm.

Anderson v. State, 88 Hawai'i 241, 247-48, 965 P.2d 783, 789-90 (Ct. App. 1998)  **("Alleges a continuing tort sufficient to toll the statute of limitations. Generally, a continuing tort is defined as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action.** A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation, and for there to be a continuing tort there must be a continuing duty." This continuing-tort exception is generally recognized because usually no single incident in a continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, [and] it seems proper to regard the cumulative effect of the conduct as actionable. Moreover, since one should not be allowed to acquire a right to continue the tortious conduct, it follows logically that statutes of limitation should not run prior to its cessation.

Curtis v. Firth, 123 Idaho 598, 850 P.2d 749, 754 (Idaho 1993) (holding that a **claim for intentional** infliction of emotional distress was a continuing tort for purposes of a statute of limitations (quoting Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 821-22 (D.C. Cir. App. 1984)) (quotation marks omitted)). Thus, generally, a continuing tort is a tortious act that occurs so repeatedly that it can be termed "continuous," such that one may say that the tortious conduct has not yet ceased. Accordingly, the statute of limitations cannot run, because the tortious conduct is ongoing. The example of the flooding of one's property, as in the instant case and as illustrated by the Restatement (Second) of Torts, is a good one.")

See also Heard v. Sheahan, 253 F.3d 316, 319 (7th Cir.2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period").

**S**ee below ALJ and OSHA's continuing denial –to request response from GE , varying excuses to dismiss Trivedi's OSHA complaint – constitutes continuing harm….it shows practice of conduct – Thus continuing tort doctrine….- **ranging from 2014 till 2022 by DOL, OSHA, ALJ….to cover up..and not to investigate – even GE committed criminal acts..** by citing the continuing violation doctrine -- which is based on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware of the underlying violation.

*Payton v. Williams*, No. 14-cv-2566, at *14 (N.D. Ill. Dec. 1, 2017) ("Under this doctrine, "where a tort involves a continuing or repeated injury, 'the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.'" *Cooney v. Casady*, 652 F.

86

Supp. 2d 948, 954 (N.D. Ill. 2009) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-86 (Ill. 2003)).")

*Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir.1996) (quoting 54 C.J.S., *Limitation of Actions* § 177 (1987) (**Thus continuing tort doctrine -**Under that doctrine, " 'where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury.' ").

==Trivedi didn't know that OSHA 2014== complaint was closed administratively and thus –she was not given right to appeal to ALJ. Trivedi came to know this( add email from Keller) during conference call with OSHA people Nathan and Keller -- --thus Trivedi didn't know about it..and as soon as she knew—from June 2021 call – She started bringing it to DOL food chain of Koh, Rosa, Frederick..all corrupt..

**The Supreme Court's decision in CTS Corp. v. Waldburger, 134 S.Ct. 2175 (2014), establishes that A statute of limitations begins to run when the cause of action "accrues"**—that is, when the plaintiff can file suit and obtain relief. Measured by this standard, a claim accrues in a personal-injury or property-damage action when the injury occurred or was discovered.

Heardv. Sheahan,253 F.3d316,317 (7thCir. 2001)("Tolling interrupts the statute of limitations after it has begun to run....") Deliberate indifference…there is a pattern…throughout…
Kovacs v. United States, 614 F.3d 666, 676 (7th Cir.2010) (citation omitted).
(The continuing violation doctrine acts as a defense to the statute of limitations, delaying its accrual or start date.")

**the "continuing violations" doctrine, principle of accrual ,postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm**

In re: Evanston Nw. Healthcare Corp. Antitrust Litig., No. 07 C 04446, 2016 WL 4720014, at *7 (N.D. Ill. Sept. 9, 2016) ("**Another principle of accrual, called the "continuing violations" doctrine, postpones the beginning of the limitations period where the defendant inflicts continuing and accumulating harm. Heard, 253 F.3d at 319; see also Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968) (continuing violation applies where the defendant's conduct "inflict[s] continuing and accumulating harm on [the plaintiff].").**

As noted earlier, the continuing violations doctrine postpones the limitations period where the defendant inflicts continuing and accumulating harm. *Heard*, 253 F.3d at 319. Thus, in order for the doctrine to apply, the plaintiff must be challenging "not just one incident of [unlawful] conduct ... but an unlawful practice that continues into the limitations period ...." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, (1982). In continuing violations cases, "the complaint is timely when it is filed within [the limitations period, measured from] the last asserted occurrence of that practice."[26] *Id.*; *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984) ("[I]f a continuing violation extends into the statutory period, the victim is entitled to complain about the whole violation, no matter how long ago it began ....").

The Court rejected United's argument that "because the earliest impact on Hanover of United's lease only policy occurred in 1912, Hanover's [claim] arose during that year and is now barred by the ... statute of limitations":

**We are not dealing with a violation which, if it occurs at all, must occur within some specific and limited time span. Rather, we are dealing with conduct which constituted a *continuing violation* of the Sherman Act and which *inflicted continuing and accumulating harm* on Hanover. Although Hanover could have sued in 1912 for the injury then** being inflicted, it was equally entitled to sue in 1955.

"A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period,. See, e.g., *M.H.D. v. Westminster Schools,* 172 F.3d 797, 804-05 (11th Cir. 1999); *Interamericas Investments , Ltd. v. Board of Governors,* 111 F.3d 376, 382 (5th Cir. 1997); *Sable v. General Motors Corp.,* 90 F.3d 171, 176 (6th Cir. 1996); *Rapf v. Suffolk County,* 755 F.2d 282, 292 (2d Cir. 1985); *Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984). When a single event gives rise to continuing injuries, as in *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir. 1982) "

297.      Harvey v. United States, 685 F.3d 939 (10th Cir. 2012) (Determination of when a claim accrues under Federal Tort Claims Act (FTCA) is a matter of federal, not state, law. 28 U.S.C.A. § 2401(b).)

*Molina-Garcia v. Fardon*, No. 18-2322, at *3 (7th Cir. Mar. 5, 2019) ("*see also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) (equitable tolling is available in FTCA suits). ")

"Federal claim-accrual rules govern cases arising under the FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." *Devbrow v. Kalu*, 705 F.3d 765, 770  (7th Cir. 2013); *Heard v. Sheahan*, 253  F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. *Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013)"

## This doctrine applies "'where an entire course of conduct combines to produce an injury'—in other words, when the defendant carries out a continuing wrongful act."

*Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("Though we have no quarrel with the district court's conclusion that Alexander knew or should have known by the time of Freeman's July 2008 deposition that agents of the federal government potentially caused his injury, it does not follow from this that Alexander's IIED claim is untimely, because the agents' alleged extreme and outrageous conduct did not cease with either Alexander's arrest or Freeman's deposition. Rather, the complaint alleges that the tortious conduct—which included witness intimidation, perjury, and suborning of perjury—continued right through Alexander's trial. Any one of these later actions might suffice to provide the basis for a timely IIED claim.")

*Alexander v. United States*, 721 F.3d 418, 425 (7th Cir. 2013) ("In situations such as this, where the alleged injury can be characterized as a continuing one, federal claim-accrual rules (which govern in cases arising under the FTCA , *id.*) **dictate that the statute of limitations "does not start to run** *any earlier* **than the last day of the ongoing injury."** *Devbrow v. Kalu,* **705 F.3d 765, 770 (7th Cir.2013) (emphasis in original); see also** *Heard v. Sheahan,* **253 F.3d 316, 318–19 (7th Cir.2001) (discussing the federal "continuing violation" doctrine).** Regardless of whether we view the agents' conduct as a continuing wrong or as a series of discrete, independently actionable harms,

some of which occurred within the limitation period, we conclude that Alexander's IIED claim is timely.")

*Britton v. Melvin*, 21-cv-1032-JBM, at *3 (C.D. Ill. Nov. 2, 2021) **("continuing violation is a claim where, among other things, 'the state actor has a policy or practice that brings with it a fresh violation each day.'"** *Loza v. Josephson*, No. 16-8111, 2018 WL 4095097, at *3 (N.D. Ill. Aug. 28, 2018) (citing *Savory v. Lyons*, 469 F.3d 667, 672-73 (7th Cir. 2006)).

**Plaintiff Trivedi  has adequately pled a continuing violation as …………………..that it continued from 2014 through the present day. ")**

*Britton v. Melvin*, 21-cv-1032-JBM, at *2 (C.D. Ill. Nov. 2, 2021) ("claiming that the statute of limitations should be tolled as the complained-of conditions represent a continuing violation. Plaintiff cites *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) which provides that when a plaintiff is subjected to continuing harm, the plaintiff may recove**r for all of the harm, even if some of the events occurred outside of the statute of limitations. ")**

OSHA, DOL defendants subjected Trivedi to suffer as a VICTIM for their illegal acts from

(1)2014 –first complaint and

(2) Continued in 2021- second complaint,

(3) Continued in ALJ case where ALJ McGrath also issued random order to show cause;

   Which shows he hasn't read in details Trivedi's objections nor understood the history; his

   order is based on OSHA's false statements; is prejudiced biased and done to distress

   Trivedi, also ALJ denied motion for discovery.

(4)continued in ARB affirming ALJ by issuing fractured,  incomplete order – intentionally

OMITTING crucial , critical facts.

   **As Trivedi presented solid legal arguments, with case laws above for continuing**

**violations, the plaintiff Trivedi legally may recover for all of the harm, even if some of the**

**events occurred outside of the statute of limitations aka Trivedi's FTCA claims against DOL**

**for 2014 illegal closure of whistleblower complaint"** (federal claim-accrual rules (which govern in

cases arising under the FTCA , *id.*) **dictate that the statute of limitations "does not start to run**

***any earlier* than the last day of the ongoing injury."** )

**298.**     Trivedi's OLJ objections, motions, OSHA submission has tons of legal argument about equitable tolling, continuing violations; making Trivedi complaint timely.

### 20.13 THIRTEENTH COUNT
### Claims for violations of constitutional rights pursuant to  Bivens
### (All DOL Employees Named Individually In This Complaint as defendants)

**In Bivens, The Supreme Court has recognized an implied private action against federal officials -- the Court spoke directly to the attendant harm that such power can cause when abused.**[16]

**The Supreme Court has recognized an implied private action against federal officials in (1)**_Bivens_, 403 U.S. at 396, (2)_Davis v. Passman_, 442 U.S. 228, 248-49 (1979) (providing a _Bivens_ remedy for gender discrimination under the Fifth Amendment Due Process Clause); _(3)Carlson v. Green_, 446 U.S. 14, 18-21 (1980) (4) _Farmer v. Brennan_, 511 U.S. 825 (1994),

**DOL and USCOURTS individual defendants; constitutional violations involved heightened mens rea elements,  Trivedi has  plead that defendants had both personal knowledge of the allegedly unconstitutional  acts and  discriminatory intent.**

**299.**     [Due process] tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty and property,The Fifth Amendment due process clause extends this prohibition to the federal government when [THEIR ACTIONS] violates due process of law.

**300.**     Bivens cause of action: of Trivedi

- ✓   Plaintiff Trivedi has  constitutionally protected right (s);
- ✓    Federal officer (s) acting under color of federal law/authority violated that right;
- ✓   Plaintiff lacks a statutory cause of action, **or an available statutory cause of action does not provide a meaningful remedy;** and
- ✓    An appropriate remedy, namely damages, can be imposed.

**Trivedi allege two elements: (1) that a recognized liberty or property interest has been interfered with by the DOL and USCOURTS  Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient.**

**DOL & USCOURTS are CITING each other's dismissals and rulings – which is false,** incomplete ---to dismiss Trivedi's claims…Done without DISCOVERY, JURY , TRIAL..Trivedi is deprived of a FAIR trial, opportunity to be heard, gave 100% consideration to GE's perjury based

---

[16] Butz v. Economou, 438 U.S. 478 (1978), reaffirmed this holding, stating that "the decision in Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Id., at 504.

filings, disregarded all MATERIALLY DISPUTED FACTS, and mountain of EVIDENCE **in FAVOR of Trivedi….This is clear cut DEPRIVATION**

301.       Trivedi's claim of deprivation of property—another enumerated interest protected by the Fifth Amendment; that she was deprived of: (1) her business, career, financial loss and reputation (though this could be construed as a property/liberty hybrid)…
Her startup is killed… While Trivedi has been FIGHTING this corruption and this lawsuits - .Google bought FITBIT…and Orangehealth was for bridging GAP between FITBIT and facebook..Trivedi has suffered loss while she worked very hard.

302.       *Davis v. Passman*, 442 U.S. 228 (1979) ("(a) The equal protection component of the Fifth
Amendment's Due Process Clause confers on petitioner a federal constitutional right to be free from gender discrimination that does not serve important governmental objectives or is not substantially related to the achievement of such objectives. Pp. 234-235. *Craig* v. *Boren*, 429 U.S. 190, 197 (1976)." *Califano* v. *Webster*, 430 U.S. 313, 316-317 (1977). ")

[]       The Fifth Amendment provides that "[no] person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." In numerous decisions, this Court "has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws. "To withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important governmental objectives"

303.       Trivedi's legal argument in amended complaint, under, Private cause of action - **ECF 51 Page 101 – 108 – would apply to count I.**  ( As it shows that judges –including ALJ, ARB judges -want to dismiss claims – one way or another – then private cause of action would apply to all defendants(GE, Fragomen,Foley& govt). For government defendants under BIVENS REMEDY as well)

**Moreover: When a plaintiff asserts constitutional rather than statutory rights, the Court is more willing to imply a private right to sue, both on the theory that defining the means for the enforcement of constitutional rights is the federal judiciary's special focus, and because these cases lack the separation-of-powers concern Davis v. Passman, 442 U.S. 228, 241 (1979)**

As the Supreme Court explained in Davis: For example, statutory rights and obligations are often embedded in complex regulatory schemes, so that if they are not enforced through private causes of action, they may nevertheless be enforced through alternative mechanisms, such as criminal prosecutions or other public causes of actions. In each case, however, the question is the nature of the legislative intent informing a specific statute . . . . The Constitution, on the other hand, does not "partake of the prolixity of a legal code." McCulloch v. Maryland, 17 U.S. 316, 407 (1819). It speaks instead with a majestic simplicity. One of "its important objects," ibid., is the designation of rights. And in "its great outlines," ibid., the judiciary is clearly discernible as the primary means through which these rights may be enforced. Id. (internal citations omitted)

**When a judge acts intentionally and knowingly to deprive a person of his constitutional rights he exercises no discretion or individual judgment; he acts no**

**longer as a judge, but as a " minister" of his own prejudices. [386 U.S. 547, 568]. [This is what has been happening with Trivedi]**

When the state is one of the perpetrators and violators, there can be no expectation of just, indeed any, relief from it. The State cannot cause a federal violation, and then try to prohibit litigants from seeking redress in the federal courts for those same violations (i.e. the state cannot violate our fundamental rights, and then try to have us dismissed out of federal court for seeking vindication of those rights) ' "We have long recognized that a state cannot create a transitory cause of action and at the same time destroy the fight to sue on that transitory cause of action in any court having jurisdiction", Tennessee Coal, Iron & R, Co. v. George, 233 U.S. 354, 360 (1914)' cited in Marshall v. **Marshall (2006).Judges' oath of office includes the undertaking to uphold the laws and Constitution of the United States. Any Judge violating such undertakings loses jurisdiction, resulting in his orders being VOID, and he himself commits a treasonable offense against the United States.**
Title 18, U.S.C., Section 242 -Deprivation of Rights Under Color of Law

**Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").Judges never recused themselves, hostile manner dismissed Trivedi's claims.**

# COUNT 13 BIVENS claims against DOL individuals

**Claims for supervisory liability regarding each of the mentions violations of Trivedi's constitutional rights**
**Fifth Amendment claims for violation of Trivedi's Due Process rights**
**Claim for failure to intercede**
(discriminated by gender violated equal protection principles -)
Claims for violations of due process
    **304.**       CFR § 18.201 (e) Opportunity to be heard… comes under Due process …
    **305.**       Due to their intentional conduct and reckless , deliberate indifference – declined or refused to fulfil their duty – constitutional right not to be deprived of. Ongoing sabotage of GE to paint Trivedi as FAILURE..while not DENYING that GE was/is engaged in ongoing FRAUD – but at the same time TOTALLY TARNISH her REPUTATION, image , …While OSHA , ALJ , ARB dismissals of Trivedi claims – totally PAINT Trivedi as at fault person – based on TIMELINESS – while siding GE – when GE did huge fraud… DOL defendants individually have knowingly & intentionally, to Terrorize (Because Trivedi is WOMAN , SINGLE, immigrant…enjoys sadistic pleasure)TRIVEDI, have  put FALSE, incomplete, partial FACTS – about Trivedi…AND DOL defendants have failed to vindicate her…Trivedi's name MUST BE CLEARED – and so HER being a  WHISTLEBLOWER by HOLDING GE accountable…so that in FUTURE – she doesn't have to PROVE over and OVER again that it was GE who screwed up…

All DOL defendants – named individual defendants, had opportunity to prevent ongoing HARM to TRIVEDI's reputation, career, financial loss – They again failed to do so[ failure to act - In order for liability to attach, there must have been realistic opportunity to intervene to prevent the harm from

occurring Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). ]. [ Trivedi has plausibly plead that "the failure to intercede HAS been a proximate cause of the harm." Bah v. City of New York, No. 13-cv-6690 (PKC), 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014); accord O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988 )]…and as in Davis *v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender discrimination under the Fifth Amendment Due Process Clause)– gender , race , nationality discrimination – because if Trivedi would have been a MALE, WHITE , US CITIZEN – than they would have not terrorized – the same way they did Trivedi. Trivedi suffered the substantial and continuing injuries  and damages as set forth in this complaint.**Claims for supervisory liability – acting within scope of their employment and under color of federal law, are personally involved in this unconstitutional misconduct against Trivedi.**
***************Count 14 ends here

**************************************************************

## 20.14 COUNT 14 & 15 (FTCA)
## <u>BIVENS claims</u>
## Claims for violations of constitutional rights pursuant to  Bivens (All USCOURTS Employees – Judges-<u>though they are not defendants-this claim shows how they have violated )</u>

**Fifth Amendment claims for violation of Trivedi's Due Process rights**
**Claim for failure to intercede**

This law further prohibits a person acting under color of law, statute, ordinance, regulation or custom to willfully subject or cause to be subjected any person to different punishments, pains, or penalties, than those prescribed for punishment of citizens on account of such person being an alien or by reason of his/her color or race.

Trivedi constitutional rights have been violated and that she has no effective means other than the this

lawsuit to vindicate these rights.

Due to their intentional conduct and reckless , deliberate indifference – declined or refused to

fulfil their duty – constitutional right under FIFTH AMENDMENT , not to be deprived of REPUTATION. Ongoing sabotage of GE to paint Trivedi as FAILURE..while not DENYING that GE was/is engaged in ongoing FRAUD – but at the same time TOTALLY TARNISH her REPUTATION, image… …While OSHA , ALJ , ARB dismissals of Trivedi claims – totally PAINT Trivedi as at fault person – based on TIMELINESS – while siding GE – when GE did huge fraud…**Judges have knowingly & intentionally, to Terrorize (Because Trivedi is WOMAN , SINGLE, immigrant…enjoys sadistic pleasure) TRIVEDI, have  put FALSE, incomplete, partial FACTS – about Trivedi…..**

AND JUDGES have failed to vindicate her…**Trivedi's name MUST BE CLEARED – and so HER being a  WHISTLEBLOWER by HOLDING GE accountable…so that in FUTURE – she doesn't have to PROVE over and OVER again that it was GE who screwed up…**

Judges had opportunity to prevent ongoing HARM to TRIVEDI's reputation, career, financial loss – They again failed to do so[ failure to act - In order for liability to attach, there must have been realistic opportunity to intervene to prevent the harm from occurring -Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  ].[ Trivedi has plausibly plead that "the failure to intercede HAS been a proximate cause of the harm." Bah v. City of New York, No. 13-cv-6690 (PKC), 2014 WL 1760063, at *7 (S.D.N.Y. May 1, 2014); accord O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988 )]…and

as in Davis v. *v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender discrimination under the Fifth Amendment Due Process Clause) – gender , race , nationality discrimination – because if Trivedi would have been a MALE, WHITE , US CITIZEN – than Judges would have not terrorized – the same way they did Trivedi. Trivedi suffered the substantial and continuing injuries and damages as set forth in this complaint.

   **306.**      Acting within scope of their employment and under color of federal law, all the judges mentioned in this complaint as PARTIES, are personally involved in this unconstitutional misconduct against Trivedi .

> **20.14.1 Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause.").**

Judge Saris nor Judge Kelley recused themselves. Nor first circuit considered. Thus Triveid has valid BIVENS claims for violations.

Trivedi constitutional rights have been violated and that she has no effective means other than the this lawsuit to vindicate these rights.

**Federal law requires the automatic disqualification of a Federal judge under certain circumstances.**
   **In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective**

94

**observer would entertain reasonable questions about the judge's impartiality**. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." [Emphasis added]. Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).

*Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality*. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. §455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process.").

*Fraud Upon the Court is where the Judge (who is NOT the "Court")* does NOT support or uphold the Judicial Machinery of the Court. The Court is an unbiased, but methodical "creature" which is governed by the Rule of Law... that is, the Rules of Civil Procedure, the Rules of Criminal Procedure and the Rules of Evidence, all which is overseen by Constitutional law.
**[In Trivedi's case there has been no discovery, fact checking, trial , jury—JUDGES have even committed PERJURY – by putting FALSE statements related to what happened in THEIR ORDERS-**

# COUNT 15

# The Federal Tort Claims Act, 28 U.S.C. §1346(b) ; 29 CFR Subpart B
### - Claims Against the Government Under the FTCA 29 CFR § 15.100 (a) (USCOURTS & Judges Defendants)

# (All USCOURTS Employees – Judges-though they are not defendants- this claim shows how they have violated )

**307.**     Plaintiff  realleges, reasserts, incorporates by reference the facts& allegations stated in the previous paragraphs; as though fully set forth herein, as well as facts currently unknown.

**308.**     Trivedi has filed form SF -95 with USCOURT and has received confirmation so as to administrative filing

**309.**     First circuit Judge Sandra Lynch didn't participate in en banc review..but she was a panel judge for motion to recuse judge Kelley appeal; Trivedi had put a RED FLAG on judge Kelley when she issued R&R...judge Lynch denied that and later she recused herself for whatever reason ; instead of addressing that

**310.**     Magistrate judge Kelley was reappointed; despite my opposition.I had written o judge Kelley's reappointment panel judger Mark that it was a reward for corruption that around the time – judge Kelley dismissed Trivedi claims – she became chief judge. Trivedi had phone conversation with panel members, vikas dhar and Karin bell- sent them many emails to prove how corrupt judge Kelley ahs been..

**311.**     Judicial corruption -may show as bias in the orders issued, hearing and judgment of lawsuit, with decisions clearly favoring one party over the other.

312.       A tort to the person is a tort involving or consisting in an injury to one's person, reputation, or feelings. Wrong that results in injury. Injury" includes, but is not limited to, any physical or mental damage or injury or financial damage

313.       Since 2016 when DHS lawsuit was filed – Trivedi has been suffering injuries by these corrupt judges.

**For DHS lawsuit,  When Trivedi went to district court and met judge James Donato's court deputy..Lisa R. Clark….she commented that "we are not doing woman thing in your case--- and you don't go to bed with them..but some women do use being women as TOOLS..so we are not doing woman thing".**( since Judge Donato was not ruling for more than six month on pending motions..I attended HEARING in Judge Donato's courtroom for some big antitrust case..then met his deputy Clark when hearing was over)me being a woman is one of my mitigating circumstances..but both my Boston judges are women-- so what they did--nothing....USA has converged into third world country-

> **20.14.2** If one federal judge Andrew Hanen of Texas can find my material worthy to do grand jury criminal investigation – how come another federal judge Donato – dismiss claims – I am saying as it was related to GE's retaliation – even if we not fight for extra ordinary ability portion because my 2016 lawsuit was against department of homeland security for EB1 – a person of extra ordinary ability
>
> **20.14.3** And same thing if one federal judge Hanen can find my material worthy to do grand jury criminal investigation – how come another federal judges such as judge Saris, judge Kelley and first ciruit judges - David J. Barron, Bruce M. Selya, and Rogeriee Thompson TOTALLY TRASH TRIVEDI's claims at MOTION to dismiss

314.       Denying Trivedi DUE PROCESS , DISCOVERY, TRIAL – and doing this to continue inflict injury, harm, intentional infliction of emotional distress, harassment and continue BE CORRUPT.It is illegal, corruption and 100% TORT , BIVENS claims that judge Kelley, judge Saris and first circuit panel  took judicial notice of 2016 lawsuit against DHS- in totally OUT OF CONTEXT to this GE lawsuit….If these corrupt judges want to take judicial notice of DHS lawsuit

> **20.14.4** More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution

315.       When an unreconstructed Virginia county judge excluded jurors on the basis of race, judicial immunity did not protect the judge in Ex Parte Virginia case. And a century later, when an Illinois county judge fired a parole officer because she was a woman (Forrester, 221), judicial immunity did not protect the judge (Id., 231).

**316.** Trivedi has alleged at least 35 plus times, in her court cases that she is treated like this because of GE's connections, Trivedi's race, immigration, not white , woman, divorced…Trivedi is a prefect material to execute Intentional, conspiratorial conduct – for which these judges get SADISTIC PLEASURE…there are vultures.

**317.** Judge Mark G. Mastroianni was performing task of reappointing judge Kelley- and as per district court announcement of judge Kelley's reappointment- district court approved her—

**Ex Parte Virginia, 100 U.S. 339 (1880)**(It is idle, therefore, to say that the act of Congress is unconstitutional because it inflicts penalties upon State judges for their judicial action. It does no such thing. ..Upon the whole, as we are of opinion that the act of Congress upon which the indictment against the petitioner was founded is constitutional, and that he is correctly held to answer it, and as, therefore, no object would be secured by issuing a writ of habeas corpus, the petitions are Denied.) Mireles v. Waco, 502 U.S. 9, 10, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991) AND Footnote 6 in this case --Levine v. Lawrence, No. 03-CV-1694(DRH ETB), 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex parte Virginia,* 100 U.S. 339, 348–349, 25 L.Ed. 676 (1880))

*A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.*

> **20.14.5Continuing TORT – judge Donato to judge Saris –no one wants to address fraud by GE- but only wants to act as GE's general counsel**

I understand that person of extra ordinary was a separate claim, but judge Donato didn't care like judge Hanen to address..nor judge Saris-instead illegally dismissed Trivedi's valid claims as untimely. While totally being blind to GE's fraud.
"Federal claim-accrual rules govern cases arising under the FTCA , and they dictate that the statute of limitations does not start to run "any earlier than the last day of the ongoing injury." Devbrow v. Kalu, 705 F.3d 765, 770  (7th Cir. 2013); Heard v. Sheahan, 253  F.3d 316, 318-19 (7th Cir. 2001). A tort can be said to continue so long as the tortious acts, and not the injury caused by them, continues to happen. Alexander v. United States, 721 F.3d 418, 425 (7th Cir. 2013)"
This doctrine applies "'where an entire course of conduct combines to produce an injury'—in other words, when the defendant carries out a continuing wrongful act."
☐     Plaintiff Trivedi  has adequately pled a continuing violation as …………………..that it continued from 2016 through the present day. ")

> **20.14.6Tort by judges, sadistic pleasure.**

**318.** Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges.**Judges are fine with GE's statutory violations; but concerned that it is untimely ( in their own corrupt interpretation) and/or Trivedi failed to file administrative claims with agency, or that for securities fraud- Trivedi should not have relied on GE's claims –if** Trivedi knew that GE was doing fraud – for putting all these in their ORDER – all all to be PUT in a JAIL at least for ONE YEAR.

**319.** Trivedi has been intentionally not given/afforded a 'full and fair opportunity' to litigate her claims in PUBLIC FORUM.Restatement (Second) of Torts § 286 (1965). In Estate of Kelly v. Falin, 127 Wn.2d 31, 896 P.2d 1245 (1995), the court held that a violation of a criminal statute constitutes evidence of negligence only if the statute was intended to protect both the person bringing the action and the particular interest involved. The violation of a statute, ordinance, or

administrative rule is actionable only if it was a proximate cause of the accident or injury in question. Ward v. Zeugner, 64 Wn.2d 570, 392 P.2d 811 (1964). If there is a prima facie causal connection and if the requirements of Restatement (Second) of Torts section 286 (1965) are met, the proximate cause question is for the jury. Kness v. Truck Trailer Equip. Co., 81 Wn.2d 251, 501 P.2d 285 (1972).

320.     Wisconsin and Massachusetts personal injury tort --- Trivedi's claims are **cognizable under common law, Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 1 et seq.,   Wis. Stat. § 893.57 Intentional torts -** other intentional tort to the person shall be commenced within 3 years after the cause of action accrues. -- and  Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care,  --- more than negligence in mismanaging, fraudulently handling **Trivedi's complaint, b**ut a higher level of wrongdoing and even conscious malfeasance."

321.     Plaintiff Trivedi prove such recklessness that  USCOURTS defendants possessed knowledge of facts regarding Trivedi's complaint being VALID whistleblower statutes, in corrupt manner; but made FALSE statements, this behavior prove that  USCOURTS defendants knew or should have known that they were misrepresenting material facts related to Trivedi's complaint; **Scientier – that makes  USCOURTS defendants CULPABLE.**

### 20.14.7 Intentional infliction of emotional distress

322.     Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**
**False reports are sufficiently extreme and outrageous to state a claim of IIED =  USCOURTS defendants' false statements and dismissal ; intentionally caused distress and harm, injury – all enumerated in detail here. As shown here, Trivedi has sufficiently pleaded IIED claims.**
323.     USCOURTS defendant possessed the requisite intent for purposes of an IIED claim as they desire to cause consequences of their act, or they believed that the consequences are substantially certain to result from it-------- USCOURTS Defendants believed that severe emotional distress was substantially certain to result from it. *Id.* Trivedi claim that the  USCOURTS Defendants knew with substantial certainty that their action would cause severe emotional distress, harm, uncertainly, injury, financial loss….it was pre calculated, with full intention and total disregard – as it Terrorizing.

324.     Intentional infliction of emotional distress is designed to protect Trivedi's normal and equable state of mind. Limone v. U.S. 579 F.3d 79 (1st Cir. 2009)  [district courts have] subject matter jurisdiction to adjudicate ... claims for intentional infliction of emotional distress" under the FTCA.
*Intention* =Conduct is intentional if the USCOURTS actors know of the consequences of their acts with substantial certainty- **A matter of whether the act was intended, not whether the final outcome was intended;**  an innocent act or mistaken belief are not defenses- this acts by USCOURTS defendants is 100& certainly  a voluntary act:  USCOURTS defendants acted individually as well as a TEAM – to conspire. The essence of  USCOURTS conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another..

**325.** USCOURTS defendants acted with "freshly formed intention" to cause emotional distress; ---

**Intentional infliction of emotional distress, a claim of IIED Trivedi meets following elements:**
(1) the  USCOURTS defendants acted intentionally, The defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from their actions; (D acts)
(2) the  USCOURTS defendant's conduct was extreme or Outrageous; and in a manner that we would describe as beyond the bounds of decency –A jury could reasonably find it constituted the "most clearly desperate and ultra-extreme conduct"---
also cybersecurity issues, vulnerabilities- that Scott Erven..

**Trivedi has established a pattern of outrageous conduct by  USCOURTS employees, a pattern of misconduct, series of offensive acts.**
The  USCOURTS officials at the time **of such acts or omissions were acting within the scope of their official duties or employment.** Their Conduct towards Trivedi and handling her whistleblower complaint, twice, qualifies as extreme and outrageous, as it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.
Trivedi had already suffered IIED by her employer GE wrongfully terminating her for
not joining GE's fraud scheme…and preexisting emotional distress- which in itself was ongoing—
was worsened by  USCOURTS employees when Trivedi filed federal complaint in 2016 and 2019.
And because Trivedi kept fighting despite being in a distress. It is like army core of engineers – who go through long battle and despite being in distress do what they have to do..that is the case here for Trivedi…Trivedi is a fighter.
USCOURTS defendants' conduct is "extreme and outrageous" because it is "so
outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Degree of corruption, tyranny and egregiousness by  USCOURTS employees, goes beyond the level, that Trivedi or any reasonable person can TOLERATE…unless there is a dictatorship and  USCOURTS employees enjoy dictator status.  USCOURTS employees' Conduct, towards Trivedi is so outrageous as rise to the level of terrorizing.
Courts have allowed IIED claims based on forms of alleged harassment to proceed under the FTCA. Plaintiff Trivedi may recover for mental anguish, humiliation, nervous shock,
emotional disturbance, fright, terror, alarm and anxiety.  Recovery also include damages –economical loss and distress caused by immigration issues- not to fund her startup - suffered loss of income, emotional damages, death of her parent and other personal injuries – career has been sabotaged, mental anguish, humiliation alarm and anxiety.  Resulting from emotional distress, immediately after their behavior …as judges' behavior created ACUTE distress, such as upset stomach and she was shocked ,—and which lasted for some time( eventually I recovered and decided to fight back and thus filing this FTCA claim) - tension headaches, muscle tenderness , Withdrawn, feeling hopeless and despair, affected , dreadful… emotional disturbance, fright, terror, discomfort, worry, anxiety, , concern, distressed and agitation … **embarrassment and also "sexual harassment  ---pattern of ----such conduct.**

 **–but had to mediate, exercise – speak to number of friends, family, counselling center people..**
Counseling center sister had given hours of talk.  Trivedi watched hours of video by spiritual teaching, read books….but  USCOURTS defendants has continued to inflict the emotion distress upon Trivedi by their corrupt acts –

**(4)  USCOURTS defendants' extreme and outrageous conduct caused Trivedi to suffer severe emotional distress.** No reasonable person should be expected to suffer the emotional distress that resulted from the USCOURTS defendants' conduct...

**Causation >>acts by  USCOURTS..and as a result >>Trivedi suffering IIED.**

### 20.14.8 Negligence

326.       Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

**Liability under Negligence stems in this case from** USCOURTS **employees' failure** to behave with the level of care and duty as government employee and someone of ordinary prudence would have exercised under the same circumstances; absent misfeasance, non feasance, corruption, reckless disregard, gross negligence.

Wisconsin statute 895.045 -Negligence 895.045(2) Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action.

Massachusetts General Laws Chapter 231, section 85

There is no distinction between active and passive negligence as to responsibility for injury or full indemnity to a tortfeasor whose negligence was passive. Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis. 2d 383, 202 N.W.2d 268 (1972).

Specific negligent acts and omissions by USCOURTS defendants include but are not limited to the following:

- ✓ Not reading arbitration complaint, FDA letter & communication , FDA's OEC surgery ban and when lifted Trivedi's first project at GE to integrate remote connectivity platform on OEC surgery; when Trivedi uncovered security vulnerabilities, 600 defects..
- ✓ Intentional, corrupt failure in 2014 & 2021; to apply equitable tolling as Trivedi's December 13, 2013 complaint to FDA was filed as a WHISTLEBLOWER complaint –failed to apply  18 U.S.C. § 1514A(b)(2(D);29 C.F.R. § 1980.103(d)
- ✓ Failed to reach out to FDA or DHS about timeliness if they wanted to make sure
- ✓ Failing to allow discovery –so Trivedi can call FBI agents as witness; while corruptly dismissing Trivedi's complaint- bbut judges wanted to cover up, harass, distress and harm Trivedi- so did it do it..closed corruptly.
- ✓ Denied Trivedi DISCOVERY because allowing that would EXPOSE GE>
- ✓ Despite writing that GE removed REMOTE connectivity section from SEC 10-K filing; after 2019 for which Trivedi is a SOX whistleblower –entire judges food chain omitted and intentionally , corruptly failed to act on it and dismissed Trivedi's complaint…entire judges / USCOURTS defendants food chain to be arrested and put in JAIL for doing this to Trivedi – their goal is to harass , distress, inflict harm on Trivedi regardless of what…
- ✓ Judges failed to apply already presented argument about FDA complaint as whistleblower complaint and kept harassing Trivedi to reply to order to show cause.
- ✓ USCOURTS defendants committed fraud and perjury; by writing FALSE statements in dismissal order – report and recoomendation and afterwards – adopting that R&R and later first circuit AFFIRMING IT>
- ✓ It was foreseeable that USCOURTS defendants' failure to take above action, omissions would result in injury to Trivedi.

- ✓ There is a temporal and close causal connection between USCOURTS defendants failure and the harm suffered by Trivedi…even future risk, injury.
- ✓ Due to USCOURTS defendants conduct Trivedi has suffered and will continue to suffer DAMAGES and injury; legal fight , expenses, humiliation, distress, loss—as damages listed in detail in this claim submission to be included here…..; including but not limited USCOURTS people and GE people would Try to kill Trivedi or do such extreme harm..Trivedi already lost her father on the same day Trivedi arranged Internet of things – cybersecurity high stakes of billions of devices on February 22, 2017—her father dying on same day –presents circumstantial condition, GE had motive to kill her father as she was close to her..

**Trivedi's claims as to: duty, breach, causation, and damages/harm.**

- ✓ Duty – Under the circumstances, the USCOURTS defendants owed a legal duty to the person Trivedi who brings complaint
- ✓ Breach – The USCOURTS defendants act or fail to act in a certain way that breaches that legal duty;
- ✓ Causation – It was the actions or inactions of the USCOURTS defendants that caused the injury to the plaintiff Trivedi; and
- ✓ Damages – The defendants' actions lead to injury and harm to the plaintiff Trivedi – as listed in detail what injury, how and what harm
- ✓ — USCOURTS defendants enjoyed SADISTIC pleasure by keeping Trivedi in distress and not ruffling feathers by investigating GE> All to be put in jail.

327.      USCOURTS employees' Gross negligence is a lack of care that demonstrates reckless disregard for the public safety, cybersecurity issues and most importantly HARM and injury to Trivedi 'which is so great it appears to be a conscious violation of Trivedi's rights to safety as well as public health and safety. USCOURTS  defendants' conduct is a heightened degree of negligence representing an extreme departure from the ordinary standard of care; more harmful than ordinary negligence because it implies a thoughtless disregard of the consequences and the failure to use even slight care to avoid harming the life of whistleblower Trivedi.

**Trivedi here presents tort claims, acts that have harm the wellbeing of Trivedi, by that means violating HER rights and making the guilty** party USCOURTS employees liable for her damages and sufferings. The FTCA allows Trivedi to demonstrate that the damages caused to her are by the negligent acts of USCOURTS employees who were/are working within the capacity of their duties, and thus Trivedi sue the government for this negligence.

**USCOURTS judges/employees' intentional failure under corruption to exercising due care, failure do their job and failure to execute o**f a statute or regulation malfeasance misfeasance nonfeasance – public policy—and also USCOURTS violated its own policy to provide fair and full opportunity, serve justice and judges have shown tyranny like behavior.

### 20.14.9 Negligence per se

328.      Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges.

**Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above as if fully set forth herein.**
**USCOURTS defendants' behavior was negligent as a matter of law.**

**Restatement (Third) of Torts §14. Statutory Violations as Negligence Per Se** An actor is negligent if, without excuse, the actor violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect.

- ✓ Pursuant to following statutes, rules and regulations USCOURTS Defendants had a duty when Trivedi filed her complaint in 2016 and 2019 and to first ciruit as well. It also form part of the basis of USCOURTS Defendants' duty in this regard. Duty to investigate and protection –

**NOTE- Trivedi does not mean to say that for example USCOURTS defendants viol**ated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A   ; but Trivedi means that while GE violated federal false claims act and osha whistleblower SOX statutes 18 U.S.C. §1514A; USCOURTS defendants illegally dismissing Trivedi's complaint violated as government employee to handle Trivedi's whistleblower complaint that alleged False claims act violations and OSHA SOX whistleblower violations/protections. Guilty by association and civil liability for obstructing justice and aiding and abetting wrongdoing/fraud by not taking action aka illegally dismissing Trivedi's complaint/lawsuit.

- ✓ Violations of safety statutes in Wisconsin are ordinarily[10] Locicero v. Interpace Corp., 83 Wis. 2d 876, 266 N.W.2d 423, 427 (1978); Blanchard v. Terpstra, 37 Wis. 2d 292, 155 N.W.2d 156, 158 n. 1 (1967); Lloyd v. Pugh, 158 Wis. 441, 445, 149 N.W. 150, 152 (1914). [ USCOURTS defendants had a duty because Trivedi's claims were for public health and safety )
- ✓ Held to be negligence per se and this principle *238 frequently [ Grube v. Moths, 56 Wis. 2d 424, 202 N.W.2d 261, 267 (1972); Schroeder v. Northern States Power Co., 46 Wis. 2d 637, 176 N.W.2d 336 (1970).] **has been applied in Wisconsin cases. The general rule in Wisconsin is that violation of a criminal statute is negligence per se.**
- ✓ **18 U.S.C. § 1514A (b)(2(D);29 C.F.R. § 1980.103(d)  -OSHA equitable tolling.**
- ✓ osha whistleblower SOX statutes 18 U.S.C. §1514A
- ✓ protection for Whistleblower Retaliation under Dodd-Frank Act, 15 U.S.C. §78u-6(h);SEC Rule17 CFR § 240.21F-2,
- ✓ Securities Exchange Act of 1934,15 U.S.C. 78j(b),Rule 17 C.F.R. 240.10b-5
- ✓ Wrongful termination by GE in violation of public policy - common law rule in Massachusetts and Wisconsin
- ✓ common law rule in Massachusetts and Wisconsin for TORT against GE
- ✓ 42 U.S.C. § 299 et seq -The Patient Safety and Quality Improvement Act of 2005
- ✓ 31 U.S.C. §3729 et seq. federal false claims act  quitam AND False claims act and whistleblower retaliation protection statutes of state of Massachusetts  MASS. GEN. LAWS ANN. CH. 12 §§ 5—5O

that a specific violation of the law occurred, and that violation is automatically assumed to be negligent.

- ✓ Trivedi's retaliation claim under false claims act 31 U.S.C. § 3730(h) (2) ; can proceed Pro Se and ongoing fraud makes claim timely  --  USCOURTS defendants violated this code TWICE.
- ✓ whistleblower protection statutes of Massachusetts
- ✓ Scott erven's 2018 global alert for Trivedi's termination related remote connectivity platform InsiteEXC…, cybersecurity vulnerabilities , Security statutes, public health & safety

implementation as a government employee overseeing that laws statutes are ENFORCED, obeyed and those who blow whistle get protected.

✓ Though one can argue about Private cause of action available or not under following statutes, regardless;  USCOURTS defendants were bound by duty for following statutes.

> 45 CFR § 160.316 Refraining from intimidation or retaliation, Public Law 104-191.
> 18 U.S. C § 1512 - Tampering with a witness, victim, or an informant
> And 18 U.S. C §  1513 - Retaliating against a witness, victim, or an informant

18 U.S. C § 1512 (a) (1) (A) ,18 U.S. C § 1512 (b) (1) ,18 U.S. C § 1512 (b) (2) (A) 18 U.S. C § 1512 (b) (2) (B), 18 U.S. C § 1512 (b) (3), 18 U.S. C § 1512 (c) (2) 18 U.S. C § 1512 (d) (1) ,18 U.S. C § 1512 (d) (2) , 18 U.S. C § 1513 (e), 18 U.S. C § 1513 (f)

**The defendant violated above code, statute or regulation. Above legal theory** establishes the duty and breach elements of negligence.USCOURTS's failure to comply with applicable laws and regulations constitutes negligence per se

(Statutes prescribing certain actions or defining a standard of conduct, either explicitly or implicitly. )
**The plaintiff Trivedi in the class of persons** whistleblower protection statutes of state and federal level, **the code, statute, or regulation was designed to protect. But for JUDGES/USCOURTS/Defendants' wrongful and negligent breach of its duties owed to Plaintiff Trivedi and Class Members, Plaintiff and Class Members would not have been injured.**

The plaintiff Trivedi's injury, harm was the kind of injury the code, statute, or regulations that Trivedi mentioned ABOVE was designed to prevent.

The injury and harm suffered by Trivedi was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff Trivedi to experience the foreseeable harms (detailed HARM and DAMGES and INJURY enumerated throughout this claim form). As a direct and proximate result of Judges Defendants' negligent conduct, Trivedi has suffered injury and are entitled to compensatory damages in an amount mentioned in SUM CERTAIN section below.

Taking judicial notice to dismiss private right of action, failure to MA savings statute, ongoing violation based equaitable tolling – ongoing injury, injunctive relief  data breach lawsuit, accrual of claims makes it timely

### 20.14.10        Misfeasance and non feasance under tort

**329.**        Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Malfeasance –defendants' Intentional conduct that is wrongful or unlawful, defendants'  higher level of wrongdoing than nonfeasance (failure to act where there was a duty to act) or misfeasance (conduct that is lawful but inappropriate). Here defendants acts satisfies all three; falls under public corruption as well.Misfeasance and Nonfeasance are part of tort law.

Misfeasance –USCOURTS defendants committed it when legal action done improperly, which resulted in harm to Trivedi.

Nonfeasance –USCOURTS defendants failure to carry out SERIES of required obligations, which results in injury or harm to Trivedi, public, loss and possible risk to society as Scott Erven's global alert came out in 2018.

### 20.14.11        Intentional Tort -fraud

103

**330.**       Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Tort of *fraud* – person who makes false statement intended to be acted on must make good the damage naturally resulting from its being acted on.

USCOURTS judges/people's half true , not telling full picture, omitting crucial and critical facts in dismissing Trivedi's claims by issuing order with prejudice and first circuit judges also corruptly AFFIRMING it—denying due process to Trivedi- by not allowing any discovery- amendment- not holding HEARING…this is 100% corrupt.. – created tort of fraud cause of action.

**20.14.12       Depriving persons of rights or privileges "  individual capacity**

**331.**       Plaintiff Trivedi re-alleges and incorporates by reference Paragraphs above **as if fully set forth herein.**

Judges (judge Kelley to get reappointed)for personal benefit, for being afraid of not standing up big company GE, for negligence, misfeasance, malfeasance and non feasance…to cover up – to exploit Trivedi's hardship, mitigating circumstances.

### 20.15 IRREPARABLE INJURY, INJUCTION

**332.**       Monetary damages at a later date ,time would not adequately compensate Trivedi for the injuries Trivedi sustained , are sustaining and will sustain as a result of the events described above and as stated above reasons; such compensation could not be measured.

### 21   PRAYER FOR RELIEF

**333.**       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of the them.

**334.**       Damages & Relief for FTCA  :Lost wages, benefits that Trivedi would have received from GE- Monetary damages for loss of career; pain and suffering, Mental and emotional distress,

ongoing injury to Trivedi's reputation, trauma , distress ..Compensatory damages are typically equal

to the monetary value of the injured party's loss of earnings, loss of future earning capacity, pain,

suffering. Thus, courts may award damages for incurred as well as expected losses.

**335.**       Since my termination, GE knew all the violation  they did and knowingly kept me in distress by withdrawing immigration just so to obstruct me from fighting all these claims/cause of

actions I was entitled too—and now at any point arguing in this LAWSUIT that "it is time barred" In

this time I had to Become Law student and almost like a lawyer by reading Tons of legal material.

For these and **many of such conduct; GE and GE attorneys, DOL people MUST be in JAIL &**

**judges be impeached.**

**336.**       Relief available under all the cause of actions – mentioned above.

**337.**       Sarbanes Oxley Act (SOX) 18 U.S.C. §1514A (c) Remedies ;But DOL defendants

failure , corruption , negligence, malfeasance, misfeasance , non feasance, inflicting intentionally emotion distress upon Trivedi, harassing her- and other tort claims mentioned above had led to Trivedi not receive any of the remedy under SOX ; which absence FTCA claims –she would have received.

**338.** Trivedi is entitled to emotional damages under SOX[17] and ARB, ALJ, OSHA[18] [19] **knows; but intentionally dismissed case based on timeliness.** For monetary damages against Defendants, and each of them, in an amount sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of use, for emotionaldistress, and for the injury and damage that Defendants have caused to Plaintiff's name and reputation;

**339.** Front pay-all the salary she lost since she was illegally terminated.double back pay damages for all violations;Make Trivedi whole again

**340.** Monetary damages as per Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

**341.** Damages for emotional distress, economic loss, defamation, intentional infliction of emotional distress.

**342.** CLASS ACTION RELIEF

**343.** Such other and further relief as the Court may deem just and proper.Award for legal fees as courts may deem just and proper. Issue order in public interest.

## 22  JURY DEMAND

**344.** Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

*mjt*

Dated: January 6, 2023

_____,

**Madhuri Trivedi**

/s/ Madhuri Trivedi

607 Boylston Street, PMB 334 - Lower Level,Boston, MA 02116

Phone: (650) 242-5135 Email: orangeinc@protonmail.com

**Twitter** - @madhuritrivd  **Linkedin:**- linkedin.com/in/trivedim

---

[17] **In Jones v. SouthPeak Interactive Corp., 777 F.3d 658 (4th Cir. 2015)- a SOX plaintiff's entitlement to be made "whole.**" award of emotional distress damages.

[18] Emotional damages are available under 18 U.S.C. § 1514A(c). Theoverwhelming majority federal court and agency jurisprudence under the Sarbanes-Oxley Act and federal statutes with similar remedies provisions to § 1514A(c)finds emotional damages to be available.

[19] **OSHA investigator manual -B. Emotional Distress / Mental Anguish , Pain and Suffering.**
Compensatory damages are designed to compensate complainants not only for direct pecuniary loss, but also for emotional distress, pain and suffering, loss of reputation, personal humiliation, and mental anguish resulting from the respondent's adverse employment action. Courts regularly award compensatory damages for demonstrated mental anguish or pain and suffering in winning employment retaliation and discrimination cases. Damages for emotional distress and mental anguish may be awarded under all OSHA-administered whistleblower statutes.

**World summit on innovation and Entrepreneurship** – THE WSIE  summit speaker invite– Great presenter 2019 -   https://thewsie.com/presenters-2019/

**About OrangeHealth** :-( no longer exists, & got killed in this ugly fight)

(visibility report shows potentially reaching 50 million reader)

**PRESS RELEASE-**

**"OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions"**

http://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

SAN FRANCISCO, June 21, 2017 /PRNewswire/ -- Madhuri Trivedi, an engineer, scientist, entrepreneur and immigrant, has launched her new company OrangeHealth and is currently seeking investors for its product. Trivedi is seeking seed funding in the range of $200k to $350k to further launch the app in various geographical areas, add more features, and launch a peer-to-peer platform app for sharing information. The new app will provide peer-to-peer crowd sourced community support with deep learning artificial intelligence (AI) to better manage diabetes.

She also has created and launched a new mobile health improvement app that is already used by more than 6,000 people to manage allergies, find a doctor, is used for predictive analytics for eating habits, and reminders at the time of eating.

"Prevention is key for managing illness like diabetes, but it's just as important that people can gain the information and support," says Trivedi.

"Right now, because of some challenges in my immigration status, while I have the technical support to build the app, I need funding to help with its launch because I am unable to work. The only way to get this app off the ground is through investors willing to support this important work," adds Trivedi.

She wrote heavily about precision medicine in April 2104, received a job offer in 2014 with Harvard Medical to create a cancer vaccine, artificial protein. President Obama in the 2015 State of Union Address, launched precision medicine initiative. Trivedi has been unable to take the Harvard position because of immigration denials and challenges. While at General Electric, Trivedi's labor certificate for immigration was approved as "a person of exceptional ability" EB2 category. GE, however, didn't file the next step so she could work in the U.S.

After leaving GE, with the Harvard medical job offer and her entrepreneurial start-up, Trivedi filed for immigration under "a person of extra-ordinary ability" EB1 category, which DHS denied. Trivedi has a number of letters of support from professionals associated with her scientific and technical work .Trivedi has a long career as an expert in her field. While at Raindance, Trivedi developed the world's first digital-equivalent to personal computer instrument for genome sequencing used for drug discovery in 2009. Here she was part of a 20 people start up that went on to generate hundreds of millions for revenue. Dr. Jonathan Rothberg, founder of the startup, was awarded National Medal of Technology and Innovation by President Obama and made $700 million selling the sister company to Life Technology. Trivedi did not make any money from the sale of the company.

She has made major significant contributions in extraordinary ability and national interest while working at Fortune 10/50 corporations, successful entrepreneurial startups. Only individuals with both exceptional technical ability as well as persistence and commitment can deliver what Trivedi has in a high-risk environment with do or die start up success.

About OrangeHealth

OrangeHealth provides quality and affordable healthcare tools and services through a software portal and peer to peer network. For more information***************END of Press release

106

## 23  EXHIBITS

345.       Plaintiff realleges, reasserts, and incorporates by reference the facts and Allegations, evidence stated in these EXHIBITS into this complaint.

| | | page |
|---|---|---|
| 1 | TIMELINE of events, facts, procedural history | 1 |
| 2 | **Savings provision under Mass. G.L.c. 260, § 32 ; judge Kelley , Saris and first circuit judges have corruptly denied those** | 11 |
| 3 | **SEC.gov cybersecurity rulemaking & Trivedi's comment** | 16 |
| 4 | Background at GE | 26 |
| 5 | EEOC right to sue NOTICE issued in 2021-considering TRIVEDI CHARGE TIMELY | 33 |
| 6 | GE's 2 page response to EEOC charge in 2021 | 34 |
| 7 | 2012 Email by Trivedi At GE; ActiveX controls were built without SECURITY update . ActiveX control were required to be built using Visual Studio C++ 2005 or higher and it was June 2012—It shows GE used old, out of date, STONEAGED cybersecurity components. | 36 |
| 8 | my email to Ur Jaddou, USCIS director nominee on May 27, 2021 and within 10 hours, Judge Saris issues 3 lines order to dismiss my case. | 38 |
| 8A | Trivedi emailed arbitration award to Foley & Manfield  that day she received it | 44 |
| 9 | First circuit July filed 2022 - FOR CISA.gov alerts in June 2022 & district court January 2020 | 48 |
| 10 | ==ALL other exhibits numbered  10.1 ,10.2 etc== | ==54== |
| 11 | When Res Judicata doesn't apply | 65 |
| 12 | ==Move, Inc. v. Citigroup Global Markets, Inc., - The court of appeals panel held that the plaintiff=='s motion was not untimely because the Federal Arbitration Act is subject to equitable tolling. | 69 |
| 13 | GE attorney EMAIL -declining public arbitrator Peter David  of Wisconsin workforce development – because arbitration RECORD would become PUBLIC | 71 |
| ==14== | ==**Trivedi's reply to GE response brief for ARB–** Jack' s magic -- Part II (Dec. 26, 2005) -GE earning management -Was the unit blind-sided or was it straining to deliver the double-digit earnings growth Welch always expected? Was anything illegal done? –== Since 2002, GE has been subject of manufactured earning | 72 |
| 15 | Email- to and from-  Ernst & Young HR investigation about my Ex husband..While Fragomen was the same lawfirm for Ernst & Young when they did my H4 in 2004 ..and domestic violence email was sent to Jenny Scharger in 2013 when GE terminated & withdrew H1. & more.. District court has entire history in ECF 143 – First circuit opening brief appendix also has details. On a side note..Michael Rapoport –then WSJ journalist & I were going to have phone talk about my ex sleeping on top of his mom – in 2019—I had told Mike that EY keeping my EX as a BAIT to get GE as an AUDITOR as GE was dumping KPMG after 100 years – and next day he was let go by WSJ…**at that time Mike had written WSJ article about GE's $23 billion charge –which later became GE's $200 million settlement in Dec. 2020 with SEC.gov** | 106 |
| 16 | **June 2021 first circuit filings** –about - FDA approved total 100( 50th in 2014 &  50 | 112 |

| | | |
|---|---|---|
| | more monoclonal antibody from 2015- Trivedi's Harvard medical job offer  in 2014 to work on synthetic protein  - monoclonal antibody – which was part of all filings.& Trivedi MIT vlab event on immunotherapy | |
| 17 | **CISCO QUITAM COMPLAINT – cybersecurity – similar to Trivedi's claims.** | |

# EXHIBIT 1

**ECF 106-3 already has Detailed Timeline.ECF 106-1 has chart with hierarchy.**

| | |
|---|---|
| February 2004 | Defendant Fragomen law firm did Trivedi's H4 B spouse visa through her Ex-husband's employer( at that time Trivedi was living at Syracuse, NY) |
| September 2009 | Trivedi interviewed in-person at GE intelligent platforms Foxboro , MA |
| September 2009 | Next day of the interview- GE offered Trivedi full time job |
| December 2009 | All of a sudden Trivedi was informed in writing that GE won't do her H1 B;  and Trivedi is first required to work as a consultant for three months & then GE would hire her fulltime and do her H1B . |
| February 2010 | Noramtec consultant did her H1 B, Trivedi started working at GE , Boston. Trivedi joined GE Boston as "a consultant/contractor" instead of "fulltime employee" after long delay and paperwork in early 2010. |
| May 14, 2010 | GE Boston, Reema  Poddar, Ward Bowman offered "fulltime job" to Trivedi. ECF 51 page number 45- H1 B visa processing as fulltime employee began by Jenny Schrager. |
| June 16, 2010 | DOL approved H1 B LCA filed by Jenny Schrager at Fragomen for fulltime engineer at  GE Boston- Exhibit 20 of ECF 51 and page number 44 of ECF 51) |
| July 2010 | Without any reason, notice- by Ward Bowman or Reema poddar-(Just verbally was told and in next hour she packed her stuff ).GE manager verbally informed that GE terminated her contract & letting her go. Trivedi didn't fight then. During this time Trivedi developed GE's asset management platform which was later named GE digital ( night & weekends) wearing so many hats. She was only FEMALE in a team of engineers, architects, program manager. ECF 51 page 47-49- Trivedi's stellar performance at GE Boston. |
| 2011 | Trivedi joined State of Indiana as a consultant |
| September 21 2011 | GEHC architect Nate Davis –GE manager Dave Mehring – email communication ; where Trivedi prior to in person interview , informed that GE must file her PERM 365 days before H1 B expiry (PERM by September 2012 )so Trivedi can extend her H1 B. Now GE managers knew Trivedi's weak point and they exploited it to retaliated and harass Trivedi. ( ECF 51 exh 21) Remote witness, if Trivedi can't extend her H1B |
| November 1st 2011 | Trivedi joined GE Healthcare at Wisconsin, as a lead engineer |
| December 9 2011 |  Trivedi was insulted by fellow project lead; was forced to finish tests where Trivedi pressed QUALITY – |
| December 20 | Trivedi fixed months old lingering problem that didn't allow online |

| 2011 | engineers to do remote connection-for InsiteEXC connectivity with medical devices inside hospital. GEHC global service leader sent email to all Canada, north America managers about Trivedi's fix. None of the MALE engineers, architects were able to find a fix for months while Trivedi did it within a month of joining GEHC. Hundreds of engineers used Trivedi's workaround- (actual fix need multi million dollar replacement) |
|---|---|
| January 2012 | Trivedi emailed and told Mehring in person & 1on 1 meeting that "insiteEXC not following FDA quality guideline for automatic static code analysis (as Trivedi was assigned to do quality testing)–Mehring replied that "For InsiteEXC product; GEHC has never done /used automatic static code analysis before" |
| February 1,2012 | As Trivedi was standing by product quality, GE retaliated was assigning Trivedi to test INSITEEXC & surgery OEC mobile arm integration;  Containing 1000 pages of test cases within 23 DAYS. Also as OEC mobile C arm was on Linux operating system; while EXISTING 1000 pages test document was for Windows operating system- Trivedi was simultaneous assigned to develop these 100 pages equivalent of test cases- NEW test cases that work on Linux operating system. As well as JUST to have ONLY ONE TEST DOCUMENTS- just so all these test cases MUST work on both WINDOWS & LINUX operating systems. But they lacked BAISC TECHNIAL COMPETENCY that Windows & LINUX are apples and Oranges. And ONE test plan would NEVER work for both as there were fundamental differences. |
| March 9 2012 | Dipti passed network connectivity test March 9 2012 where it was failing –without network connectivity there is no insite exc. |

| March 13, 2012 | Trivedi investigated & found out & emailed to managers & team members that InsiteEXC  on Mobile C arm surgery platform was opening  MULTIPLE random ports; which is presents highest risk to hack and  exposure. |
|---|---|
| March 12, 2012 | InsiteEXC for surgery Mobile C arm was Missing networking libraries ( without networking libraries- there is NO INSITEEXC)(which all team members who complained I was not getting along---were not able to find out or figure out..)I reported that to Dave on March  -- ECF 106-3 page 13  -- After Trivedi's finding Salt Lake City, Utah based surgery team –raised issues with Trivedi's management . Trivedi's team and managers were exposed as technical incompetent. |
| June 11 2012 | Trivedi emailed management that Active X build with old version VC ++  and insecure –needed to rebuild Insite exc which was multimillion dollar & multiyear project with at least 70-100 engineers working on it..aka InsiteEXC remote connectivity was build on 2005 based old , out of dated , without security patch code; needed to be rebuild |
| May/June | Trivedi moved to second project called RSVP –Joe Purcell |

| | |
|---|---|
| 2012 | was Detroit based manager of GE digital. Also senior manager Reema Poddar from GE Boston ( Trivedi had worked with/reported to Reema in 2010.) was driving funding, operations and all for this joint GE digital project. She was not putting enough people. 70 people were required on this second project while there were only dozen. But GEHC and David Mehring made up for failure of finishing up this second project on time- made Trivedi a scapegoat and diverted blame- by framing Trivedi that "she is not getting along"—this is criminal..and for this all GE defendants and Fragomen  defendants MUST be put in JAIL. |
| Aug 20 2012 | Email to Greg sent by Trivedi ; Dave retaliated after that emailemail Trivedi mentioned that "it is conflicts of Greg and GEIP team –and overall status of second project(RSVP project)…October 2019 , Trivedi spoke with Joe Purcell Manager of  GEIP on phone and Joe did confirmed that "Joe Purcell, GEIP had lots of conflicts and disagreements with Greg Stratton..and Trivedi worked with him on fixing quality issues, defects, automated testing (second project that GE is blaming Trivedi on)  ECF 106-3 page15 |
| August 20, 2012 | Trivedi filed midyear performance review on EMS–update |
| October 2012 | GEHC CTO Mike Harsh sent companywide email about GENDER EQALITY & how managers perceive & measure female engineers' Communication & soft skills differently ; & they need training to address this issue. |
| November 12 & December, 2012 | Trivedi emailed GEHC general manager David Elario about retaliation, defects, & Trivedi treated differently for speaking up cybersecurity issues. Elario replied that it is business; and hence even if it is right- things do not happen that way. |
| December 4 2012 | Trivedi emailed David Elario, Carl Conrath, Mike Truman ; that Trivedi be placed under a new manager ECF 106-3 Page 23 |
| December 19, 2012 | Trivedi met with CTO Tim Kottak met in-person. Tim told Trivedi that such large amount of quality issues, 600 critical defects are unacceptable and illegal ..In next few days Tim Kottak arranged a meeting to address defects. After Tim's meeting GEHC deleted all 600 defects without fixing single one of them( changed status of defects in database from open to close( these defects database is what FDA requires and FDA can ask for review so these EVIDENCE/PROOF was DESTROYED) –this was in - first week of January 2013.. Trivedi requested Tim Kottak to change reporting manager (ECF 51 page 187 paragraph 443) from David Mehring to Philippe but Tim didn't do anything.. And let fraud and retaliation continue. |
| December 21, 2012 | Trivedi entered her EMS performance review |
| January 4 , 2013 | Trivedi emailed and discussed with Mathews Matson, Dave Mehring that audit trail not proper in InsiteEXC as required by HIPPA & HITECH law . Trivedi did got along with Mathew Matson-principle |

| | architect whom Dave Mehring didn't get input for performance review. |
|---|---|
| January 2013 | Ofir Dahan fought in a meeting with 20 managers, leads, engineers about Namita Joshi's lack of technical ability(Namita was wife of Vivek Bhatt-GEHC executive)  ; Also Ofir alleged that why GE is still releasing ILLEGAL INsiteEXC agents on medical devices. |
| Feb 5, 2013 | Trivedi supported InsiteEXC customers; despite she was moved to another project; but GEHC didn't had people with technical expertise that Trivedi had. ECF 106-3 Page 21 |
| February 2013 | Trivedi went directly to Mike Swinford, Mr. Elario's manager. Mr. Swinford did not meet with Ms. Trivedi as he was out of town the day she went to him. However, when Mr. Elario learned that Ms. Trivedi went to Mr. Swinford, he was very upset. He threatened he would "take Ms. Trivedi off of the project." Within one week thereafter, on February 22, 2013, Ms. Trivedi was placed on a Performance Improvement Plan ("PIP"). For reporting higher up, Trivedi was put on PIP. And it was not her soft skill and raising concerns, speaking up about cybersecurity, defects, quality and more –she suffered adverse employment action of PIP and finally termination. |
| Feb 21 2013 | Trivedi's manager, David Mehring submitted his review  about Trivedi's performance |
| Feb 22 2013 | David Mehring's manager- Carl Conrath submitted his review about Trivedi's performance. |
| Feb 22 2013 | Trivedi was put on a "performance improvement plan" ..PIP was  fraudulent; was used to severely harass Trivedi and generate  pretext based data to fire her. |
| February 22, 2013 | Trivedi emailed Mike Swinford CEO-again from March 1 to April 19, 2013 –Trivedi emailed Swinford. But Swinford didn't care to reply nor address. Only response she got was from HRM Adam Holton that Trivedi initiate ADR. |
| March 6 2013 | GEHC senior HR manager, reporting to CEO, emailed Trivedi to initiate Alternate dispute resolution process. Trivedi requested that she get a NEW manager. |
| March 28, 2013 | Trivedi while working on a SECOND PROJECT ; did defect fixing( defects created by coworkers ) ; while GEHC was generating documents about Trivedi not getting along. Those Male coworkers who were writing code with defect( and Trivedi was fixing their defects as Trivedi was assigned to test their code)—such as Sachin kendale, Naresh, Greg <Nate Davis—all got good performance review .. ECF 106-3 page 19 |
| March and April 2013 | Trivedi went to India, was put on a leave without pay |
| May 30, 2013 | Department of labor approved Trivedi's PERM for green card under "person of exceptional ability" EB2 category. Trivedi had six months to file I 140 after this or PERM gets VOID. GE didn't file I 140 |
| December 2011 to May | Trivedi supported InsiteEXC customers with whom Trivedi had no soft skill issue. |

| | |
|---|---|
| 2013(last day) | |
| May 31 2013 | Trivedi was terminated by GE |
| June 2013 | GE withdrew Trivedi's H1 B |
| July 2013 | Trivedi had a job offer from Thermo Fisher Scientific in Wisconsin to work on Drug Discovery; but since there was no time left on H1 B; didn't materialize because of immigration issues. |
| July 2013 | email to Jeff Immelt, Jenny Schrager, Adam Holton, John Dineen, Mike Swinford-filing I 140, H1 extension ,retaliation.(Exhibit 11 and 37 of ECF 51). |
| August 9, 2013 | Immigration attorney from Cambridge, MA sent a letter to GE that her I 14o must be filed; otherwise her PERM will go void; & that she was retaliated for raising defects and cybersecurity issues. ECF 51 exhibit 12  ECF 51-3 page 78 |
| August 23, 2013 | Cross law firm sent mediations statement ECF 51-3 page 82-to GE & forced me to   take one month salary and waive all my claims against GE. |
| October 2013 | Trivedi in writing compliant to DHS about GE's cybersecurity issues, retaliation upon Trivedi by GE & withdrawal of H1 B.

Trivedi also met TWICE, in person, immigration officer at Milwaukee, WI ,DHS office |
| October 2013 | Trivedi fired Cross law firm, did mediation Pro Se- mediation was unsuccessful. |
| November 5, 2013 | Trivedi filed arbitration complaint with AAA |
| November 2013 | Wisconsin workforce development agency (government) chief  arbitrator Peter Davis, mentioned that if he selected as arbitrator , he would rule in my favor. GE attorney declined via email to have Peter because then arbitration document become public. |
| December 2013 | Trivedi contacted in WRITING to GE board fo directors Robert Swierienga and Susan Hockfield(as Trivedi also being MIT alumni ) . Hockfield stonewalled Trivedi; while Robert did inquiry. GE complained to arbitrator that Trivedi is reaching out to director. Arbitrator became more hostile. |
| December 12 2013 | Trivedi in writing filed complaint with FDA |
| Marc h 2014 | Trivedi filed motion to recuse arbitrator Peter(who was overly hostile to Trivedi), which arbitrator denied. |
| April 2014 | Trivedi registered her startup Orange health with government as sole owner |
| April 2014 | Trivedi spoke with FBI agent about GE |
| April 2014 | Trivedi emailed USCIS director Donald nuefeld that because of her ongoing arbitration, and her Harvard job offer- startup based on which she has filed EB1-she would extend her stay. Donald replied via email to call USCIS 800 number. |

| April 2014 | Trivedi filed EB1 self-petition with USCIS/DHS, with Harvard medical job offer to work on artificial protein and her startup orangehealth |
|---|---|
| May 3 2014 | Trivedi field OSHA whistleblower complaint |
| May 6 2014 | Arbitration against GE at hotel. Second day of hearing; Trivedi left arbitration at 9 am because arbitrator was hostile and won't letting her question, insulting and was harassing. GE went ahead ALONE with arbitrator and finished whole day on hearing without Trivedi. |
| May 10 2014 | FBI supervisor informed Trivedi that it was "fraud against government" matter; civil fraud and hence FBI hasn't open criminal investigation. |
| June 2014 | David Nelson- a former SEC reginal director and attorney at BOIES, SCHILLER & FLEXNER LLP ; himself reviewed Trivedi file – and stated that Trivedi has valid SEC claims. But didn't advise about whistleblower claim filing- how and where to file ..Asked few hundred thousand retainer if Trivedi choose his law firm; which mainly represents defendants. |
| July 2014 | Foley & Mansfield sent a letter to GE |
| August 5 2014 | Corrupt Arbitrator issued award in favor of GE |
| Feb-March 2015 | Trivedi notified USCIS Texas director via email, Donald Nuefeld, DHS online request form and phone call ; that Trivedi is moving to San Francisco next week or so. Trivedi also notified FBI supervisor Clayton Wible about her move. |
| March 2015 | Trivedi moved to San Francisco from Wisconsin |
| March 2015 | Next day of Trivedi landing San Francisco; DHS denied Trivedi's EB1- extra ordinary ability petition; which was pending since April 2014 |
| October 2015 | Trivedi contacted FBI special agent in charge, David Johnson via email ,requested that FBI do criminal investigation. |
| February 2016 | Trivedi sent postal mail to chief justice Roberts, Washington DC. The mail was lost and never delivered to supreme court. |
| February 2016 | Trivedi sent email to DHS leadership, FBI agents & other about GE fraud, her letter to chief justice, her immigration being held hostage. |
| March 2016 | Trivedi filed lawsuit against DHS in Northern district of California ( alleged that because not joining GE's fraud scheme, she was retaliated and her immigration was jeopardized) |
| March 2016 | Trivedi second time sent a letter via Postal mail-to chief justice Roberts- also mentioned her DHS lawsuit docket number in the letter. |
| June 2016 | DODIG criminal investigation director Patrick Gokin emailed Trivedi that- rest assured about criminal action. In her complaint to DODIG Trivedi had mentioned DHS lawsuit Docket number. |
| March-July 2016 | Trivedi filed Second petition for EB1 with USCIS- this time with additional evidence. |
| August 9, 2016 | FDA provided FOIA response, redacting most of stuff. (including what FDA responded to Department of justice attorney's inquiry in February 18, |

| | |
|---|---|
| | 2016. about false claims act) |
| September 2016 | DODIG dismissed her whistleblower retaliation claim as out of time. |
| February 22, 2017 | Trivedi's father died in India |
| February 22, 2017 | Trivedi organized IOT cybersecurity event at vlab( vlab was a launch pad for companies like Google & Tesla when they were Babies) (Trivedi was working on this event with team for more than 4-5 months) <br> As event started, in was pitch dark fully packed Stanford auditorium. <br> Trivedi phone rang—at that time someone from back said that "He is gone"- Trivedi left event and was informed by her family in India that her father has died. |
| March 2017 | Health & Human secretary-Tom Price reporting to Trump- sent a letter to DHS about her immigration, her lawsuit. |
| March 22, 2017 | Trivedi's Immunotherapy –hacking how body fights disease <br> event at vlab ( Trivedi worked for 4-5 months organizing it |
| March 10 2017 | Trivedi filed SUPREME COURT Emergency application to attend her Father's post funeral things. Justice Kennedy denied it in 5 minutes. |
| June 2017 | Trivedi's emergency application was distributed to all justices and it was denied. |
| June 2017 | My OrangeHealth press release reached to potential 80 million readers; as per the visibility report I got ;with 250 plus well reputed outlets published my release; including TV stations, business & tech         journals, newspapers, research affiliates and more; So it was COOL product and it was serving market need |
| Oct 27, 2017 | Trivedi spoke with Jenny Schrager on phone and emailed her about how Jenny has done illegal things to Trivedi (Exhibit 10 of this filing-Opposition to MTD by Trivedi) |
| October 2017 | Trivedi emailed John Flannery GE CEO, GE board of directors .( ECF 51 exhibit 2) |
| January 2 2018 | Trivedi writ filed in supreme court |
| February 2018 | Trivedi writ circulated to all justices. |
| February 2018 | DHS issued GE related global cybersecurity alert; affecting 100s of 100s of medical devices; vulnerable to hack and exploitation ( after Scott first reported those in 2014; GE nor DHS did anything for four years) |
| February 21, 2018 | Supreme court issued ruling on Digital Realty v. Somers- <br> scrapping internal whistleblower protections for Dodd Frank act |
| March 19, 2018 | Supreme court denied Trivedi's writ of certiorari for lawsuit against DHS |
| January 2019 | Trivedi spoke with and emailed Stephen Tusa, JPM analyst covering GE. Mr. Tusa emailed Ge to leave me alone |
| February 22, 2019 | On Trivedi's father death anniversary; co incidentally Trivedi found out about Scott Erven's global cybersecurity alert that GE issued, corroborated that INSITEEXC was vulnerable from outside of GE network as well ( for |

| | anyone with low skill to hack and take full control) ECF 51 exhibit 1 |
|---|---|
| Feb 2019 | Trivedi filed complaint with SEC |
| May 21 2019 | Trivedi filed federal lawsuit in District of Columbia |
| August 30, 2019 | Trivedi voluntarily dismissed lawsuit in District of Columbia, Judge issued order to show cause why case should not be transferred to Boston or Wisconsin. After going back and forth on Venue; Trivedi believed to have case to be transferred to MA or WI. |
| July 2019 | House passed Dodd Frank Whistleblower Protection Reform Act of 2019 (SEC whistleblower) |
| August 30, 2019 | Trivedi filed lawsuit in District of Massachusetts |
| September 2019 | Bipartisan bill introduced in senate - Whistleblower Programs Improvement Act (S.2529) for Dodd-Frank securities fraud protections |
| August 2020 | Trivedi filed appeal at 1st circuit for motion to recuse |
| May 27 2021 | District judge Saris dismissed Trivedi's claim by issuing 3 line order |
| May 28 2021 | Trivedi filed appeal at First circuit |
| June 2021 | Trivedi sent a letter to four 1st circuit judges about Madhuri pitching since GE let Madhuri go about "monoclonal antibody";my job at harvard medical to work on "artificial protein" - aka monoclonal antibody. FDA approval since 2015 of total 50 monoclonal antibody.It is Not a coincidence. |
| July 29, 2021 | Trivedi filed opening brief at first circuit |
| August 19 2021 | Trivedi contacted magistrate judge Kelley Reappointment panel |
| August 24, 2021 | I emailed GE CEO, GE general counsel & judge Kelley reappointment panel –judge Mark that GE people should be in jail – that email is below. |
| October 3 2021 | I emailed judge mark & reappointment panel that "I am going to write to judicial conference about Judge Kelley and judge Saris both.." |
| May 3, 2022 | Judgement entered by first circuit affirming dismissal |
| May 28 2022 | Trivedi filed Rule 60 relief motion at district court ECF 167 |
| May, 2022 | **Sec.gov confirmed an active and ongoing investigation about Trivedi's GE healthcare whistleblower complaint** |
| June 20, 2022 | **Trivedi filed amended petition for re hearing en banc – wrote about Sec.gov confirmed an active and ongoing investigation about Trivedi's GE healthcare whistleblower complaint in this petition.** |
| June 20 2022 | **Trivedi filed amended rule 60 motion with district court ECF 170** |
| July 2022 | Trivedi filed letter with first circuit about cisa.gov alerts for same Insite EXC related remote platform in June 2022 |
| July 12 2022 | Judge saris denied ECF 167 – didn't look EC 1170 |
| August 8 2022 | First circuit denied petitions for rehearing and rehearing en banc |
| | # DOL OSHA related history in third count SOX |

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Tuesday, August 24, 2021 10:58 AM

**To:** MADml_Magistrate_Search; orangeinc@protonmail.com
**Subject:** Fw: RE: magistrate judge reappointment order
Hello magistrate judge search committee,
I copied GE people- because judge Kelley has copied/pasted GE's filings. For some judge Kelley injected her own arguments to defend GE....
GE attorneys are misleading court and also filing fractured defense...which court takes seriously..so I had to bring it to their attention that while they succeeded with judge Kelley- that should not be the way things are..
so....Thanks and regardsSent with [ProtonMail](#) Secure Email.
------- Original Message -------
On Tuesday, August 24th, 2021 at 6:48 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Tomasita was of counsel during Washington DC lawsuit against GE>
Hi Tomasita, as we spoke in past- when are you submitting arbitration hearing transcript..you said to me in past on telephone that you will enter upon order from court.
GE and GE's attorney's lie, cheat, misrepresentations are criminal now...GE and GE's attorneys are still walking free..
Wisconsin supreme court's attorney misconduct committee  had to send a warning letter to GE's attorney during arbitration...
Sent with [ProtonMail](#) Secure Email.
**From: Madhuri Trivedi [mailto:orangeinc@protonmail.com]**
**Sent: Tuesday, August 24, 2021 12:04 AM**
**To: MADml_Magistrate_Search; directors@corporate.ge.com; larry.culp@ge.com;**
**Kieran.Murphy@ge.com; Falby; Bruce E.; michael.holston@ge.com; Sherer; Tomasita;**
**charlotte.westbrook@dlapiper.com; kelsey.travares@dlapiper.com; gensler@mit.edu**
**Subject: RE: magistrate judge reappointment order**

**GE has not denied fraud, but has come up with statute of limitations, procedural filing and other defense...so which GE and their attorneys be in jail..**

And that's what for HMRC UK case also talk was- that if HMRC would have bought criminal case against GE for $1 billion tax fraud then GE would not have argued statute of limitations..but now supreme court has allowed appeal in that case which is good.

Similar in my case---GE people and attorneys go to jail then there is no statute of limitations affirmative defense.Sent with [ProtonMail](#) Secure Email

**From:** Madhuri Trivedi [mailto:orangeinc@protonmail.com]
**Sent:** Monday, August 23, 2021 11:47 PM
**To:** MADml_Magistrate_Search; directors@corporate.ge.com; larry.culp@ge.com;
Kieran.Murphy@ge.com; Falby; Bruce E.; michael.holston@ge.com
**Subject:** RE: magistrate judge reappointment order
Thank you.
I also wanted to add - and I wrote this in my court filing as well.
that Under ZERO TOLERANCE policy- judge Kelley must be removed effective immediately.
Detailed arguments are given in court filings...

Even a law school student would have done better than judge..But since it was done under corruption-- there is no logical reasoning, explanation..It is only makes me loose my sanity when I try to figure out why/how...because only thing that justifies these order - "corruption" , "abuse" , "victimizing litigants"

Also , GE people are criminal and should be in jail..GE attorney Bruce Falby should not be practicing law..I have filed misconduct complaint against him and attorney there said that leave it to judge..plus he gets many such complaints so he has to pick and in future he may address my complaint etc etc..The lady who was looking into Falby complaint retired, so there is anew person.

Total anarchy and corruption..

Trivedi's profile for Whistleblower Stories section on the whistleblowers.org  website:https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

Sent with ProtonMail Secure Email.

------- Original Message -------

**On Friday, August 20th, 2021 at 1:29 PM, MADml_Magistrate_Search <magistratecomm@mad.uscourts.gov> wrote:**


**The committee has received your comments regarding Judge Kelly. The comments and related case will be reviewed by the committee when considering Judge Kelly's reappointment.**


 **From: Madhuri Trivedi <orangeinc@protonmail.com>**
**Sent: Thursday, August 19, 2021 6:48 AM**
**To: MADml_Magistrate_Search <magistratecomm@mad.uscourts.gov>**
**Subject: magistrate judge reappointment order**

**CAUTION - EXTERNAL:**

Hi I strongly present evidence that Judge Page M Kelly Must retire- so she no longer abuse, victimize litigants.

Just look at how badly she has done..

Best is to look at her orders and how shallow her legal analysis is..


Sent with ProtonMail Secure Email.

## EXHIBIT 2

## Savings provision under Mass. G.L.c. 260, § 32, would apply to an action duly commenced in another jurisdiction

I was not concerned about GE's motion to dismiss when I voluntarily dismissed District of Columbia lawsuit (GE's and Judge Kelley's corrupt and silly argument ) – but because- when I met special agent in charge - David Johnson- - at FBI lobby in 2017- And I told him that I am going to Washington DC to meet USCIS / DHS top brass or someone in that capacity to discuss my lawsuit- he said to stay away from that PLACE. Ignoring what he said about staying away– I filed lawsuit in District of Columbia on May 2019- thinking that my claims were for greater good of society- of importance and judges will pay attention. But soon I realized that David Johnson's sentence to stay away from that political place –must have deep meaning –may be beyond I could literally see and/or comprehend ; and I was concerned ;so I dismissed it. That lawsuit was not dismissed on MERITS- thus GE attorneys and judges should be jail for dismissing these claims.

Segal v. Sacco, 136 Ill. 2d 282, 288 (Ill. 1990) (" Because the delay was inadvertent, plaintiff argues he was not undermining, or attempting to circumvent, the statute of limitations.")

> **Case 1:19-cv-11862-PBS Document 105 Page 30**
> Regarding Six year statute of limitations as defendant mentioned, Trivedi did started by filing District of Columbia lawsuit on May 21, 2019.

> **Trivedi Case 1:19-cv-11862-PBS Document 105 Filed 11/19/19 Page 30**
> Regarding Six year statute of limitations as defendant mentioned, Trivedi did started by filing District of Columbia lawsuit on May 21, 2019

## 1   TRIVEDI v. GENERAL ELECTRIC COMPANY (1:19-cv-01479) District Court, District of Columbia

### 1.1   ORDER show cause why DC court & Not Massachusetts court

**Case 1:19-cv-01479-TJK Document 12 Filed 06/17/19 Page 1 of 2**

   Plaintiff filed her complaint in this Court on May 21, 2019, bringing various claims under federal whistleblower statutes, federal securities law, Title VII, and common law breach of contract. ECF No. 1 ("Compl."). None of the factual allegations in her complaint, however, mention conduct that occurred in the District of Columbia. Indeed, Plaintiff merely states, in a single paragraph of her complaint, that "venue is proper since GE has office(s), reside[s], and ha[s] operations in this district." Id. ¶ 22. It appears that much if not all of the relevant conduct in her complaint occurred during Plaintiff's employment with a subsidiary of General Electric Company in either Boston, Massachusetts, or Waukesha, Wisconsin. See, e.g., id. ¶¶ 35–38.

   Accordingly, it is hereby ORDERED that Plaintiff shall, no later than June 26, 2019, show cause in writing why this case should not be transferred to either the United

States District Court for the Eastern District of Wisconsin or the ==United States District Court for the District of Massachusetts pursuant== to 28 U.S.C. § 1404(a). It is further ORDERED the Defendants shallfile a response to both this Order and Plaintiff's response no later than July 3, 2019.SO ORDERED.

/s/ Timothy J. Kelly United States District Judge Date: June 17, 2019

### 1.2    Aug 9, 2019  Judge Timothy ORDER on show cause:

Finally, upon consideration of the parties' responses to the Court's 12 Order to show cause why the case should not be transferred to a more appropriate venue, the Court determined to take no action. If Plaintiff now believes that venue is more appropriate elsewhere, she may either voluntarily dismiss this action under Federal Rule of Civil Procedure 41(a)(1)(A)(i) and refile her complaint in a different district, or file a motion with this Court requesting that it transfer the case pursuant to 28 U.S.C. ʋ⅟ 1404(a) and demonstrating that the requisite factors to warrant transfer are met. Absent voluntary dismissal, however, nothing in this Order relieves Plaintiff of her obligation to respond to Defendants' 17 Motion to Dismiss by August 30, 2019. Signed by Judge Timothy J. Kelly on 8/9/2019.

### 1.3    GE's Motion to dismiss in DC court-

Case 1:19-cv-01479-TJK Document 17-1 Filed 07/29/19 Page 27 of 30

IX. THE STATE LAW CLAIMS FOR BREACH OF CONTRACT OR IMPLIED COVENANT OF GOOD FAITH (COUNT 9) AND TERMINATION IN VIOLATION OF PUBLIC POLICY (COUNT 11) SHOULD BE DISMISSED BECAUSE THEY ARE PRECLUDED BY THE PRIOR ARBITRATION AWARD.

Ms. Trivedi's state law claims for (i) breach of contract or of the implied covenant of good faith and fair dealing, and (ii) termination in violation of public policy are

### 1.4    Trivedi's voluntary dismissal August 30, 2019

Plaintiff Trivedi hereby files notice of voluntarily dismiss of this action under FRCP 41(a)(1)(A)(i), all claims against all defendants (General Electric Company, GE Healthcare, Larry Culp, CEO of GE in his individual and official capacity, GE board of directors) dismissed without prejudice.

Dated: August 30th , 2019

*******************************************************************

==After district court of district of Columbia- issued show cause notice to Trivedi that while that court should hear her cue- she was shaken, though she replied to that order- it occurred to her tha==t she would most likely run into problem for jurisdiction of DC court- and hence it was a defective pleading that Trivedi filed within statutory time limit] Trivedi meets saving statute of Massachusetts under G.L. c. 260, § 32, as record indicate that as matter of form,, DC lawsuit was voluntary dismissed.

## 2   Trivedi case Boston Judge Kelley in her R&R ECF 135, page 16, 18, 19

*has dismissed Trivedi's two pendant claims  (1)"wrongful termination in violation of public policy. (2) breach of contract, breach of the implied covenant*
of good faith and fair dealing citing *"* Mass. Gen. L. c. 260, § 2 .

Note that  **Under Massachusetts law, a plaintiff "may commence a new action for the same cause within one year" of dismissal of an action that fails "for any matter of form."** Mass. Gen. L. c. 260, § 32 (the "renewal statute"). **An action is dismissed for form, as opposed to substance, where it has not been decided on the merits and where the defendant was on notice of the action within the limitations period.** *see Chao v. Balista*, 645 F. Supp. 2d 51, 55 (D. Mass. 2009) (no requirement of actual notice to defendants, so long as the original suit was timely filed). In *Liberace*, the court expressly determined that the renewal statute applies to pendent state claims dismissed from federal court, and such a dismissal is "for... form." 31 Mass. App. Ct. at **45.**

# Here, Defendants GE and Fragomen, as active participant
in the district of Columbia federal litigation, had notice of the proceedings within the statutory period. (*See***,** (summons),  (notice of appearance of Defendant's counsel), *and* (motion to dismiss).) The dismissal would also be procedural and not substantive.
Trivedi has successfully tolled statute of limitations for these two pendent claims by filing first lawsuit in Washington DC.
**GE's motion to dismiss in Washington DC court- doesn't mentioned statute of limitation for public policy and breach of contract claims...but only arbitration res judicata...While GE's Massachusetts motion to dismiss says statute of limitation expire...so it is the same law firm that represents GE in DC and MA. Since DC filing for these claims was timely-merely voluntarily dismissing it within** two months and refiling it same day- doesn't make it out **of time...This is corrupt on GE, judge Kelley, Judge Saris.**
**[This applies to Trivedi's lawsuit filed in March 2016, in Northern district of California-** as GEE has mentioned in their motion to dismiss that though GE was not a defendants, but it did mentioned GE- even the heading of lawsuit had "GE", and violations of law by GE, whistleblowing and more) –In a way , Trivedi did give a notice. **And Fragomen email to Jenny in 2017]**
**Trivedi was t**erminated by GE on May 31, 2013.Trivedi filed in May 2019, a federal lawsuit against GE, in Washington DC, District of Columbia federal court. It had public policy claim, Breach of the implied covenant of good faith and fair dealing claims...These claims had supplemental jurisdiction. As per supreme court ruling, first Trivedi filed DC lawsuit timely within six year statute of limitations for these claims. Second, when Trivedi filed DC lawsuit, statute of limitations tolled- clock stopped. And August 30, 2019; Trivedi voluntarily dismissed her lawsuit in DC- hence supplemental jurisdiction claims were tolled. Given  `The  Artis v.` **District of Columbia ruling..**<mark>Trivedi h</mark>**as met statute of limitations burden for her claims related to** public policy claim, Breach of the implied covenant of good faith and fair dealing.

## 2.1   Breach of fiduciary duty and termination in violation of public policy –pendent claims

**Judge Kelley R&R -ECF 135-**page 17 footnote 15
The claim for breach of fiduciary duty sounds in tort………15. . . The same outcome would result under Wisconsin law. *See* Wis. Stat. § 893.43(1) ("[A]n action upon any contract, obligation, or liability, express or implied . . . shall be commenced within 6 years after the cause of action accrues or be barred.");.");

Under G.L. c. 260, § 32, Supreme court case- Artis v. District of Columbia
583 US   (2018) the tolling provision in 28 U.S.C. § 1367(d) suspend the limitations period for the state-law and A**s Trivedi** has stated that her Washington DC lawsuit; this claim, court is already applying its jurisdiction for citing Wisconsin law- then it is under time limit .
*Carroll v. Worcester*, 42 Mass. App. Ct. 628, 629 (Mass. App. Ct. 1997) (" Rather, § 32 speaks to "an action duly commenced within the <u>time</u> limited in this chapter" (emphasis supplied), which, as set out in § 2A of c. 260, is three years. ") **[Trivedi's fiduciary duty claims under 2A}**

**DC lawsuit did alert GE, GE board of directors, GE healthcare about this tort, any contract, obligation, or liability, express or implied, actions of contract to recover for personal injuries,---Trivedi was terminated on May 31, 2013 and filed this lawsuit with this claim on August 30, 2019. Plus Scott Erven's alert with INSITEEXC vulnerabilities came out in 2018. Given tons of legal argument Trivedi provided in support of tolling. It would be within time limit.**

*Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn. 1998) ("Most states have "savings" statutes — also known as "renewal" or "extension" statutes — which allow plaintiffs to bring new actions within a certain period of time when their original actions have "failed for some reason other than a decision on the merits," although the applicable statute of limitations has run.")

*Gaines v. City of New York*, 215 N.Y. 533, 539 (N.Y. 1915) ("he statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts. ")
"The provisions of G.L. c. 260, § 32, are to be construed liberally, in the interest of determining the parties' rights on the merits." <u>Chao v. Ballista</u>, 630 F. Supp. 2d 170, 175 (D. Mass. 2009)

*Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC*, 84 Mass. App. Ct. 75, 88 (Mass. App. Ct. 2013) ("In sum, we see nothing in our case law to indicate that the savings statute applies only where the first action is involuntarily dismissed by a court. Instead, our cases indicate that we are to look to the specific facts and circumstances surrounding the termination of the first suit to determine whether " *the plaintiff* has been defeated by some matter not affecting the merits, some defect or informality, which he can remedy or avoid by a new process" (emphasis added). *Woods v. Houghton,* 1 Gray at 583, quoting from *Coffin v. Cottle,* 16 Pick. at 386. The inquiry does not tur*n solely on whether the first suit was voluntarily

or involuntarily dismissed, although that is certainly a factor to be considered. . ' We emphasize that nothing in our opinion should be taken to endorse the strategic initiation or dismissal of litigation for the purpose of taking advantage of the extension provided by the savings statute. There must be "no indication in the record that the plaintiff attempted for dilatory purposes to prolong the limitations period by reliance on the statute." "[A] touchstone for what constitutes dismissal for reasons of matter of form is whether, within the original statute of limitations period, the defendant had actual notice that a court action had been initiated" (footnote omitted). *Liberace v. Conway*, 31 Mass.App.Ct. 40, 44, 574 N.E.2d 1010 (1991). There is no dispute that the defendants had notice of the Delaware action' ")

*Cannonball Fund, Ltd. v. Dutchess Capital Management, LLC*, 84 Mass. App. Ct. 75, 76-77 (Mass. App. Ct. 2013) ("The primary issue on appeal is whether the plaintiffs are entitled to the benefit of th**e Massachusetts savings statute, G.L. c. 260, § 32, which permits claims that were timely when originally filed to be refiled (despite the subsequent running of the limitations period) within one year after being dismissed "for any matter of form." We conclude that voluntary dismissals are not per se excluded from the scope of the savings statute. ")** "the **savings statute** must be given a broad and liberal construction" to achieve its purpose: "administering the law fairly between litigants without binding them to minor and technical mistakes..

## Trivedi Case ECF 105 Page 29 *Acharya v. Carroll, 152 Wis. 2d 330, 334 (Wis. Ct. App. 1989) ("An action against*

an attorney for malpractice may sound in tort or in contract……….. Acharya alleges negligence. His case sounds in tort. ") ("Because Acharya commenced this action within six years after he discovered the alleged negligence, he timely commenced this action. We reverse the order of the trial court dismissing his action on the basis of a three-year statute of limitations. " ("Lewandowski v. Continental Casualty Co., 88 Wis.2d 271, 277, 276 N.W.2d 284, 287 (1979). The establishment of causation and injury may, as here, involve allegations that the attorney's negligence deprived the plaintiff-client of a successful prosecution or defense of a prior claim. Glamann v. St. Paul Fire Marine Ins., 144 Wis.2d 865, 870, 424 N.W.2d 924, 926 (1988) **[As t**his applies to Fragomen, Foley,Jenny Schrager]

I thought to write short comment

1. Cybersecurity rule amendment is a good first baby step that SEC.gov is taking. As a career engineer, cybersecurity professional – (though now I am so burnt.  And I find cybersecurity field dreadful, full of apathy); I like that…though entire new division at SEC.gov for handling cybersecurity would be necessary and required EVENTUALLY. It is the mindset of management – as I have already replied to SEC.gov twitter handle about this rulemaking – a separate DIVISION – more professionals at SEC handling, auditing, enforcing cybersecurity would be needed. And as I asked that "are you creating a separate division for this?"

2. Frank Abagnale, the infamous impostor turned security advisor, said

   "Every breach, without exception, happens because somebody in that company did something they weren't supposed to do or somebody failed to do something they were supposed to do—didn't fix its tech, it didn't update patches, so the hackers got millions of pieces of data."

3. **Like SOX internal controls and audit that came out** – after ENRON – similar to what I experienced at GE….**cybersecurity internal controls implementation and audit is a MUST**.. SEC has not done/ proposed any rulemaking in this regard; and hope that it will be done in the future, we can only hope…

4. **SEC prosed rule does not specifically state how company should report ZERO day vulnerability – rulemaking says "Incident" – does zero day vulnerability mean "Incident that is Material in terms of SEC's definition of reporting" ?** – which could be result of poorly done product/service,  self-inflicted misery , company having SLACKER type approach, serious defect in code, design, deployment, system that has led to finding of zero day vulnerability by someone else….when company issues public patch about zero day vulnerability ( as well as CISA, NIST cybersecurity alerts as mentioned below)--- it would be better to put that in SEC filing – so stake holders – those who I believe read SEC regulatory filings – would be better informed.

5. **SEC rule amendment states that "Specifically, we are proposing amendments to require current reporting about material cybersecurity incidents."**

   **Does it mean that company's CISA, NIST and CVE cybersecurity alerts are MATERIAL INCIDENTS and should/MUST be reported as part of this amendment?**

   There is not much clarity on what is MATERIAL, and it is likely that it will be subjective ..

May be SEC can specifically mention that any alerts issued through CISA.gov, NIST, CVE – with score above this –MUST be reported to SEC. Because this is a PROACTIVE step….in a long run – investors would be educated about how many alerts company is issuing and of what Severity, how much bad things are, how quickly company is ISSUING PUBLIC ALERT after coming to know about it,  how management is handling it…this is a way to address risk, liability and damage to public, patient, investor , employee data, systems, and more—entire universe that cybersecurity touches –OR say anything connected on internet.

**SEC rule amendment states that "Disclosure of Cybersecurity Incidents that Have Become Material in the Aggregate" – which is more than welcome. Punishes serial offender and forces them to disclose. And company's approach to fix issues in PRODUCTION, worry later and benefit now because we are in hurry to (1) go to market(2) in hurry to capture market share (3)we don't want to spend money initially (4) just slacker approach and mindset (5) who cares – thinking that "no one is going to jail "– worst –will pay some fine someday if at all, if regulatory agency comes after –but in the mean time we have generated 10-50 times revenue, profit, captured market share and more – that comparatively "paying a fine- which would be 1-5 % at the MOST of the amount revenue was generated, profit, captured market share and time to go to market….and this is all calculated by management as I have seen first-hand – managers think this way and do this way– so -- ☺**

6. **SEC Rule for internal whistleblower** – proposed rulemaking does not mention anything about it.
   In 2020, when SEC amended SEC rule 21F-2 to incorporate supreme court ruling in Digital realty v. Somers ; and removed  protection for internal reporting ---two commissioners ( Ms. Lee and Ms. Crenshaw) voted against it, where commissioner quoted history of whistleblower dated back to 1776 ; what founding father of America did back then ( entire history is that because of the whistleblower reporting- naval commander had to leave his post --- ) –I had submitted comments for rule making; but voting was 3-2 by commissioners and then SEC chairman Jay Clayton( who voted against it- though I had emailed at commissioners and chairman, general counsel email address about not to remove it)- -

   **Since SEC is already amending rule –and based on my detailed phone conversation with SEC.GOV senior attorney – SEC has to follow what supreme court ruled about** in Digital Realty v. Somers case **as definition of whistleblower–**

meaning those who report to SEC ONLY and not internal whistleblower. Currently two bills in house and senate are pending since 2019; those bills amend current whistleblower definition and add those who report internally as well. So there is some congressional intent. It is likely that– congress people knows about my lawsuit (I have already mentioned those bills in my lawsuit filing in 2019)..and GE has lots of lobbying power – so these two bills are sitting idle since 2019….

So coming back to my discussion….this is a good way to make SEC rule for cybersecurity more effective by adding internal reporting protection.

7. **Currently there is NOT any SPECIFIC statute or rule - specific to cybersecurity whistleblowing and/or reporting.** Most of the time employee would report to management - internally and try to fix it / address it.

8. **SEC rule amendment about Board skill and expertise is really a great step** – in my case – I had right from beginning emailed GE board of director about security issues at GE healthcare and ; she had replied that she was as a board member of GE- too high to deal with individual complaint….but then from next SEC.GOV filings – it shows that that same board of director was assigned cybersecurity oversight at GE..and she had a BIOLOGY background.

> GE 2019 proxy statement – page 17
> **BOARD SKILLS AND EXPERIENCE**
>
> **Technology Experience**
> As a digital industrial company

9. **Proactively changing culture where speaking up of** - bring up cybersecurity vulnerability is not a SIN - and without fear of retaliation. Those employee who DISCLSOE cybersecurity vulnerabilities, VERY FIRS, and INSTANTLY get a status of Persona non grata ; because disclosing in PUBLIC vulnerability means exposing – weakness

10. Changing culture of cybersecurity, proactively addressing issue throughout product, software, system LIFE CYCLE DEVELOPMENT- "starting form functional requirement, product requirement specification to design, development, testing, deployment and maintenance " - would require lots of cultural changes, changes in funding, management mindset, not to be overconfident, be realistic, not to cut corners, and also status quo , --- all these can be achieved by putting back old SEC rule 21F-2 's internal reporting whistleblower protection and not that only those who report to SEC are protected under Dodd Frank act…

11. **GE removed in SEC 10-K and /or DEF 14 A**

**So GE REMOVED/STOPPED putting BELOW SECTION entirely from February 24, 2019 till present 2022 in SEC 10-K filing with securities & exchange commission; after  T**rivedi sent email  - on January 2019 to Culp, GE board of directors **about Remote connectivity-**and wrote that Trivedi would be filing a lawsuit against GE..... **and GE ha**s since REMOVED that section from SEC 10-k altogether…..

-------------------SEC.gov website; searching GE's public filing with SEC
**Filing 10-K - For year 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 mentions INSITEEXC as follow**

**Item 7 operations..SIGNIFICANT TRENDS & DEVELOPMENTS MD&A**

**Health**care SEGMENT - **Our product services include remote diagnostic and repair services for medical equipment manufactured by GE and by others, as well as computerized data management and customer productivity services.**
**OR**
**Healthcare systems also offers product services that include remote diagnostic and repair services for medical equipment manufactured by GE and by others.**

12. **For example – GE added word "CYBERSECURITY" in its SEC.GOV filings after my fight…**

- ✓ **2011 DEF 14- A proxy statement**
  https://www.sec.gov/Archives/edgar/data/0000040545/000119312511065578/ddef14a.htm

- ✓ **2012 DEF 14- schedule 14 A -proxy statement**
  https://www.sec.gov/Archives/edgar/data/0000040545/000119312512107087/d301131ddef14a.htm

- ✓ **2013 DEF 14-A– there is no mention of WORD "CYBERSECURITY"**
  https://www.sec.gov/Archives/edgar/data/40545/000120677413001019/ge_def14a.htm

✓ **2014 DEF 14- A proxy statement – filed on** 2014-03-05 , reporting for 2014-04-23 ; **WORD "CYBERSECURITY"**
**Is mentioned once under experience of  Dan Heintzelman.**
https://www.sec.gov/Archives/edgar/data/0000040545/00012067741400746/ge_def14a.htm

**Trivedi did private arbitration with GE in May 2014( in a hotel room)—and Trivedi spoke with FBI agent couple of weeks prior to arbitration hearing( where FBI supervisor said that what GE was doing is called QUITAM =- fraud against government)**

✓ **2015 DEF 14 A**
https://www.sec.gov/Archives/edgar/data/0000040545/000120677415000847/ge_def14a.htm

**WORD "CYBERSECURITY" is mentioned 7 times in 2015 DEF 14A**
**Also mentions on page 12-  "CHANGES MADE IN RESPONSE TO 2014 EVALUATIONS.** In response to feedback received from our directors in 2014, the Board determined to adjust the compositions of the Audit Committee and Risk Committee in light of the increased demands on both of these committees and formalize and strengthen the Audit Committee's oversight responsibility for cybersecurity."

**13.** Data breach of employees' personally identifiable information, third party liability
   ✓ **SEC proposed rules states that "iii) The registrant has policies and procedures to oversee and identify the cybersecurity risks associated with its use of any third party service provider, including, but not limited to, those providers that have access to the registrant's customer and employee data."**
   ✓ **This is to the point – and I liked it too.**

   ✓ **In re GE/CBPS DATA BREACH LITIGATION (1:20-cv-02903-KPF) District Court, S.D. New York**

   https://www.courthousenews.com/author/courthouse-news-staff/

   Corporate negligence Brief / August 4, 2021

NEW YORK — A federal judge ruled that General Electric employees may sue Canon and GE after a data breach at the imaging company resulted in the release of **GE employees' personally identifiable information**. GE's policy documents may be read as implied contracts that gave its employees reason to believe it would **protect employees' personal information, including information provided to third party vendors.**

✓ On February 21, 2022 GE reached a settlement for this class action lawsuit. Atleast one judge was doing her job. Judge ruled that

"[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing." McMorris, 995 F.3d at 300 (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409-10 (2013)). Rather, a future injury may support standing only if "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." Id. (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

✓ Judge Katherine Polk Failla's order denying GE's motion to dismiss – dated August 4, 2021. **In this ruling--- "at risk " ,"future injury" has been shown enough to prove injury and thus ARTICLE III standing...**

14. GE or a COMPANY's MINDSET on CYBERSECURITY as shown in an example below---remote connectivity is better than defects ( below is GE architect Bill Barbiaux deposition; which has been part of my lawsuit filings)

Q So your -- I'm talking about -- I'm just
consolidating everything in one sentence.
Your point was connectivity is better than
defects in Insite ExC. At the least we would
have connectivity?
A Right.
Q And some are unresolved for ten years, which

is, as you said, not acceptable. But given
that there was no alternative, it went on?
A Right. And like I said, it was purchased
software, so I don't know that any of these
were really ten years old because we weren't
even in production at that point, but they may
be.

**15.** At GE healthcare, as GE architect testified in his deposition – that the remote
connectivity platform failed all security tests on DAY1 – on a public facing web; so
GE Healthcare – moved connectivity platform INSIDE GE's network- INTRANET.
And choose not to fix any of the cybersecurity vulnerabilities – for those tests failed
on DAY 1 and kept using the platform for several years…while old and new
vulnerabilities were PILING up in terms of hundreds of critical design defects( in
terms of FDA- Food and Drug administration's language it is called "Design
nonconformance and critical defects) and vulnerabilities.

Shouldn't there be some rule from SEC around this…to fix this kind of behavior and
also force company to disclose such defects in cybersecurity.
FDA ha**s 21CFR820  QUALITY SYSTEM REGULATION  Subpart I--Nonconforming
Product – but FDA is known to be administrative agency and not good at enforcing ..so
….my point is SEC should amend rule making for cybersecurity – non confirming
product….**

**16.** This is the IOT internet of things event  I did.

**IoT Security: High Stakes for Billions of Devices**
https://vlab.org/events/iot-security-high-stake-billions-devices/
"The speed of Internet of Things (IoT) adoption is creating opportunities for startups
developing IoT security solutions. Many industries such as healthcare, energy,
automotive, and consumer products are being transformed using insights gained from
the real-time data that IoT provides. As new online devices continue to be added at
exponential rates, the frequency of sophisticated cyber attacks targeting consumers,
businesses, and public services is also increasing.
Startups are competing against large corporations to establish themselves as leaders in
IoT security. And the rewards leading the charge to protect against security breaches,
hijacking, and individual privacy concerns is enormous. According to KBV Research,
the IoT Security market expected to reach \$29.2B by 2022.
- Is the Internet of Things making us more vulnerable to attacks?
- Given the anticipated growth in connected devices, will security solutions be able
  to keep pace?

- What are the biggest challenges for startups working on IoT Security? '

17. As SEC staff and top brass knows about my matter that I have sued GE , GE Healthcare. *Trivedi v. Gen. Elec. Co.*, CV 19-11862-PBS, District of Massachusetts and currently pending at first circuit – Trivedi v. General Electric et. al - No. 21-1434. Though judicary and judges are also corrupt.

18. As we all know GE has changed its marketing, PR and entire company profile as "GE is a digital industrial company"  -- and all of its SEC.GOV regulatory filings also reflect that; while in reality – GE had stoneage cybersecurity practice – and Also in SEC.gov filings dated 2013 till date; it shows that GE painted ROSY picture , look trendy and cool--of it's digital solutions (Internet of Things platform);
As stated in SEC 8-K form; that **"it's market is up to $8 billion and wants everybody using it"** …

➢ but GE totally failed to consider RISKS, liability –even that putting many GE assets – where some GE assets are age OLD, due to several limitations of computing processing power, processing memory available; unable to get cyber security patches and upgrades due to these reasons..

➢ This is misleading given that GE has lessons to be learned at the same time was recklessly, negligently connecting all kinds of assets on internet.

19. **Also SEC should include disclosure of annual training of staff and management. There must be mandatory training that company reports it undertook for its employees.**

20. Below is Cybersecurity related CISA.gov alerts…these are portion of **ALERTS** related to **healthcare and REMOTE CONNECTIVITY–** but complete list is available on cisa.gov. **My point to mention it here  -- is that SEC proposed rulemaking to INCLUDE such cybersecurity alerts through CISA, NIST ; and over period of time – aggregate of such alerts, how it** MATERIALLY impacted customers, users, patients, employees, society – how company handled it, when it was reported and when it became public –when PATCH was released, when recall was done…These alerts are Material information. But current rulemaking language is not clear about it.

Some catalog of cybersecurity vulnerabilities alert GE issues through CISA - department of homeland security – there is long list on cisa.gov.

Item 1 is holy grail -Scott Erven – cybersecurity researcher reported first to GE about it  in 2014- as it affect 100s of 1000s of medical devices- specifically and exactly

what GE is touting in all their SEC filings as robust ( and it also involves InsiteEXC remote connectivity platform – the one that Trivedi is fighting for), with lack of internal controls and more. And GE knew it ; but nor GE or DHS, cared to issue alert for 4 years– and randomly – issued alert on Feb. 2018. Since 2014 – there was a lot of press and media coverage about Scott Erven's finding. At that time, GE shrugged off and didn't give a damn. Scott Erven himself ahs been surprised about this kind of inaction by GE..

**So my point is  -- SEC rulemaking should include – clause where company is required to issue cybersecurity alert – no matter what – regardless of looking bad, being exposed, tarnishing of company's image and what not --- by certain time limit – and not wait for 4 years – currently this part is in VACCUM – no specific mention about it in proposed rule.**

Latest in December 2020, GE is issuing alert through DHS for remote connectivity issues—
So as SEC proposed rule suggest – previous undisclosed incidents in aggregate to be reported and disclosed as material…It shows a pattern.

1. **Advisory (ICSMA-18-037-02) GE Medical Devices Vulnerability** Original release date: March 13, 2018

https://us-cert.cisa.gov/ics/advisories/ICSMA-18-037-02

2. **ICS Medical Advisory (ICSMA-19-190-01)** GE Aestiva and Aespire Anesthesia (Update A)release date: July 09, 2019 |

https://us-cert.cisa.gov/ics/advisories/icsma-19-190-01

3. **ICS Advisory (ICSMA-20-023-01) GE CARESCAPE,** ApexPro, and Clinical Information Center systems release date: January 23, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-023-01

4. **ICS Medical Advisory (ICSMA-20-343-01) GE Healthcare Imaging** and Ultrasound Products Original release date: December 08, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-343-01

5. **ICS Medical Advisory (ICSMA-20-049-02)** GE Ultrasound products Original release date: February 18, 2020

https://us-cert.cisa.gov/ics/advisories/icsma-20-049-02

6. **ICS Advisory** (ICSMA-18-128-01) Silex Technology SX-500/SD-320AN or GE Healthcare MobileLink (Update B) release date: May 08, 2018

7. ICS Advisory (ICSA-18-275-02) GE Communicator release date: October 02, 20181

https://us-cert.cisa.gov/ics/advisories/ICSA-18-275-02

Note:- I see that people are having meeting / video conference with commissioner (s) and SEC staff. I would like to have one with Commissioner Lee and Crenshaw as well as David Joire. But I don't know how to request setting up this meeting. So kindly reply me in email soon about how to set up this meeting. Deadline is approaching – so we can still set up a quick video conference. Thanks.

### Madhuri Trivedi
➢ Twitter - @madhuritrivd
➢ Linkedin:- linkedin.com/in/trivedim
➢ World innovation and Entrepreneurship – THE WSIE  summit speaker invite– Great presenter 2019 - https://thewsie.com/presenters-2019/
➢ **Here's my cybersecurity whistleblower profile on whistleblowers.org**
https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

**EXHIBIT 4**

**My First Project "Insite EXC" , manager's review where Dave Sallis[1] wrote that it is GE's problem. Also GE fired Dave Sallis just a month ( April 2014)before my arbitration hearing on May 2014...**

1. **EXHIBIT 21 hearing transcript of arbitration – first 9 pages- filed  by GE attorney-show that "Sean Scillen Quarles and Bradley attorney who represented GE at arbitration- he knowingly didn't provide ; Trivedi's performance review by Dave ;** where manager Dave Sallis "gave good rating in my performance review and wrote that it is GE's problem"-Sean didn't give this document during discovery(otherwise I would called Dave Sallis as WITNESS in hearing—and gave on the day of hearing –seconds before hearing began.."



**Holding that the "assignment of a disproportionately heavy workload" can constitute an adverse employment action);"**Valenti v. Massapequa Union Free School District, No. 09-CV-977 (JFB) (MLO), at *5-7 (E.D.N.Y. Feb. 5, 2010) ("Little v. NBC, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002); see also, e.g., Feingold v. N.Y., 366 F.3d 138, 152-53 (2d Cir. 2004) ")

2. Trivedi was right in the beginning of her job  at GEHC when she asked Dipti Patel for testing

related matter for Insite EXC and Dipti replied with email that she should be fired and David Mehring and HR manager Mike Truman made a Big deal out of this email, started threatening--- Trivedi was assigned unusual high workload  **by GEHC manager David Mehring and project lead ;scheduled 23 days**
**>of converting 1000 page test document written for Windows operating system related to insite EXC –>develop brand NEW test procedure equivalent of all tests mentioned in 1000 page document to work on Linux operating system**
**>to convert into test procedure that would work on Windows and linux operating systems**

**Retaliation and fraudulent integration of InsiteEXC when Trivedi reports to management, executive Dave Elario who further threatens to take Trivedi off job and more aggressively releases Insite**

---

[1] GE attorney at arbitration withheld performance review that Dave Sallis gave and never submitted that during discovery Instead as stated in complaint, withheld till the day of hearing--despite my objections at hearing arbitrator didn't take any action, impose sanctions...Trivedi could have called
Dave Sallis as WITNESS for hearing if GE would have given that performance review---this shows that GE was obstructing and arbitrator didn't give

**3.** Plaintiff suffered disparate treatment, retaliation harassment including sexual in nature for
not joining GE's fraud scheme. Plaintiff Trivedi was working on a project "integration of Insite2/Insite EXC on surgery platform"; Ms. Trivedi found and investigated issues of product being vulnerable for security attacks/hacking. Security vulnerabilities were agent was accessible by multiple ports.

**4.** When I pointed out deficiency on systems; manager/leads got upset and treated me discriminatory. Other employees who were doing this kind of work were not held accountable. They were not making waves. I was retaliated for coming out/coming forward. Manager differentiated between them and Ms. Trivedi in treatment when it came from a minority woman who is a hard working engineer. Ms. Trivedi was put on a PIP to **improve relationship** There are several factual evidences including but not limited to that Ms. Trivedi was working with dedication to quality, technical rigor, Inclusiveness and clear thinking.

When I requested a meeting with Dave Elario; he did not come as her mother got sick he said. I sent information to him regarding what was happening via email. After sometime to find a solution; in early February I requested Dave Elario's boss Mike Swinford to meet and help. Mike sent Dave Elario to meet with me. Dave Elario got very upset at me as I went to his boss and told me that even if his boss Mike wants to transfer me to another group/manager, Dave E. won't let that happen and he will advise Mike Swinford against that and against supporting me. Also Dave Elario threatened that he will take me out of job. (Ms.Trivedi thought there would be an open door policy.) After a week of this they put me on a Performance improvement plant(PIP). During PIP also managers lied of what we discussed my progress, manipulated discussion and kept harassing me; beating me up no matter what I did..I was also all burnt out and exhausted- mentally, emotionally and physically due to their torture and such disperate treatment, retaliation.

My email to Dave Elario with highlights paragraph relevant this cause of actions and allegation here. And Dave Elario's response email that I work on my relationship skills.

EXHIBIT (ECF 51 Page 65 –68)

Despite internal GE groups writing emails to Dave Elario that they can't fulfill contract obligation that they sign with customers( private , public and government hospitals , doctors who use these medical devices). I Madhuri also informed managers/Dave Elario about these issues.

Dave Elario-General manger at GE bragged how aggressively GE is integrating Insite Exc( name of defective medical device) in couple dozen medical device types. This was audio video recorded during quarterly internal townhall for all employee meeting. Despite all these; He and GE kept integrating, installing and releasing into production and to costumers(hospitals) on all kinds of medical devices(aka ultrasound,); ..And were proud to finish modality integrations on as many modality as fast and as quickly and as they can. While beating Madhuri and working on systematically to get rid of her. Even after Dave Elario was made aware of issues and that it is misleading, false and omission by not disclosing these issues as well as GE was saying that it was HIPPA-HITECH complaint but Insite EXC lacked adequate controls for this; --most critical is Insite EXC failed security tests from DAY 1 and knowingly GE released it on all kind of medical devices for years..It is Conspiracy and false case made against Madhuri to end her employment with

GEHC . When GE kept harassing me when I was doing my job, tests failed and as GE knew defects but knowingly didn't tell me about them instead tortured me that I am slow and stupid. but the truth was I did understand but they were technically incompetent and were doing fraud by concealing these material defects to me, customers and public- stakeholders and stockholders, regulator)

**With Second project RSVP GEIP project , there was lots of stress and tension between team leads/managers/members and overall..as there were three companies-GEHC, GEIP and GE Energy; hence different approaches, directions, priorities and it was not working well(even before Madhuri joined the team)**

5.   In Second project ;GE Digital manager Joe Purcell in Detroit and GE Digital team lead Barry in Detroit had concerns/conflicts with/about GE healthcare and Greg Stratton.

6.   Mohieddine Barhoumi included me in defect review meeting where all leads/mangers/test engineers involved to help defect fixing . My contribution was impressive in those meeting and overall defect fixing. Joe Purcell, Barry and test engineers from GEIP appreciated and thanked my approach, communication, collaboration and technical skills. Test engineers wanted to do what Madhuri was suggesting and they were delighted. In Second Project Joe Purcell, Barry also gave excellent performance review including soft skills and relationship but GE healthcare manager David Mehring and GEHC managers swalloped that and excluded any positive review I got about my "getting along" and "relationship" ..

7.   **How CORRUPTLY JUDGES, ALJ, ARB issue order. "**Sachin and other were responsible for 200 defects in development for a second project Trivedi was assigned to & told to fix defects sachin & other created—this is not illegal, hostile but violation of human right and pure retaliation of my whistleblower activities)"

✓   This same 200 defects on second project was part of ; Trivedi reply to GE brief at first circuit - Case: 21-1434 Document: 00117794269 Page: 20-24 .I have attached Trivedi reply brief as EXHIBIT 10 in this SDNY complaint.  Despite this fact – GE framed me as "NO GETTING along even on second project & put me on PIP to improve my skills.

**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 4:41 PM**To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare) **Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare) **Subject:** RE: Coverity errors and compilation warning
But when I joined old RSVP; the day I joined there were **200 plus defects/redesign work**..all these work was done by GEHC/GEIP engineers/architects/leads/LSDs.. …They are fine even if they do such work…and as they/managers failed, Greg yelled and all made it my inclusiveness thing and made up clear thinking issues..After joining RSVP I did integration testing and feature work..I took all the directions they gave, followed all review
**From:** Trivedi, Madhuri (GE Healthcare) **Sent:** Wednesday, May 15, 2013 1:07 PM **To:** Mehring, David T (GE Healthcare); Conrath, Carl (GE Healthcare)**Cc:** Khan, Ayesha (GE Healthcare); Trivedi, Madhuri (GE Healthcare)
**Subject:** FW: Coverity errors and compilation warning**Importance:** High
These are the defects……I am working on server integrations so I haven't been involved in it at all.

But it's to show how project is managed may be developers need more time to complete their task..something else ..I don't know..

But later they should not bring me into the picture as I am not even involved(zero contribution of mine in these defects…)

Best,

Madhuri Trivedi

Software Engineer

**From:** Bayi, Prasad (GE Healthcare) **Sent:** Tuesday, May 14, 2013 3:45 AM **To:** @HEALTH GST-ENG-RSvP**Subject:** RE: Coverity errors and compilation warning**Importance:** High

Dear Team, Coverity defects are piling up. Waiting on individual to comment on from your respective developments by eod today. Do let me know if we need to update the rules with reasons so that we can review and make necessary changes.

http://olc-app-dev-04.am.health.ge.com/jenkins/view/RSvP/job/RSvP/



**8.   I believe it is marital discrimination as well as I am divorced so illegaly and pointing finger based on "relationship"---spouse of GE Executive lacked technical** executives and were driving product quality at GEHC..GEHC architect Ofir Dahan fought with GEHC managers including my managers that "why these technical incompetent spouses of GE managers and executives are driving quality of medical devices when she/they have no clue what she/they are doing". Ofir resigned from GEHC in April 2013(one month before I left)..GEHC managers Carl Conrath and David Mehring lied that Ofir was fired for not getting along and fighting but Ofir told me months back that he is leaving GEHC and ofir did RESIGN but GEHC manager Carl Conrath and David **M**ehring thought that Madhuri wouldn't know true reason why Ofir left so best is to LIE..

**9.   During Second project other GE division (such as GE corporate, GE Energy, GE Transportation, GE digital)project leads and managers were happy with me but GE healthcare Wisconsin manager continuously retaliating and harassing me ---for no reasons –diverting their failure and blame onto me..**

**10.** GE PRETEXT explanation is that I was transferred into second project);

into which GE managers all across country and in outside of USA where writing abusive emails, verbal abusi**ve phone calls, infighting and blaming each other –were totally dysfunctional with 1% productivity** as for two plus years didn't produce anything. During my last month at GEHC, GEHC was looking **to BUY READYMADE Software/firmware from OUTSIDE Company.**

**the PIPs and similar criticism could qualify as adverse actions where they materially impact the terms and conditions of the plaintiff's employment,**

the PIPs and similar criticism could qualify as adverse actions where they materially impact the terms and conditions of the plaintiff's employment, as Trivedi was put on PIP *see Tse v. UBS Fin. Servs., Inc*., 568 F. Supp. 2d 274, 283-84, 288 (S.D.N.Y. 2008) (denying summary judgment because jury could have found performance plan impacted terms of employment where, among other things, it laid out revised, objective performance targets for plaintiff to meet, or risk termination), Plaintiff allege sufficient facts that demonstrate that the PIPs materially impacted the terms and conditions of his employment.

Pimentel v. City of New York, No. 00 Civ. 326, 2002 U.S. Dist. LEXIS 8454, 2002 WL 977535, at *4 (S.D.N.Y. May 14, 2002). See Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir. 1996) (holding that a change that harms a plaintiff's reputation, opportunities for advancement, and earning potential may constitute adverse employment action); see, e.g., Casale v. Reo, 522 F. Supp. 2d 420, 2007 WL 3353217, at *6 (N.D.N.Y. 2007) (holding that an adverse
employment action has occurred even where  [**18] it is "likely" that the action will have a "material impact" on the employee).

*11.* Jeff Goldman sent a letter to GE but he was just an immigration attorney so it is understood that He can't bring up employment rights.
*12.* **GE said that Diane Smith investigated & interviewed, She selectively interviewed those whom; she could gather document against Trivedi and excluded those who will say positive things about Trivedi..**
GE said that Diane Smith – HR manager investigated & interviewed- But Diane didn't interview all the individuals Trivedi requested such as Dave Salis, Debbie Babula, Joe Purcell, Barry Turner, Ofir Dahan. surgery manager in Saltlake city –UTAH, Glyn Livermore, Mathews Matson ,InsiteEXC customer Missy Polak, InsiteEXC global service leaders( John Farrow, Peters Evelyn,Charles Pollum, Jon Love,Sara Zieher, Sal Astarita)She selectively interviewed those whom ;she could gather document against Trivedi and excluded those who will say positive things about Trivedi..This was a fake internal investigation just to generate some data. MA court can ask GE to submit whom Diane interviewed & what she looked. She was already employed by GE. ONLY outsider with no financial, social, networking or other interest can do SOME INDEPENDENT INVESTIGATION which Diane didn't do. Daine did BEST to COVER up FRAUD as it was her job as GE employee.

**GEHC Chief technology officer Mike Harsh told me on phone 2017( came to my arbitration hearing)**NO ATTORNEY will bring up laws that in my situation as GE pays a LOT to attorneys

### Trivedi filed EB1 person of extra ordinary ability employment based - petition with USCIS; when arbitration was pending  - as Jenny canced H1 B while mediation was pending

**13.** After GE terminated me illegally I filed EB1 –person of extra ordinary ability employment based -petition with USCIS(govt. agency);along with Harvard medical executive creating job for me at Harvard (job was after I get my EB1 approved as earlier Harvard said that they won't do H1 B ) ; and my innovative startup orangehealth for peer to peer crowdsourced support , management and actions for health conditions---and along with other credible evidences –I also mentioned National interest waiver EB2 category in that petition; but USCIS declined …

**14.** Since I used up almost all of my H1 B time and there was no time left for another employer to do PERM with labor department in order for me to get further H1 B extension..Life technology/thermo fisher scientific offered me fulltime job just two weeks after I was fired from GE but got stuck at H1 B level as I mentioned I had no time on H1 for employer to do PERM.

<mark>I already had a full time JOB OFFER in June 2013 from Life Technology/Thermo Fisher scientific at Madison, Wisconsin facility working of DRUG DISCOVERY JUST TWO WEEKS after I was fired by GE</mark>

**15.** But Life tech/Thermo fisher job got stuck on H1 B visa as there was no time left to extend H1
B and file a BRAND NEW PERM with department of labor by another employer –thanks to conspiracy by GE, GE manager David Mehring (**EXHIBIT ECF** 51-3  Page 145  shows  I emailed David Mehring and Nate Davis prior to joining GEHC that GE must file PERM 365 before H1 expires), GE architect Nate Davis, Jenny and Fragomen.


From: Madhuri Trivedi [mailto:madhuritrivedi@hotmail.com]
All visa petitions and PERM attached.
From: madhuritrivedi@hotmail.comTo: bryan.nguyen@lifetech.comDate: Mon, 29 Jul 2013 13:14:51 -0500
Sending visa docs.. Will send anotehr email with rest. Could I be in touch with your immigration people. Tnx.

From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Tuesday, July 23, 2013 1:27 AM
To: Madhuri Trivedi
Subject: RE: madhuri
If you're willing….can you provide our legal with the following information?  Thanks.

a.     All of her H-1B approval notices
b.     A copy of her most recent H-1B petition.
c.     A copy of her PERM labor certification, if available.
d.     A copy of her I-140 receipt or approval notice, if available.
e.     A copy of her I-485 receipt notice, if available.

-Bryan
From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Saturday, July 20, 2013 5:17 AM
To: madhuritrivedi@hotmail.com
Subject: RE: madhuri
Madhuri,
I'm sorry but my phone has no more battery life. I will forward this to legal and will wait for
their approval.
-Bryan

From: Nguyen, Bryan [mailto:Bryan.Nguyen@lifetech.com]
Sent: Friday, July 19, 2013 8:52 PM
To: madhuritrivedi@hotmail.com
Hi Madhuri,
Our legal team is educating us on the transfer process. When did you leave GE exactly?
-Bryan

**16.** GE immigration attorney and HR email that GE canceled my H1 B visa while
mediation and arbitration is PENDING. And won't pursue any immigration I 140
paperwork.(EXHIBIT 17) –same Jenny Schrager –Mean fragomen lw firm attorney.
Trivedi filed Mediation statement through Cross Law firm(Waukesha, WI).
GE offered ONE MONTH salary-that's it-nothing related to immigration at
mediation in return for plaintiff to waive all her rights/claims/cause of actions against GE.
Plaintiff declined to settle at mediation.
Trivedi filed arbitration complaint with American Arbitration association.
She was pro-se / representing herself ;and prepared arbitration statement.
Arbitrator was insulting and continuously cutting me off from asking questions
during hearing ..when manager did perjury on second day morning of hearing I quit arbitration
hearing and GE finished it alone. .Arbitrator didn't rule in my favor.
After that Foley and Mansfiled sent a letter without bring up laws as I mentioned
earlier in this lawsuit. I wrote an email to Seymour Mansfield in 2016 –that law firm failed to
provide me legal service and bring up laws.

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**        EXHIBIT 5

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Madhuri Trivedi**<br>**607 Boylston Street**<br>**Boston, MA 02116** | From: | **Chicago District Office**<br>**230 S. Dearborn, #1866**<br>**Chicago, IL 60604** |
|---|---|---|---|

| | ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2021-04770** | **Kimberly M. Engram,**<br>**Investigator** | **(312) 872-9707** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| *Julianne Bowman/np* | 9/15/2021 |
|---|---|
| **Julianne Bowman,**<br>**District Director** | *(Date Issued)* |

Enclosures(s)

cc:      **GE Healthcare**

**Heidi Retzlaff**
**GC, Legal COEs**
**3000 N Grandview Blvd.**
**Waukesha, WI 53188**

GE Healthcare                    EXHIBIT 6                    **Heidi Retzlaff**
General Counsel, Legal COEs &
Global Counsel, Labor &
Employment

August 12, 2021

United States Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn
Suite 1866
Chicago, IL 60604

     Re:  Madhuri Trivedi v. GE Healthcare, EEOC Charge No. 440-2021-04770

To Whom it May Concern:

This letter is the position statement of GE Healthcare ("GEHC") in response to the above-referenced complaint filed by Madhuri Trivedi.  Ms. Trivedi was separated from employment with GE Healthcare in late May, 2013.

Ms. Trivedi subsequently filed a claim under our Alternative Dispute Resolution Procedure, and the following allegations were tried in an arbitration[1] before arbitrator Peter R. Meyers on May 8-9, 2014:

(1) the Company had discriminated against her based on her gender, female, and her Indian national origin when it discharged her from her employment;

(2) the Company subjected the Claimant to an intimidating, hostile, and offensive work environment, that the Company failed to take sufficient action to correct that work environment, and that the Company retaliated against the Claimant for bringing  that work environment to the Company's attention;

(3) the Company failed to take sufficient action to correct the discriminatory  conditions after the Claimant brought such conditions  to the Company's attention;

---

[1] At the arbitration, Ms. Trivedi presented the testimony of 9 witnesses, including herself.

General Electric Company
GE Healthcare
3000 N. Grandview Blvd. W436
Waukesha, WI  53188          Telephone:  262 424.5722
USA                         heidi.retzlaff@med.ge.com

GE Healthcare

**Heidi Retzlaff**
General Counsel, Legal COEs &
Global Counsel, Labor &
Employment

(4) the Company retaliated against the Claimant for complaining about discriminatory and disparate treatment[2]; and

(5) the Company subjected the Claimant to unfavorable and adverse treatment even though she was meeting the Company's legitimate expectations.

On August 11, 2014, following post-hearing briefing, Arbitrator Meyers issued a written decision finding no discrimination or retaliation by the Company and dismissed Ms. Trivedi's claims.

In this charge, Ms. Trivedi asserts there is a continuing violation that makes her claims timely, she states no facts that indicate what alleged actions GE Healthcare has engaged in that could be the basis for a continuing violation theory under Title VII or any other law.  As well, the merits of her claims have already been decided and cannot be relitigated by her.  For these reasons, we ask that you dismiss the case without further investigation.

If for any reason you need more information, please let me know.

Very truly yours,

Heidi B. Retzlaff
General Counsel, Legal COEs & Global
Counsel, Labor & Employment

---

[2] The claim of retaliation included assessing the merits of Ms. Trivedi's allegation that she was retaliated against for raising concerns about Company products and the allegation was found without merit following the arbitration.

General Electric Company
GE Healthcare
3000 N. Grandview Blvd. W436
Waukesha, WI  53188          Telephone:  262 424.5722
USA                          heidi.retzlaff@med.ge.com

EXHIBIT ●      EXHIBIT 7

**Trivedi, Madhuri (GE Healthcare)**

| | |
|---|---|
| **From:** | Barbiaux, William J (GE Healthcare) |
| **Sent:** | Monday, June 11, 2012 10:29 AM |
| **To:** | Trivedi, Madhuri (GE Healthcare); Livermore, Glyn C (GE Healthcare); Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare); Davis, Nate (GE Healthcare) |
| **Subject:** | RE: Memory error stopping |

Are we able to rebuild the ActiveX control, or do we get that straight from Questra?

**From:** Trivedi, Madhuri (GE Healthcare)
**Sent:** Monday, June 11, 2012 10:12 AM
**To:** Livermore, Glyn C (GE Healthcare); Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Barbiaux, William J (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare)
**Subject:** RE: Memory error stopping

Controls are built using old versions of ATL crashing when DEP is enabled. The solution is to turn off DEP or rebuild the ActiveX control using Visual C++ 2005 or higher (preferably with the recent security update), like Adobe did for their Flash player.

Best,
Madhuri

**From:** Livermore, Glyn C (GE Healthcare)
**Sent:** Sunday, June 10, 2012 9:29 PM
**To:** Bauer, Christopher (GE Healthcare); Gran, Curt (GE Healthcare); Barbiaux, William J (GE Healthcare); Kuhn, Alan (GE Healthcare); Patel, Dipti (GE Healthcare)
**Cc:** Trivedi, Madhuri (GE Healthcare)
**Subject:** Memory error stopping

For all those folks who don't work on ExC issues.
It appears that if you don't uncheck " Enable memory protection to help mitigate on line attacks" on IE8 then you get the error seen here and you can't download the RAViewer.
If you already have the RAviewer it's not a problem.

Glyn

Since 100 or so online engineers were stuck and were not able to establish remote connectivity due to this ActiveX issue…GE needed some quick fix…as I mentioned in the email running ActiveX and establishing connectivity –encounter compromise.

1. The ActiveX security is designed on how USER of ActiveX chooses various SECURITY options and be a Cyberpolice for own usage of ActiveX.The ActiveX security model relied almost entirely on developers promising not to develop malware, Microsoft gave the creators the ability to sign their applications. These digital signature certificates are double-checked and certified by services like VeriSign. Identified code would then run inside the web browser with full permissions .(In Java, user can put only partial trust in a program, while ActiveX requires either full trust or no trust at all.), meaning that any bug in the code was a potential security issue; this contrasts with the sandboxing already used in Java. Java applets,

which perform many of the same functions as ActiveX controls, are heavily restricted as to how they interact with a user's PC. Java applets can't erase files from a user's hard drive because it uses "sandboxing ". ActiveX is not sandboxed at all. Once downloaded on a user's computer, the ActiveX control becomes part of the operating system with the ability of tampering with every piece of hardware and software on the machine.

    2.  Microsoft didn't restricting ActiveX's functions, Every time Internet Explorer needs to download a new ActiveX control, it launches a pop-up window. It then  asks the user if wants to proceed. Then user, has to decide whether the ActiveX control is legitimate or a Trojan Horse for nasty/malware code. Microsoft gave the creators the ability to sign their applications.

    3.  **A "good" plug-in or Good ActiveX program can also hurt. By accepting an Active X program, user is trusting that the ActiveX program has no security-relevant bugs. As we have seen so many times, systems that are meant to be secure often have bugs that lead to security problems.** With ActiveX, this problem is made worse if you click the box which accepts all programs signed by the same person (for example, if  user accepts anything signed by GE/Vendor). While one GE/vendor program may be secure, another one may have a security-relevant bug.

    4.  <u>This problem even applies to code written by own company for internal use aka GE written ActiveX. Once the plug-in or program is installed in user browser, an external attacker could write a Web page which used User's internal program ;bug passed  it OWN data which corrupted the program and took over USER's  machine.</u>

    5.  Trivedi suggested bandage-short term fix, security compromise and long term fix.

    6.  At GE "InsiteEXC" RAViewer was required to establish remote connectivity and many times online engineers/internal customers had to download/re-download it as per settings.

    7.  GE architect Bill Barbiaux, architect Nate Davis, Lead systems designer Gregg Stratton all three of them with with GE from 20 years, 30 years ,10 years respectively. But None of three had any clue and were doing this from 2007, from 2009 and in 2012 received plaintiff Trivedi's analysis and findings….

    8.  GE argument that they can't rebuild ActiveX with security update because ; they bought huge chunk of InsiteEXC software/firmware code from company called "QUESTRA" and Questra got bankrupt ; hence they don't have access to source code..So GE has to make new connectivity platform from GROUND up…But Chris Hardimen-Program manager for GE connectivity mentioned that it is not Questra gone out of business but GE's unwillingness to spend some million dollars in fixing this..but GE bought Questra software in 2004 with major update to that in 2007 and it was 2012 ; still they were sitting on pile of defects and cyber security vulnerabilities; hoping and praying that nothing happens to their broken remote connectivity platform while continuously & knowingly and after all this Trivedi talked—more aggressively putting Insite on all kind of medical devices and selling it to customers worldwide…

    9.  Even in new platform development which was no way near the end for years to come even though Trivedi reported ActiveX securities; GE continued at that point to USE ActiveX. After I left GE may have DROPPED or may not..I am not SURE as I did arbitration so ;GE might have taken it seriously or might not..

# EXHIBIT 8
# United States Court of Appeals
## For the First Circuit
_____

## No. 21-1434

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP; JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in her individual and official capacity; MIKE SWINFORD, former CEO of GEHC services, in his official and individual capacity; CARL CONRATH, Senior Engineering Manager, GE healthcare in his official and individual capacity; NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect, GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services; DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead, GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

**Letter regarding my email to Ur Jaddou, USCIS director nominee on May 27, 2021 and within 10 hours, Judge Saris issues 3 lines order to dismiss my case. That led me to believe conspiracy to remove witness.**

**Dear all judges, This is a supplemental letter-** I wanted to add this in my original letter sent to you all recently..But thought how would it look and what kind of impression I would have in front of judges if I write this. But now I have no choice but to write this. If Ur Jaddou –is not the one behind this ; then I ask that Ur Jaddou won't take this letter personally and understand my plight for suffering series of injustice.

I had sent this letter content to Ur Jaddou; so she is aware of my observation.

**1)**   I had sent an email to Ur Jaddou ,nominee USCIS director who went through senate confirmation on May 26---

I sent her an email - May 27 10.20 am UTC time ;so at 6.20 am Eastern Time ; she had whole day to do whatever she can...I even called her and no one picked up so I left a voice message..

By 5 pm Eastern time ; judge Saris issued an order..so most likely it is her...**She used to be a general counsel at USCIS...this people are heartless, they have ZERO conscious- are power hungry , doesn't care about laws, ethics, values....**

> About my email to Ur Jaddou and district court ruling in 10 working hours –if this is a conspiracy I believe and it exists - it could be this Jaddou Ur..total anarchy and people like Ur are symbol of anarchy-and they won't like to be exposed by a smart MIT educated person..so remove witness ..

**As her linkedin shows- she was a general counsel for DHS, USCIS from 2014-january 2017.........and my lawsuit against DHS, USCIS was filed in District court in March 2016- I went to supreme court in December 2016...so she was a general counsel during my DHS, USCIS fight. Judge Saris issuing 3 lines order and my email to her –timing – send a message..Since similar things has happened in past –it makes sense that removing witness by dismissing case that she brought is what people like Ur Jaddou would do-if she is the one…**

# 2)      My Email to Ur Jaddou

## MIT sloan alumni,Immigrant,woman,  SEC complaint for GE & Lawsuit

From:orangeinc@protonmail.com  <orangeinc@protonmail.com>
To:ujaddou@potomaclaw.com <ujaddou@potomaclaw.com>orangeinc@protonmail.com <orangeinc@protonmail.com>
Date:Thursday,  May 27th, 2021 at 10:20 AM UTC TIME
Ms. Ur Mendoza Jaddou,
I see that you are being confirmed for USCIS director. Congrats.
For not joining General electric fraud, GE has withdrawn my H1 B and greencard.And I had no time left on H1 B when GE withdrew. After that I had no choice but to file EB1-which USCIS denied. Please take care of my matter..
When you join USCIS please have someone contact me and figure out logistics. GE has bribed and stolen my attorneys-no attorneys has given me advise that would resolve and GE Chief technology officer said that "no attorney will bring up law that would resolve your matter Madhuri- we pay these attorneys a lot"

**I have filed SEC complaint...and also federal lawsuit in district of Massachusetts -**Case 1:19-cv-11862-PBS Trivedi v. General Electric Company et al  --assigned to chief judge Patti B Saris..
Sent with ProtonMail Secure Email.

# Fw: Automatic reply: MIT sloan alumni, SEC complaint for GE & Lawsuit

From:orangeinc@protonmail.com <orangeinc@protonmail.com>
To:ujaddou@potomaclaw.com <ujaddou@potomaclaw.com>orangeinc@protonmail.com
<orangeinc@protonmail.com>
Date:Thursday, May 27th, 2021 at 4:32 PM

------- Original Message -------
On Sunday, May 9, 2021 7:55 AM, Gary Gensler <gensler@mit.edu> wrote:

I'm no longer regularly checking this email since I've left MIT. If your message is regarding
SEC matters, feel free to email me there.

---

Received: Tuesday, May 11, 2021 1:04 PM From: Madhuri Trivedi orangeinc@protonmail.com
To: gensler@mit.edu gensler@mit.edu CC: orangeinc@protonmail.com
orangeinc@protonmail.com
------ Original Message -------
On Friday, May 21, 2021 4:52 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

FYI I came to know that Mr Gensler SEC chair teaches at MIT when I was going through some
finance course material —
Sent with ProtonMail Secure Email.
------- Original Message -------
On Tuesday, 11 May 2021 6:34 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
Apology for a typo Mr. Gensler below - it had G before
Sent with ProtonMail Secure Email.
------- Original Message -------
On Sunday, 9 May 2021 3:56 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**1**.So after GE let me go - my former c**o worker at startup I worked in Boston and then
director at Harvard medical wyss institute ha**d created job for me pending logistics issue to
work in **synthetic / artificial protein** —-**vaccine** .At that time I was passionate to work on that
research with other bright people - but off course NOT ANYMORE. And even for my startup
press release I had mentioned those words .. Now as you know — **for corona some of the
vaccines are monoclonal antibody / aka artificial or synthetic protein ..
Trump got monoclonal antibody ...........................**

**2.**After GE fired me- I started to work on my startup as well..(But I left healthcare domain and
startup)after my father died---

**OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing
Diabetes, Other Health Conditions**

https://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

Sent with ProtonMail Secure Email.

------- Original Message -------
On Sunday, May 9, 2021 7:54 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

Respected Mr. G,
I look forward to your reply to my email...As a new chairman of SEC and MIT
**I did Systems design and management course at MIT and MIT sloan combined..It was a tech executive leadership course while I was working full time** at United Technologies in Connecticut and UTC sponsored me for that...I saw that you recently taught Fintech course at MIT-course is on opencourseware website..

**Here's my whistleblower profile on whistleblowers.org**
https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

**While working as a lead engineer at General Electric Healthcare - I came across hundreds of defects, malfunctions, cybersecurity vulnerabilities for GEHC remote** connectivity platform that allowed to fully control medical devices remotely and was pre installed on 99% of medical devices GE manufactured.... **Public safety, health, data and functioning of medical devices was at stake. GE knowingly defrauded stake holders, public and regulators for years.**
**For not joining GE's fraud scheme -GE made a pretext -**that I am not getting along with coworkers( those who wrote this shitty platform)..
**Pat Hale- INCOSE past president and director for System design and management at MIT- MIT sloan supported me..he encouraged me to file** lawsuit,. but then he had cancer and surgeries ; so I am not in contact with him anymore..

**I have filed SEC complaint...and also federal lawsuit in district of Massachusetts - Case 1:19-cv-11862-PBS Trivedi v. General Electric Company et al --assigned to chief judge Patti B Saris..**

███████████████████████████████████████████████████████

**GE has lots of connection and lobbying power, and is a government contractor..That doesn't give them right to violate laws -having profit more important than public health, safety --**
**I have attached amended complaint...**Thanks and regards
best regards,
**Madhuri Trivedi**
**Linkedin-**
https://www.linkedin.com/in/trivedim/

*****************\*\*\*\*==End of email to Ur Jaddou==

## 3)



## 4)

On May 27 I sent this email around 11 am to Ur Jaddou and by 5 pm same day - judge issued order in three lines denying my case and granting GE dismiss motion in a totally corrupt way....

### United States District Court

### District of Massachusetts

Notice of Electronic Filing

The following transaction was entered on 5/27/2021 at 4:50 PM EDT and filed on 5/27/2021

**Case Name:**    Trivedi v. General Electric Company et al

**Case Number:**    1:19-cv-11862-PBS

**Filer:**

**WARNING: CASE CLOSED on 10/15/2020**

**Document Number:** No document attached

**Docket Text:**

**Judge Patti B. Saris: ORDER adopting [136] Report and Recommendations; adopting [135] Report and Recommendations; adopting [137] Report and Recommendations and denying [150] Motion for Preliminary Injunction, MOTION for Injunctive Relief, and MOTION to Lift Administrative Stay. (Baker, Casey)**

Respectfully Submitted, Dated: June 17, 2021

Madhuri Trivedi
/s/Madhuri Trivedi
Fax: 708-778-4859 Phone: (650) 242-5135
Email: orangeinc@protonmail.com
Linkedin:- linkedin.com/in/trivedim
Twitter:- @madhuritrivd
607 Boylston Street, PMB 334 - Lower Level
Boston, MA 02116

## CERTIFICATE OF SERVICE

The CM/ECF system sends notification of filing to all the parties. **Therefore, when this document is docketed on ECF; th**e ECF system will then email all parties –registered to receive such service, notifying them that I have filed a document. Those parties will then be able to get a copy of the document. This process for docketing on ECF is deemed to be service under Rule 5(b) of the Federal Rules of Civil Procedure**.**

/s/Madhuri Trivedi

# EXHIBIT ● 8A

On Saturday, August 2, 2014, Seymour J. Mansfield <smansfield@foleymansfield.com> wrote:

**Madhuri, Here's the profile for Denise Quimby, www.linkedin.com/in/denisequimby .**

She would work with her husband, **Collins P. Whitfield**, and his Firm, Whitfield McGann & Ketterman, http://www.wmklaborlaw.com/relationships/.Seymour

**From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Friday, August 01, 2014 8:47 PM
**To:** Seymour J. Mansfield
**Cc:** David L. Haron; Andrew R. Shedlock; Alissa N. Mitchell
**Subject:** Re: Madhuri

 Ok . Thank you.
On Friday, August 1, 2014, Seymour J. Mansfield <smansfield@foleymansfield.com> wrote:

Don't worry about it Madhuri.Have a good weekend.

 **From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Friday, August 01, 2014 6:58 PM
**To:** Seymour J. Mansfield; David L. Haron; Andrew R. Shedlock
**Subject:** Madhuri

 I was thinking to call Andrew or Alissa on Monday and mention few things about what Sean told about past just to clarify. We just cleared huge thunderstorm and tons of rain right now. Thank you . -- Sincerely,Madhuri

### Seymour J. Mansfield
Partner

250 Marquette Avenue
, Suite 1200
Minneapolis , MN 55401
P: 612-216-0256 | F: 612-338-8690 | smansfield@foleymansfield.com
**Chicago | Detroit | Grand Rapids | Los Angeles | Miami | Minneapolis | New York | Oakland | Seattle | St. L**
 ---------- Forwarded message ---------
From: **Andrew R. Shedlock** <ashedlock@foleymansfield.com>
Date: Tue, Aug 19, 2014 at 1:06 AM
Subject: RE: Can you call me
To: Madhuri Trivedi <mcis99@gmail.com>

Madhuri,The employment matter with our firm is closed.  If you need help with qui tam issues, David Haron is your contact.

On Mon, Aug 18, 2014 at 9:49 PM Andrew R. Shedlock <ashedlock@foleymansfield.com> wrote:
Madhuri, The employment portion of your case with our firm is closed, so I cannot speak about that.  If you'd like to check with David Haron on the status of referring what remains of your qui tam case to another attorney, you are welcome to do that.
  ---------- Forwarded message ---------
From: **Andrew R. Shedlock** <ashedlock@foleymansfield.com>
Date: Mon, Aug 18, 2014 at 9:35 PM
Subject: RE: Can you call me
To: Madhuri Trivedi <mcis99@gmail.com>

Madhuri, David Haron is handling the remaining qui tam issues that you still have, so please contact him if there are any questions about the qui tam issues.

  ---------- Forwarded message ---------
From: **David L. Haron** <dharon@foleymansfield.com>
Date: Mon, Aug 18, 2014 at 8:44 PM
Subject: Patrick Burns
To: Mcis99@gmail.com <Mcis99@gmail.com>
Cc: David L. Haron <dharon@foleymansfield.com>

Patrick Burns  202-296-4826
  ---------- Forwarded message ---------
From: **Madhuri Trivedi** <mcis99@gmail.com>
Date: Fri, Aug 15, 2014 at 1:30 AM
Subject: FCA
To: dharon@foleymansfield.com <dharon@foleymansfield.com>, Seymour Mansfield <smansfield@foleymansfield.com>
I read that there was a congressional judiciary committee hearing on July 30 that big businesses wants to limit FCA by having mandatory internal reporting first...by having amendment into FCA laws in future.

But internal reporting of fraud with government --it is not good because big companies retaliate and they don't like FCA so they  try to cover it up..

Anyway..I am not a legal person so these are my own views based on my experience.

It was on news  so I know it. Just thought to share it.
--
Sincerely,Madhuri
  ---------- Forwarded message ---------
From: **Madhuri Trivedi** <mcis99@gmail.com>Date: Fri, Aug 15, 2014 at 1:23 AM
Subject: Re: I tried to call and left message To: David L. Haron <dharon@foleymansfield.com>
Cc: Christy Sales <csales@foleymansfield.com>, Seymour J. Mansfield <smansfield@foleymansfield.com>, Maro E. Bush <mbush@foleymansfield.com>, Mercedes

Varasteh Dordeski <mdordeski@foleymansfield.com>, Stacey Bellich
<sbellich@foleymansfield.com>
Respected David,
Earlier I was agitated by arbitrator document I received...It is injustice and I wanted to talk to
Seymour/Andrew... So...will talk with them later.Tnx and regards
---------- Forwarded message ---------
From: **Madhuri Trivedi** mcis99@gmail.com
Date: Fri, Aug 15, 2014 at 12:19 AM Subject: info
To: David L. Haron <dharon@foleymansfield.com>Cc: Seymour J. Mansfield
<smansfield@foleymansfield.com>, Maro E. Bush <mbush@foleymansfield.com>, Mercedes
Varasteh Dordeski <mdordeski@foleymansfield.com>, Stacey Bellich
<sbellich@foleymansfield.com>
David,
I just wanted to mention that arbitrator sent 50 page document yesterday; but the hearing
transcript is 565 pages long...arbitrator just used things GE submitted in post brief and other
things.
**From:** "Madhuri Trivedi" <madhuritrivedi@hotmail.com>
**To:** "Andrew R. Shedlock" <ashedlock@foleymansfield.com>
**Subject: Fwd: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260**

Begin forwarded message:

**From:** "Madhuri Trivedi" <madhuritrivedi@hotmail.com>
**To:** "Seymour J. Mansfield" <smansfield@foleymansfield.com>, "David L. Haron"
<dharon@foleymansfield.com>
**Subject: Fwd: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260**

This is what I received from arbitrator
Begin forwarded message:
From: CarolPlacella@adr.org
To: madhuritrivedi@hotmail.com

Subject: Madhuri Trivedi V. GE Healthcare - Case 51-20-1300-1260

Attached please find correspondence related to the captioned matter.

Thank you.Carol Placella
Manager of ADR Services
American Arbitration Association
T:401 431 4890
F:866 644 0234950 Warren Ave.
East Providence, RI 02914-1414
http://www.adr.org
Heather Santo, Director

EMP079.pdf (65K)                                               ×

ATT00001 (1K)                                                 ×

FINAL AWARD.pdf (6,914K)                                      ×

# EXHIBIT 9

## U.S. DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

1

2

3  **Madhuri Trivedi**                                          Case No.:

4                                                                **1:19-cv-11862-PBS**

5                      Plaintiff,

6           v.                                                   **Letter to Hon. Judge Kelley and Hon.
                                                                 judge Saris about GE medical**
7  **General Electric et al.**                                   **devices' cybersecurity vulnerabilities
                                                                 ALERTS related to remote control**
8                      Defendants.                               **and remote access to mission critical
                                                                 networks, numerous medical**
9                                                                **devices(Latest ALERT is Dated
                                                                 January 23, 2020)**
10

11   Hon. Chief Judge Saris and Hon. Judge Kelley

12
         I am writing this quick letter as to make holistic, total picture arguments and present facts
13  relevant to this case. It is about GE's continuous, SYSTEMIC, culture about cybersecurity
    vulnerabilities, quality in GE medical devices, recklessness. It is IMPORTANT because; due to
14  CYBERSECURITY vulnerabilities, quality and able to being hacked; I was framed and illegally
    terminated (also for not joining GE's fraud scheme).
15

16       **Both alerts mentioned in this LETTER, and several vulnerabilities as mentioned in
    my Amended Complaint related to "INSITE EXC"GE medical devices' vulnerabilities;**
17  **represent the same underlying problems- ==ability to hack-remotely gain access to medical
    devices and mission critical networks, take full control of GE medical devices ,networks==**
18  **==remotely== and even low skill person can do that.**

19
         **Might is Right is not allowed and it is illegal too; when it affects public health and
20  safety, pose/incur serious harm and risk and an employee like Trivedi is RETALIATED…**

21
         GE's denial to accept these facts in this lawsuit is not what medical device company or
22  any company would do. "Accountability" is accepting what is WRONG and FIXING it (instead
    of terrorizing me, diverting blame and more). It is the CULTURE of CYBERSECURITY issues,
23  quality along with problems of GE's own (and not me) which led to disagreements as I/Madhuri
    didn't compromise quality, cybersecurity vulnerabilities and Trivedi didn't join their fraud
24  scheme.

25
         **1)==ICS Advisory (ICSMA-20-023-01)==**
26
                  ==GE CARESCAPE, ApexPro, and Clinical Information Center systems==
27  ==Original release date: January 23, 2020==

28
    Page - **1** -of 3                                  Trivedi v. General Electric et. al

https://www.us-cert.gov/ics/advisories/icsma-20-023-01

**RISK EVALUATION**

Successful exploitation of these vulnerabilities could occur when an attacker gains access to the mission critical (MC) and/or information exchange (IX) networks due to improper configuration or physical access to devices. An exploit could result in a loss of monitoring and/or loss of alarms during active patient monitoring. These vulnerabilities, if exploited, may allow an attacker to obtain PHI data, make changes at the operating system level of the device, with effects such as rendering the device unusable, otherwise interfering with the function of the device and/or making certain changes to alarm settings on connected patient monitors, and/or utilizing services used for remote viewing and control of devices on the network to access the clinical user interface and make changes to device settings and alarm limits, which could result in missed or unnecessary alarms or silencing of some alarms.

## 2) ICS Medical Advisory (ICSMA-19-190-01)

**GE Aestiva and Aespire Anesthesia (Update A)**

Original release date: July 09, 2019 | Last revised: July 24, 2019

https://www.us-cert.gov/ics/advisories/icsma-19-190-01

A vulnerability exists where serial devices are connected via an added unsecured terminal server to a TCP/IP network configuration, which could allow an attacker to remotely modify device configuration and silence alarms.

**Vulnerabilities found in GE anesthesia machines** - GE recommended that device owners not connect vulnerable anesthesia machines to a hospital's main networks. The company also denied the bugs could lead to patient harm, but later recanted and admitted that the issues could be dangerous to human life.

## 3)

**In Bill Barbiuax testimony ( exhibit 39 in my amended complaint), though Bill was beating around bush and I didn't get lot out of him as GE lawyer was obstructing my questioning and he trained Bill to evade and not give answers to the point to admit any wrongdoing. Standard deposition tactic used.**
**Page 84**

**Q** Is that correct? That for Insite ExC,
manager, team leads and you, including you,had a learning curve in terms of technology and the security issues?

**A** I think I said you shouldn't be blamed for the technical issues. There were technical issues here and that should not reflect poorly on your performance.

**Q** In terms of communication. You already said that on record. She already read that once.
**A** And maybe I said that. And what I meant was the technical issues you shouldn't be dinged

# United States Court of Appeals
## For the First Circuit
_____

No. 21-1434

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP; JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in her individual and official capacity; MIKE SWINF ORD, former CEO of GEHC services, in his official and individual capacity; CARL CONRATH, Senior Engineering Manager, GE healthcare in his official and individual capacity; NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect, GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services; DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead, GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# Letter to all first circuit en banc judges and supplemental pleading for amended petition for rehearing en banc

# EXHIBIT 9EXHI

Hello all judges,

I am filing this supplemental brief.

## 1. These NIST.gov and CISA.gov cybersecurity vulnerabilities public disclosure occurred on June 2022; related to GE healthcare's ultrasound – Service browser. So I am updating the first circuit court about this.

So GE also knows that upto June 2022 – these issues were plagued ….How come Trivedi's claims are untimely. These vulnerabilities are related to Service browser..and from the beginning INSITE EXC evidence has been provided to court for ultrasound  InsiteEXC since lawsuit was filed on May/August 2019… These vulnerabilities in service browser proves that Trivedi's claims are timely…as GE has ongoing.

GE, GE's attorneys to be held criminally liable for this fraud..aiding and abetting fraud ( enron style)

# 1)   A vulnerability classified as problematic has been found in GE Voluson S8. Affected is the file /uscgi-bin/users.cgi of the Service Browser. The manipulation leads to improper authentication and elevated access possibilities. It is possible to launch the attack on the local host.

# https://nvd.nist.gov/vuln/detail/CVE-2020-36548

# 2)  A vulnerability was found in GE Voluson S8. It has been rated as critical. This issue affects the Service Browser which introduces hard-coded credentials.

**Attacking locally is a requirement. It is recommended to change the configuration settings.**

**https://nvd.nist.gov/vuln/detail/CVE-2020-36547**

**CVE Dictionary Entry:**
CVE-2020-36548

# NVD Published Date:

06/17/2022

**NVD Last Modified:**
06/30/2022


**CVE Dictionary Entry:**
CVE-2020-36549
**NVD Published Date:**
06/17/2022
**NVD Last Modified:**
06/30/2022


2. **So now question is  - aiding and abetting claims against federal judges and magistrate judge also apply – why obstructing justice in my case…playing ping pong game, delaying, issuing one line order…not holding GE liable- and also hurting public, stakeholder, patients. Both judges should be arrested at very this moment.**

## 3. So basically what GE argued in district court in June 2022 ECF 169 - that though GE's ongoing fraud is part of quitam claim( which as a pro se - Trivedi can't bring)..but Trivedi can bring quitam retaliation claims as Pro se...but for that statute of limitation...GE and GE attorneys, judges should be arrested at this very moment..for this BS

**ECF 169 page 14, June 2022**

While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim,6 in the context of a retaliation claim, the statute of limitations is unequivocal. *See* 31 U.S.C. § 3730(h)(3). This Court should also deny the motion to vacate the dismissal as to count 10.

6 As a *pro se* litigant, Ms. Trivedi cannot maintain a *qui tam* claim. (ECF No. 135 at 17).

## 4. Judge Saris has denied motion to recuse and motion to reconsider denial of Rule 60 motion under FRCP ; july 13, 2022

Case Name: Trivedi v. General Electric Company et al

Case Number:　　　1:19-cv-11862-PBS

Document Number:　　　176

Docket Text:

**Judge Patti B. Saris: ENDORSED ORDER entered re [174] Motion for Recusal. " Denied, the case is pending appeal. No further motions shall be filed until the appeal is resolved."**

Case Name: Trivedi v. General Electric Company et al

Case Number:　　　1:19-cv-11862-PBS

Document Number:　　　177

Docket Text:

**Judge Patti B. Saris: ENDORSED ORDER entered re [175] MOTION for Reconsideration. " Denied. The case is pending on appeal."**

# EXHIBIT 10

## 10.1   EXHIBIT GE abandoned Stack ranking after Trivedi arbitration

From: madhuritrivedi@hotmail.com To: charlotte.doll@ge.com; sean.scullen@quarles.com CC: neil.stekloff@ge.com; madhuritrivedi@hotmail.com; carolplacella@adr.org Subject: During my second week at GEHC(Dec 2011) Date: Sat, 15 Feb 2014 21:41:13 -0600
Dear Charlotte,
While working at GEHC; I have met you during meeting. I needed to reach out to you to confirm following paragraph.
Currently I am in Arbitration with GEHC. And you were present during this meeting. It would help me. You are a woman and I thought you would be able to confirm this...Because Adam asked you my name and you replied him with my name..in Dec 2011; so I figured .
**" During my second week at GEHC(Dec 2011) when Mike Truman( HR manager ) was giving presentation on GE's performance appraisal system(15 or so people were present) and Charlotte Doll (Human Resources Manager)**
**and Adam Holton(Senior HR manager ) was present(I did not know who was Adam Holton because it was my second week.).**

## 10.2   EXHIBIT

1.   Deposition of GE architect Bill Barbiux taken by Madhuri.
Q Did I treat you with respect when I was withGE?
A Yes.
Q You had good working relationship with me , right?
A Yep.
Page 61 Q So in your opinion, the work I did for – I did for security VNC server issues on Surgery was good work, and it was good for GST given that I was a couple of months old within the company, and it was -- I was bringing tons of issues, and it was too much for them.I was expressing tons of concerns, and it was truth. It was not just -- It was happening. Things were not working the way they were supposed to.
Q Good work for GST.
A Yes. Technically, I thought what you were doing -- a lot of what you were doing Made sense………………
Page 107 Q Do you have knowledge that there were design nonconformances, means defects in Insite ExC in production?
A Yes.
Q Do you have any idea of how many of them?
A I don't recall. I know there were several hundred or more.
Q So it says 465.
A Okay.
Q So your -- I'm talking about -- I'm just consolidating everything in one sentence. Your point was connectivity is better than defects in Insite ExC. At the least we wouldhave connectivity?

A Right.

Page 168 Q At the time of Insite ExC release, when it was public facing, it failed a security test or had the security concerns?

A Yes.

Page 170 Q Insite ExC in production had security issues. Is that correct?

A The user interface, which is a little bit different, yes, had some security vulnerabilities found during Scabba testing. Our mitigation was several things: One of them was to move the user interface inside GE.

Q So some of the security vulnerability still exist today?

A Yes

Q So any GE employee inside GE network can potentially try to exploit that vulnerability?A Depends on the vulnerability.

Q So is this -- Do you consider that's insider threat detection, and not having Proper insider threat detection in place? Its considered insider threat detection, right? ………………Given those security issues still exist where an insider can try to potentially – or can try to exploit those.

Q Is it considered good security strategy or is it --

A To move the interface to the inside?

Q And keep those security vulnerability as --

A That was one of our only options. ……………..The user interface was upgraded from 4.1 to 5.2. That's where a lot of the vulnerabilities came in, so –

## **10.3   EXHIBIT**

**From:** Woods, James L.**Sent:** Monday, March 16, 2015 2:56 PM
**To:** Pastel, Mary; Myers, Charles F; Ochs, Robert
**Subject:** FW: Information about GE Healthcare
Typically we do not share any info involving an open investigation. Is this matter different?
Thanks

**From:** Madhuri Trivedi [mailto:mcis99@gmail.com]
**Sent:** Monday, March 16, 2015 2:32 PM
**To:** Woods, James L.
**Cc:** Myers, Charles F
**Subject:** Re: Information about GE Healthcare
Forgot to CC Mr. Myers in previous email..
Okay. I have a question: Can we know what is the status/details of this investigation. It would help QuiTam attorney for the analysis related to it.Thanks.

## **10.4   EXHIBIT**
# Page 163

Q Do you remember when we broke up with GEIP,Greg got angry at me and he was kind of hostile. I was concerned about this wholebehavior that he did. And it was in September, 2012, right after Milwaukee temple shooting, which happened in August, 2012.

And you -- I told you to -- I told you about this briefly, and you mentioned that
Greg was kind of not speaking for two, three days in all of your coding meetings, and he
was just -- something was going on?

MR. SCULLEN: Object as compound.

**Page 164**

Q And that he was -- Because of this disagreement in requirements he had with GEIP,
he unnecessarily got angry at me, and basically he was hostile. And I expressed --
And you mentioned that he was not talking in all of the meetings where you were present?

**Page 165**

Q Do you remember you -- and I was concerned that -- I was really concerned about me
sitting next to him and his hostile behavior, and you kind of mentioned that he's a dormant
volcano. Not kind of, but –

**Page 153**

The main concern was how the females were perceived by peers and manager, as well as
measured in terms of their behavior, communication and soft skills. And the
training was geared towards educating men and women on the differences that -- how men
communicate is different than how female communicate, and both sides should understand
these differences and work on accepting and basically working it out?


# <u>10.5</u>  <mark>EXHIBIT</mark>
# Deposition of Trivedi

page 140

Greg was behaving hostile manner, so I was stressed………………

Page 162

And then he's stone, he was very angry, he was already showing intimidating and
hostile behavior prior

Page 145

A Hostile. He was just being hostile.

Page 146

A I did say it about his hostile behavior, hostile and unprofessional behavior.

Page 147

A I said he's threatening me to take me off the Project

Page 175

A You can see that, you know. As a woman when you are in a threatening situation -- you are
not a woman, so you wouldn't understand how  woman instinct work.

Page 184 -185

So I said all those things that you are diverting blame. I am scapegoat. You are not
being objective, and it's clearly a gender bias.

Q What else did you discuss during that meeting?

A I asked him that -- I said that it was discriminatory, I was treated less favorably.
Those individuals are responsible for negative and poor product quality. I said that I was
discriminated and retaliated for all of the concerns I raised. And I also said that because I was a
woman, Dave Mehring was showing a gender bias and stereotype in my performance rating.
Successful and talented women are perceived and measured by peers and manager as
less liked and not good team player. It's common theme.

So I said that you picked up something for me, but you picked up a wrong thing because this is a very common phenomena going on for women. And he said, Oh, so you mean that, you know -- He was kind of -- He got defensive. And I said in that meeting about gender bias, discrimination and retaliation. And it was partly retaliatory to me complaining about Greg's behavior and his hostility. And also GEIP project, we broke up with them, so they wanted a scapegoat. So it was easy for them to divert blame.

Q Who blamed you for the breakup of GEIP and GEHC?
A Dave Mehring said the RSVP was your second chance.
Q And you understood that to mean that you were being held responsible for the decision by GEHC to break up with GEIP?
A Partially. It was blame game.
**Page 255**

A He did tell me that you bite your tongue.
Q Is that a feminine trait?
A And he said that sometime you -- I mean, when he said Greg is a guy, after shooting thing, that was, you know -- He's a guy. You know, we all know that guys do that. And so that's another thing.
Q You would agree that you were asked to work on communications, interpersonal skills, including establishing stronger team dynamics, conflict management negotiations?
A He just vaguely, as I already stated, that manager did not clearly communicate, growth value issues, which means the soft skill issues, with documented examples of specific behaviors that didn't meet expectation. I met Nicole Boyle after my mid-year review, and she observed the same thing that Dave Mehring is saying of criticizing your performance, about your communication
page 259
Q Did you tell Nicole Boyle about the incident involving him pointing a gun two feet with his fingers --
A Briefly -- I said briefly, and I said -- I had been told that he's a dormant volcano.
Page 260-261
A She didn't, but she said that it's guy versus girl thing. And I said Dave Mehring said you are overreacting. So she said, Okay, if Greg does this, it's fine. Madhuri has a problem.
                    That's guy versus girl thing.
She was upset because she was not getting promoted as a general manager, and they were interviewing for a general manager. They eventually hired Josh Hanna, so she said that they are already interviewing other people. They are not promoting me, even though I was
Q I thought you said she was a GM.
A She was acting GM. So she said that the gender diversity training is geared towards retaining female engineer. The training is for all GE Healthcare employee, and it's about how peers and managers perceive and measure female engineer about their soft skills, behavior and communication.
Because men and women are different –how they communicate is different, and there should be -- It's a big problem right now. I have given you some documents. It's hard -- hard evidence all across, and that's what it is.

Page 59

Q But what is your being more qualified have to do with the fact that you're both women?

A Women, but she has a green card, so that's a huge difference. We both are not in the same category.

Q So why would she need to undermine you here based on the fact that you didn't have your green card status?

A Because if she starts making issues about me,company will eventually get rid of me.

**Page 156**

Q So do you agree that the manager unconsciously reflected -- my case manager unconsciously reflected a stereotype when they judged my performance saying that she's good at her job,

    but, well, she's just not well liked –


## 10.6   EXHIBIT FDA

### FDA December 15, 2013 ; Trivedi whistleblower complaint

**1.   From:** Kangoma, Prince P* **To:** Myers, Charles F **Cc:** Ochs, Robert

**Subject:** FW: information about GE Healthcare

**Date: Wednesday, February 05, 2014 11:44:42 AM**

**Attachments:** RE information about GE Healthcare.msg

Good morning Charles,

This is assigned COR14000050-000.

Thanks,

Peter

**From:** Myers, Charles F

**Sent:** Tuesday, February 04, 2014 3:44 PM

**To:** Kangoma, Prince P*

**Cc:** Ho, Michelle M*; Ochs, Robert; Boyd, Sean M

**Subject:** FW: information about GE Healthcare

Hello Peter,

Please scan this chain of e-mails and the attachment into CTS as a Trade Complaint, assign a COR

number, and please assign to me. I spoke with the complainant and will receive this as an assignment so I can make notes in CTS.

Please use Product Code 16 – Medical diagnostic X-ray equipment (LLZ).

Thanks,Charles

Charles F. Myers

FDA/CDRH/OIR/DRH

Phone: 301-796-5619

E-mail: Charles.Myers@fda hhs.gov


**From:** Silverman, Steven

**Sent: Sunday, December 15, 2013 11:23 AM**

**To:** Engleman, Donna **Cc:** Woods, James L.; MacFarland, William C; Welch, Jan

**Subject:** FW: information about GE Healthcare

Donna,

Please log and triage this information as a compliant.

James – cc'ing you in case these devices are OIR regulated. Thanks
-- Steve
Steve Silverman
Director, Office of Compliance Center for Devices and Radiological Health
(301) 796-5500

**From:** Myers, Charles F
**Sent:** Tuesday, February 04, 2014 3:44 PM
**To:** Kangoma, Prince P*
**Cc:** Ho, Michelle M*; Ochs, Robert; Boyd, Sean M
**Subject:** FW: information about GE Healthcare
Hello Peter,
Please scan this chain of e-mails and the attachment into CTS as a Trade Complaint, assign a COR number, and please assign to me. I spoke with the complainant and will receive this as an assignment so I can make notes in CTS.
Please use Product Code 16 – Medical diagnostic X-ray equipment (LLZ).
Thanks,Charles
Charles F. Myers
FDA/CDRH/OIR/DRH
Phone: 301-796-5619 E-mail: Charles.Myers@fda hhs.gov

# <u>10.7</u>   EXHIBIT OFCCP

1.  **In that case – OFCCP related regulation.**41 CFR 60-1.21.   ====7B00 Continuing Violation   https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. For example, a continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

a. Application of Continuing Violation Theory. OFCCP applies the continuing violation theory in compliance evaluations and complaint investigations. The theory is applicable to the following situations:

1. Series of Individual Discriminatory Acts. A continuing violation may occur when the discrimination involves a series of closely related acts. The acts must be sufficiently related to

form a pattern of discrimination. The last of these acts must have occurred within the two-year period preceding the date of the Supply and Service Scheduling Letter or the Construction Compliance Evaluation Notice; or, in the instance of a complaint investigation, within the complaint filing period (i.e., 180 or 300 days).

2. Maintenance of a Discriminatory Policy or System. A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

b. Remedies Under a Continuing Violation. Once the CO establishes that there is a continuing violation by showing a series of related acts, one of which occurred within the liability period, or a continuing employment policy that extended into the liability period, then the contractor must remedy all acts that are part of the continuing violation since the effective date of the law under which relief is sought or from the start of the violation, whichever is later. This is so whether they occurred within or outside of the 180-day or 300-day filing period (complaint investigation), or two-year (compliance evaluation) period.


## 10.8   EXHIBIT GE solutions

**1.**   Below is excerpt from GE"ADR "Solutions" manual- PAGE 8 -it says while arbitration is proceeding, agency filing deadline stops.

> *Where a party's initial submission of a Covered Claim to Solutions occurs before the expiration of the applicable statute of limitations for filing in court, the opposing party agrees to stop the further running of the statute of limitations while the parties complete the Solutions process. In the case of administrative agency filing deadlines, the Company agrees to request that the agency treat the running of filing deadlines as having been stopped.*

## 10.9   EXHIBIT DOL OIG referral

------ Original Message -------

On Friday, September 2nd, 2022 at 12:28 AM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:
OIG has sent referral April 8 -
Sent with Proton Mail secure email.
------- Original Message -------

On Thursday, September 1st, 2022 at 2:40 PM, Madhuri Trivedi <orangeinc@protonmail.com> wrote:

**From Madhuri Trivedi <orangeinc@protonmail.com>**

**ToRosa, Anthony - OSHA<Rosa.Anthony@DOL.GOV>, Frederick, James S. -
OSHA<Frederick.James.S@dol.gov>, Mikulka, Michael -
OIG<mikulka.michael@oig.dol.gov>, Madhuri Trivedi<orangeinc@protonmail.com>,
turner.larry@oig.dol.gov, Griffin-Blalock, Valerie - OIG<griffin-
blalock.valerie@oig.dol.gov>**

DateThursday, September 1st, 2022 at 2:40 PM

Mr. Mikulka, Valerie,
would you please ask OSHA to give response..ask them that next steps are based on that..and
can't wait and sit as a VICTIM of their corrupt acts – and wait for them to response for infinite
time..months and months..there should be ZERO tolerance for such task..and not sit and wait..
_____
Ms. Rosa, Mr. Frederick,
Please reply to OIG's referral in couple of days..you both are highly corrupt people along with
other DOL people..and should be in jail
.just so you know that I am not going to be a victim of thier corruption but take solid action......
I am filing a brand new lawsuit against GE, OSHA, DOL – government officials – for Bivens
individual capacity and FTCA all in one lawsuit as
codefendants. So GE and government people together…in one single new lawsuit.
Intentionally ignoring critical documents.. I am also asking congressional inquiry into this
systemic corruption – where instead of addressing fraud by GE and corruption- aiding and
abetting fraud and citing each other's corrupt order…so as to enjoy sadistic pleasure.
So this corruption is out in public…
Mr. Rosa has guts to ask me about wire fraud and mail fraud in a phone call - but in that same
call say that regardless of fraud he will dismiss it as untimely.

Sent with Proton Mail secure email.

------- Original Message -------

On Friday, August 19th, 2022 at 8:12 PM, Griffin-Blalock, Valerie - OIG <griffin-
blalock.valerie@oig.dol.gov> wrote:

Good afternoon Ms. Trivedi,

This is a follow-up regarding your most recent contact with senior management with the DOL-
OIG office, regarding a complaint you submitted, via email, to OIG officials, regarding the
improper handling of a Whistleblower Retaliation complaint you filed with OSHA against
General Electric and GE Healthcare.

Please be advised that I reached out to OSHA today to get a status update of the OIG's referral
to OSHA management regarding your allegations against OSHA's handling of your
Whistleblower Retaliation complaint.  I am currently awaiting their response.  If you have new
information that you would like to provide regarding OSHA, please submit an additional
statement of complaint with respect to this matter.  You can email me directly at griffin-
blalock.valerie@oig.dol.gov.

Respectfully,

Valerie Griffin-Blalock

OIG Hotline Team

# <u>10.10</u>  EXHIBIT  Implied contract

1.  GE is required by SEC rule to include code of business conduct and ethics including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

2.  Rules enacted by the major stock exchange NYSE

 The NYSE requires each publicly traded company to publish a Code of Business Conduct and Ethics promising not to retaliate against employees; **GE to promise broad whistleblower protection;** protect employees/plaintiff Trivedi who made whistleblower disclosures in "good faith,", fair dealing as well. Madhuri Trivedi protected under the whistleblower protection policies in corporate codes of ethics as she was following that.

First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that applies to all employees.  Second, the Code must provide for an enforcement mechanism to encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL § 303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate assurances that it will not retaliate against an employee for reporting violations of the Code; NYSE requires that companies protect employees who make reports in "good faith," *Encouraging the reporting of any illegal or unethical behavior.*

**NOTE:General policies about whistleblowing are not enough; these corporate governance standards require** *promises* **not to retaliate**

3.  Plaintiff Trivedi signed as a condition of employment at the time of joining GE **policies-The Spirit and the letter.** ( letter is also part of SEC filing DEF 14A)— it states that *"You do not need to be certain that a violation has occurred. At the same time, you have an obligation to promptly raise a concern when you see a situation in which our integrity principles or policies are not being followed. "*

*"RESPONSIBILITIES OF EMPLOYEES*
- ✓ *Know and comply with the laws and regulatory requirements that affect your job responsibilities.*
- ✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a regulatory compliance breach."*
- ✓ GE Corporate Code, on the other hand, also promised to protect an employee who discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it stated on **GE policies-The Spirit and the letter** page 13 "GE absolutely prohibits retaliation".
- ✓ Plaintiff Trivedi fulfilled her "Duty to Report Violations," which stated in GE policies: The spirit and the letter(SEC filing DEF 14A):*" Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

- ✓ GE SEC filing DEF 14A-Code of Conduct. All directors, officers and employees of GE

*must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy*

✓ GE's Anti-retaliation Promise as an Express Contract as well==also answer to <u>GE's defense that it was at-will employment.</u>**These anti-retaliation protections supersede any private ordering between parties GE and plaintiff Trivedi, including an at-will arrangement, that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for reporting misconduct.**

Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC(ECF 51-3 Page 167) .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.  Also by cancelling H1 B so I can't proceed in arbitration or any other court.( preemptive)"

An employer GE has a fiduciary duty to the employee Trivedi<u>.</u> A fiduciary relationship may be created by agreement of the parties. Trivedi and GE created such relationship at the time Trivedi joined GE and when any of violations that Trivedi believes and had proof that violated laws, statutes, regulations as stated in cause of actions in this complaint along with violation of "GE Polices"; Trivedi objected, wrote to management , told them in=person…While GE defendants ,Fragomen defendants BREACHED such fiduciary duty.

## <u>10.11</u>  EXHIBIT quitam attorney , also Trivedi mentioned about OSHA letter

From: Andrew M Beato <<u>ABeato@steinmitchell.com</u>>Date: Tue, S**e**p 9, 2014 at 3:27 PMSubject: Re: Call To: Madhuri Trivedi <<u>mcis99@gmail.com</u>>, "James R. Kelly" <<u>JKelly@steinmitchell.com</u>>

Thank you Madhuri.  I appreciate your clarification.   If there are any other reporting or disclosures you made to government agencies or to attorneys, please let us know so that we are aware of it.  In the meantime, we appreciate your patience.

Andrew M. Beato ,Stein Mitchell Muse Cipollone & Beato LLP

1100 Connecticut Avenue, NW Suite 1100 Washington, DC 20036<u>(202) 737-7777</u> (Main Number) <u>(202) 296-8312</u> (Fax) <u>ABeato@SteinMitchell.com</u>

From: Madhuri Trivedi <<u>mcis99@gmail.com</u>>Date: Tue, 9 Sep 2014 17:03:39 -0500 To: James Kelly <<u>JKelly@steinmitchell.com</u>>Cc: Andrew Beato <<u>abeato@steinmitchell.com</u>> Subject: Re: Call

Attorney Andrew, thanks for your time. I had reported to OSHA-whistleblower.gov.

They looked in to it. and said it does not fit into their 22 statues. They have device

manufacturing related statue but it excludes medical device and drug manufacturers. THey said it is a valid concern, And employee does not have to prove , as long as have believed reasonably that there was a violation and reported. But in my case I had evidence which was good.

## 10.12   EXHIBIT Email from GE board of directors

---------- Forwarded message ----------
From: **Robert J. Swieringa** <rjs22@cornell.edu> Date: Tue, Dec 3, 2013 at 12:23 PM
Subject: RE: what happened at GEHC To: Madhuri <mcis99@gmail.com>
Madhuri,
In response to your emails to me and our phone conversation today, I have made inquiries with
people at GE and will let you know about any developments. Thanks, Robert Swieringa
Robert J. Swieringa
Professor of Accounting
Anne and Elmer Lindseth Dean Emeritus
Johnson Graduate School of Management
337 Sage Hall
Cornell University
Ithaca, NY 14853-6201
Phone: 607-255-0422
Fax: 607-255-6889
Email: rjs22@cornell.edu

## 10.13   EXHIBIT Trivedi wrote to FDA about OSHA letter

1.   From: **Madhuri Trivedi** <mcis99@gmail.com>
Date: Sat, Mar 14, 2015 at 10:49 AM
Subject: Re: Information about GE Healthcare
To: "Myers, Charles F" <Charles.Myers@fda.hhs.gov>
Law firm attorney in Washington DC wanted to talk to earlier, but wasn't sure. He said one
of his client worked with FDA for two three years in investigation for pharma company and it
was successful . Then he worked on this matter. We need to talk . There are fraudulent
inducement and other whistleblower matter so. Thanks and regards . First I was scared that
GE would try to hurt me/ harm me; but they already know that I have spoken to FDA. So i
became stronger. I reported to OSHA -whistleblower.gov; but their 22 statues excludes
medical device and pharma.
***********End of email

## 10.14   EXHIBIT Former SEC.gov director who said I have valid SEC claims

From: **David Nelson <dnelson@bsfllp.com>**Date: Mon, Jun 23, 2014 at 9:21 AM Subject: RE:
should I send my deposition ?To: Madhuri Trivedi <mcis99@gmail.com>Cc: Aaron Marcus
<amarcus@bsfllp.com>
Madhuri, today is hectic and I have some meetings tomorrow.  Is Wednesday possible for you at
some point?  Dave  David Nelson

BOIES, SCHILLER & FLEXNER LLP401 East Las Olas Blvd.  Suite 1200 Fort Lauderdale, FL
33301 (Ph)  954.356.0011 (Direct) 954.377.4233(Cell) 954.213.8810

# EXHIBIT ● 11

# When Res Judicata doesn't apply

*Res judicata* does not restrict the appeals process,[7] which is considered a linear extension of the same lawsuit as the suit travels up (and back down) the appellate court ladder. Appeals are considered the appropriate manner by which to challenge a judgment rather than trying to start a new trial. TRIVEDI has never appealed arbitrator's award.

    1.  Exceptions to *res judicata* that allow a party to attack the validity of the original judgment, even outside of appeals. These exceptions—usually called collateral attacks—are typically based on procedural or jurisdictional issues, based not on the wisdom of the earlier court's decision but its authority or on the competence of the earlier court to issue that decision. A collateral attack is more likely to be available (and to succeed) in judicial systems with multiple jurisdictions, such as under federal governments

    2.  Res Judicata may be avoided if claimant was not afforded a full and fair opportunity to litigate the issue decided by a state court. He could file suit in a federal court to challenge the adequacy of the state's procedures. In that case the federal suit would be against the state and not against the defendant in the first suit.

https://www.law.cornell.edu/wex/res_judicata **According, however, to Rule 41(b) of the Federal Rules of Civil Procedure, the following are not claim preclusive and are not considered an adjudication "on the merits":**

            **>>>a lack of jurisdiction,**

           **>>if the dismissal order does not state otherwise (i.e. a decision made "without prejudice" would not be claim preclusive")**

**For some claims jurisdiction of arbitrator is in question even as "covered claims" under GE's Solutions ADR manuals and also under Dep clause... also as Jan 2019 court rules that arbitrability of issues should be decided by court and not by arbitration...arbitrator Peter MEYER never dismissed Trivedi's claims with PREJUDICE hence are not claim preclusive. Arbitrator has not dismissed Trivedi's claim with PREJUDICE hence it is an EXCEPTION to Res Judicata.**

    3.  **Federal Rules of Civil Procedure, the following are not claim preclusive and are not considered an adjudication "on the merits":  >>>a lack of jurisdiction,**

    Arbitrator Peter Meyers' jurisdiction can be addressed here:
*New Prime Inc. v. Oliveira, 139 S. Ct. 532 (2019).*The Court issued its decision on January 15, 2019. In a unanimous decision, the Court upheld the findings of the First Circuit, affirming that judgment of whether Section 1 **exceptions applied or not was a role for the courts and not arbitration,"**

    [the "who decides" question. ]

    **Delegation clause in arbitration is also presenting conflicts at various circuit level.**

    4.  Source :---https://www.arbitrationnation.com/      >>>>New Prime suggests that there's a difference between contractual arbitrability – issues about flaws in the arbitration agreement, scope of the arbitration agreement, or procedural preconditions that need to be satisfied before the recourse to arbitration is appropriate – and subject matter limits on what can be arbitrated.

    5.  For *res judicata* to be binding, several factors must be met: one of them is –

1

whether the parties were given full and fair opportunity to be heard on the issue.

6.   Alba v. Raytheon Co., 441 Mass. 836, 809 N.E.2d 516, 521 (Mass. 2004). The key issue behind applying issue preclusion is "whether defendants 'received a full and fair opportunity to litigate their claims'" in an earlier proceeding.

7.   Note that during my arbitration I didn't mention whole lot of case laws, common laws, statutes, constitutional laws..as I do in this lawsuit because over period of five years I have read and become more proficient in legal world compared to what **I was at arbitration..GE simply stating that Public policy is precluded by prior arbitration award is meritless**…given that I didn't mention whole lot of legal language and given that arbitrator was hostile, biased, fraudulent—he had no intention nor incentive to address public policy violation in terms of at will employment prohibition as well when I have stated tons of case laws as we do now….so

These changes in circumstances , pleadings with more legal language changes ---it applies to all of the cause of actions in this lawsuit.

8.   **As stated in complaint due to continuous interruptions, insults and not letting Trivedi proceed in arbitration hearing by asking questions to witness, by submitting material evidence which arbitration didn't include into hearing evidence---and as she had lost her immigration status ---any attorneys she would have HIRED or HIRED including Foley and Mansfield, Mike Persoon had no to stand up against big company GE when she was at disadvantage and hence withdrawal of H1 B itself is a PROOF** that she was obstructed and NOT GIVEN full and fair opportunity to be heard on issue –arbitrator, GE had no incentive to do anything lawful if my STATUS and STAY in country USA is jeopardies and have no immigration status.—due process..

9.   In addition, in matters involving due process, cases that appear to be *res judicata* may be re-litigated. **In this case immigration status, not able to extend H1 B , not able to litigate case as she lost immigration benefits –Due process case applies to TRIVEDI--- plus doing a private arbitration with GE declining to have public government arbitrator Peter Davis (Peter after discussing with Trivedi mentioned to RULE in favour of Trivedi) as chosen arbitrator because arbitration record becomes public and hearing was done in a private hotel conference room –more of a Kangaroo court with no Jury….nor judicial review…as mentioned in complaint for AAA and arbitrator it is a recurring revenue with company GE who paid arbitration cost..By all means Trivedi was not given fair and full opportunity…Trivedi would have Hired big law firm and spent lots of money if her Immigration H1 B visa would not have been withdrawn and Trivedi was earning money..Incentive to do anything..also on second day of hearing Trivedi left hearing and arbitration was done by GE and arbitrator alone so Ge said whatever they wanted to say and Trivedi never filed post arbitration brief as well..**

10.   Silva v. Smith's Pac. Shrimp (In re Silva), 190 B.R. 889 V. CONCLUSION Because the issue of Silva's fraudulent conduct was not "actually litigated" in the prior federal court judgment, the judgment is not entitled to collateral estoppel effect.  The phrase "actually litigated" suggests that all parties to a dispute have been actively involved throughout the proceeding and have presented evidence and advocated their positions.- As Trivedi was not present of second day of hering due to arbitrator's abusive conduct and reasons stated ; Trivedi was actively involved throughout the procedings , nor presented evidence due to not being present and due to arbitrator not accepting evidence she presented into hearing documents as part of formal hearing evidence as arbitrator declined to do so—aka Trivedi deposition, Bil barbiux deposition, modehine deposition..

11. The lack of an appeal does not suddenly make the dismissal "on the merits" and

2

therefore subject the new suit to the barrier of res judicata. **Trivedi was not able to appeal arbitrator's award due to various reasons as stated including Foley & Mansfield not advising her & her lack of knowledge about appealing arbitrator award; hence can bring this lawsuit.**

12. **Cause of action(subject to fraud, which would enable the earlier decision to be set aside). Hence reclusion doesn't apply in Trivedi's case of arbitration full of fraud.**

13. there are certain exceptions to issue preclusion, such as when the issues are not identical because the prior litigation and subsequent litigation involve applications of different legal standards.

14. Whole Woman's Health v. Hellerstedt, 136 S. Ct. 2292 Court:  Supreme Court Date: June 27, 2016 -The Courts of Appeals have used similar rules to determine t he contours of a new claim for purposes of preclusion. See, e.g., Morgan v. Covington, 648 F. 3d 172, 178 (CA3 2011) "[R]es judicata does not bar claims [ [***26]  that are predicated on events that postdate the filing of the initial complaint");

 **She was unable to obtain such extension because of the timing of her termination and not any alleged failure to file the PERM application. ---But knowingly GE and fragomen, jenny didn't file I 140 , despite mediator telling GE several times even in writing emails and Trivedi that GE put Trivedi on leave of absence with no pay/salary and just finish filing/processing I 140 by paying filing fees, submitting I 140 company documents'** i.e.GE's finances to government and total number of employees –it was about matter of TWO MONTHS of processing and keeping Trivedi either on paid leave or leave without pay whatever GE wanted as Trivedi requested. But GE was out of REVENGE to go after Trivedi, send a message –retaliation for all the protected activities she **was engaged in. Fragomen MTD page 7**

15. As the Supreme Court explained more than 50 years ago in  *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), res judicata does not bar a suit, even if it involves the same course of wrongful conduct as alleged earlier, so long as the suit alleges new facts or a worsening of the earlier conditions.

16. In *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), the Supreme Court unanimously reversed the application of res judicata where the lower court applied the same reasoning as the district court applied here. There, the plaintiffs brought an antitrust suit that was ultimately dismissed with prejudice. *Id.* at 324. **Seven years later, the plaintiffs brought a second antitrust suit against many of the same defendants, alleging the same course of wrongful conduct, which had worsened in the interim.** *Id.* at 328. The lower courts applied res judicata to bar the second suit. *Id.*

17. The Supreme Court reversed, explaining that even though "both suits involved essentially the same course of wrongful conduct," res judicata did not apply. *Id.* at 327

18. *Lawlor* retains its vitality to this day. *See, e.g.*, *Darney v. Dragon Prods. Co., LLC*, 592 F. Supp. 2d 180 (D. Me. 2009) (applying *Lawlor* to deny application of res judicata **where second complaint included new factual allegations, even though there was "facial similarity" with the first complaint).**

19. *See Duncan v. Peck*, 752 F.2d 1135, 1139 (6th Cir. 1985) (applying Ohio res judicata principles and explaining that "a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each action relates to the same subject matter")

20. Moreover, there are certain exceptions to issue preclusion, such as when the issues are not identical because the prior litigation and subsequent litigation involve applications of different legal standards.

A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
(3) When the judgment reserved the right of the plaintiff to bring another action.

21. Special circumstances – the Court may take into account special circumstances that permit a party to bring a second claim, for example: limitation or lack of finances

Issue estoppel when fresh evidence, change in law and fraud occured while cause of action estoppel when fraud occurred allow relitigation.

**Also new defendants foley & mansfield and fragomen added.**

New claims adds that Trivedi was retaliated based on her reporting that added to securities and exchange commission, SEC fraud , related cause of actions by Ge which Ge knew so they had planned mentally and executed by actions so obstruct, retaliate and send message—require separate new discovery, trial—not quitam claims & quitam based retaliation were part of arbitration which also require new separate discovery and proof

22. **FDA complaint Trivedi filed was pending as FDA said they won't give out information about their investigation…..FDA responded to FOIA in late 2016 as shown here..as per boykin-v-keycorp while administrative investigation was pending her filing of claims was tolled. Same for Trivedi's case as** per Solutions policy of GE:

Solution page 9

In order to submit Covered Claims to Level III and Level IV of Solutions, employees mhave submitted such claims to Level I (and the Company must have submitted to Levebefore the expiration of the applicable statutes of limitations and/or administrative agency filing deadlines for such Covered Claims. Where an employee files a CoveClaim with an administrative agency or in a court that has (or, absent Solutions, woulhave) jurisdiction over the Covered Claim before the expiration of the applicable limitations period, the Company agrees to stop the further running of the limitations period as to that Covered Claim while it is pending before resolution, or the agency process has been concluded. Where a party's initial submission of a Covered Claim to Solutions occurs before the expiration of the applicable statute of limitations for filing in court, the opposing party agrees to stop the further running of the statute of limitations while the parties compel the Solutions process. In the case of administrative agency filing deadlines, the Company agrees to request that the agency treat the running of filing deadlines as having been stopped.

4

# EXHIBIT ● 12

**In *Move, Inc. v. Citigroup Global Markets, Inc.*,[i] the Court, for the first time, held that equitable estoppel can toll the Section 12 three-month limitations period.**

**The court of appeals panel held that the plaintiff's motion was not untimely because the Federal Arbitration Act is subject to equitable tolling.**

The panel also held that the plaintiff's right to a fundamentally fair hearing was prejudiced by the fraudulent misrepresentations of the arbitration panel's chairperson, resulting in proceedings led by an arbitrator who should have been disqualified from the dispute under the rules and regulations of FINRA.

First, the Supreme Court has instructed lower courts to consider several textual factors to determine whether Congress intended for tolling not to apply to a given statute. This includes whether a limitations period is set forth in "unusually emphatic form," is "unusually generous," or uses "highly detailed" and "technical" language, and whether the statute "reiterat[ed] the limitations period several times in several different ways." Holland v. Florida, 560 U.S. 631, 646–47 (2010) (internal quotation marks omitted). FAA's limitations period is neither detailed nor technical and is not reiterated elsewhere in the statute. Accordingly, the text of the statute does not preclude equitable tolling.

Second, the FAA's structure is not incompatible with equitable tolling. Citigroup argues that the "interlocking structure" of the FAA precludes tolling, pointing to § 9 of the FAA, which provides one year for a party to file a motion to confirm an award. According to Citigroup, allowing vacatur more than a year after an award is issued would upset the statutory scheme by overturning a court's decision to confirm that award. ……………………………
We therefore find that the structure of the FAA is compatible with equitable tolling.

**Finally, equitable tolling would not undermine the basic purpose of the FAA, which was enacted to make "valid and enforceable written provisions or agreements for arbitration of disputes."** 68 Cong. Ch. 213, 43 Stat. 883 (1925). While

the FAA reflects the "national policy favoring arbitration with
just the limited review" necessary to maintain finality in
arbitral proceedings, *Hall Street*, 552 U.S. at 581, **"[t]he
general pro-arbitration policy relies on the assumption that
the forum is fair, and therefore cannot justify special
deference to arbitration outcomes in the face of a colorable
claim that the forum was unfair in a particular case." *Merrill
Lynch, Pierce, Fenner & Smith, Inc. v. Berry*, 92 Fed. Appx. 243, 246 (6th Cir. 2004)
(unpublished).** Thus, although
Citigroup argues that equitable tolling would undermine the
FAA's goal of finality, § 10's limited grounds for review
were still "designed to preserve due process," *Kyocera Corp.
v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998
(9th Cir. 2003)……
**More importantly, permitting equitable
tolling will enhance both the accuracy and fairness of arbitral
outcomes………**

**Regardless, we agree with the district court's
findings that (1) Move acted with due diligence in pursuing
its claim, as it justifiably relied on the information provided
by FINRA; and that (2) tolling would not prejudice Citigroup
under the circumstances. We therefore conclude that Move
is entitled to equitable tolling.**

# EXHIBIT ⬤   13

Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]
From: sean.scullen@quarles.comTo: madhuritrivedDate: Wed, 27 Nov 2013 20:55:08
I don't understand your question -- in a mediation the mediator doesn't take sides and is a
neutral that works with both parties to try to reach a voluntary resolution.  In some of the
cases in which Mr. Gibbons has served as a mediator we have been successful in reaching
such a resolution and in others we have not.  ==**You are correct that the WERC people**==
==**are not mutually agreeable.**==

==Sean Scullen==
From: Madhuri Trivedi  Sent: Wednesday, November 27, 2013 2:50 PMTo: Scullen,
Sean (MKE x1421)Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-
ACTIVE.FID36842469]

what about mediation that you worked with him on...**so Wis. Emp. relations people are
not mutually agreeable between us..** Sincerely,Madhuri
From: sean.scullen@quarles.com  To: madhuritrivedi
Subject: RE: Trivedi/GE Healthcare 11-15-2013 lh [QBLLP-ACTIVE.FID36842469]
Date: Wed, 27 Nov 2013 20:47:51 +0000

Mr. Gibbons has not served as an arbitrator in a case that I have handled or for GE as far
as I am aware.  ==I'm not sure who the Wisconsin Employment Relations arbitrator you're==
==referring to is, but we are not interested in using someone from that entity.==

Sean Scullen
From: Madhuri Trivedi Sent: Friday, November 22, 2013 11:20 AMTo: AAA Carol
PlacellaSubject: RE: Trivedi/GE Healthcare 11-15-2013
So we can have Peter Davis as arbitrator..If we can then I will contact Mr. Scullen. I
wanted to reach out to you first. Sincerely,Madhuri

# EXHIBIT 14

## ADMINISTRATIVE REVIEW BOARD
## UNITED STATES DEPARTMENT OF LABOR

**In the matter of**

**Madhuri Trivedi**                          **ARB CASE NO. 2022-0026**
                                             **ALJ CASE NO:- 2022SOX00005**

**Complainant**

**v.**

**General electric, GE healthcare**

**Respondents**

### <u>REPLY BRIEF OF COMPLAINANT MADHURI TRIVEDI</u>

## Table of Contents

1   SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division ................................................................................. 3

2   Jim Kohli 35 years old veteran used to speak loudly that at GE – we have Walmart style resources at the price of Macy's – highly priced medical devices and shitty service..that's the point – not Trivedi , not being a team player. ............................................................................ 4

3............................................................................................................................................... 4

4   ALJ McGrath of OALJ, in Boston, cited Judge Kelley's R&R to dismiss OSHA SOX claim based on timeliness…..GE's recent opposition to Trivedi's rule 60 motion- GE wrote ............... 5

Exhibit 6 has GE's fraud culture................................................................................................. 5

5   GE in ECF 169 at district court ............................................................................................. 6

6   Trivedi reply to GE's ARB Brief ........................................................................................... 6

7   Trivedi's lawsuit against GE alleged in complaint about attorney code of conduct Section 307 of SOX and recent statement by SEC.gov commissioner bout NEED to establish minimum standards for lawyers practicing before the Commission, instead of the "goal-directed reasoning" 9

8   Under Administrative Procedure Act  706 – court review under abuse of discretion , under De novo review, chevron review and Skidmore review – to review decision of administrative agency - Judges are subject to criminal prosecution (exhibit 4)................................................. 10

9   Contra non valentem = Tolling............................................................................................. 10

10    Fair opportunity legal argument…..................................................................................... 10

11      From first circuit filings -................................................................................................ 11

12      President Biden, On March 3, 2022, signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (" Act ") into law. .................................................. 12

12.1      Supreme court has ruled on May 23, 2022 by vote of 9-0 – that "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration"................ 12

12.2      Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to Alternative Dispute Resolution Techniques)The arbitration award in the courts—Concerns about the arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to hear pertinent and material evidence is sufficient misconduct to justify vacating an award.) AND      12

13      Trivedi's arguments similar to Sylvester v. Paraxel ARB case – about company policy – submitted in lawsuit complaint is trashed. ALJ McGrath – under bias, hatred – didn't read anything.................................................................................................................................. 13

14      CONCLUSION ................................................................................................................ 14

15      EXHIBIT Listing .......................................................................................................... - 1 -

16      EXHIBIT 1 Jeff Goldman Immigration attorney, Trivedi didn't know she signed arbitration agreement ............................................................................................................ - 2 -

17      EXHIBIT 2 Cross law firm retainer..................................................................................- 5 -

18      EXHIBIT 3 Some GE history ......................................................................................... - 7 -

19      EXHIBIT 4 Judges are subject to criminal prosecution ................................................. - 9 -

19.1      More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution.....................................- 10 -

19.2      Tort by judges, sadistic pleasure..........................................................................- 10 -

20      EXHIBIT 5 GE policies ................................................................................................ - 11 -

21      EXHIBIT 6.................................................................................................................... - 17 -

21.1      Jack's Magic -- Part II (Dec. 26, 2005)  -GE earning management -Was the unit blind-sided or was it straining to deliver the double-digit earnings growth Welch always expected? Was anything illegal done?............................................................................... - 17 -

21.2      Since 2002, GE has been subject of manufactured earning .................................- 19 -

# 1   SEC.GOV FOIA confirmed that Trivedi's GE Healthcare complaint's investigation is active and ongoing by SEC enforcement division

## FOIA RESPONSE

**We have confirmed with Division of Enforcement staff that the investigation from which you seek records is still active and ongoing**

5 See OKC Corp. v. Williams, 489 F. Supp. 576 (N.D. Tex. 1980) (SEC is not required to disclose requested
materials directly tied to a pending investigation); Nat'l Pub. Radio v. Bell, 431 F. Supp. 509, 514-15 (D.D.C. 1977) (Congress intended that Exemption 7(A) would apply where disclosure may impede any necessary investigation prior to court proceedings); Robbins Tire, 437 U.S. at 232 (Congress intended that Exemption 7(A) would apply "whenever the Government's case in court ... would be harmed by the premature release of evidence or information."); Accuracy in Media, Inc. v. U.S. Secret Service, C.A. No. 97-2108, 1998 U.S. Dist. Lexis 5798 at 11 (D.D.C. April 16, 1998) (affirmation that there is an active and on-going investigation is enough); Marzen v. HHS, 632 F. Supp. 785, 805 (N.D. Ill. 1985) (concluding that Exemption 7(A) prohibits disclosure of law enforcement records when their release "would interfere with enforcement proceedings, pending, contemplated, or in the future"), aff'd, 825 F.2d 1148 (7th Cir. 1987).

**We have confirmed with Division of Enforcement staff that the documents you seek come within categories whose disclosure could be reasonably expected to cause harm to the ongoing and active enforcement proceedings because, a**mong other things, individuals and entities of interest in the underlying investigation could fabricate evidence, influence witness testimony and/or destroy or alter certain documents.7

Public release of the records sought could also hinder the ongoing investigation by revealing cooperating witnesses and exposing the scope of the underlying investigation.8

7 See Robbins Tire, at 232 (Congress intended that Exemption 7(A) would apply "whenever the Government's case in court ... would be harmed by the premature release of evidence or information.").

8 See, e.g., Shannahan v. IRS, 672 F.3d 1142, 1150 (9th Cir. 2012) (the use of Exemption 7(A) was proper where agency explained harm to ongoing investigation by showing that release could reveal identity of confidential informants and thus hinder other individuals from cooperating, violate terms of an international agreement, and expose scope of investigation); Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 40, 52 (D.D.C. 2006) (release of records regarding alleged misuse of tribal gaming revenues during investigation could allow targets to ascertain direction of investigations, to identify potential charges to be brought, and to expose state and nature of current investigations, thereby

undermining federal investigations); Suzhou Yuanda Enter. Co. v. Customs and Border Prot., 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (release of information "would interfere with an agency investigation [by] informing the public of the evidence sought and scrutinized by this type of investigation"); Elec. Privacy Info. Ctr. v. DHS, 384 F. Supp. 2d 100, 119 (D.D.C. 2005) ("release of this information could undermine the effectiveness" of agency's investigation); Judicial Watch v. Dep't of Justice, 306 F. Supp. 2d 58, 75-76 (D.D.C. 2004) (release of documents during course of investigation could damage agency's ability to obtain information); Lynch v. Dep't of the Treasury, 210 F.3d 384, at *2 (9th Cir. 2000) (unpublished table decision) (agency declarations "made clear" that release of records could harm "efforts at corroborating witness statements . . . alert potential suspects . . . [and] interfere with surveillance"); Solar Sources, 142 F.3d at 1039 (disclosure could interfere by revealing "scope and nature" of investigation); Amnesty Int'l v. CIA, 728 F. Supp. 2d 479, 526-27 (S.D.N.Y. 2010) (disclosure of information in open investigations would reveal what individuals and activities were under investigation, what evidence had been collected, and compromise confidentiality of investigation; such disclosures were "'precisely the kind of interference that Congress . . . want[ed] to protect against'" (quoting Robbins Tire, at 247)).

**9** I further find that it is reasonably foreseeable that disclosure of the withheld records would harm interests protected by Exemption 7(A) because such a disclosure could compromise ongoing enforcement proceedings.

## 2   Jim Kohli 35 years old veteran used to speak loudly that at GE – we have Walmart style resources at the price of Macy's – highly priced medical devices and shitty service..that's the point – not Trivedi , not being a team player.

### 3

May be GE should ANSWER – like normal answering requirement under fed. Rule of Civ. Procedure – each and every paragraph – of Trivedi's OALJ objections and exhibits( 70 MB) = as well as ARB's opening brief –so we know how GE answers – instead of picking and choosing and- answering selectively, omitting, misleading and lying.

ALJ McGrath  nor GE, has presented real , true picture based on 70 MB filings that Trivedi did with OALJ objections in 2021, after OSHA dismissed her 2014 and 2021 complaint. Remember OSHA in 2021 – never addressed that as per OSHA manual – OSHA can't close complaint administratively- thinking that Trivedi won't read manual and won't find out.

On May 28, 2022, Trivedi filed MOTION for Relief from judge Saris's Order ADOPTING R&R, under Fed. R. Civ. P. 60 – ECF 167…( ALJ McGrath of OALJ, in Boston, cited Judge Kelley's golden R&R to dismiss OSHA SOX claim based on timeliness )

Corrupt GE attorneys have not mentioned ARB granting petition for review, in their district court's ECF 169 – filed on JUNE 13, 2022-opposition to Trivedi's rule 60 motion ECF 167…

While GE has filed their response brief with ARB on JUNE  15, 2022 (two days after filing opposition in district court)--- thus as usual GE attorneys swallowed MATERIAL FACT in their ECF 169 in district court,  and omitted critical information ,AND as seen during court of this LITIGATION, ALJ MCGrath has turned BLIND to GE attorneys' PERJURY… are fine with GE's omission, misleading, perjury …that's why I have valid FTCA and Bivens claims against ALJ McGrath; he also corruptly DENIED LIMITED DISCOVERY to answer to his order to show cause for timeliness-

 Also in ARB response brief , filed with ARB on June 15, 2022- GE attorneys have not mentioned anything about Trivedi's district court rule 60 motion ECF 167 –ommission, partial information given  to ARB judges – and similar way done during arbitration , at district court, at first circuit and with ALJ McGrath..ALJ Mcgrath erred to not look into this – it is attorney misconduct. But ALJ himsef is corrupt  - so now there is competition – who is worst in terms of corruption- GE, GE attorneys, OSHA people, ALJ McGrath?  Judges rely on this half presented facts and picture by GE attorney and think that Triveid is Pro Se…don't see that GE is sitting on verge of getting bankrupt..

## 4   ALJ McGrath of OALJ, in Boston, cited Judge Kelley's R&R to dismiss OSHA SOX claim based on timeliness…..GE's recent opposition to Trivedi's rule 60 motion- GE wrote

**Exhibit 6 has GE's fraud culture.**
Case 1:19-cv-11862-PBS Document 169 Filed 06/13/22 Page 10 of 17

**A. No Basis Exists for Vacating the Dismissal of Ms. Trivedi's Sarbanes-Oxley Act Whistleblower Retaliation Claim (Count 3).**

Among Ms. Trivedi's oft-revisited protestations is that OSHA somehow mishandled her complaint *after* it was belatedly filed on May 3, 2014. (*See, e.g.*, ECF No. 167 at 28-29; ECF No. 105 at 27; ECF No. 143 at 33, 48 (attacking OSHA investigators)). Even if true, that would in no way make her OSHA complaint timely. Moreover, contrary to what Ms. Trivedi now asserts, count 3 cannot be

salvaged due to her mistakenly raising perceived whistleblowing retaliation grievances with a wrong agency, the FDA, on December 13, 2013. (*See, e.g.*, ECF No. 167 at 35, 37-39). Any such outreach was equally untimely, as it occurred 196 days after the termination of Ms. Trivedi's employment. Ergo, even assuming some form of relation-back or tolling was appropriate, the claim would still be time-barred. This Court should deny Ms. Trivedi's motion to vacate the dismissal as to count 3.

**ANSWER:-**In district court GE wrote --Page 10 Any such outreach was equally untimely, as it occurred 196 days after the termination of Ms. Trivedi's employment. Ergo, even assuming some form of relation-back or tolling was appropriate, the claim would still be time-barred. This Court should deny Ms. Trivedi's motion to vacate the dismissal as to count 3.

GE has done huge fraud, risked patient data, and diagnosis – while instead of 180 days – filing 196 days – does not meet tolling requirement? Shouldn't GE people be jailed for at least one year.

## 5   GE in ECF 169 at district court

**GE wrote -**(*See, e.g.*, ECF No. 143 at 13-14 (arguing in objections that "since GE kept selling highly defective medical devices years after I left GE—I am still within [the] time limitations to file False [C]laims [A]ct claims"). While closer dissection of an "ongoing fraud" allegation could be part of analyzing a *qui tam* claim.

So GE as in GE's June 13, 2022 court filings- have ADMITTED TO BE ENGAGED in ONGOING FRAUD – and /or have not denied that GE was not doing ONGOING FRAUD. Shouldn't OSHA, ALJ, GE people be arrested. Police can also issue arrest warrant.

## 6   Trivedi reply to GE's ARB Brief

1) **GE response to ARB –** page 2 - Ms. Trivedi had previously contacted OSHA on May 3, 2014 to lodge allegations against GE but—for many years—she chose not to challenge the agency's decision to not take any action.

**ANSWER:-**This statement is misleading – OSHA in 2014 – didn't even docket the case- nor gave Trivedi right to appeal to ALJ – and "ADMINISTRATIVELY CLOSED" her complaint. GE has swallowed Trivedi's evidence that as per OSHA manual – OSHA can't administratively close – complaint under SOX even if it is filed untimely – even if it does not meet prima facie requirement…

Also whole Sylvester v. Parexel argument about gGCP –good clinical practice and GE's GMP – good manufacturing practice – has been ILLEGALLY trashed by OSHA investigators in 2014, 2021 including Daniel Koh, Frederick James, Anthony Rosa..ALJ McGrath.. GE attorneys haven't

GE people and GE attorneys should be shackled in chain and jailed for at least one year

2) **ARB Page 2**- "By August 2013, Ms. Trivedi was apparently represented by at least two different law firms in connection with her employment law concerns."

**ANSWER:-**One law firm Cross law firm retainer (**EXHIBIT 1& 2, 7**) – Cross law wrote that they will not advise Trivedi for filing any complaint to any agency, nor represent Trivedi in arbitration.. Trivedi has mentioned this under penalty of perjury – in OSHA complaint in 2021, in OALJ objection in 2021 – in petition for review with ARB( for which GE replied- but misleading again ARB by stating this – and ARB might think that Trivedi is Pro Se – while these are attorneys – please don't do so – these attorneys must be shackled in chain and jailed. Aiding and abetting fraud—Another attorney was immigration attorney.

3) **GE ARB response page 10** – GE has not mentioned that Trivedi contracted Midwest OSHA in June 2021 – and Daniel Koh in July 2, 2021…and OFCCP in January 2022- Alexandria contacted OFCCP in 2020.

4) **GE ARB response Page 10 -** "ALJ methodically read and analyzed" her transmissions. (GE App'x 18).

**ANSWER:-** If ALJ McGrath would have read filings – and dol.gov's own investigation manual – then he would have found out that OSHA erred in closing it administratively –In email sent to FTCA people at DOL.gov -  I have signed statement that under penalty of perjury – this was the material , complaint submitted to 2014 OSHA complaint….OSHA 2014 complaint had enough to docket under SOX.

5) **GE  ARB response page 5-** "It thus appears that, as she began running out of other litigation options, Ms. Trivedi returned to OSHA." ..Despite I wrote that because Alexandria Horne OSHA SOX case – I came back…shouldn't GE attorney s be arrested.

6) **GE  ARB response Page 7 –wrong forum and specific SOX claims**
**ANSWER:-**Trivedi's October 2013 complaint to DHS and December 2013( and subsequent emails, as well as phone calls)--contained FDA's GCP_ including CFR – actual US statutes –as Trivedi submitted to DHS and FDA, both  Trivedi's arbitration statement  - It included statements from Triveid such as termination, retaliation…and

21 CFR 820 part 1
21 CFR 820.250 Statistical Techniques
21 CFR 820.90 Nonconforming Product

Trivedi also wrote in arbitration statement submitted to DHS and FDA – about fraud and conspiracy by GE to continue release defective, cybersecurity vulnerabilities , hackable Insite agents on medical devices…GE attorneys have misled ARB as usual and should be arrested. And shackled in chain.

7) **GE ARB page 5-**"And no matter what purported atrocities Ms. Trivedi might *think* GE committed—as an established matter of law, they should not resuscitate her untimely complaint"

**ANSWER:-**GE has omitted GCP and GMP totally – it was OSHA's corruption..good manufactuing practice under SOX OSHA.

8) **GE ARB brief -Page 8 Footnote 4 continuing violation doctrine  -**
**ANSWER:-**Trivedi has presented pattern & practice claim – ranging from Trivedi to Alexandria Horne ( she filed SOX OSHA claim – and her case is pending), to Robert Kucera – all whistleblowers..AND OFCCP (**page 106 of Trivedi's ARB brief  )**

**7B00 Continuing Violation**
**https://www.dol.gov/agencies/ofccp/manual/fccm/7b-timeliness-and-continuing-violation/7b00-continuing-violation**

The courts developed the continuing violation concept to address the fact that some employment practices are not discrete incidents, beginning and ending at particular points in time. For example, a policy or practice of paying lower wages to women rather than to men for the same or similar work is discriminatory and the contractor repeats the violation each time the contractor pays the women. When evaluating such violations, the courts will consider the entire time period during which the violations occurred or the time period since the effective date of the law, whichever is later. For example, a continuing violation which is grounded in racial discrimination is actionable from the date the continuing practice began or the effective date of Executive Order 11246 (September 1965), whichever is later. This is provided, of course, that the other requirements of coverage are met.

In compensation cases, contractors will be in violation of Executive Order 11246 any time they pay wages, benefits or other compensation that result, in whole or in part, from application of any discriminatory decision or practice.

2. *Maintenance of a Discriminatory Policy or System*. A continuing violation may occur when a contractor maintains a discriminatory policy or practice into the two-year, 180-day period or 300-day period. The violation may focus on one particular employment practice, such as promotions or compensation; or it may deal with discrimination in a series of areas, including initial placement, promotions, transfers and salary. It is not necessary under this approach for OFCCP to show that a discrete act applying the alleged discriminatory policy occurred during the two-year period, 180-day period or 300-day period. It is sufficient to show that the policy or system continued into the period and that, if there had been a personnel action, the policy or system would have been applied in the alleged discriminatory manner.

**Trivedi's ARB brief – page 44**

"Under a continuing violation theory, a new claimaccrues each day the violation is extant. *Interamericas Investments*, *Ltd*. *v*. *Bd*. *of Governors of the Fed*. *Reserve Sys*., 111 F.3d 376, 382 (5th Cir. 1997)(citing *Hanover Shoe*, *Inc*. *v*. *United Shoe Machinery Corp*., 392 U.S. 481, 502 n.15 (1968)). A continuing violation applies where the conduct is ongoing, rather than a single event. *Id*. When a claim constitutes a continuing violation, the limitations period begins to run at the end of the violation. *Dews v*. *Town of Sunnyvale*, 109 F. Supp. 2d 526, 563 (N.D. Tex. 2000)."

9) ARBITRATION hearing was held on **May 8, 9 2014** ==EXHIBIT 8 & 9)==—and Trivedi filed OSHA complaint on May 3, 2014 – after Trivedi's termination , Trivedi was working on mediation, arbitration, and filed EB1 extra ordinary ability petition with USCIS, DHS on April 2014. While GE attorneys are pointing that Trivedi was not exercising due diligence.

10) GE didn't say that while ALJ never granted Trivedi's motion for discovery and motion for stay pending discovery to answer ALJ McGrath order to show cause. ALJ McGrath was/is literally torturing, harassing, abusing – he was intentionally inflicting torture – thinking that what would Trivedi do- so did entire OSHA food chain and Daniel koh trashing Trivedi's thousands of pages of OALJ filing -–—

**11)** I have already wrote – that in 2014 Tamara- on phone threatened Trivedi for immigration. Read everything 70 MB of OALJ filings please…

## 7   Trivedi's lawsuit against GE alleged in complaint about attorney code of conduct Section 307 of SOX and recent statement by SEC.gov commissioner bout NEED to establish minimum standards for lawyers practicing before the Commission, instead of the "goal-directed reasoning"

**ECF 51** Page 88

17 CFR § 205 and (15 U.S.C. 7245) Case 3:15-cv-02356-JCS Document 132 SEC  amicus brief on attorney code of conduct Section **307 of** the Sarbanes-Oxley Act of 2002 (the "Act") (15 U.S.C. 7245)

**It was GE counsel's legal duty to report SEC violations but Sean Scullen-quarles and Bradley, Neil and all others teamed up to cover-they should not be practicing law anymore.**

## ✓ SEC Commissioner's recent statement  (EXHIBIT 10)

https://www.sec.gov/news/speech/lee-remarks-pli-corporate-governance-030422

https://www.jdsupra.com/legalnews/sec-commissioner-signals-need-to-2553725/

"She stated that, 20 years after its enactment, it is time to revisit the "unfulfilled mandate" of Section 307 of the Sarbanes-Oxley Act of 2002 and establish minimum standards for lawyers practicing before the Commission.  …. she called the "goal-directed reasoning" of some securities lawyers—that is, focusing primarily on the outcome sought by executives, rather than the impact on investors and the market as a whole.  Such lawyering, Commissioner Lee observed, has a host of negative consequences, including encouraging non-disclosure of material information, harming investors and market integrity, and stymying deterrence.  The solution, Commissioner Lee opined, is to fulfill the mandate of Section 307, which empowered the Commission to "issue rules, in the public interest and for the protection of investors, setting forth minimum standards of professional conduct for attorneys appearing and practicing before the Commission in any way in the representation of issuers."

✓ **Point here of Trivedi is- defense attorneys behaving this way to SEC.gov= then as Trivedi has complained about GE attorneys misconduct. Well, GE attorneys misconduct is criminal and is aiding and abetting.**

## 8   Under Administrative Procedure Act  706 – court review under abuse of discretion , under De novo review, chevron review and Skidmore review – to review decision of administrative agency - Judges are subject to criminal prosecution (exhibit 4)

Various other standard – finding and decision of administrative agency – and does not take judicial notice- which judge Kelley did – by citing OSHA 2014 –dismissal letter – ALJ McGrath was , by law required to review 2014 and 2021 OSHA complaint under SOX – on his own – and it is illegal for ALJ McGrath to cite judge Kelley's R&R..when neither at OSHA in 2014 & 2021 - when OSHA asked GE's response--..and neither at district court any hearing, discovery, or even reading pleading without corruption happened…ALL judges , GE deserve jail.

**I thought judge Kelley would review entire OSHA record FRESH – that's what courts are supposed to do- and that's why De novo review, chevron review and Skidmore review – exist –** to review decision of administrative agency--and – none of that happened – GE and judge used OSHA 2014 dismissal as weapon – and As I already wrote – Alexandria Horne also filed OSHA SOX complaint with OSHA Midwest – so after her OSHA complaint- I came back to OSHA again..all this is written in OSHA 2021 and OALJ filings- OSHA investigator in 2021 nor ALJ McGrath read it..and now egregious GE attorneys are misleading ARB without perjury and false facts, statement

## 9   Contra non valentem = Tolling

Tunstall v. Daigle, Civil Action 20-2773-JVM, at *14 (E.D. La. Aug. 10, 2021) ("Contra non valentem prevents the running of the prescriptive period in four situations:     (4) where the cause of action is neither known nor reasonably knowable by the plaintiff. ")

## 10  Fair opportunity legal argument…..

**How come district court cite OSHA 2014 ( when in 2014 Trivedi didn't get full and fair opportunity  to litigate- there were no statement from GE, witnesses, discovery, hearing – OSHA complaint was not even docketed) and in CIRCLE ALJ cite district court .**

Full and Fair Opportunity to Litigate-OSHA never asked GE's statement, nor conducted discovery, hearing, calling witness, nor a well-reasoned opinion…it was just corrupt investigator like judge Kelley -- – Trivedi filed her complaint on May 3, 2014 – on June 6, 2014 – OSHA closed her complaint and sent administratively closed letter on July 2014… but OSHA investigator manual itself says that Complaint may not be closed administratively under SOX – unless complainant withdraws –in Trivedi's case – Trivedi didn't withdraw. OSHA violated their own manual rules – thinking that Trivedi won't find out and they can continue do this.

Trivedi's contact with USCIS and FDA were  the "precise statutory claim in issue" filed in the wrong forum to justify tolling either the SOX 180-day filing deadlines." ) (**18 U.S.C. § 1514A(b)2(D); 29 C.F.R. § 1980.103(d)**)—but as per OSHA investigator manual above ; it says

complaint filed under SOX may not be closed administratively….even though complaint I untimely or doesn't present prima facie case…

**Isn't this Corrupt and OXYMORON ?**

Feldman-Boland v. Stanley, 15cv6698, at *7-8 (S.D.N.Y. July 13, 2016) ("B. <u>Full and Fair Opportunity to Litigate</u> Even if there were an identity of issues, Plaintiffs did not have a full and fair opportunity to litigate the issue before the NYCCHR. In <u>Kosakow</u>, the court reviewed the SDHR procedures and noted that "there was no record of any discovery being conducted, nor is there any record of any interviews of witnesses [nor a hearing.] It appears that the no-probable cause determination was based primarily, if not exclusively, upon a review of the papers submitted." <u>Kosakow</u>, <u>274 F.3d at 734-36</u>. Accordingly, the court concluded that "the issue of whether Kosakow was terminated for legitimate business reasons was not 'adequately tested' or 'fully aired' at the DHR proceeding." <u>Kosakow</u>, <u>274 F.3d at 736</u> ("By contrast, in <u>Tice</u>, the Third Circuit concluded that there was a full and fair opportunity to litigate where "[t]he prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by competing sides, and a reasoned opinion written by an administrative law judge." <u>Tice</u>, <u>325 F. App'x at 117</u> (quoting <u>Tice v. Bristol-Myers Squibb Co.</u>, <u>515 F. Supp. 2d 580, 600</u> (W.D. Pa. 2007)). ")<mark>[NONE OF THAT HAPPENED in TRIVEDI' case – despite ALJ took note of district court case– it was dismissed- Judge should be arrested for doing this and spend one year in jail.</mark>

## 11  From first circuit filings -

*A court always has jurisdiction to* determine its own jurisdiction, The Third Circuit found that the cited cases were "all merely 'drive-by jurisdictional rulings' that easily 'miss the critical differences between true jurisdictional conditions and nonjurisdictional limitations on causes of action.'* *Muchnick, 559 U.S. at 161*

> **ECF 51 page 186** Once Madhuri realized amount of defects and performance/maintenance issues  Insite Exc was having which was violation of FDA rule, quality code, HIPPA and HITECH violations and risk to public health and safety –patient data; it was a fraud and conspiracy to continue release/ integrate those Insite Exc agents on products like Surgery OEC

## 12  President Biden, On March 3, 2022, signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (" Act ") into law.

Though for OSHA SOX claim – it does not matter. But OSHA investigator and OSHA agency (via fax) had my arbitration statement filed with AAA on November 5, 2013. GE has cited arbitration in ARB brief page 7 – and recent development shows that Trivedi's arbitration – conflicts with policy not to favor arbitration and judge in other case also applying new bill signed by president Biden RETROACTIVELY>

Judge Kelley in ECF 135 has USED word "Arbitration" 10 times… arbitrator -4 times, arbitrator's -3 times….taking arbitration processing and arbitrator ruling as carved into STONE, holy and eleventh commandment…

### 12.1  Supreme court has ruled on May 23, 2022 by vote of 9-0 – that "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration"

It is start of a good turning point from the highest court – where for years and for 1000s of case; Employers have took advantage of employees by forcing arbitration. In Trivedi's case- she didn't even know that she has signed arbitration contact…When Mr. Goldman from Cambridge, MA- immigration attorney sent a letter in 2013 to GEHC services CEO- then GE labor attorney replied that Trivedi has signed forced arbitration contracts – Courts and judges are HIGHLY CORRUPT too, as Trivedi's case shows evidence of their corruption. Though Morgan case is about prejudice and waiver; but it is still a beacon of light from higher court ( In DHS lawsuit, Trivedi has asked ONE CERTIORARI QUESTION about FORCED ARBITRATION) that this first circuit en banc to look at Trivedi's WHOLE arbitration mess.

*Morgan v. Sundance, Inc.*, No. 21-328, at *1 (May 23, 2022) **("Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind.** But a court may not devise novel rules to favor arbitration over litigation. See *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218-221. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. ")

MCI Telecommunications Corp. v. Exalon Indus., Inc.,138 F.3d 426(1st Cir. 1998) Arbitration agreements can be enforced as with other contracts, but not more so.

*Morgan v. Sundance, Inc.*, No. 21-328, at *2-3 (May 23, 2022) ("We granted certiorari to decide whether the FAA authorizes federal courts to create such an arbitration-specific procedural rule. We hold it does not.")

### 12.2  Corp Couns Gd to ADR Techniques § 2:93 –(Corporate Counsel's Guide to Alternative Dispute Resolution Techniques)The arbitration award in the

**courts—Concerns about the arbitrator—Arbitrator misconduct, (The general rule is that refusal by arbitrators to hear pertinent and material evidence is sufficient misconduct to justify vacating an award.) AND**

– as Trivedi already filed in District of Massachusetts and first circuit court filings 10 times, that- **arbitrator didn't include deposition of Madhuri Trivedi and GE architect Bill Barbiuax into EVIDENCE as hearing; along with other material. Arbitrator also didn't enter into evidence exhibit 57– futility of stack ranking (details about it &NYTIMES author book below) Enough to grant en banc & put all in jail.**

(A fair hearing involves notice, an opportunity to present relevant and material evidence and the arbitrators were not infected with bias.)… Hearing transcript that PROVES that depositions were not entered; has already been part of first circuit and district of Massachusetts court record. But none of the judges CARES>>>this is bullying, bias, and intentional harassment where JUDGES OMISSIONS, **Overlook, IGNORE, not mention – crucial evidence that would lead to denial of GE's motion to dismiss. That's why these judges should be in jail. Because they** are intentionally being corrupt- thinking that there is NO ONE ABOVE THEM…

**As GE choose private arbitrator** mentioning that public arbitrator Peter David from Wisconsin Workforce development who works for government hence arbitration record will become public so GE doesn't want Peter Davis to be an arbitrator and choose a PRIVATE ARBITRATOR…Email from GE attorney Sean Scullen CONFIRMING that GE won't allow public arbitrator is already part of this courts' case RECORD –but who cares..

## 13  Trivedi's arguments similar to Sylvester v. Paraxel ARB case – about company policy – submitted in lawsuit complaint is trashed. ALJ McGrath – under bias, hatred – didn't read anything

Below is screenshot Trivedi signed before joining GE – GE policies ( this was the same letter in which, forced arbitration was stated) – and by law was required to report violations…That's why I wrote to bring criminal charges against ALJ.

2. I acknowledge that I have received the guide to GE policies, *The Spirit & The Letter*. I will sign and return the acknowledgment form, or complete such other process as determined by my business, constituting my acknowledgment of receipt of that guide and my personal commitment to comply with the policies described in that guide. When I have a concern about a possible violation of GE policy, I will report the concern to a manager, a compliance resource within my business, Company legal counsel, an ombudsperson or another contact listed in the guide.

**FROM ECF 51- copied here.as EXHIBIT 5**

1. GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

2. **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created [1] legally enforceable rights.*

## 14  CONCLUSION

ARB to reverse ALJ's corrupt dismissal, make Trivedi whole again. This whole fight is insane. As GE attorneys are fighting, doing perjury – FDA has issued ( Note- I have presented details about remote connectivity platform for ventilator Carespace series in my ARB opening brief – this issue is related to batteries – but point is quality- GE is sending attorneys to court, agencies – to lie – why doing shitty product/service development) and retaliating.

**U.S. FDA classifies recall of GE's ventilator batteries as most serious. (June 28, 2022)**

https://www.msn.com/en-us/money/companies/us-fda-classifies-recall-of-ges-ventilator-batteries-as-most-serious/ar-AAYXMnZ?fromMaestro=true

(Reuters) - U.S. health regulators on Tuesday classified the recall of some backup batteries of GE Healthcare's ventilators, which the company had initiated in mid-April, as the most serious type, saying that their use could lead to injuries or death.

The CARESCAPE R860 ventilator's backup batteries, including replacement backup batteries, were recalled as they were running out earlier-than-expected, which could cause the device to shut down preventing the patient from receiving breathing support, the U.S. Food and Drug Administration said.

**NOTE- At the end of this brief – as EXHIBIT 11 – I have attached OALJ objections by Trivedi filed on September 2021( some duplicate files are removed)— There are so many files on EFS system at DOL ..this would be better to have everything in one PDF.**

---

[1] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

Respectfully Submitted,
Madhuri Trivedi
/s/Madhuri Trivedi
Phone: (650) 242-5135
Email: orangeinc@protonmail.com

➢ **World summit on innovation and Entrepreneurship** – THE
WSIE  summit speaker invite– Great presenter 2019 -
https://thewsie.com/presenters-2019/

➢ **My cybersecurity whistleblower profile on**
**whistleblowers.org**

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

➢ **Linkedin:**- linkedin.com/in/trivedim

# Certificate of service

The filing of this document through EFS will constitute filing of document on those registered
parties.

## 15 EXHIBIT Listing

| | | |
|---|---|---|
| 1 AND 7 | Jeff Goldman -Immigration attorney from Cambridge, MA.. His letter to GE CEO..GE attorneys wrote that Trivedi had two law firms in August 2013 & no one advised Trivedi about OSHA – referring to Mr. Goldman. But Mr. Goldman was immigration attorney- This argument has been presented 6 times before –despite GE attorneys, OSHA and ALJ refer to two law firms. All should be arrested immediately. | 2 |
| 2 | Cross Law firm retainer in August 2013; stating that law firm will not represent Trivedi in arbitration (law firm will represent ONLY for Mediation). And also, law firm has not agreed to file any complaint with any agency or court. Trivedi has presented this argument 6 times – and OSHA, ALJ , GE continuously harassing Trivedi –despite Trivedi wrote about retainer. Thus Triveid has valid, solid TORT claism against ALJ, OSHA and all including GE should be in jail for misleading and more | |
| 3 | Some GE history | |
| 4 | Judges are subject to criminal prosecution | |
| 5 | Trivedi district court complaint – GE policies violations | |
| 6 | GE fraud culture | |
| 8 | Arbitration hearing | |
| 9 | Arbitration hearing | |
| 10 | SEC commissioner Lee- attorney conduct[And it wasn't just during the Enron era that we saw lapses in the gatekeeping role] | |
| 11 | Trivedi OALJ objections, September 2021 | |

## 16  EXHIBIT 1 Jeff Goldman Immigration attorney, Trivedi didn't know she signed arbitration agreement

**From:** Jeff Goldman [mailto:Jeff@jeffgoldmanimmigration.com]
**Sent:** Friday, August 16, 2013 9:43 AM
**To:** Madhuri Trivedi (madhuritrivedi@hotmail.com)
**Subject:** FW: Madhuri Trivedi

Hi Madhuri, I was out of the office for two days and I am just seeing this email response from GE Healthcare.  As we discussed from the beginning, I am certain that this case is beyond my ability to help—it is filled with employment law issues and I am not an employment law attorney.  I really must insist that you retain employment counsel.   The lawyer in Milwaukee with whom I spoke offered to speak to you if you call him.  I have never worked with him and I know nothing about him, but his website seems to show he is very accomplished at representing employees in disputes with employers.  His name is Alan Olson:
http://www.employee-advocates.com/

As I cannot assist with this matter, I am going to close my file and want to make it clear that I will not be representing you further.


Sincerely,

Jeff Goldman

Jeff Goldman, Esq.
Law Offices of Jeff Goldman LLP
Cambridge Innovation Center
One Broadway (Kendall Square)
Cambridge, MA 02142
     All correspondence goes to:
125 Washington Street, Suite 204
Salem, MA 01970
TEL:      (978) 219-5040
DIRECT: (978) 219-5055
FAX:      (617) 977-0928
www.jeffgoldmanimmigration.com


**From:** Stekloff, Neil (GE Healthcare) [mailto:Neil.Stekloff@ge.com]
**Sent:** Wednesday, August 14, 2013 11:51 AM
**To:** Jeff Goldman
**Subject:** RE: Madhuri Trivedi

**CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY**

Mr. Goldman:
I am in receipt of your letter to Mike Swinford regarding Madhuri Trivedi.  As I suspect you are aware given that I was cc'd on your e-mail, I am labor & employment counsel for GE Healthcare.  You can direct all further correspondence regarding this matter to me.

- 2 -

Ms. Trivedi's factual allegations regarding her termination are completely unfounded.  This is a rather straightforward performance management case.  Ms. Trivedi was put on notice after her first several months on the job that she was having significant performance issues.  These issues were brought to her attention by multiple managers, documented in writing, and resulted in a formal Performance Improvement Plan (PIP).  Rather than make a legitimate effort to meet the requirements of the PIP, Ms. Trivedi initially refused to attend the PIP meetings altogether – and, when she did later attend, she spent more time disputing the requirements than attempting to meet them.  Ms. Trivedi was ultimately terminated after she did not pass the PIP.  She certainly has the right to disagree with the Company's assessment of her performance, but there is nothing unlawful about that.

Ms. Trivedi's allegation that she was somehow retaliated against for raising problems with the software she was working on does not make any sense.  It was her job as a software engineer to identify and resolve these problems in a test environment, before the software went into production.  Everybody knew this, and thus there is no reason she would be "punished" for raising issues she was being called upon to resolve.  I would also add that Ms. Trivedi's allegations of discrimination and retaliation were raised to the GEHC Ombudsperson before she left, investigated by an independent HR Manager from another GEHC business, and determined to be unfounded.  Once again, this boils down to a disagreement about performance between a short-serving employee and the Company.

For these reasons, we are not willing to reinstate Ms. Trivedi.  I also must point out that Ms. Trivedi agreed, as a condition of employment, to GE's alternative dispute resolution (ADR) process, called Solutions.  See her signed Solutions acknowledgment, attached, which requires binding arbitration as its last step (Level IV).  The step before arbitration, Level III, is non-binding mediation before a neutral mediator – which GE pays for.  Ms. Trivedi already has pursued her Solutions claim through Level II (let me know if she has not provided you with her Solutions submission and the Company's response and I will do so; I also can send you the full Solutions policy if she hasn't provided it).  Thus, mediation of Ms. Trivedi's claims via the Solutions process is the next step before Ms. Trivedi may pursue arbitration.  We have repeatedly advised Ms. Trivedi of this.

I hope this information assists you in discussing this matter with Ms. Trivedi, and I am happy to discuss with you further at your convenience.  My complete contact information is below.

Neil Stekloff
**Neil B. Stekloff**
Senior Counsel, Labor & Employment
GE Healthcare
9900 W. Innovation Drive
NOTE NEW MAIL STOP:  RP-2169
Wauwatosa, WI  53226
T:  414.721.2297
F:  414.918.8899
C:  414.379.5762

D:  *805-2297
Neil.Stekloff@ge.com

NOTE:  The information in this message is confidential and may be legally privileged.  It is intended solely for the addressee.  Access to this message by anyone else is unauthorized.  If you are not the intended recipient, any disclosure, copying or distribution of the message, or any action or omission taken by you in reliance on it, is prohibited and may be unlawful.  Please immediately contact the sender if you have received this message in error.  Thank you.

**From:** Jeff Goldman [mailto:Jeff@jeffgoldmanimmigration.com]
**Sent:** Monday, August 12, 2013 12:18 PM
**To:** Swinford, Michael J (GE Healthcare)
**Cc:** Elario, David (GE Healthcare); Stekloff, Neil (GE Healthcare)
**Subject:** Madhuri Trivedi

Mr. Swinford, please see the attached demand letter regarding your former employee Ms. Madhuri Trivedi.  The same letter is being sent by overnight mail as well.   We look forward to a prompt response.

Sincerely,

Jeff Goldman

Jeff Goldman, Esq.
Law Offices of Jeff Goldman LLP
Cambridge Innovation Center
One Broadway (Kendall Square)
Cambridge, MA 02142
 All correspondence goes to:
125 Washington Street, Suite 204
Salem, MA 01970
TEL:       (978) 219-5040
DIRECT: (978) 219-5055
FAX:       (617) 977-0928
www.jeffgoldmanimmigration.com

## 17 EXHIBIT 2 Cross law firm retainer



**CROSS LAW FIRM, S.C.**

**CROSS LAW FIRM, S.C.**

505 Arcadian Ave
Waukesha, WI 53186
262-548-0001

Satellite Offices:

215 Grand Avenue
Wausau, WI 54403
715-849-5200

111 East Wacker Suite 2600
Chicago, IL 60601

August 20, 2013

**RE:**   **Legal Representation**

Dear Ms. Trivedi:

Thank you for choosing Cross Law Firm. It was a sincere pleasure meeting with you in Waukesha this morning, and I look forward to working with you to achieve your goals. During our consultation, we discussed generally your employment with GE Healthcare. Specifically, we discussed the fact that you believe you were unjustly terminated after your extraordinary performance resulted in the detection of issues

At the end of our initial consultation, Cross Law Firm agreed to represent you with regard to your GE Healthcare Solutions Level III Mediation, should your request for one be granted. Cross Law Firm further agreed to continue investigating your

Ms. Madhuri Trivedi
August 20, 2013
Page 2

potential claims. As indicated above, Cross Law Firm has not agreed to file any complaint with any court or agency.

Very truly yours,
**CROSS LAW FIRM, S.C.**

Daniel L. Rosenow
Attorney at Law
drosenow@crosslawfirm.com
DLR/rng
Encls. (2)



**CROSS LAW FIRM, S.C.**

**CROSS LAW FIRM, S.C.**

*EMPLOYMENT &
BUSINESS LAW*

WWW.CROSSLAWFIRM.COM

Lawyers' Building
845 North 11th St.
Milwaukee, WI 53233
414-224-0000

505 Arcadian Ave
Waukesha, WI 53186
262-548-0001

September 12, 2013

*Via US Mail and E-mail*
*madhuritrivedi@hotmail.com*

Ms. Madhuri Trivedi
1405 Rock Ridge Road Apt 351
Waukesha, WI 53188

**RE:**    **Madhuri Trivedi v. GE Healthcare**

Dear Ms. Trivedi:

any variation thereon at this point. As you know, the next step in the Solutions process is arbitration. Prior to moving to that step, we must complete the mediation step. Please recall that Cross Law Firm has not agreed to represent you at GE

- 6 -

Ms. Madhuri Trivedi
September 12, 2013
Page 3

Healthcare's Solutions Level IV Arbitration, should it be necessary for you pursue that step.

Very truly yours,
**CROSS LAW FIRM, S.C.**

Daniel L. Rosenow
Attorney at Law
drosenow@crosslawfirm.com
DLR

## 18  EXHIBIT 3 Some GE history

At that time in 2010 - at GE Boston ( Foxborough, MA)- at GE intelligent platforms-GE grid management software even though was inside GE network - had little to no cybersecurity protection....it was connected to LIVE pilot customers GRIDS....Ward Bowman himself told me when I was standing in front of me  that there is no cybersecurity in this solution...--no one wanted to do anything with cybersecurity and there was no TASKS, time given for that..but I didn't say anything or my opinion because they already knew...

I was observing all that..all passwords hardcoded...no privilege and stoneage( passwords, privilege all that was done already before I started job there...and after being NEW -If I point out faults about all these --it was going to end badly with me loosing job---..and there was so much push to get everything out..GE transportation's asset management proof of concept I developed from ground up -- there were some common library that I used..

At that time, internet of things - proof of concept for GE pilot customers - GE gas enginee, GE water tank, GE transportation, GE aviation ( I have put screenshot of GE aviation bug fix that I did then -in my lawsuit and to SEC filings -- but judges are so corrupt - they don't even read anything written in english - )..anyway-- I was doing everything ( at that time for two and half months GE kept my offer hanging as they took bail out money under TARP - and my

grandmother with whom I was close had died in INDIA- so I was in so much pain- because GE was lingering. At the end - GE manager Reema Poddar ( **GE filed my H1 LCA with department of labor for GE transportation client ( Reema was abusing me--** when They see MIT sloan and MIT engineering on my resume -- they get irritated...they can bring lot cheaper person( don't give a damn to quality) - working out of GE intelligent platforms --department of labor approved it -- when DOL approved it -GE HR manager emailed me that with my married name --I changed that name after I got divorce and went  back to my maiden name - Trivedi--way back when I worked at United Technologies- I was full time there -first on student visa and then on H1 B-  so I response to GE HR that this is not my last name anymore..----then GE HR manager Mellanie - emailed me --about my marital status....and I emailed back that I am divorced..and next day -- there was a demo -- with GE transportation CTO- Mr. Adler -- CTO liked asset management solution - which I developed from scratch - CTO gave mock ups and I developed...at that time-- I was also doing deployments..and running pilot customers servers -
  all the way to ROOT servers - which connected all other servers - for all GE assets --under pilot. And GE was selling at that time -- even though it was at early stage -- more than $1 million per year revenue kind -- general manger himself told me that..

...anyway - after presentation with GE transportation CTO- who agreed to buy solution I developed -- in a 2 person engineering team -- Next day Ward said that GE is terminating my contract-- and I didn't fight...( after that - GE again hired me at GE healthcare.................I was a fool to join them)

Ken Paiva who was a program manager - would come to my desk and few times intentionally stared at my "B*o*bs" standing in front of me..did chit chat.....This happened after I developed transportation asset management solution....I was so mad..

Ward Bowman - GE boston manager - while bragging that I am not fit kind aka I am soft hearted( he started talking this on his own -- I never mentioned anything-- I used to talk less --as My H1 was hanging...)....of because what GE fanuc automation do is to automate -- every time GE automates - GE employees lose their job...

I was supposed to travel to Erie, Pennsylvania - at GE transportation and get workflow from GE people - so we can automate what they do manually -- so - Ward said that people don't give information to us because in return they loose job..-----------------I was working nights and weekends......

At GE healthcare in Wisconsin – entire GE medical devices database – was located at one palce in Wisconsin – data center – after GE blamed me as not a team player – they tried to put this database – into geographically distributed way—don't know what they actually did – after I left..

Also GE systems guys – used password – admin –admin – cybersecurity guy has already made NICE powerpoint slide – about all the passwords- hardcoded ones- that GE Use…including

Bigguy..His powerpoint slide of GE hardcoded passwords that was reported and cisa.gov and department of homeland security - also issued alert for… has been celebrated well on twitter…It also has Insite EXC hardcoded passwords – for full remote control of GE medical device computer and device – telnet , VNC( virtual network computing)  -- GE had these hardcoded passwords…and Scott Erven – who is now a partner at PWC – found out – he told me on phone- that one day he took – manual..and started looking into it..and found out all this mess—after Scott informed GE – GE –nor cisa.gov or DHS – did anything for 4 years…and somehow in 2018 – cisa.gov issued alert..

when I moved to GE healthcare –in Wisconsin --- Jeff Immelt was OBAMA's job czar – overseeing creating jobs- and actually he didn't create jobs at GE …GE people who were seeing I was being abused then – were talking to me that Immelt is just creating some contract jobs – for six months – and showing that jobs are created at GE… some were even for outsourcing ….it was all fake… – – actual number of jobs created even after taking taxpayers free bail out money …..was not happening…I am such a fool to join GE healthcare- one year after—after I left GE intelligent platforms in Boston..that is also in totally remote , rural wisconsin..Waukesha..

Don't know - but how come DOL also not notice that actual full time jobs are not created..and these are manipulated numbers-- -- Revolving door is reality....so nobody cared...individuals in position of power looked at their own career prospects, networking , connections...nobody cared - nor obama administrtion, DOL - or anyone...On top of that...in 2020 - Trump's Steve Mnuchin treasury secretary said that Cares acts was created for bailing out GE and Boeing...and they have set aside billions for GE and BOEING- if they need- ( indeed taxpayers' free money )...

https://www.chicagobusiness.com/government/us-treasury-weighs-safeguarding-17-billion-aid-boeing-ge

"The loan program was created under the $2.2 trillion Cares Act with the two defense giants specifically in mind, according to Treasury Secretary Steven Mnuchin."

GE has spent billions in lobbying - so it pays off -- totally insane....

Actually Jeff Immelt job creation - of six months contracts- job czar - all those information -my GE co worker sent me in GE internal messaging / chat app..we were working together on a project......he was very frustrated the way things were....shortly after that he left GE...

## 19  EXHIBIT 4 Judges are subject to criminal prosecution

### 19.1  More than a century old case law- "Ex Parte Virginia, 100 U.S. 339 (1880)", supreme court stated that judges are not immune from criminal prosecution

When an unreconstructed Virginia county judge excluded jurors on the basis of race, judicial immunity did not protect the judge in Ex Parte Virginia case. And a century later, when an Illinois county judge fired a parole officer because she was a woman (Forrester, 221), judicial immunity did not protect the judge (Id., 231).

Trivedi has alleged at least 35 plus times, in her court cases that she is treated like this because of GE's connections, Trivedi's race, immigration, not white , woman, divorced…Trivedi is a prefect material to execute Intentional, conspiratorial conduct – for which these judges get SADISTIC PLEASURE**Ex Parte Virginia, 100 U.S. 339 (1880)**(It is idle, therefore, to say that the act of Congress is unconstitutional because it inflicts penalties upon State judges for their judicial action. It does no such thing. ..Upon the whole, as we are of opinion that the act of Congress upon which the indictment against the petitioner was founded was constitutional, and that he is correctly held to answer it, and as, therefore, no object would be secured by issuing a writ of habeas corpus, the petitions are Denied.)

Mireles v. Waco, 502 U.S. 9, 10, 112 S. Ct. 286, 287, 116 L. Ed. 2d 9 (1991)
AND Footnote 6 in this case --Levine v. Lawrence, No. 03-CV-1694(DRH ETB), 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) (The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex parte Virginia,* 100 U.S. 339, 348–349, 25 L.Ed. 676 (1880))

*A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.*

### 19.2  Tort by judges, sadistic pleasure.

Statutory violations establish prima facie case for negligence per se – in Trivedi's case it applies to both GE and judges.**Judges are fine with GE's statutory violations; but concerned that it is untimely ( in their own corrupt interpretation) and/or Trivedi failed to file administrative claims with agency, or that for securities fraud- Trivedi should not have relied on GE's claims –if** Trivedi knew that GE was doing fraud – for putting all these in their ORDER – all all to be PUT in a JAIL at least for ONE YEAR.

Trivedi has been intentionally not given/afforded a 'full and fair opportunity' to litigate her claims in PUBLIC FORUM.

Restatement (Second) of Torts § 286 (1965). In Estate of Kelly v. Falin, 127 Wn.2d 31, 896 P.2d 1245 (1995), the court held that a violation of a criminal statute constitutes evidence of negligence only if the statute was intended to protect both the person bringing the action and the

particular interest involved. The violation of a statute, ordinance, or administrative rule is actionable only if it was a proximate cause of the accident or injury in question. Ward v. Zeugner, 64 Wn.2d 570, 392 P.2d 811 (1964). If there is a prima facie causal connection and if the requirements of Restatement (Second) of Torts section 286 (1965) are met, the proximate cause question is for the jury. Kness v. Truck Trailer Equip. Co., 81 Wn.2d 251, 501 P.2d 285 (1972).

## 20  EXHIBIT 5 GE policies

3.   GE is required by SEC rule to include code of business conduct and ethics

including in its Annual report form. And comply with it. **17 CFR § 229.406 -Code of ethics.**

4.   **A.  Rules enacted by the major stock exchange NYSE**

 The NYSE requires each publicly traded company to publish a Code of Business Conduct and Ethics promising not to retaliate against employees.

5.   GE is a publicly traded company –on NYSE stock exchange.

6.   First, the stock ex-changes, NYSE require their listing issuers to adopt a Code that

applies to all employees.  Second, the Code must provide for an enforcement mechanism to encourage prompt, internal reporting of violations of the Code.( *See* NYSE LISTING MANUAL § 303A.10) .The NYSE listing requirements specifically mandate that the Code include corporate assurances that it will not retaliate against an employee for reporting violations of the Code(*See* NYSE LISTING MANUAL § 303A.10);NYSE requires that companies protect employees who make reports in "good faith,"

*( See NYSE LISTING MANUAL § 303A.10 )***Encouraging the reporting of any illegal**

*or unethical behavior. The listed company should proactively promote ethical behavior. The listed company should encourage employees to talk to supervisors, managers or other appropriate personnel when in doubt about the best course of action in a particular situation. Additionally, employees should report violations of laws, rules, regulations or the code of business conduct to appropriate personnel. To encourage employees to report such violations, the listed company must ensure that employees know that the listed company will not allow retaliation for reports made in good faith.*

NOTE:General policies about whistleblowing are not enough; these corporate governance standards require *promises* not to retaliate (In the context of attempting to provide contractual protection against sexual orientation discrimination, Ian Ayres and Jennifer Gerarda Brown note

- 11 -

the importance of obtaining contractual promises of nondiscrimination rather than merely unenforceable nondiscrimination policies.  ).

7. **The NYSE listing rules require GE to promise broad whistleblower protection;** protect employees/plaintiff Trivedi who made whistleblower disclosures in "good faith,", fair dealing as well.

8. **B. Plaintiff Trivedi signed as a condition of employment at the time of joining GE(EXHIBIT 28 & EXHIBIT 29 ) GE policies-The Spirit and the letter**

The Spirit and the letter  ( letter is also part of SEC filing DEF 14A)( also available on GE website)— it states that *"You do not need to be certain that a violation has occurred. At the same time, you have an obligation to promptly raise a concern when you see a situation in which our integrity principles or policies are not being followed. "*

*"RESPONSIBILITIES OF EMPLOYEES*

- ✓ *Know and comply with the laws and regulatory requirements that affect your job responsibilities.*

- ✓ *Be the Voice of Integrity and promptly escalate any potential issues that may lead to a regulatory compliance breach."*

**NOTE- GE has itself done so much fraud, scandals, cooked account books and more** that these policies spirit. Policy Letter is merely a letter new employee required to read and sign and follow but company itself is not following.

9. Because a corporate Code always applies to the company GE and its employees

(plaintiff Trivedi), enforcing a Code promise often avoids a debate about whether a worker-plaintiff Trivedi is a "covered employee." The anti-retaliation promise contained in GE corporate Code protects employees (plaintiff Trivedi) as a covered employee. GE Corporate Code, on the other hand, also promised to protect an employee who discloses *any* illegal or unethical activity occurring within the corporation; hence such claims to go forward under a breach of contract theory based on the employer GE 's anti-retaliation policy as it stated on **GE policies-The Spirit and the letter** page 13 "GE absolutely prohibits retaliation".

10. **C. Plaintiff Trivedi fulfilled her "Duty to Report Violations,"** which stated in

GE policies: The spirit and the letter(SEC filing DEF 14A):*" Penalties for violations >>Employees and leaders who violate the spirit or letter of GE's policies are subject to disciplinary action up to and including termination of employment. Misconduct that may result in discipline includes: • Violating GE policy, Failure to promptly raise a known or suspected violation of GE policy , Retaliation against another, employee for reporting an integrity*

*concern,• Failure to demonstrate leadership and diligence to ensure compliance with GE policies and law.*

11. *GE SEC filing DEF 14A-Code of Conduct. All directors, officers and employees of GE must act ethically at all times and in accordance with the policies comprising GE's code of conduct set forth in the company's integrity policy, The Spirit & The Letter, which is published on GE's website at www.ge.com/files/usa/citizenship/pdf/english.pdf.*

12. GE's Anti-retaliation Promise as an Express Contract as well==also answer to

GE's defense that it was at-will employment.

13. **These anti-retaliation protections supersede any private ordering between**

**parties GE and plaintiff Trivedi, including an at-will arrangement, that would permit an employer GE to fire or otherwise retaliate against a plaintiff Trivedi for reporting misconduct.**

14. **D. Implied contract**

15. Plaintiff had an implied contract of employment for so long as Plaintiff performed

Plaintiff's job in a satisfactory manner.

16. Trivedi performed her job in a satisfactory manner. Even in her performance

appraisal(EXHIBIT 10) –GE manager rated her performance as "meeting expectations" but made up that it is her communication skills, relationship skills which needs to be improved and as a result of PRETENSE/made up false/retaliatory.

17. **E. GE made Good faith implied job contract that GE will do H1, yearly extension of H1 and  her greencard**

As plaintiff was on her sixth year of H1B..After SIXTH year on H1B unless employer timely files greencard paperwork ,H1 B can't be extended nor can one work for another employer/change job..That's what exactly GE did.

18. Also despite several requests during mediation, a arbitration and a letter to CEO

of GEHC by immigration attorney Jeff Goldman(EXHIBIT 12) –GE didn't file I 140 which would have allowed her to extend her H1B and leave GE and work for another employer.

19. We requested at that time that GE keep me on leave without pay and just do

paperwork. But GE didn't care. It is also illegal to cancel H1 B while mediation and arbitration is pending because without H1 B I had no way to be in country legally which was a weakness –GE and arbitrator used that (H1 B cancellation ) **(EXHIBIT 12)**as tools.

20. Defendant breached its contract with Plaintiff by: Terminating Plaintiff in breach

of the promises made to Plaintiff; terminating plaintiff in violations of public policy ,state and federal statutes, regulatory agencies including but not limited to DOD, FDA, SEC, DOL rules and regulations. Also in violation of all other anti-retaliation, whistleblower protection laws .Cause of action claim -----stated here. Terminating Plaintiff without good cause as she did meet her performance (technical performance as well) (EXHIBIT 10)

21. The company induced Ms. Trivedi; and that GEHC would make good faith efforts

to pursue permanent residency **(EXHIBIT 23)**for her, only to fall far short on this promise. What is particularly frustrating is the fact that GEHC did get past the most difficult part of the green card process—the US Department of Labor did certify a Labor Certification Application for her ( Immigration has approved Ms. Trivedi's petition as a person with exceptional ability/advanced degree individual).

" **Federal Court cases have clearly faulted employers for this kind of inducement and failure to use good faith in following up with this process. (EXHIBIT 23)**Also, the company **neglected to file the PERM labor certification on timely manner (despite Ms. Trivedi requesting) (EXHIBIT 12 ), which has resulted in that she could not work for other employer**(preemptive) **in US**.

22. Ms. Trivedi had emailed both ;Manager Dave Mehring and lead Nate Davis mentioning this even before joining GEHC(EXHIBIT 21) .So, they are not letting Ms. Trivedi go on with her own life. Knowing these matters from beginning.  Also by cancelling H1  B so I can't proceed in arbitration or any other court.( preemptive)"

23. **Breach of contract**

*See Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 247–48 (D.D.C. 2015). In Leyden, the trial court held that the plaintiff had a valid claim based on the employer's alleged violation of its internal anti-retaliation policy.*

*In Leyden, The defendant then terminated the plaintiff's employment. The defendant moved to dismiss the complaint, arguing in relevant part that the anti-retaliation policy did not create contractual rights. Even if it did, the defendant contended, it had disclaimed any such rights in its employee handbook.*__*Court held that The anti-retaliation policy created an implied contract.*__ *Strass v. Kaiser Foundation Health Plan, a case holding that an employee handbook created an implied contract. Id. at 247 (citing Strass v. Kaiser Found. Health Plan, 744 A.2d 1000 (D.C. 2000)). The court discussed how a manual could create rights, and how an employer could*

*effectively* disclaim *those rights.  The court also rejected the defendant's argument about the disclaimer, noting that a disclaimer that was "rationally at odds" with the other language in the document may not cut off an implied contract.*

*In finding an implied contract, the court focused on the employer's invitation to report "Improper Activities" internally and on the language of the anti-retaliation policy.  The court also concluded that the employer's disclaimer, which was found in a different document, was rationally at odds with the anti-retaliation policy. .*

24. **I**mplied covenant of good faith and fair dealing to GE and plaintiff's implied contract.

*Rely upon "breach of implied contract" or "promissory estoppel" theories to examine*

*handbook promises to enforce anti-retaliation promises found in GE corporate Codes, utilizing the "handbook doctrine," an exception to the at-will rule for employer GE promises in employee handbooks or manuals. Similarly, under a promissory estoppel theory, specific promises*

*within a handbook increase the likelihood that a court will find that the employee Trivedi reasonably relied upon the statement.*

25. As stated above; <u>Trivedi and GE created contractual rights, Trivedi relied on anti-</u>

<u>retaliation promise in the GE policies letter (which had **GE anti-retaliation policy which created an implied contract.**) she SIGNED as an condition of employment and followed duty to report violations as expressed in GE policy, federal , state laws and rules, along with other courses at GE that she was required to take as GE was in regulated environment.</u>

26. Madhuri Trivedi protected under the whistleblower protection policies in corporate codes of ethics as she was following that.

27. **An employer GE has a fiduciary duty to the employee Trivedi**

28. A fiduciary relationship may be created by agreement of the parties. Trivedi and

GE created such relationship at the time Trivedi joined GE and when Trivedi signed letter stating that as long as Trivedi does her JOB, performs duty as shown in her JOB OFFER , follows "GE Policies" as mandates by NYSE –New York stock exchange ---when any of violations that Trivedi beilevs and had proof that violated laws, statutes, regulations as stated in cuase of actions in this complaint along with violation of "GE Polices"; Trivedi objected, wrote to management , told them in=person…While GE defendants ,Fragomen defendants BREACHED such fiduciary duty.

29. See EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005). Rather, the

actual relationship between the parties determines the existence of a fiduciary duty (e.g., the second type of fiduciary relationship). Id.In Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928), Justice Cardozo provided the "classic formulation" of a fiduciary duty:

New York Court of Appeals has described the duty as arising from a relationship "'between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" See EBC I, 5 N.Y.3d at 19, quoting Restatement (Second) of Torts § 874, Comment a

30. courts have long recognized that when an employee is in a position of

management and conducts the business of an employer, he owes that employer a fiduciary duty.(holding that employees "vested with policy-making authority [with]the ability to make decisions which bind the company" owe a fiduciary duty). This fiduciary duty encompasses a duty of care, loyalty, and good faith. [Trivedi and defendants here apply in this analogy]

31. GE argument that Trivedi had POOR soft skills is not anything but PRETEXT

and bullying that management did ; GE falsely generated some emails and selectively solicited inputs from few GEHC employees(these employees themselves where involved in Insite EXC fraud and were failing TECHNICALLY either to FIX INSITE EXC OR to DEVELOP new platform that would replace INSITE EXC) who would say Trivedi had soft skill issues ..GEHC management never solicited/took into consideration/account feedback from DAVE SALLIS, JOE PURCELL, BARRY, MOHEDDINE and several other managers, technical leads who were happy with Trivedi's technical as well as SOFT SKILLS.

32. The breach is actionable as there is proof that the plaintiff  Trivedi suffered damages as a result of the breach any failure on part of the fiduciary to act ..a breach of fiduciary duty can be any behavior that is not in the best interest of the client;

33. **GE violated/breached this code of ethics NYSE requirement by doing what they did to plaintiff Trivedi.**

34. **GE's breach of an anti-retaliation policy in a Code of Ethics give rise to a**

**breach of contract claim.** *Federal district court held that an employer's anti-retaliation policy created* [2]*legally enforceable rights.*

---

[2] https://www.zuckermanlaw.com/code-of-ethics-whistleblower-protection-lawyer/

## 21  EXHIBIT 6

### 21.1  Jack's Magic -- Part II (Dec. 26, 2005)  -GE earning management -Was the unit blind-sided or was it straining to deliver the double-digit earnings growth Welch always expected? Was anything illegal done?

https://www.barrons.com/articles/SB113538493672231014

# Dec. 26, 2005 12:01 am ET But, like many stars, his celebrity seems to have
depended as much on appearances as performance. Without the ERC smoke machine, GE's
1997-2001 numbers would have been far less lustrous……Under Welch, GE Capital delivered
double-digit earnings gains, year in and year out, regardless of what was going on in the financial
markets……To some observers, GE Capital was always something of a black box during its
glory years. **-the free-wheeling culture at GE Capital**

## Different Eras, Different Tactics

From 1997 through 2001, the last years of the Jack Welch era, GE's reported earnings per share rose by 65 cents, or 90.2%, from the 1996 level. But if its reinsurance unit had been fully reserved–meaning that it had funds on hand to meet all of the claims it could have expected, based on subsequent actuarial analysis–profits would have risen by just 4 cents, or 5.6%.

**Welch's Final Years**
Diluted Earnings Per Share



| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001* | TOTAL |
|---|---|---|---|---|---|---|---|
| Earnings Gains | | $0.10 | 0.11 | 0.14 | 0.20 | 0.10 | $0.65 |
| Percent Increase | | 14.00% | 13.40 | 15.00 | 18.70 | 7.90 | 90.20% |

*Welch retired on Sept. 7

## The Immelt Era

Under Welch's successor, Jeffrey Immelt, GE has been hamstrung by the need to bolster the reinsurance unit with billions of dollars that could have been added into earnings or used for other purposes. Nonetheless, Immelt has been able to boost per-share earnings by  24 cents, or 17.5%, in his three years at the helm, and the company is expected to report a good 2005 and 2006.

Diluted Earnings Per Share



| | 2001 | 2002 | 2003 | 2004 | 2005E | 2006E | TOTAL GAIN** |
|---|---|---|---|---|---|---|---|
| Earnings Gains | | $0.04 | 0.10 | 0.10 | 0.11 | 0.16 | $0.61 |
| Percent Increase | | 2.90% | 7.10 | 6.60 | 6.80 | 15.10 | 44.50% |

**Assuming 2005 and 2006 forecasts prove accurate   E=estimate

**Additions to Reserves**



**To complete bolstering of reserves to facilitate sale of reinsurance unit to Swiss Re.   E=estimate

Sources: Bloomberg; Company reports



**21.2  Since 2002, GE has been subject of manufactured earning**
https://archive.fortune.com/magazines/fortune/fortune_archive/2002/03/04/319114
/index.htm

To relate another anecdote from Jack: In April 1994 the escapades of rogue Kidder Peabody trader Joseph Jett left GE with a $350 million hole in its earnings. "The response of our business leaders to the crisis was typical of the GE culture," Welch recalls in the book. "Even though the books had closed on the quarter, many immediately offered to pitch in to cover the Kidder gap. Some said they could find an extra $10 million, $20 million, and even $30 million from their businesses to offset the surprise."

Immelt has continued the tradition. He explains that when it became clear last year that GE's "short-cycle" businesses like appliances and light bulbs weren't going to meet their targets because of the weak economy, he asked the "long-cycle" businesses (power systems, medical systems) to "do better." What did Immelt mean by "do better"? "They sold more CT scanners, they sold more turbines, they cut costs harder, they had the opportunity to grow faster in China. You don't ask a little elf to go in and stir the pot, and out comes ten million bucks." Or, to quote a favorite phrase of former CEO Welch: "We don't manage earnings, we manage businesses."

Well, actually, they manage both. It's long-standing practice at GE, whenever the company makes a big gain from the sale of a subsidiary or another asset, to come up with some sort of big discretionary investment or a restructuring charge in the same quarter--which keeps net earnings rising smoothly instead of jumping around from quarter to quarter. In the fourth quarter of 2001, for example, GE made a $642 million gain on a satellite partnership and conveniently took a $656 million charge for exiting unprofitable businesses and marking down unsuccessful investments (including an $84 million loss on Enron bonds).

Immelt and CFO Keith Sherin don't deny this at all. They just find it incomprehensible that anyone would want them to report 30% earnings growth one quarter and 3% the next if they can avoid it. "It just doesn't make any sense to us in managing a business," Sherin says.

# EXHIBIT 15

**Re:Domestic violence, fraud -EY Mukul Shukla**
From:entreprenuer@protonmail.com <Entreprenuer@protonmail.com>
To:william.miller@ey.com <william.miller@ey.com>ed.mobley@ey.com
<ed.mobley@ey.com>Maria Molina Monroy
<maria.molinamonroy@ey.com>carmine.disibio@ey.com
<carmine.disibio@ey.com>Kelly.Grier@ey.com
<Kelly.Grier@ey.com>Michael.Solender@ey.com
<Michael.Solender@ey.com>entreprenuer@protonmail.com
<entreprenuer@protonmail.com>mrapoport1015@gmail.com
<mrapoport1015@gmail.com>CC:mckenna@american.edu
<mckenna@american.edu>mukul.shukla@ey.com
<mukul.shukla@ey.com>entreprenuer@protonmail.com <entreprenuer@protonmail.com>
Date:Thursday, June 10th, 2021 at 6:39 AM
Maria,
Please send me your investigation report so I can send it to police..if Mukul has lied then lie
detector can be used...I will send you redacted version when I send police your report...so you
would just see that it has been sent but won't know to whom and where particularly within..

The point is that Mukul's fmaily took my passport, threatened to cancel spouce visa while we
were marrie, communicating with his current wife Krishna while we were married and he
dropped me in India..When I got back to USA from India-without my ex knowledge in March
2006-- I had to call cops to let me enter and then he left...At that time - I looked at his to do list
diary on table - He was talking to his current wife Krishna-while framed me in India that he will
come to get me back when things cool down..I was jet lagged and it was Friday evening when I
got back from India--and on Monday he emptied bank account and left $10 ..

As I have written before mukul be in jail.

Sent with ProtonMail Secure Email.
Fw: Re: EY director Mukul Shukla
From:entreprenuer@protonmail.com <Entreprenuer@protonmail.com>
To:william.miller@ey.com <william.miller@ey.com>ed.mobley@ey.com
<ed.mobley@ey.com>Maria Molina Monroy
<maria.molinamonroy@ey.com>carmine.disibio@ey.com
<carmine.disibio@ey.com>Kelly.Grier@ey.com
<Kelly.Grier@ey.com>Michael.Solender@ey.com
<Michael.Solender@ey.com>entreprenuer@protonmail.com <entreprenuer@protonmail.com>
Date:Saturday, March 20th, 2021 at 4:18 AM
Maria,
You have stonewalled me..and ignoring to reply.  The only things you ant to reply is is answer to
lawsuit it looks like.............please reply next week...It is still a crime--and those who cover crime
is guilty by association..I am not going to write all criminal statures and violations here..
And now after consulting with people...It has become obvious that Mukul would have sexual
intercourse with his mom because his mom herself admitted that Mukul is coming to him( as her
body was like a soft dunlop mattress than my body body which Mukul wanted soft body)

Sent with ProtonMail Secure Email.
------- Original Message -------

Email 2

------- Original Message -------
On Thursday, January 24, 2019 12:34 PM, Entreprenuer <Entreprenuer@protonmail.com>
Received: **Thursday, January 24, 2019 12:37 PM**
From: **Madhuri Entreprenuer@protonmail.com**
To: **Mark.Weinberger@ey.com Mark.Weinberger@ey.com, Norman.Lonergan@ey.com**
**Norman.Lonergan@ey.com, Kelly.Grier@ey.com Kelly.Grier@ey.com,**
**Michael.Solender@ey.com Michael.Solender@ey.com, entreprenuer@protonmail.com**
**entreprenuer@protonmail.com, trent.henry@ey.com trent.henry@ey.com**
Michael.Solender@ey.com trent.h.henry@ey.com

 Dear Mr. Mark Weinberger, Mr. Solender, Kelly Grier and Norman Lonergan,
I am ex wife of your manager/director Mukul Shukla.
I recently came to know that he still works for EY. I met a common contact who met him last
year and mentioned about him.
We were married from 2003-March 2006 , divorced 2006.
Mukul was/is an animal and needs to be in jail. So much so that police chief signed a criminal
domestic violence report against him. I was late to do so otherwise police would have jailed him
and deported him to India. But at that time I was new to USA and lacked knowledge. He also
bribed my divorce attorney who at that time instead of filing case in domestic violence court
,filed it in domestic relations court and also didn't do much for the case..
Mukul is criminally minded, corrupt, unethical person who enjoys watching porn and bad sex
videos,  bad porn sex talks to friends.
He hit me and I ended up in emergency with swollen red purple eye and was almost unconscious.
He told doctor that I fell down but doctor was not convinced and he called police and mukul
begged to me that I don't tell police that he hit me otherwise he would be arrested and deported. I
was unconscious almost and didn't say much to police..He also deviated my septum in my nose.
Later his abuse continued and increased...But later I did filed a police report.
When we were married , his parents visited USA from India. Parents had a separate room in
apartment. Usually when three of them are in the room, I knock the door and then go inside. One
day I came from school as I was doing my masters and I got A grade so I was in my thoughts and
forgot to knock on the door and just opened it...I saw that Mukul was sleeping on top of her
Mom..As indian women wear three pieces -blouse, chaniya and sari--Mukul was sleeping on top
of her mom-her mom had blouse(top) half open and no sari. When I entered- Mukul got off her
mom..Next day her mom told/ taunted me that because I am so thin and bony -(and she had fat
which made her body not bony) ;Mukul is coming to her as they like body on which they can be
on -have soft body to be on instead of thin bones. I haven't seen mukul and his mom having
sexual intercourse but it is not unlikely that they didn't do that...they can have had that -but I
didn't see so I can't confirm.. Mukul gave me and my family tremendous trauma..Mukul will call
my parents and grandfather at midnight India time and tell them abusive things ,wake them up
and fight..
Since I came to know that he works for EY -I have lost all respect about EY..what kind of people
EY have==disgraceful to know that...When We were married ; Mukul used to work for EY then

also..His father and mukul used to say that because mukul's EY boss is torturing him and giving hard time-he can't handle and that is also a reason of his abusive behavior ,tension and fear of immigration benefit lost and getting deported to India.

**I am in middle of things so I will write more later.**

I never think of Mukul and have ZERO contact with him after March 2006...But he and his mom scene was so gross that I had to speak up..plus he is a criminal, criminally minded, unethical, immoral person who would play games and I have to take action in this regards.

Regards,

Madhuri

Cell: 650-242-5135

## <mark>Email</mark> 3

**Re: Mukul Shukla**

Received: **Thursday, January 31, 2019 8:19 AM**

From: **Madhuri Entreprenuer@protonmail.com**

To: **Maria Molina Monroy maria.molinamonroy@ey.com, Michael.Solender@ey.com Michael.Solender@ey.com, entreprenuer@protonmail.com entreprenuer@protonmail.com**

Hello Maria,

Michael is a General counsel so it makes sense that I copy him-what do you think so he is in loop...Michael just read this sexual description as a lawyer --as you wrote it took me lots of courage and swimming against current to write this....I appreciate that you understand it...Mukul did a conspiracy and I was a naive to not see all that..may be I did a wishful thinking while he and his family did a criminal conspiracy/actions. It shows -mens rea and actus reus -- intentions  and actions --premeditated one...

His sister has a genetic congenital disorder that she doesn't have a seventh layer on skin and she gets blood blisters every 15 days -month etc..she has that from birth...few other women in their family also has it and female child in their family can get that ...he and his family didn't disclose this- didn't tell  us untill after the ceremony was done (where my father invited hundreds of people)...my father was suspicious about her look in photos they showed and asked several time why she looks like this and they avoided....

After ceremony when we strongly asked they said this--so he and his family framed me-...-I lost trust from him after this incident..

During marriage we went to see OBGYN and she asked any family history for family planning related--I told him to tell about his sister--he said that to doctor -doctor said that now you can do fetal genetic test and if you child has that disorder do abortion since it is best interest for all...After coming home-mukul beat me up, said that if our child would have that disorder -he won't allow abortion ===told me that he is kicking me out and called his family that he is kicking me out...I replied that it is doctor who said that and I haven't met her before so it was not me who gave her this idea and it was her medical expert opinion....he should be shacked in chain and jailed.

They knew that they can bring some woman from poor country india as a second marriage while played with me..woman die to come to US on marriage to get greencard and his current wife was in contact with mukul while we were married.

Mukul also has a physical defect in which he can't open his mouth full/more than somewhat degree due to facial palsy. So He was feeling inferior.

So now--since when we went through divorce ; mukul was at EY--so EY would have some knowledge of what he did to me- divorce--...it is mind boggling that they harbor such kind of  con, gross and immoral person...he is a disgrace to society.

Mukul took me to india and took my passport and came back to USA within a week( while left me saying that he will call me back when things calm down)--he threatened that he has cancelled my spouse visa so I must not come..how come he cancel without giving me divorce--he can't divorce on phone or via email- need to go through divorce process..I came to USA without his knowledge- and then called police - He emptied our joint account and left $20 --we filed for divorce...
..

He can't have a lip kiss due to his facial palsy that made him physical inferior,  and incompetent..He also made me wear handcuffs (sex toy) and made me lying down ( like police/cops do) and then he would do sex as he enjoyed that..I don't know why I allowed that...

.Now looking back I feel that divorce is not a bad thing and I wouldn't have gone through all this. When he took me to India to dump me there--on that day as we were leaving for India he threw handcuff sex toy into garbage..Still seeing that my eyes didn't open to recognize his conspiracy why he is taking me india( he was talking to his current wife then and his greencard filing was about to happen so he wanted to get rid of me asap so he can remarry and they can get greencard). He would insist that I use butt plug on anus so it gets bigger so he can have anal sex - I said that from front -vaginal one is fine and anal is for Gay men.

At the same day time when i saw he and his mother in bed; I would have called police that same day when they were in bed and filed complain (police would have arrested /charged he and his mother) but I never even imagined or heard this before--and again didn't know what to do..may be I gave benefit of doubt. Second time- Police would have arrested him at hospital or in that week when I was recovering ---
His weekend morning started with watching porn emails , sharing them and reading/sending porn jokes /video clips in their friend chat--

Now, for addressing this matter -monetary one makes sense...

Sent with ProtonMail Secure Email.


------- Original Message -------
On Tuesday, February 9, 2021 5:25 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Hi All,

I see that Maria- lady at EY who wrote to me that she is investigating ; has done best to cover up...when Mukul was sleeping on top of his mom in a sexual position and also have done violence, fraudulently bribing ..
Reply to this email please

Sent with ProtonMail Secure Email.

------- Original Message -------Re: EY director Mukul Shukla

---

Received: **Tuesday, February 9, 2021 5:16 PM**
From: **Madhuri Trivedi** Entreprenuer@protonmail.com
To: **Maria Molina Monroy** maria.molinamonroy@ey.com, carmine.disibio@ey.com, carmine.disibio@ey.com, entreprenuer@protonmail.com, entreprenuer@protonmail.com, Michael.Solender@ey.com, Michael.Solender@ey.com, Norman.Lonergan@ey.com, Norman.Lonergan@ey.com, Kelly.Grier@ey.com, Kelly.Grier@ey.com, Felice.Persico@ey.com, Felice.Persico@ey.com, Beth.BrookeMarciniak@ey.com, Beth.BrookeMarciniak@ey.com
On Tuesday, February 9, 2021 5:16 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Instead of taking action action Mukul- you have promoted it--it is violation of human right and people who advocate this and other illegal activities would not tolerate it--certainly not me..what it means is "you are encouraging it"   ----

Sent with ProtonMail Secure Email.

------- Original Message -------
On Tuesday, February 9, 2021 4:22 PM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Hi Maria, you have stonewalled me. I have forwarded our email communication to police.
I am also planning lawsuit in near future if you don't reply.

Sent with ProtonMail Secure Email.

------- Original Message -------
On Monday, June 1, 2020 10:55 AM, Madhuri Trivedi <Entreprenuer@protonmail.com> wrote:

Maria, I was busy and I just checked today that EY has a new CEO. I forwarded our emails to police last year..Anything from your side..'
Thanks
Sent with ProtonMail Secure Email.

------- Original Message -------

On Tuesday, March 26, 2019 6:46 PM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:

Madhuri – as I mentioned previously, I am not able to disclose or discuss my review of this matter. Thank you for your understanding.

**From:** Madhuri [mailto:Entreprenuer@protonmail.com]
**Sent:** Tuesday, March 26, 2019 12:52 AM
**To:** Maria Molina Monroy <maria.molinamonroy@ey.com>
**Subject:** Re: Received your emails

Hello Maria,
How's your looking into matter going on- is it going to take long or finish soon? Please let me know..
 Thanks and regards
He already would know I believe most likely through common contact as I mentioned in email below( I haven't talked to that person after telling this and asked if that information was relayed to mukul or not-so I don't know if that person told mukul or not)-- Indian culture is male dominated-- even all/most religious sanskrit mantra/chants have saying that " by chanting this mantra woman becomes mother of a "SON"..for 4-5 thousand year heritage...though things are changing these days but still --
 Sent with ProtonMail Secure Email.
 ------- Original Message -------
On Monday, February 18, 2019 3:39 PM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:

Hello Madhuri – I received your voicemail message and I am confirming that I received your emails. I'm looking into this as appropriate.  As a third-party/non EY person, I'm not able to discuss my review of this matter with you.   Thank you.
_____------- Original Message -------
On Tuesday, January 29, 2019 3:48 AM, Maria Molina Monroy <maria.molinamonroy@ey.com> wrote:
 Hello Madhuri – I am a Talent Director at EY and am in receipt of your email regarding Mukul Shukla.  I understand this a very personal and private matter which took courage to share. Having said that, I will serve as your primary point of contact and ask that you direct any and all communication regarding Mukul directly to my attention.
Thank you.
MMM

 Maria Molina Monroy | Talent Director | National Advisory
 Ernst & Young LLP
725 South Figueroa Street, Los Angeles, CA 90017, United States of America
Office: +1 213 240-7552 | maria.molinamonroy@ey.com
EY/Comm: 6166654
Website: http://www.ey.com
Lonnada Green | Phone: | lonnada.green@ey.com

# EXHIBIT 16
# United States Court of Appeals
## For the First Circuit
_____
## No. 20-1862

MADHURI TRIVEDI

Plaintiff - Appellant

v.

GENERAL ELECTRIC COMPANY; GE HEALTHCARE; H. LAWRENCE
CULP, JR., CEO of GE in his individual and official capacity; GE BOARD OF
DIRECTORS; FRAGOMEN, DEL REY, BERNSEN AND LOEWY, LLP;
JENNY SCHRAGER, Partner at Frogomen, Del Rey, Bernsen & Loewy, LLP, in
her individual and official capacity; MIKE SWINF ORD, former CEO of GEHC
services, in his official and individual capacity; CARL CONRATH, Senior
Engineering Manager, GE healthcare in his official and individual capacity;
NICOLE BOYLE, Program Manager, GEHL; NATHAN DAVIS, Architect,
GEHC; WILLIAM BARBIAUX, Architect, GEHC; JOHN DINEEN, former CEO
of GE and former CEO of GEHC; DAVID ELARIO, General Manager of GEHC
services; SUSAN HOCKFIELD, former Director of GE; ADAM HOLTON, senior
HR Manager, GEHC; JEFFREY IMMELT, Former CEO of GE; AYESHA
KHAN, HR Manager, GEHC; TIMOTHY KOTTAK, CTO of GEHC services;
DAVID MEHRING, Engineering Manager GEHC; DIPTI PATEL, Project lead,
GEHC; DIANE SMITH, HR Manager, GEHC; GREGORY STRATTON , Lead
System Integrator, GEHC; ROBERT SWIERINGA, former Board of Director of
GE; MICHAEL TRUMAN, HR Manager, GEHC; REEMA PODDAR, Senior
Leader of GE intelligent platforms; WARD BOWMAN, Engineering Manager, GE
intelligent platforms; MIKE HARSH, Former CTO of GEHC

Defendants - Appellees

FOLEY AND MANSFIELD LAW FIRM

Defendant

Dear chief judge Jeffrey R. Howard, William J. Kayatta, Jr. , Bruce M. Selya , Sandra L. Lynch
I know your time is important but please read this whole letter. Since three circuit judges had
dismissed my interlocutory appeal –they are familiar with my matter ; and I had contacted chief
judge Howard in past; so he is also familiar with my matter.. ...sending a quick letter..I hope we
resolve at First circuit otherwise I will have to go to supreme court again.

1) Today monoclonal antibody market is $120 billion and it is supposed to grow to $320 billion by 2025..But I have left healthcare..
2) I believe in God and that God sees everything, all injustices done to me.
3) Since my illegal termination from GE; I had spent enormous time, effort and resources to pitch about artificial protein vaccine, my startup , how I was illegally fired and more.
4) Since my startup press release visibility report says- it would reach 50 million potential readers- means it was making impact.
5) It clearly proves total anarchy and corruption. May be GE is one of the largest employer in MA, now that GE has HQ in Boston. That doesn't mean that Madhuri to be deprived from justice.
6) **There is ZERO CONINCIDENCE that FDA approved total 50 monoclonal antibody from 2015 till today. But it is surely my work- it was like**

> **"I/Madhuri was selling it , as a startup CEO –**
> **an idea for a new way to treat diseases…."**

7) **FDA is inspired to go for my pitch and started approving it; while I am still not getting any justice. Total kangaroo court.**
8) And even for my startup **press release (attached here)I had mentioned those words .. Now as you know — for corona some of the vaccines are monoclonal antibody / aka artificial or synthetic protein .. At that time** I was passionate to work on that research with other bright people - but off course NOT ANYMORE.

https://www.prnewswire.com/news-releases/orangehealth-seeking-investors-for-mobile-app-peer-to-peer-platform-for-managing-diabetes-other-health-conditions-300477365.html

Below paragraph from startup Press release-

**OrangeHealth Seeking Investors for Mobile App Peer-to-Peer Platform for Managing Diabetes, Other Health Conditions**

NEWS PROVIDED BY
OrangeHealth
Jun 21, 2017, 08:45 ET
☐
SAN FRANCISCO, June 21, 2017 /PRNewswire/ -- Madhuri Trivedi, an engineer, scientist,
entrepreneur and immigrant, has launched her new company OrangeHealth ……

**"She wrote heavily about precision medicine in April 2104, received a job offer in 2014 with**
**Harvard Medical to create a cancer vaccine, artificial protein. President Obama in the 2015 State of Union Address, launched precision medicine initiative. Trivedi has been unable to take the Harvard position because of immigration denials and challenges. While at General Electric,Trivedi's labor certificate for immigration was approved as "a person of exceptional**

> ability" EB2 category. GE, however, didn't file the next step so she could work in the U.S. "

9) **Some Corona / Covid19 vaccines are based on monoclonal antibody. The cocktail that Trump got was a monoclonal antibody.**

10) As this nature magazine chart shows- FDA approved total 100 monoclonal antibodies/artificial proteins...and 50 of them were approved from 2014 till today..

The FDA approved its 1st monoclonal antibody in 1986, its 50th in 2015 and its 100th last month. For new modalities, this is the timeline to beat. For a look at the first 100 antibodies by target, format and more, see https://nature.com/articles/d41573-021-00079-7 in @NatRevDrugDisc

https://twitter.com/AsherMullard/status/1389977940671311878/photo/1



Fig. 1 | **The FDA's first 100 antibody approvals, by year.** Antibodies that span multiple formats have been classified on the basis of their primary functionality. Amgen's blinatumomab, for example, is classified as a bispecific rather than as a fragment. Fragments include antigen-binding fragments, single-chain variable region constructs and domain antibodies. Other includes radiolabelled antibodies and antibody–immunotoxins. See Fig. 2 for more discussion of the formats. Sources: The Antibody Society, *Nature Reviews Drug Discovery*.

11) **So in March 2015 ; I moved to Silicon Valley from Wisconsin....I opened a ticket through USCIS- emailed USCIS- united states citizenship and immigration services director Donald Nuefeld**( I had emailed him week before my arbitration hearing in May 2014 and he had replied my email to call 800 number ; so he knew it and he acknowledged it)

In my ticket in email to Donald and also email to service center in Texas where my EB1 immigration case was pending( in which I had touted my monoclonal antibody / artificial protein job at Harvard medical / wyss institute )---- I told them that I am moving to California next week --and my case was pending for than 18 months-usually processing time is six months and they were not moving my case at all---anyway--- next day that I landed in San Francisco --USCIS sent a denial notice( I also got an email about denial decision)--so it was not a coincidence but intentional. They didn't want me to go join Harvard medical nor succeed in my startup orangehealth since I just moved to San Francisco that day...what it tell.. I immediately called FBI supervisor who had told me in 2014 that it was false claims act -civil fraud- Mr Clayton Wible- I had told him also week before than I am moving to CA..I cried on phone when I spoke with him...he said think that where will your startup succeed etc etc---but then I knew that no matter what I do there is something that they just don't want me succeed.

12) I had spoken with FDA top brass on phone in 2013-2014--2015and director of radiology devices was fired from her job( her boss said that that he will fire her)..and even HHS secretary Tom in 2016 himself spoke with me on phone( I found out his cell phone on a phone directory) and sent a letter..and soon Tom resigned as HHS secretary..Anyway... Harvard medical-Wyss institute director created job to support my immigration and I submitted paper work to immigration in 2014..I also sent that to FDA....

13) In my lawsuit against DHS- filed March 2016 -in my complaint I wrote below **"My whole life is on Hold right now. Harvard medical school - where they make artificial protein /DNA and which is cutting edge have offered me a job as a lead engineer since April <u>2014 "</u>**

14) Letter I sent to chief justice Roberts in Washington DC ; in Feb 2016, also had above artificial protein paragraph...
15) On March 2017, as a volunteer , I organized an event at Stanford auditorium in silicon valley..Andrew Allen –CEO of Gritstone Oncology met me for one hour in San Francisco Café; to discuss his startup and was pitching to me why his startup should be selected as a panel member for below event I was organizing. He almost begged to me to be selected as a PANEL for below event. but Andrew did say to me that "it is mainly for MONEY, business while there is a little done for a greater good for society.." (Gritstone has gone public after that event and Andrew Allen didn't care to return any favor or even a smallest gratitude after I selected him to pitch below. ).

# Immunotherapy: Hacking How the Body Fights Disease
# March 21, 2017 6:00 p.m. to 8:30 p.m.

https://vlab.org/events/immunotherapy-hacking-body-fights-disease/

Immunotherapy researchers are applying new insights into how the immune system works to unleash its power on cancer and fight autoimmune diseases like diabetes, MS and rheumatoid arthritis. Private investors, VCs, and pharmaceutical companies are investing hundreds of millions of dollars into groundbreaking immunotherapies, and clinicians are scrambling to identify and test the most promising treatments.

In spite of the huge expense, time-consuming research, rigorous clinical testing, and FDA approval requirements, startups, non-profit organizations, and established companies alike are racing to bring the next immunotherapy to market. Radically different approaches will stand alone, be combined, or fail in crunch time. According to market research firm MarketsandMarkets, the global immunotherapy market is expected to grow at a CAGR of 13.5%, reaching $201B by 2021, promising huge returns.

Biopharma companies like Merck, Novartis, Roche and BMS are all-in. With high barriers to entry, are startups able to compete? What strategies are companies taking to be the first to market? Will cancer, allergies, and autoimmune disease someday be a thing of the past?

#ImmunoTherapy

Moderator

Tito Serafini, President and CEO, Founder, Atreca

Panelists

Jonathan MacQuitty, CEO, Forty Seven Inc.

Karin Jooss, Executive Vice President of Research & Chief Scientific Officer, Gritstone Oncology

Edgar Engleman, Professor of Pathology and of Medicine, Stanford University

Jackie Benson, Vice President, Immunology Scientific Innovation, Johnson & Johnson

Event Team

Brian Taylor, Lynne Sopchak, June Power, **Trivedi Madhuri,** Joellen Brown, Michael Chen, KY Narasimhan, Shibu Gangadharan, Fred Stein, Souradeep Sen

16) So much for the "historic" approval by @US_FDA of an Alzheimer's drug that has questionable evidence for efficacy: "The data included in the applicant's submission were highly complex and left residual uncertainties regarding clinical benefit"

**F.D.A. Approves Alzheimer's Drug Despite Fierce Debate Over Whether It Works**

https://www.nytimes.com/2021/06/07/health/aduhelm-fda-alzheimers-drug.html

17) Since SEC chairman Gary Gensler teaches at MIT and I am MIT alumni..I have emailed Mr. Gensler , this monoclonal antibody story..I am not naming it a conspiracy but a story.

18)      BELOW IS my appeal-it has good arguments-so please read it.
_____

**Dear Clerk of First circuit,**
**Since district judge has issued order on May 27, 2021.**

**Here's my whistleblower profile on whistleblowers.org**

https://www.whistleblowers.org/whistleblowers/madhuri-trivedi/

# U.S. DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Madhuri Trivedi** | Case No.: |
| Plaintiff, | **1:19-cv-11862-PBS** |
| v. | **Notice of appeal** to United States |
| **General Electric et al.** | Court of Appeals For the First |

| Defendants. | Circuit for the Order Dated May 27, 2021 |
|---|---|

# NOTICE OF APPEAL

Notice is hereby given that Madhuri Trivedi, the plaintiff in the above-named matter, hereby

appeals to the United States Court of Appeals for the First Circuit from the order

The following transaction was entered on 5/27/2021 at 4:50 PM EDT and filed on 5/27/2021
**Case Name:** Trivedi v. General Electric Company et al
**Case Number:** 1:19-cv-11862-PBS

**Docket Text:**
**Judge Patti B. Saris: ORDER adopting [136] Report and Recommendations; adopting [135] Report and Recommendations; adopting [137] Report and Recommendations and denying [150] Motion for Preliminary Injunction, MOTION for Injunctive Relief, and MOTION to Lift Administrative Stay. (Baker, Casey)**

Above order adopts magistrate judge's report and recommendations, grants defendants motion to

dismiss. It is total miscarriage of justice that, district judge hasn't cared to even present legal

arguments, case laws, rules, statues, constitution behind adopting R&R. This is totally lawless

and a kangaroo court. Just writing one line for adopting everything corrupt defendants are

presenting and so far denying everything plaintiff has filed; is worse than being lawless and

harassment. At least provide some explanation why Judge Saris adopted R&R and why

plaintiff's Trivedi claims and motions are denied…I am willing to go to Supreme Court for such

kind of lawlessness, corruption, anarchy. But I hope that First circuit judges resolve this issues;

as supreme court says that what is lower court doing- you have a case and it is to be dealt by

lower courts.

1.

..............................................................

Below is email I sent to SEC- security and exchange commission attorney right now. I spoke with that SEC agency attorney about below email on Monday..

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

------- Original Message -------
On Friday, May 28, 2021 6:54 AM, Madhuri Trivedi < > wrote: To ***** @sec.gov

I told you about someone speaking from back that "He is gone" about my father's death on this Monday.
You can show this email to people in your food chain..

Sent with ProtonMail Secure Email.

..
But as this below event started -my phone rang-my family from india called- I didn't put my phone on silence and it was fully packed DARK auditorium...panels were introduced..and as phone was ringing--someone from back raw(it was a guy's voice ) said that "he is gone".....these sentence makes me so restless. so someone knew that my father is dying and is dead in india while event for exposing GE was ongoing...I left the event , talked with my family on phone and went to home crying ........

At that event GE manager from San Ramon was also there as she met me along with other before event started..
**Below events I did as a volunteer at vlab- several known companies pitched at vlab when they were new/smaller such as google, Tesla( to give idea about vlab)**

I volunteered at vlab. Since GE harassed me and messed up with me because GE was recklessly putting medical devices on internet. And recklessly putting technically incompetent people on - IOT platform

**My father died on Feb 22, 2017 in India/ in forest when he went for pilgrimage. He was traveling in a BUS not by foot though..**

**. On Feb 21 2017 in USA, I had organized in a team IOT security high stake of billions of devices event as shown below at 6 pm PST (event was fully packed.).As event started my family called me from India and informed me that my father has died--so this same date of IoT event and my father's death is mind boggling.**

# IoT Security: High Stakes for Billions of Devices

# February 21, 2017 6:00 p.m. to 8:30 p.m. https://vlab.org/events/iot-security-high-stake-billions-devices/

2. In this lawsuit  Sjunde Ap-Fonden and The Cleveland  Bakers and Teamsters Pension
Fund, individually  and on behalf  of all others  similarly  situated  v. General Electric
Company (1:17-cv-08457)
District  Court, S.D. New York

CIVIL CASE MANAGEMENT PLAN AND SCHEDULING conference  held  on Feb 25, 2021 –

GE attorneys  argued  that "GE likes  to do NOVEL LITIGATION…so despite  in any case law- as

it has never  happened  before that a separate loss –causation  discovery  and merit  discovery  to be

allowed  in the case..Because GE attorneys  said they  like  to do NOVEL litigation-  and despite

plaintiff  attorneys  arguing  that there  is no precedent  of such separate discovery-  Judge has said

that "so be it- I will  allowed  it"..and  such novel litigation  techniques  are allowed..

So for my Trivedi  case- why even case laws  are not presented…this  is illegal,  and shows that

judiciary  is also corrupt.

Respectfully  Submitted,   Dated: June 10 ,2021

Madhuri  Trivedi
/s/Madhuri  Trivedi
Fax: 708-778-4859 Phone: (650) 242-5135
Email:  orangeinc@protonmail.com
Linkedin:-  linkedin.com/in/trivedim
Twitter:-  @madhuritrivd
607 Boylston  Street, PMB 334 - Lower Level
Boston, MA 02116

### CERTIFICATE  OF SERVICE

The CM/ECF system sends notification  of filing  to all the parties.  **Therefore, when this
document  is docketed on ECF; t**he ECF system will  then email all parties –registered  to
receive such service, notifying  them that I have filed  a document. Those parties will  then be able
to get a copy of the document. This  process for docketing  on ECF is deemed to be service under
Rule 5(b) of the Federal Rules of Civil  Procedure**.**
/s/Madhuri  Trivedi

# EXHIBIT 17

CISCO QUITAM COMPLAINT – cybersecurity – similar to Trivedi's claims.

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and the | ) | Case No. |
| STATES OF CALIFORNIA, DELAWARE, | ) | |
| FLORIDA, HAWAII, ILLINOIS, INDIANA, | ) | COMPLAINT FOR VIOLATION OF THE |
| MASSACHUSETTS, MINNESOTA, | ) | FEDERAL FALSE CLAIMS ACT [31 U.S.C. § |
| MONTANA, NEVADA, NEW HAMPSHIRE, | ) | 3729 et −] and the FALSE CLAIMS ACTS of |
| NEW JERSEY, NEW MEXICO, NEW YORK, | ) | CALIFORNIA, DELAWARE, FLORIDA, |
| NORTH CAROLINA, RHODE ISLAND, | ) | HAWAll, ILLINOIS, INDIANA, |
| TENNESSEE, VIRGINIA and the DISTRICT | ) | MASSACHUSETTS, MINNESOTA, |
| OF COLUMBIA, ex rel. JAMES GLENN, | ) | MONTANA, NEVADA, NEW HAMPSHIRE, |
| | ) | |
| | ) | NEW JERSEY, NEW MEXICO, NEW YORK, |
| Plaintiffs, | ) | NORTH CAROLINA, RHODE ISLAND, |
| | ) | |
| | ) | TENNESSEE, VIRGINIA and the DISTRICT |
| vs. | ) | OF COLUMBIA |
| | ) | |
| CISCO SYSTEMS, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | **FILED IN CAMERA AND UNDER SEAL** |
| | ) | |
| | ) | |
| | ) | |

**ORIGINAL**
**RECEIVED AND** FILED
**UNITED** STATES DISTRICT COURT CLERK

WESTERN DISTRICT Of NEW YORK

MAY 1 Or, 201t

·*VY*

**BY:** _(ji

-//

Plaintiff-Relator James Glenn ("Relator"), through his attorneys Phillips & Cohen LLP

and Personius Melber LLP, on behalf of the United States of America, the States of California,

Delaware, Florida, Hawaii, Illinois, Indiana, Massachusetts, Minnesota, Montana, Nevada, New

Hampshire, New Jersey, New Mexico, New York, North Carolina, Rhode Island, Tennessee,

Virginia and the District of Columbia (collectively "the Plaintiff States"), for their Complaint

against defendant Cisco Systems, Inc. ("Cisco"), alleges, based upon personal  knowledge,

relevant documents, and information and belief, as follows:

I.    **INTRODUCTION**

1.    This is an action to recover damages and civil penalties on behalf of the United

States of America and the Plaintiff States arising from false and/or fraudulent  statements,

records, and claims made and caused to be made by defendant and/or its agents, employees  and

2

co-conspirators in violation of the federal False Claims Act, 31 U.S.C. § 3729 et seq. (the "Act" or "FCA"), and the False Claims Acts of the Plaintiff States.

2.      This qui tam case is brought against Defendant for selling and causing others to sell to federal agencies as well as to state and local government entities a video surveillance system that Defendant knew to possess dangerous, undisclosed, and impermissible security weaknesses.

3.      Cisco manufactures and sells, inter alia, computer networking, voice, and communications technology and services. Among these products is the Video Surveillance Manager package of products, which is intended to control video surveillance cameras and to store and allow the manipulation of video created by the cameras. The Video Surveillance Manager is in turn comprised of three pieces of software: Cisco Video Surveillance Media Server, Cisco Video Surveillance Operations Manager, and Cisco Video Surveillance Virtual Matrix (collectively hereafter as Cisco's "Video Surveillance Manager" or "VSM").

4.      Cisco is a large and established player in the video surveillance market, and touts itself as a "trusted advisor and networked physical security user" while asserting that "[w]ith deployments in transportation, airports, military, education, municipalities, retail, and more, the Cisco Video Surveillance Manager products meet[] the uncompromising needs of today's safety and security professionals."

5.      Unfortunately for purchasers of the Video Surveillance Manager, the product is anything but secure. In fact, it has several critical security flaws. These flaws are so severe that they not only render the VSM product fatally insecure, but also compromise the security of any other computer or system connected to the VSM product.

6. Cisco markets the product as particularly suited for government customers, and knows that the product is routinely sold to government customers, even though Cisco knows that these critical security flaws render the product largely ineligible for purchase by government entities.

7. Moreover, although Cisco has known of these critical security flaws for at least two and a half years, it has failed to notify the government entities that have purchased and continue to use VSM of the vulnerability. Instead, Cisco continues to sell and cause others to sell this dangerous product to the United States and the Plaintiff States. Cisco's failure to inform its customers of these critical flaws is exacerbated by the fact that many of these customers pay an ongoing fee for Cisco premium services that promise to inform the customer of any known security issues or threats.

8. Defendant's conduct alleged herein violates the federal False Claims Act and the False Claims Acts of the Plaintiff States. The federal False Claims Act ("FCA") was originally enacted during the Civil War. Congress substantially amended the Act in 1986 – and, again, in 2009 and 2010 – to enhance the ability of the United States Government to recover losses sustained as a result of fraud against it. The Act was amended after Congress found that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments would create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

9. The FCA prohibits: (a) knowingly presenting (or causing to be presented) to the

federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government; and (d) conspiring to engage in any of the activities set forth in (a) through (c), above. 31 U.S.C. §§ 3729(a)(1)(A)-(C) and (G). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each violation, plus three times the amount of the damages sustained by the United States. 31 U.S.C. § 3729(a)(1).

10.     The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, known as a qui tam suit, and to share in any recovery. The FCA requires that the qui tam Complaint be filed under seal and remain under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

11.     The Cisco Video Surveillance Manager is of no value to the Government because it fails to meet its primary purpose: enhancing the security of the agencies that purchase it. In many cases, the surveillance manager is actually detrimental to the purchaser because it eliminates or reduces the protection provided by other security systems. Notwithstanding the useless and potentially harmful nature of the product, Cisco continues to sell and cause others to sell the VSM to federal and state purchasers.

12.     Because the VSM is a worthless (and even harmful) product, any claims Defendant submitted, or caused others to submit, to the United States or the Plaintiff States are false claims within the meaning of the federal and Plaintiff States' False Claims Acts.

13.     In addition, as discussed in greater detail below, Cisco knows, within the meaning of the federal and Plaintiff States' False Claims Acts, that federal and many state government entities cannot purchase the VSM because the product, due to its critical security flaws, fails to comply with the security standards imposed on government systems by the Federal Information Security Management Act.  Cisco, nonetheless, sells or causes others to sell the product to federal and state agencies while failing to inform government purchasers of these critical security flaws or of VSM's non-compliance with government standards.

14.     And claims for VSM products, caused by Cisco's explicit and implicit representations about the security features of the product, and the product's compliance with federal or state information security standards, are false claims within the meaning of the federal and Plaintiff States' False Claims Acts.

15.     Moreover, under the terms of some if not all of their contracts with the federal government and Plaintiff States, Defendant had a duty to repair or replace equipment that it knew to be flawed or faulty. By failing to make such repairs, Defendant knowingly avoided an obligation to pay money or transfer property to the federal and state governments.

16.     Furthermore, Cisco sells a Security Posture Assessment service to many of its federal clients which purports to identify security vulnerabilities in the clients' networks. Any claims for this service package to entities using VSM products are false because Cisco has failed to disclose the vulnerability created by its own video surveillance systems and thus the product is worthless to the government.

17.     Defendant has also conspired with other parties, including among others Relator's former employer NetDesign, to conceal the defects in the VSM products, and otherwise to facilitate knowingly selling to numerous government customers a worthless and harmful product.

18.     As set forth below, Defendant's actions alleged in this Complaint also violate the California False Claims Act, Cal. Govt. Code § 12650 et seq.; the Delaware False Claims and False Reporting Act, 6 Del. C. § 1201 et seq.; the Florida False Claims Act, Fla. Stat. Ann. § 68.081 et seq.; the Hawaii False Claims Act, Haw. Rev. Stat. § 661-21 et seq.; the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. § 175/1-8; the Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 et seq.; the Massachusetts False Claims Law, Mass. Gen. Laws ch. 12 § 5 et seq.; the Minnesota False Claims Act, Minn. Stat. § 15C.01 et seq.; Montana False Claims Act, Title 17, Ch. 8, Part 4, §§ 17-8-401 et seq.; the Nevada False Claims Act, Nev. Rev. Stat. Ann. § 357.010 et seq.; the New Hampshire False Claims Act, N.H. Rev. Stat. Ann. § 167:61 et seq.; the New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 et seq.; the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-3 et seq.; the New York False Claims Act, N.Y. State Fin. § 187 et seq.; the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 et seq.; the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 et seq.; the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 et seq.; the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 et seq.; and the District of Columbia Procurement Reform Amendment Act, D.C. Code Ann. § 1-1188.13 et seq.

19.     Based on these provisions, qui tam plaintiff and relator James Glenn seeks to recover all available damages, civil penalties, and other relief for the federal and state-law violations alleged herein.

II.     **PARTIES**

20.     Plaintiff/Relator James Glenn is a United States citizen, currently residing in Copenhagen, Denmark. He has more than 10 years of experience in the computer networking and security industry. In March 2007, he began working for the Managed Security Division of Tele-Denmark Communications ("TDC"), a Danish communications services company. In July of 2007, Relator's division was acquired by NetDesign, another Danish network services provider. Mr. Glenn worked on security issues at NetDesign until March of 2009, when, as set forth in greater detail below, he was fired for reporting Cisco's security violations. Mr. Glenn currently works for Milestone Systems, a market leader in video surveillance software, as a software support engineer.

21.     Defendant Cisco Systems, Inc. is a California corporation with its headquarters in San Jose, California. In 2010, Cisco had over $40 billion in total sales. Cisco is one of the nation's largest information technology ("IT") services providers and has a growing presence in the security software field. Cisco aggressively markets its security, and other, products to government purchasers, including agencies of the United States and the Plaintiff States.

III.    **JURISDICTION AND VENUE**

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. In addition, 31 U.S.C. § 3732(b) specifically confers jurisdiction on this Court over the State law claims.

23.     Under 31 U.S.C. § 3730(e) and the comparable provisions of the Plaintiff States' False Claims Acts, there has been no statutorily relevant public disclosure of the "allegations or

transactions" in this case. Relator, moreover, would qualify under those provisions as an "original source" of the allegations in this Complaint even had such a public disclosure occurred. To the extent that there could have been a public disclosure under 31 U.S.C. § 3732(e)(4)(A), Relator possesses information that is independent of and materially adds to any potentially publicly disclosed allegations. Relator has also voluntarily provided information about Cisco's violations to the Government before filing this action.

24.    This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process and because Defendant has minimum contacts with the United States, and can be found in and/or transacts business in this District.

25.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendant can be found in and/or transacts business in this District. At all times relevant to this Complaint, Defendant regularly conducted substantial business within this District, maintained employees in this District, and/or made significant sales within this District. In addition, statutory violations, as alleged herein, occurred in this District.

## IV.    APPLICABLE LAW

### A.    Federal Acquisition Regulation

26.    The Federal Acquisition Regulations ("FAR"), codified in Title 48 of the United States Code of Federal Regulations ("CFR"), govern the federal procurement process from need recognition and acquisition planning through contract formation, and contract administration.

27.    The FAR was amended on September 30, 2005 "to implement the information technology security provisions of the Federal Information Security Management Act of 2002 (FISMA) (Title III of the E-Government Act of 2002 (E-Gov Act))." 70 FR 57449, 57450 (2005) finalized without substantive change 71 FR 57360 (2006). The motivation for and

purpose of the FISMA and the implementing provisions were explained as follows:

> American society relies on the Federal Government for essential information and services provided through interconnected computer systems. Both Government and industry face increasing security threats to essential services and must work in close partnership to address those risks. Increasingly, contractors are supplying, operating, and accessing critical IT systems, performing critical functions throughout the life of IT systems.  At the same time, it is apparent that information technology and the IT marketplace have become truly global. The security risks are shared globally as well.

> Unauthorized disclosure, corruption, theft, or denial of IT resources have the potential to disrupt agency operations and could have financial, legal, human safety, personal privacy, and public confidence impacts. The Federal community has not focused on unclassified activities with regard to information technology resources involved in the acquisition and use of information on behalf of the Government. In particular, there is need to focus on the role of contractors in security as more and more Federal agencies outsource various information technology functions. Until now, regulations have generally been silent regarding security requirements for contractors who provide goods and services with IT security implications.

> This rule amends FAR parts 1, 2, 7, 11, and 39 to implement the information technology security provisions of the Federal Information Security Management Act of 2002 (FISMA) (Title III of the E-Government Act of 2002 (EGov Act)). The rule recognizes security as an important part of all phases of the IT acquisition life cycle. The rule focuses much needed attention on the importance of system and data security by contracting officials and other members of the acquisition team.

> The intent of adding specific guidance in the FAR is to provide clear, consistent guidance to acquisition officials and program managers; and to encourage and strengthen communication with IT security officials, chief information officers, and other affected parties.

Id. (emphasis added).

      28.     To accommodate the growth, change and evolution of the information technology products and services to be purchased by the Government, the FAR incorporates external standards – the Federal Information Processing Standards ("FIPS") – rather than trying to create a separate standard. See id.

      29.     Accordingly, 48 C.F.R. § 11.102 requires agencies to adhere to the FIPS when

purchasing information technology systems. Federal agencies cannot purchase information technology systems that do not comply with the FIPS.

**B.      Federal Information Processing Standards**

30.      FISMA gave the Department of Commerce the mandate to set security and data processing standards for all non-classified federal information technology initiatives. The Department of Commerce in turn delegated its responsibilities to the National Institute of Science and Technology ("NIST"). NIST formed a FISMA Implementation Committee in 2003, which promulgates two sets of documents: Federal Information Processing Standards ("FIPS") and Special Publications ("SP").

31.      Because the FIPS are mandatory, the NIST followed rules similar to those in the Administrative Procedure Act before implementing each new standard, namely: publication in the Federal Register, public comment, justification, and then approval by the Secretary of Commerce.

32.      The SPs are submitted for public comment but do not, in and of themselves, have the force of law. They are also more numerous than the FIPS. However, the SPs serve to highlight important security concerns facing public agencies and propose recommended solutions and best practices for information management.

33.      Furthermore, the FIPS often incorporate SPs by reference, thereby making recommended policies binding on government agencies.

34.      One of the most important SPs is SP 800-53 rev. 3 "Recommended Security Controls for Federal Information Systems and Organizations" (Aug. 2009). SP 800-53 rev. 3 is incorporated into FIPS 200 "Minimum Security Requirements for Federal Information and Information Systems" (Mar. 2006). See FIPS 200 at iv ("Federal agencies must meet the

minimum security requirements as defined herein through the use of the security controls in accordance with NIST Special Publication 800-53, Recommended Security Controls for Federal Information Systems, as amended.")

35.     Therefore, any and all recommended controls contained in SP 800-53 are binding on government agencies and government agencies may not procure, install, or maintain systems that do not comply with SP 800-53 and FIPS 200.

36.     SP 800-53 is divided into various categories of security measures, including Access Controls ("AC"), Audit and Accountability ("AU"), Identification and Authentication ("IA"), and System and Communications Protection ("SP"). Within each category, there are many numbered mandates (e.g., AC-1, SP-7, etc.) laying out particular requirements in detail.

37.     As outlined in greater detail below Cisco's VSM violates many of the SP 800-53 requirements, including, inter alia: AC-3 ("Access Control Enforcement"); AC-6 ("Least Privilege"); IA-5 ("Authenticator Management"); SC-8 ("Transmission Integrity"); SC-9 ("Transmission Confidentiality"); SC-23 ("Session Authenticity"); SC-28 ("Protection of Information at Rest"); and SI-10 ("Information Input Validation").

38.     FIPS 200 makes no provision for waiver of its requirements. Id. at v ("No provision is provided under FISMA for waivers to FIPS made mandatory by the Secretary of Commerce."). Had federal purchasers been aware of the defects in the Cisco VSM, they would have been unable to purchase it, because their information technology security would not have been compliant with FIPS 200 or SP 800-53. Id. at iv.

V.     **BACKGROUND**

     **A.     Cisco Sales Structure**

39.     While Cisco does sell certain of its products directly to business users, it generally offers them to the market through affiliated distributors, which it refers to as "Cisco Partners."

These Partners sell the Cisco products to the ultimate customers on Cisco's behalf, often bundled with video surveillance cameras, computer equipment and other hardware.

40.     Cisco represents to its customers that it selects it's Cisco Partners based on their expertise in certain product areas, such as "Unified Communications" or "Managed Connectivity." Cisco claims that it carefully selects and trains its partners, exercising substantial control over their technical expertise and approach to selling Cisco products. Cisco then uses this close relationship with its partners as a selling feature when pitching Cisco products to potential customers. Cisco markets its "Partners" to its customers as "trusted advisor[s] who ha[ve] the technology breadth to deliver integrated network solutions, and the technology depth to deliver highly specialized solutions." See http://www.cisco.com/web/partners/downloads/765/tools/ quickreference/cust_br.pdf (visited March 28, 2011).

41.     Although the Cisco Partners ultimately sell and install the Cisco products, Cisco itself markets its products directly to government purchasers, and works hand-in-hand with its Partners in this process. Cisco's web site, for example, provides extensive guidance for federal and state agencies looking to buy Cisco products, including detailed case studies, technical specifications analysis and testimonials from other government agencies or customers who have purchased Cisco's products.

42.     Cisco then points the potential Government customer to one or more Cisco Partners for the ultimate sale, installation and servicing of the Cisco product. For example, at http://www.cisco.com/web/strategy/government/usfed_contracts.html (visited March 28, 2011), Cisco's web site identifies a variety of federal and/or state purchasing options, and directs the

13

potential government customer to different lists of Cisco Partners depending on the type of

program at issue:

> Federal procurement requires that purchasers navigate a complex process. Cisco offers a number of avenues and programs to assist agencies with the federal procurement process for Cisco products and services.
>
> Cisco works with a number of industry partners to offer a wide variety of products and services through government contracting vehicles. Please refer to the individual contract to learn its specific details, view ordering information, and see the lists of Cisco products offered for federal procurement on that contract. Contracts include:
>
> - <u>COMMITS NexGen</u>: COMMITS NexGen is an ID/IQ task order contract for IT solutions and is available to any federal agency.
> - <u>ESC III</u>: ECS III offers products and services for desktop computing, LAN/WAN infrastructure, and UNIX needs.
> - <u>FirstSource</u>: FirstSource provides access to IT commodity products for DHS and any agency working on DHS-related programs.
> - <u>GSA</u>: The GSA Schedules program establishes long-term, government-wide contracts for commercial supplies and services.
> - <u>NETCENTS</u>: NETCENTS is a U.S. Air Force ID/IQ contract for technologies and services and is available to all federal agencies.
> - <u>Networx</u>: Networx is a GSA program to provide all federal agencies with comprehensive, best-value telecommunications, networking services, and technical solutions.
> - <u>SEWP</u>: The NASA SEWP government-wide acquisition contract provides the latest in IT products for all federal agencies.
> - <u>VETS GWAC</u>: VETS GWAC is a small business set-aside contract for service-disabled veteran-owned small businesses.

43.     Accordingly, Cisco is not only aware that its products – including the VSM

product – are sold to Government purchasers, Cisco also actively promotes such sales.

**B.      Product Overview**

44.     In 2007, Defendant Cisco purchased BroadWare, a provider of Internet Protocol

("IP") based video surveillance software. Cisco then adapted BroadWare's products to create its

own IP video surveillance product: the Cisco Video Surveillance Manager.

45.     The Video Surveillance Manager is in turn made up of three primary components: the Cisco Video Surveillance Media Server ("VSMS"), the Cisco Video Surveillance Operations Manager ("VSOM"), and the Cisco Video Surveillance Virtual Matrix ("VSVM") (collectively "Video Surveillance Manager" or "VSM"). The three parts of the system may be purchased separately, but Cisco markets them as a joint package.

46.     In conjunction, these products allow for the connection and management of multiple video cameras through a centralized server, which can in turn be accessed remotely. In other words, the VSM can connect camera systems from around the country and consolidate the storage of data and allocation of video streams in one (or a few) primary locations. The Cisco VSM is particularly useful for organizations wishing to coordinate camera surveillance over multiple physical locations (e.g., a federal agency with dozens of office buildings to monitor).

47.     The VSMS is the core component of the Video Surveillance Manager, collecting and routing video from cameras to viewers or other media servers. It can support anywhere from a few cameras in one building to hundreds of video feeds across the country.

48.     The VSOM server software controls access to the IP surveillance system (i.e., the cameras). Users are assigned "roles" which determine which video feeds they are able to view. The VSOM is responsible for presenting camera feeds, video archives, and predefined views to the viewer. Once this information is provided to the viewer, the viewer communicates with the appropriate media server (usually the VSMS) to request and receive video streams.

49.     The VSVM is responsible for providing monitor layout information to video system user monitors. Once the monitor layout and views are sent to the monitors, the monitors are responsible for contacting the appropriate Media Server(s) to request video streams. In other words, the VSVM is responsible for coordinating and formatting the video display of users (e.g.,

at a control center) who view multiple video streams at once.

50.      On the commercial market, a single license for the VSOM costs approximately $5,000, a license for the VSMS around $500, and a license for the VSVM approximately $400. They are also often sold with Cisco's own IP video cameras, which cost around $700 each.

51.      The Cisco VSM has been on the market since 2008, when Cisco completed its adaptation of the technology that it purchased from BroadWare in 2007. The security flaws discussed herein were present in the original BroadWare software and Cisco did not correct them otherwise modify the VSM following its purchase of BroadWare technology.

## VI.   **ALLEGATIONS**

52.      Cisco is a large and established player in the video surveillance market, proclaiming its status as a "trusted advisor and networked physical security user" and asserting that "[w]ith deployments in transportation, airports, military, education, municipalities, retail, and more, the Cisco Video Surveillance Manager products meet[] the uncompromising needs of today's safety and security professionals."

53.      Unfortunately for purchasers of the Video Surveillance Manager, it is anything but secure. In fact, the VSM has several critical security flaws that violate the mandatory technical requirements imposed on any computer system sold to the Government including: enforcement of access control, prevention of information leakage through use of encryption, proper validation of control requests, and confirmation of inputs from external or untrusted sources. NIST Special Publication 800-53 revision 3, AC-3; AC-6; IA-5; SC-8; SC-9; SC-23; SC-28; SI-10.

54.      As a result of these defects, a person with a moderate knowledge of software / network security and the Cisco VSM could exploit the system in a number of ways, including: gaining access to all video feeds, gaining access to all user passwords, gaining access to all

16

stored data on the system, modifying or deleting video feeds, and gaining permanent "administrator" (i.e., highest-level) access to the system (which would enable future abuse to go completely undetected).

55.     Defendant has been aware of these issues since at least October 2008, when Relator submitted a detailed report to Cisco showing that the Cisco VSM needed to be overhauled or withdrawn from the market. Relator was fired shortly after disclosing his concerns to Cisco and his employer (one of Cisco's Danish distributors).

56.     To Relator's knowledge, Defendant has never publicly disclosed these vulnerabilities or privately disclosed them to Government or other purchasers. Defendant has also not patched or otherwise modified the Cisco VSM to correct these flaws. Instead, Cisco continues to fraudulently market the VSM as a secure and reliable tool to federal and state agencies, many of which have critical security needs.

**A.     Cisco's Video Surveillance Manager Contains Security Flaws Which Render the Product Worthless**

57.     The Cisco VSM is fundamentally flawed leading it to create significant security flaws in any system into which it is incorporated. These flaws are so significant that it would be difficult to correct them sufficiently to bring the product into compliance with federal purchasing standards, even if Cisco fully disclosed the flaws to government purchasers. Because Cisco has deliberately refused to disclose these flaws to government purchasers, the vast majority of all such systems sold to government customers remain in their vulnerable state – a wide network of security disasters waiting to happen.

58.     For security purposes, this complaint will not describe the full technical details of these flaws. Instead, the flaws will be described only in general terms, focusing primarily on their effect. A disk demonstrating these flaws and detailed technical report are being provided to

the Government as part of the statutory disclosure materials.

59.     The most critical flaw in the Cisco VSM allows the user of any video observation point, no matter how restricted, to gain access to the full contents of the system to which the central server is connected. This vulnerability has three grave consequences.

60.     First, the flaw may compromise an entity's entire computer system. Many of Cisco's customers have the surveillance system's central media server installed on a computer that is connected to the same Local Area Network (LAN) as the rest of their computers. Due to the vulnerability in Cisco's surveillance system, any user who has or can gain access to one video camera could potentially gain unauthorized access to the entire network of a federal agency.

61.     This unauthorized access could even allow the intruder to take control of or bypass the entity's "physical security" systems (e.g., locks, fire alarms, access panels, etc.) because these systems are regularly connected to the camera system so that video may be triggered by an emergency.

62.     Second, the Cisco VSM allows for any user at one location to observe all video feeds recorded on the central media server. Thus, an individual authorized to view one video feed could observe, as well as modify or disable, all of the video feeds tied in to the central media server. This flaw creates obvious physical security risks to any facility protected by the Cisco VSM.

63.     Third, the vulnerability created by the Cisco VSM also allows an unauthorized user to gain the highest level of access (generally described as "admin" or "administrator" access) to the compromised system without any record created showing that the user has such access. This would enable the unauthorized user to modify key aspects of the system, access any

data on the system, or make use of its functions, at any point following the initial breach. The unauthorized user could also obtain the passwords of all authorized users and then log on as any of them at a future point in time.

64.     Thus, for example, an unauthorized user could effectively shut down an entire airport by taking control of all security cameras and turning them off. Alternately, such a hacker could access the video archives of a large entity to obscure or eliminate video evidence of theft or espionage. Even more, such a hacker could use his or her access to the system (gained through the vulnerabilities created by the VSOM) to gain physical access to a supposedly secure facility if the key-card reader and other security features were connected to the same server as the VSOM.

65.     Cisco knows that the flaws in its Video Surveillance Manager are unlikely to be detected by many purchasers because of the nature of the market for video surveillance systems. In general, such systems are marketed to and purchased by the "physical" security division of most organizations. Physical security departments generally focus on traditional "badge and gun" security, and tend to be less familiar with computer security issues, which are typically handled by an organization's IT personnel. In Relator's experience, IT security personnel regard their work as distinct from the "physical" security issues in a building, and thus are not as likely to check a product like the Video Surveillance Manager for FIPS violations or other security flaws.

66.     Cisco understands the risks of segregating physical and IT security functions first hand. In 2001, Cisco's computer networks – including its security networks – were compromised by a virus that infiltrated the system by using vulnerabilities in the company's video surveillance systems. At the time, Cisco identified the segregation of its physical and IT

security functions as one of the reasons the security vulnerability was not identified before the virus hit.

67.     Gaining the unauthorized access described above does not require any special software or extraordinary technical knowledge. A party desiring to breach the system's security would only need to be aware of the vulnerabilities in Cisco's system – knowledge that could be gained through routine usage of the software – and have a basic degree of competency with computers and networking software.

**B.      The Significant Flaws in Cisco's Video Surveillance Manager Cause the Product To Violate Multiple Federal Information Processing Standards**

68.     As described above, the FIPS 200 Standard incorporates the SP 800-53 revision 3 recommendations into its mandatory requirements for federal contractors. As Cisco well knows, federal agencies, and any state agencies that rely on FIPS, cannot purchase systems that are not FIPS-compliant.

69.     However, Cisco markets and sells (and causes others to sell) the product to government purchasers notwithstanding its knowledge that the significant flaws in the VMS product violate numerous FIPS requirements. Some of these standards include, inter alia, the standards identified in the following paragraphs.

70.     Standard AC-3 ("Access Control Enforcement") requires that: "The information system enforces approved authorizations for logical access to the system." In violation of this standard, the Cisco VSM allows users to gain access to key system functions without authorization by failing to verify the user's "role" (i.e., authorized purpose for being in the system) before granting access to key control functions.

71.     Standard AC-6 ("Least Privilege") requires that: "The organization employs the concept of least privilege, allowing only authorized accesses for users (and processes acting on

behalf of users) which are necessary to accomplish assigned tasks in accordance with organizational missions and business functions." In violation of this standard, the Cisco VSM allows users to obtain access to video feeds and other data far outside their authorized purpose for accessing the system.

72.     Standard IA-5 ("Authenticator Management") requires the system to take a variety of steps to ensure that passwords or other confirmation such as biometrics are necessary to submit commands to the system. IA-5 further requires that the system takes steps to prevent the disclosure of these authenticators to unauthorized users. In violation of this standard, the Cisco VSM allows unauthorized access to a system wide password list and also fails to require adequate authentication before allowing access to sensitive system areas.

73.     Standard SC-8 ("Transmission Integrity") requires that: "The information system protects the integrity of transmitted information." In violation of this standard, the Cisco VSM allows users to gain access to video servers and corrupt, modify, or delete video feeds they are not authorized to view or access.

74.     Standard SC-9 ("Transmission Confidentiality") requires that: "The information system protects the confidentiality of transmitted information." In violation of this standard, the Cisco VSM allows unauthorized modification or reproduction of videos and fails to use encryption to properly protect the contents of the videos.

75.     Standard SC-23 ("Session Authenticity") requires that: "The information system provides mechanisms to protect the authenticity of communications sessions." This is a macro level version of AC-3, in that it imposes a duty on the system to ensure an authentic user at the session, or initial level, as well as for each piece of data transmitted. In violation of this standard, if compromised, the Cisco VSM could allow an unauthorized user to log in as any

21

legitimate user, or without providing any login information.

76.     Standard SC-28 ("Protection of Information at Rest") requires that: "The information system protects the confidentiality and integrity of information at rest." In violation of this standard, the Cisco VSM presents ample opportunity for the disclosure or modification of any and all video data stored in its archives.

77.     Standard SI-10 ("Information Input Validation") requires that: "The information system checks the validity of information inputs." This rule is designed to ensure that the system properly processes data inputs as information and not as a command. In other words, the system should draw a line between its command functions and its data-entry functions. In violation of this standard, the Cisco VSM has inadequate protection on this front, which allows for forcible access to its control functions by sending commands to what should be information-only ports.

### C.     Cisco Security Posture Assessment

78.     To add insult to injury, Cisco also offers its customers an additional service called the Cisco Security Posture Assessment, which purports to provide "a detailed assessment of network devices, servers, desktops, web applications, related IT infrastructure elements such as physical facilities, and operation security management" with the objective of "protect[ing] critical federal IT infrastructure from both physical and cyber security intrusions."

79.     The Security Posture Assessment is marketed to government purchasers as a comprehensive evaluation of any and all security vulnerabilities in their IT software and hardware. Relator believes, and on this basis alleges, that many federal and state agencies that purchased the Cisco VSM also purchased the Security Posture Assessment.

80.     Because Relator has seen no public reports from Cisco or elsewhere about this vulnerability, he believes, and on this basis alleges, that Cisco has not notified any of these

agencies of the vulnerability created by its own product, nor taken any other steps to remedy this grave violation of its obligations to purchasers of the Security Posture Assessment.

81.     When a vulnerability of this magnitude is identified, news of the issue is generally circulated to all purchasers of a product, so that the flaw may be quickly corrected. After a sufficient period of time has passed to allow purchasers to make repairs, the company will also publish the vulnerability and, if appropriate, credit any external entity that discovered the flaw. Cisco has made no such publication describing the vulnerability in its VSM system.

### D.     Relator's Discovery and Reports to Cisco of the Problems with the Video Surveillance Manager

82.     Relator discovered the flaws in Cisco's VSM while working at NetDesign, a Danish networking company that is also a Cisco "Gold Certified" Partner. At NetDesign, Relator worked on a variety of security projects for various clients, some involving Cisco products. Among other tasks, he worked on network security for the Danish National Police ("Rigspolitet") and the Copenhagen County Police Department.

83.     Relator eventually discovered the flaw in the Cisco VSM not through a specific work assignment, but through NetDesign's "Own Medicine" program. The Own Medicine program encouraged NetDesign's employees to test the software and systems the company itself used, to try to discover vulnerabilities and problems.

84.     In September of 2008, Relator and a colleague who worked in NetDesign's "physical security" department were testing an Internet-based Cisco security camera, looking for problems and vulnerabilities. Relator's colleague discovered that the camera (and related software) did not log failed attempts to access it, thus making the camera and system highly vulnerable to "brute force" security breaches (i.e., repetitive attempts to guess the password). Relator then reported his colleague's discovery to Cisco on October 30, 2008. Cisco issued a

patch and notice of the problem in the next update to the software.

85.     Relator took his colleague's achievement as a challenge and decided he would find a comparable security flaw. Having recently worked on the Cisco Video Surveillance Manager for other projects, Relator began experimenting with it to locate defects in its security structure.

86.     Once he began to work with the product, he realized his challenge was much easier than he had anticipated – the Video Surveillance Manager was riddled with serious security defects. Relator made the discovery at the heart of these allegations in October of 2008 and spent a few weeks testing and confirming that his concerns were valid. In late October, he presented the vulnerabilities, with evidence, to his supervisor, Karsten Frantsen. Frantsen expressed concern about the issue, but gave no indication that he planned to act on the information.

87.     At the same time he talked to Frantsen, Relator also submitted a report on the vulnerability to Cisco, through the company's Product Security Incident Response Team (PSIRT). Relator included a detailed description of the problem, including screenshots demonstrating that he had breached a test media server through various connected cameras. Relator did not receive any response from Cisco to this submission other than an automated notice that it had been received.

88.     In November of 2008, Relator followed up his PSIRT submission by writing a personal letter to the Cisco Incident Manager named on the automated PSIRT response. The manager wrote back to Relator with a pro forma response that indicated he would be "working with" Relator to resolve the issue.  After a few more inquiries from Relator, the Incident Manager simply told him that there was "no quick fix" to resolve the problem and did not further

reply.

89.     On November 25, 2008, Relator was invited by Frantsen to join a December 2 conference call between Cisco representatives and NetDesign about the flaws in the Cisco VSM. Relator did not keep notes of the call and thus does not have the names of the Cisco representatives he spoke with. During the course of the call, Relator and the colleague who helped him discover the vulnerability explained the security issue to Cisco in technical detail. The Cisco representatives asked Relator if he had any suggestions on how to fix the software. Relator indicated his belief that the problem was intrinsic to the design and structure of the Cisco VSM and largely irreparable.

90.     After the conference call, in December, Relator continued to discuss his concerns about the Cisco system with Frantsen and expressed his opinion that NetDesign should not offer the Cisco VSM to its clients.

91.     On March 3rd, Relator received a forwarded message from his colleague indicating that Brent Cowing of Cisco would be meeting with Frantsen and other NetDesign representatives at 8:30 PM that day. Relator took that opportunity to remind Frantsen by e-mail that vulnerabilities were still present in the system.

92.     For reasons Relator is not aware of, the 8:30 PM meeting did not take place. However, at 8:47 PM on March 3rd, Relator received an Outlook calendar invitation from Frantsen for a March 9 meeting regarding Cisco. Frantsen made no response to Relator's e-mail regarding the problems with the system.

93.     Cisco representatives arrived at NetDesign on March 6 and met with Frantsen and other NetDesign employees. Relator was not invited to this meeting, nor was he informed about what was discussed at the meeting.

94.     On March 9, Relator was called into Frantsen's office, where other NetDesign managers were present, and dismissed from his position with the company. He was told that his firing was due to economic concerns, even though the company had recently completed a record year. Moreover, at the time Relator had a full workload, including several projects that no other NetDesign employee was in a position to take over.

95.     Based on the circumstances of his firing, Relator believes, and on that basis alleges, that he was fired in retaliation for alerting Cisco and NetDesign to the flaws in the Cisco VSM product.

96.     After he was fired, Relator continued to monitor Cisco's public pronouncements about its Video surveillance system, hoping to see that Cisco had fixed the problem or at least informed its customers of the vulnerability. During this period he was also dealing with certain unrelated health issues.

97.     Finally, hearing nothing from Cisco, and confirming that the problem with the system had not been fixed, in September of 2010 Relator asked a trusted family member to call FBI headquarters and express concern about the fact that the Cisco VSM is installed at Los Angeles International Airport. The relative's inquiries were forwarded along to Detective Edward Martinez of the Los Angeles Airport Police, who then called and spoke with Relator. Detective Martinez is a member of the Federal Bureau of Investigation's (FBI) Joint Terrorism Task Force. Relator provided Detective Martinez with the same photographic and documentary evidence of the flaw that he had previously given to Cisco.

### E.     Government Purchasers of Cisco Video Surveillance Manager

98.     As noted above, Cisco has sold the Cisco VSM, either directly or indirectly, to federal, state, and local government agencies both large and small. Some examples of sales in

26

this District include the following:

99.     In 2009, the United States Department of Homeland Security awarded the Albion, NY Police Department a grant to purchase a SightLogix brand "rapid deployment kit," consisting of Cisco video cameras and a Panasonic laptop running the Cisco VSM. The grant was made under the Department's Commercial Equipment Direct Assistance Program.

100.    In addition, Amtrak uses the Cisco VSM to provide security at its stations. On this basis, Relator alleges, on information and belief, that the Amtrak stations located in Buffalo, NY and Niagara Falls, NY are also equipped with the Cisco Video Surveillance Manager.

101.    Relator is also aware that the following United States and United States-funded agencies and entities have purchased VSM, inter alia: the Department of Homeland Security, the Secret Service Procurement Division, the Department of Defense Biometrics Task Force Headquarters, the Federal Emergency Management Agency, the National Aeronautics and Space Administration (NASA), the Army, the Navy, the Air Force, the Marine Corps, and the Patent and Trademark Office.

102.    Cisco aggressively markets the VSM to states and local governments, especially schools, courts, municipal offices and airports. Cisco prominently displays, on its web site, case studies of the VSM being used by such state and local government entities. Below are examples of some state and local entities known by Relator to have purchased or otherwise acquired Cisco VSM, often with Federal assistance and / or through the federal supply schedule. Based on Cisco's aggressive marketing to state and local entities Relator believes, and on that basis alleges, that each of the Plaintiff States have purchased the Cisco VSM product.

103.    Even those entities that acquired the Video Surveillance System without spending their own money (e.g., through a Department of Homeland Security Grant) have been harmed by

27

the product if they have connected the product to any of their existing computer systems or networks, because the security flaws in the Cisco product damage the security of any other computer system to which it is connected.

104.    California state and local agencies and entities that have purchased VSM include, inter alia: Alameda County Congestion Management Agency, California State University– Monterey Bay, City of Mission Viejo California, County of Santa Cruz – Sheriff-Coroner, Fort Bragg Unified School District, Grant Joint Union High School, Los Angeles International Airport, San Diego International Airport/San Diego County Regional Airport Authority, and San Joaquin County.

105.    District of Columbia state and local agencies and entities that have purchased VSM include, inter alia: the Washington D.C. Metro Police Department, and the Woodrow Wilson Senior High School.

106.    Illinois state and local agencies and entities that have purchased VSM include, inter alia: City of Joliet Police Department, Joliet Junior College, and Midway International Airport.

107.    Massachusetts state and local agencies and entities that have purchased VSM include, inter alia: the Commonwealth of Massachusetts, Ashland Township, Beverly Township, Lawrence Township, and Westford Township.

108.    New Jersey state and local agencies and entities that have purchased VSM include, inter alia: the State of New Jersey, and Livingston Public Schools.

109.    New York state and local agencies and entities that have purchased VSM include, inter alia: Glen Cove School District, New York MTA, and State University of New York – SUNY Delhi.

28

110.     Virginia state and local agencies and entities that have purchased VSM include, inter alia: the Fredericksburg Police Department.

### Count I
### Federal False Claims Act
### 31 U.S.C. §§ 3729(a)(1)(A)-(C), (G)

111.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

112.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

113.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the United States Government for payment or approval.

114.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

115.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government.

116.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

117.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false claims were presented by numerous separate entities,

29

across the United States. Relator has no control over or dealings with such entities and has no access to the records in their possession.

118.     The Government, unaware of the falsity of the records, statements and claims made or caused to be made by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

119.     By reason of Defendant's acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

120.     Additionally, the United States is entitled to the maximum penalty of up to $11,000 for each and every violation alleged herein.

**<u>Count II</u>**
**<u>California False Claims Act</u>**
**<u>Cal Govt Code §§ 12651(a)(1)-(3), and (7)</u>**

121.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

122.     This is a claim for treble damages and penalties under the California False Claims Act.

123.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

124.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

125.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or

transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

126.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

127.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

128.    The California State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

129.    By reason of Defendant's acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

130.    Additionally, the California State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Count III
### Delaware False Claims and Reporting Act
### 6 Del C. §§ 1201(a)(1)-(3), and (7)

131.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

132.    This is a claim for treble damages and penalties under the Delaware False Claims and Reporting Act.

31

133.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

134.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

135.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

136.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

137.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

138.    The Delaware State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

139.    By reason of Defendant's acts, the State of Delaware has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

140.    The State of Delaware is entitled to the maximum penalty of $11,000 for each and

every violation alleged herein.

## Count IV
## Florida False Claims Act
## Fla. Stat. Ann. §§ 68.082(2)(a)-(c), and (g)

141.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

142.    This is a claim for treble damages and penalties under the Florida False Claims Act.

143.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

144.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

145.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

146.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

147.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and

has no access to the records in their possession.

148.    The Florida State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

149.    By reason of Defendant's acts, the State of Florida has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

150.    Additionally, the Florida State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**Count V**
**Hawaii False Claims to the State and to the Counties Acts**
**Haw. Rev. Stat. §§ 661-21(a)(1)-(3), and (7) and §§ 46-171(a)(1)-(3), and (7)**

151.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

152.    This is a claim for treble damages and penalties under the Hawaii False Claims to the State Act and Hawaii False Claims to the Counties Act.

153.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

154.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

155.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or

decreased an obligation to pay or transmit money to the State.

156.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

157.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

158.     The Hawaii State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

159.     By reason of Defendant's acts, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

160.     Additionally, the Hawaii State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## Count VI
## Illinois Whistleblower Reward and Protection Act
## 740 Ill. Comp. Stat. §§ 175/3(a)(A)-(C), and (G)

161.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

162.     This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

163.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related

services to the State for payment or approval.

164.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

165.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

166.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

167.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

168.    The Illinois State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct..

169.    By reason of Defendant's acts, the State of Illinois has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

170.    Additionally, the Illinois State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## Count VII
## Indiana False Claims and Whistleblower Protection Act
## Ind. Code Ann. §§ 5-11-5.5-2(b)(1)-(2) and (6)-(7)

171.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

172.    This is a claim for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act.

173.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

174.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

175.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

176.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

177.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

178.     The Indiana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

179.     By reason of Defendant's acts, the State of Indiana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

180.     Additionally, the Indiana State Government is entitled to the maximum penalty of $5,000 for each and every violation alleged herein.

**Count VIII**
**Massachusetts False Claims Law**
**Mass. Gen. Laws ch. 12 §§ 5B(1)-(3), and (8)**

181.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

182.     This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

183.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

184.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

185.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

186.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

187.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

188.     The Massachusetts State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

189.     By reason of Defendant's acts, the State of Massachusetts has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

190.     Additionally, the Massachusetts State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Count IX
### Minnesota False Claims Act
### Minn. Stat. §§ 15C.02(a)(1)-(3), and (7)

191.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

192.     This is a claim for treble damages and penalties under the Minnesota False Claims Act.

193.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related

services to the State for payment or approval.

194.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

195.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

196.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

197.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

198.    The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

199.    By reason of Defendant's acts, the State of Minnesota has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

200.    Additionally, the Minnesota State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## Count X
## Montana False Claims Act
## Mont. Code Ann. §§ 17-8-403(1)(a)-(c), (g)

201.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

202.    This is a claim for treble damages and penalties under the Montana False Claims Act.

203.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

204.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

205.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

206.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

207.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

41

208.    The Montana State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

209.    By reason of Defendant's acts, the State of Montana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

210.    Additionally, the Montana State Government is entitled to the maximum civil penalties of $10,000 for each and every violation alleged herein.

### Count XI
### Nevada False Claims Act
### Nev. Rev. Stat. Ann. §§ 357.040(1)(a)-(c), and (g)

211.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

212.    This is a claim for treble damages and penalties under the Nevada False Claims Act.

213.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

214.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

215.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

216. By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

217. Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

218. The Nevada State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

219. By reason of Defendant's acts, the State of Nevada has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

220. Additionally, the Nevada State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

## Count XII
## New Hampshire False Claims Act
## N.H. Rev. Stat. Ann. §§ 167:61-b(I)(a)-(c), and (e)

221. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

222. This is a claim for treble damages and penalties under the New Hampshire False Claims Act.

223. By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

224.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

225.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

226.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

227.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

228.     The New Hampshire State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

229.     By reason of Defendant's acts, the State of New Hampshire has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

230.     Additionally, the New Hampshire State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

**Count XIII**
**New Jersey False Claims Act**
**N.J. Stat. §§ 2A:32C-3(a)-(c) and (g)**

231.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

232.     This is a claim for treble damages and penalties under the New Jersey False Claims for Medical Assistance Act.

233.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

234.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

235.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

236.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

237.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

238.     The New Jersey State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

239.     By reason of Defendant's acts, the State of New Jersey has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

240.     Additionally, the New Jersey State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

### Count XIV
### New Mexico Fraud Against Taxpayers Act
### N.M. Stat. Ann. § 44-9-3

241.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

242.     This is a claim for treble damages and penalties under the New Mexico Fraud Against Taxpayers Act.

243.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

244.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

245.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or

decreased an obligation to pay or transmit money to the State.

246.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

247.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

248.    The New Mexico State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

249.    By reason of Defendant's acts, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

250.    Additionally, the New Mexico State Government is entitled to the maximum civil penalty of $10,000 for each and every violation alleged herein.

**Count XV**
**New York False Claims Act**
**N.Y. State Fin. §§ 189(1)(A)-(C) and (G)**

251.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

252.    This is a claim for treble damages and penalties under the New York False Claims Act.

253.    By virtue of the acts described above, Defendant knowingly presented or caused

to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

254.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

255.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

256.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

257.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

258.    The New York State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

259.    By reason of Defendant's acts, the State of New York has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

260.     Additionally, the New York State Government is entitled the maximum civil penalty of $12,000 for each and every violation alleged herein.

<b>Count XVI</b><br><b>North Carolina False Claims Act</b><br><b>N.C. Gen. Stat. §§ 1-607(a)(1)-(3), and (7)</b>

261.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

262.     This is a claim for treble damages and penalties under the North Carolina False Claims Act.

263.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

264.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

265.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

266.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

267.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of

49

separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

268.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

269.    By reason of Defendant's acts, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

270.    Additionally, the North Carolina State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

## Count XVII
## Rhode Island False Claims Act
## R.I. Gen. Laws §§ 9-1.1-3(a)(1)-(3), and (7)

271.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

272.    This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

273.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

274.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

275.    By virtue of the acts described above, Defendants knowingly made, used, or

caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

276.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

277.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

278.    The Rhode Island State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

279.    By reason of Defendant's acts, the State of Rhode Island has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

280.    Additionally, the Rhode Island State Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Count XVIII
### Tennessee False Claims Act
### Tenn. Code Ann. §§ 4-18-103(a)

281.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

51

282.    This is a claim for treble damages and penalties under the Tennessee False Claims Act.

283.    By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

284.    By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

285.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

286.    By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

287.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

288.    The Tennessee State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

289.     By reason of Defendant's acts, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

290.     Additionally, the Tennessee State Government is entitled to the maximum penalty allowed by Tennessee law for each and every violation alleged herein.

## Count XIX
## Virginia Fraud Against Taxpayers Act
## Va. Code Ann. §§ 8.01-216.3(a)(1)-(3), and (7)

291.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

292.     This is a claim for treble damages and penalties under the Virginia Fraud Against Taxpayers Act.

293.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

294.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

295.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

296.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

297.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the State. Relator has no control over or dealings with such entities and has no access to the records in their possession.

298.     The Virginia State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

299.     By reason of Defendant's acts, the State of Virginia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

300.     Additionally, the Virginia State Government is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

**Count XX**
**District of Columbia Procurement Reform Amendment Act**
**D.C. Code Ann. §§ 2-308.14(a)(1)-(3), and (7)**

301.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 110 above as though fully set forth herein.

302.     This is a claim for treble damages and penalties under the District of Columbia Procurement Reform Amendment Act.

303.     By virtue of the acts described above, Defendant knowingly presented or caused to be presented, false or fraudulent claims for video surveillance software, hardware and related services to the State for payment or approval.

304.     By virtue of the acts described above, Defendant knowingly made, used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for video surveillance software, hardware and related services.

305.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money to the State, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the State.

306.     By virtue of the acts described above, Defendants have conspired, with NetDesign and others of its partners and affiliates, to commit statutory violations as set forth in the preceding three paragraphs.

307.     Relator cannot at this time identify all of the false claims for payment that were caused by Defendant's conduct. The false or fraudulent claims were presented by a multitude of separate entities across the District of Columbia. Relator has no control over or dealings with such entities and has no access to the records in their possession.

308.     The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's unlawful conduct.

309.     By reason of Defendant's acts, the District of Columbia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

310.     Additionally, the District of Columbia Government is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

### Prayer

WHEREFORE, Relator prays for judgment against Defendant as follows:

1.     that Defendant cease and desist from violating 31 U.S.C. § 3729 et seq., and the counterpart provisions of the State statutes set forth above;

2.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 31 U.S.C. § 3729;

3.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of California has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Cal. Govt. Code § 12651(a);

4.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Delaware has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 6 Del. C. § 1201(a);

5.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Florida has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Fla. Stat. Ann. § 68.082(2);

6.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Hawaii has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Haw. Rev. Stat. § 661-21(a);

7.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of 740 Ill. Comp. Stat. § 175/3(a);

8.      that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Indiana has sustained because of Defendant's actions, plus a civil penalty of $5,000 for each violation of Ind. Code Ann. § 5-11-5.5-2(b);

9.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Massachusetts has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mass. Gen. L. Ch. 12 § 5B;

10.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Minnesota has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Minn. Stat. § 15C.02(a);

11.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Montana has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Mont. Code Ann. § 17-8-401;

12.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Nevada has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of Nev. Rev. Stat. Ann. § 357.040(1);

13.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Hampshire has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of N.H. Rev. Stat. Ann. § 167.61-b(I).

14.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Jersey has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.J. Stat. § 2A:32C-3;

15.     that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New Mexico has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of N.M. Stat. Ann. § 27-2F-4;

16.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of New York has sustained because of Defendant's actions, plus a civil penalty of $12,000 for each violation of N.Y. State Fin. § 189(1);

17.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of North Carolina has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of N.C. Gen. Stat. § 1-607(a);

18.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Rhode Island has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of R.I. Gen. Laws § 9-1.1-3(a);

19.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Tennessee has sustained because of Defendant's actions, plus the maximum civil penalty allowable for each violation of Tenn. Code Ann. §§ 4-18-103(a) and 71-5-182(a)(1);

20.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Virginia has sustained because of Defendant's actions, plus a civil penalty of $11,000 for each violation of Va. Code Ann. § 8.01-216.3(a);

21.    that this Court enter judgment against Defendant in an amount equal to three times the amount of damages the District of Columbia has sustained because of Defendant's actions, plus a civil penalty of $10,000 for each violation of D.C. Code Ann. § 2-308.14(a);

22.    that Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act, and the equivalent provisions of the State statutes set forth above;

23.    that Relator be awarded all costs of this action, including attorneys' fees and expenses; and

24.    that Relator recover such other relief as the Court deems just and proper.

**Demand for Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: May 10, 2011

By:   /s/  Brian M. Melber
　　　Brian M. Melber
　　　bmm@personiusmelber.com
　　　Rodney O. Personius
　　　rop@personiusmelber.com
　　　Personius Melber LLP
　　　2100 Main Place Tower
　　　Buffalo, NY 14202
　　　Tel: (716) 855-1050
　　　Fax: (716) 855-1052


　　　Timothy P. McCormack
　　　tmccormack@phillipsandcohen.com
　　　PHILLIPS & COHEN LLP
　　　2000 Massachusetts Ave, NW
　　　Washington, DC 20002
　　　Tel: (202) 833-4567
　　　Fax: (202) 833-1815


　　　Attorneys for Qui Tam Plaintiff James Glenn